Keith A. Custis (#218818)
  kcustis@custislawpc.com
CUSTIS LAW, P.C.
1875 Century Park East, Suite 700
Los Angeles, California 90067
(213) 863-4276

Ashley Keller (*pro hac vice forthcoming*)
  ack@kellerlenkner.com
Travis Lenkner (*pro hac vice forthcoming*)
  tdl@kellerlenkner.com
Marquel Reddish (*pro hac vice forthcoming*)
  mpr@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

Warren Postman (*pro hac vice forthcoming*)
  wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

*Attorneys for Petitioners*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| TERRELL ABERNATHY, et al., | Case No. 3:19-cv-07545 |
| *Petitioners*, | **MOTION FOR A TEMPORARY RESTRAINING ORDER** |
| vs. | |
| DOORDASH, INC., | |
| *Respondent.* | |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Petitioners will and hereby do move this Court, under Federal Rule of Civil Procedure 65, for a temporary restraining order enjoining Respondent DoorDash, Inc. and its counsel from sending revised arbitration agreements directly to Petitioners in an attempt to alter or eliminate the rights Petitioners are pursuing in this action and in circumvention of Petitioners' counsel. Petitioners request a hearing on their motion on Thursday, November 21, 2019, or as soon thereafter as the matter may be heard. Petitioners further request that Respondents be required to submit their opposition brief, if any, on Tuesday, November 19, 2019, with a reply brief from Petitioners due on Wednesday, November 20, 2019.

Petitioners have been pursuing misclassification claims against DoorDash for months. Each Petitioner and DoorDash entered into an arbitration agreement requiring that such claims be brought in individual arbitration administered by the American Arbitration Association ("AAA"). Pursuant to that agreement, Petitioners filed demands for individual arbitration before AAA. After AAA issued administrative determinations that DoorDash disliked, DoorDash refused to proceed with those arbitrations, thereby breaching its agreement with Petitioners. Knowing that Petitioners would petition to compel arbitration and seek specific performance under the AAA agreement, DoorDash's counsel developed a plan to send revised arbitration agreements directly to Petitioners—intentionally circumventing Petitioners' counsel—that purport to release Petitioners' breach-of-contract claims and impose an inferior procedure for pursuing arbitration. In so doing, DoorDash's inside and outside counsel have violated California Rule of Professional Conduct 4.2, and DoorDash has violated the covenant of good faith and fair dealing that accompanies its agreement to arbitrate with Petitioners. Because DoorDash and its counsel are using the DoorDash app to force Petitioners to accept the new agreement, on pain of no longer being able to work for DoorDash, more Petitioners are being coerced each day into singing a legal agreement that purports to prejudice their rights in this action. To prevent further harm, this Court should enjoin DoorDash from continuing to force Petitioners and other Dashers represented by Petitioners' counsel to sign the new agreements.

This motion is based on this notice of motion, the attached memorandum of points and authorities, the declaration of Ashley Keller, all records on file with this Court, and such other and further oral and written arguments as may be presented at, or prior to, the hearing on this matter.

Petitioners' counsel will send a copy of these filings to DoorDash's counsel immediately after they are filed with the Court.

Dated: November 17, 2019                 Respectfully submitted,

/s/ Keith A. Custis
Keith A. Custis (#218818)
  kcustis@custislawpc.com
CUSTIS LAW, P.C.
1875 Century Park East, Suite 700
Los Angeles, California 90067
(213) 863-4276

Ashley Keller (*pro hac vice pending*)
  ack@kellerlenkner.com
Travis Lenkner (*pro hac vice pending*)
  tdl@kellerlenkner.com
Marquel Reddish (*pro hac vice pending*)
  mpr@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

Warren Postman (*pro hac vice pending*)
  wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

*Attorneys for Petitioners*

# TABLE OF CONTENTS

I.       INTRODUCTION ................................................................................................. 1

II.      BACKGROUND ................................................................................................. 4

    A.    Each Petitioner and DoorDash Agreed to Arbitrate Petitioners' Misclassification
        Claims Individually Before AAA. ................................................................. 4

    B.    DoorDash Stalls, and Then Refuses to Proceed with Petitioners' AAA Arbitrations. . 5

    C.    DoorDash Sends a New Arbitration Agreement Directly to Petitioners That Purports
        to Change the Terms of Arbitration. ................................................................. 7

III.     STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4) ......................................... 9

IV.      ARGUMENT ................................................................................................... 10

    A.    Petitioners Are Likely to Prevail on the Merits. ............................................. 10

        1.    Requiring Petitioners to Sign a New Agreement Prejudicing Their Claims in This
            Action Is a Grave Violation of the Rules of Professional Conduct. .................... 10

        2.    Petitioners Are Likely to Demonstrate in Arbitration That DoorDash's Attempt
            to Change the Arbitration Agreement is Unlawful. ....................................... 16

    B.    Petitioners Will Be Irreparably Injured Absent a Temporary Restraining Order. ...... 21

    C.    The Balance of Equities Favors Petitioners, as DoorDash Will Suffer No Injury from
        a Short Delay. ......................................................................................... 22

V.       CONCLUSION ................................................................................................ 22

## <u>TABLE OF AUTHORITIES</u>

### CASES

*All. for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) .......................................................................... 10

*Camp v. Alexander*,
   300 F.R.D. 617 (N.D. Cal. 2014) ..................................................................... 14

*Civil v. Spirit Delivery & Distrib. Servs.*,
   No. 13-12635-TSH, 2017 WL 1115162 (D. Mass. Mar. 24, 2017) .................... 15

*Cobell v. Norton*,
   212 F.R.D. 14 (D.D.C. 2002) ........................................................................... 14

*In re Marietta*,
   223 Kan. 11 (1977) .......................................................................................... 11

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. 2017) ........................ 17

*Kransco v. American Empire Surplus Lines Ins. Co.*,
   2 P.3d 1 (Cal. 2000) ........................................................................................ 16

*Longcrier v. HL-A Co., Inc.*,
   595 F. Supp. 2d 1218 (S.D. Ala. 2008) ............................................................ 15

*Magana v. DoorDash, Inc.*,
   343 F. Supp. 891 (N.D. Cal. 2018) .................................................................... 4

*Magana*, 343 F. Supp. 3d ................................................................................... 8

*Moua v. Optum Servs., Inc.*,
   320 F. Supp. 3d 1109 (C.D. Cal. 2018) ........................................................... 19

*Nguyen v. Inter-Coast Int'l Training, Inc.*,
   No. B270305, 2018 WL 1887347 (Cal. Ct. App. Apr. 20, 2018) ................. 15, 19

*O'Connor v. Uber Technologies, Inc.*,
   2013 WL 6407583 (N.D. Cal. Dec. 6, 2013) .................................................... 13

*Peleg v. Neiman Marcus Group, Inc.*,
   140 Cal. Rptr. 3d 38 (Cal. App. 2012) ......................................................... 18, 19

*Peng v. First Republic Bank*,
   219 Cal. App. 4th 1462 (Cal. App. 2013), *as modified* (Oct. 2, 2013) .............. 19

*Recinos-Recinos v. Express Forestry, Inc.*,
   No. Civ. A. 05-1355, 2006 WL 197030 (E.D. La. Jan. 24, 2006) ...................... 15

*Rowsell v. American Express Bank, FSB*,
   2018 WL 4710092 (Cal. App. 2018) ................................................................. 19

*Salgado v. Carrows Restaurants, Inc.*,
   33 Cal. App. 5th 356 (2019) ............................................................................ 19

*San Francisco Unified Sch. Dist. ex rel. Contreras v. First Student, Inc.*,
   213 Cal. App. 4th 1212 (2013) ........................................................................ 11

*Saravia for A.H. v. Sessions*,
   905 F.3d 1137 (9th Cir. 2018) ......................................................................... 10

*Serpa v. California Sur. Investigations, Inc.*,

215 Cal. App. 4th 695 (Cal. App. 2013), *as modified* (Apr. 19, 2013), *as modified* (Apr. 26, 2013) ........................................................................................ 16, 19

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001) ............................................................................... 10

*Totten v. Kellogg Brown & Root, LLC*,
    152 F. Supp. 3d 1243 (C.D. Cal. 2016) ............................................................... 19

*Wright v. Adventures Rolling Cross Country, Inc.*,
    No. 12-0982-EMC, 2012 WL 2239797 (N.D. Cal. June 15, 2012) ...................... 15

**STATUTES**

Labor Code § 98.6(a) ................................................................................................. 20

Labor Code § 98.6(b)(1) ............................................................................................ 20

**OTHER AUTHORITIES**

ABA Formal Op. 11-461 ............................................................................................ 11

*Mohamed v. Uber Technologies, Inc., et al.*,
    9th Cir., Case No. 15-16178, Mot. Stay, ECF No. 14 ......................................... 13

*O'Connor v. Uber Technologies, Inc.*,
    N.D. Cal., Case No. 14-16078, Reply, ECF No. 38 ............................................. 13

*O'Connor v. Uber Technologies, Inc.*,
    N.D. Cal., Case No. 14-16078, Supplemental Brief, ECF No. 96 ....................... 13

**RULES**

California Rule of Professional Conduct 4.2(a) ......................................................... 10

California Rule of Professional Conduct 8.4 .............................................................. 10

Federal Rule of Civil Procedure 23(e) ....................................................................... 15

Federal Rule of Civil Procedure 65 ........................................................................... 16

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

An arbitration agreement is supposed to create a fair alternative to judicial proceedings. Approaching arbitration in good faith requires an employer to respect the rulings of the neutral arbitral forum it selected by contract.  Adverse rulings are not an invitation for the employer's counsel to: (1) rewrite the rules of arbitration to circumvent adverse rulings; (2) force employees who already initiated claims against the employer to sign the new arbitration agreement as a condition of continued employment; and (3) instruct the employer to present the take-it-or-leave-it agreement to employees directly, even though the employees are represented by counsel.  Yet that is precisely what is happening here, requiring the Court's immediate intervention.

For years, DoorDash, Inc. has required its couriers to sign an agreement providing that disputes be brought in individual arbitration administered by the American Arbitration Association.  The contract expressly incorporates AAA rules, which in turn authorize AAA to make administrative rulings.  Petitioners are DoorDash couriers ("Dashers") who have been pursuing misclassification claims against DoorDash since at least August 2019.  Each Petitioner signed the arbitration agreement, and each Petitioner filed a demand for individual arbitration before AAA. But when DoorDash disliked AAA's administrative determinations, its counsel drafted and DoorDash sent a legal agreement <u>directly</u> to Petitioners, without the involvement of Petitioners' counsel, that purports to eliminate Petitioners' rights to pursue arbitration before AAA.

Petitioners' counsel learned of this conduct only last week, but it is now clear that the new agreement was the culmination of a carefully orchestrated strategy masterminded by DoorDash's in-house and outside counsel.  While DoorDash was stonewalling AAA, its lawyers were collaborating with an alternative forum—writing new rules that make it far harder for Petitioners to pursue their claims.  Under those rules, defendants can force almost all individual claimants to wait while only a tiny fraction of claims are arbitrated.  Even after this so-called

"bellwether" process, claimants have no assurance that they will <u>ever</u> receive timely arbitration of their disputes.

DoorDash's attorneys moved quickly to force their new rules on Petitioners. On November 8, 2019, AAA administratively closed Petitioners' files so Petitioners could seek judicial relief through a motion to compel arbitration. <u>The very next day</u>—a Saturday— DoorDash attorneys directed their client to start requiring Petitioners to sign a new agreement as a condition of continuing to work for DoorDash. The new agreement purports to eliminate Petitioners' right to proceed with claims before AAA—the very right Petitioners have been pursuing for months and seek to vindicate in this action—and replace that right with the inferior, tailor-made-for-DoorDash arbitration process. Although DoorDash's lawyers knew that Petitioners were represented by counsel, they <u>circumvented Petitioners' counsel</u> when issuing the agreement; DoorDash sent it to Petitioners directly and required them to sign it or lose their ability to work for DoorDash.

Because some Petitioners have not worked for DoorDash since November 9, they have not yet been forced to sign the new agreement. But with every day that goes by, additional Petitioners will log on to the DoorDash app, and DoorDash will tell them that if they want to continue earning a living, they must sign an agreement that purports to release their rights in this action.

If an employer faced minimum-wage and overtime claims brought by employees represented by counsel, it would be beyond the pale for the employer's attorneys to hatch a new legal strategy to shift claims to arbitration, draft an arbitration agreement, and direct their client to force every employee to sign that new agreement upon pain of being fired, without the involvement of the employees' counsel. Such conduct would be immediately enjoined, and counsel would be sanctioned. The only difference here is that DoorDash is trying to switch Petitioners from the neutral arbitral process they already initiated to an inferior process specifically designed to frustrate Petitioners' rights. DoorDash's lawyers knew that Petitioners were represented by counsel; that counsel intended to file this action in the face of DoorDash's

refusal to honor the existing arbitration agreement; and that the new agreement DoorDash forced upon Petitioners purported to release DoorDash from its obligations under the existing agreement.

The actions of DoorDash and its attorneys violate California Rule of Professional Conduct 4.2. They are a breach of the covenant of good faith and fair dealing that accompanies DoorDash's agreement to arbitrate. And they constitute unlawful retaliation under the California Labor Code. When informed of a party's unlawful communications with other represented parties, courts routinely enjoin those communications. This Court should do the same here for two reasons.

First, this Court has inherent authority to manage this case and regulate the parties and attorneys to prevent unethical misconduct. And the conduct of DoorDash and its counsel makes a mockery of the judicial process.[1] Courts routinely exercise this authority to bar defendants' attorneys from causing the defendant to communicate with absent class members, on the theory that class certification effectively makes absent class members represented parties. It follows *a fortiori* that this Court can and should bar communications where the defendant's attorneys know that the plaintiffs are <u>directly</u> represented by counsel.

Second, under the parties' arbitration agreement and Federal Rule of Civil Procedure 65, this Court has authority to preserve the status quo pending a final decision on whether DoorDash's conduct is prohibited by the covenant of good faith and fair dealing and the California Labor Code. Under the arbitration agreement between Petitioners and DoorDash, those questions ultimately must be decided in arbitration administered by AAA, not in this Court. But the arbitration agreement expressly authorizes Petitioners to "apply to a court of competent jurisdiction for temporary or preliminary injunctive relief on the ground that without such relief the arbitration provided in this paragraph may be rendered ineffectual." Keller Decl. Ex. B, § XI.5.i. It would vitiate the AAA arbitration agreement—in which DoorDash agreed to resolve

---

[1] Mere weeks ago, DoorDash's lawyers appeared in this District and successfully enforced the AAA agreement at the same time they were developing the new, more-DoorDash-friendly agreement to replace it.

1    disputes with Petitioners through a specific procedure—to hold that <u>after</u> Petitioners invoke their

2    contractual right to that procedure, DoorDash can force Petitioners to abandon that right upon

3    pain of being unable to work for DoorDash.  If that were permitted, DoorDash could force

4    couriers to alter their right to arbitrate <u>at any time</u>, even after an arbitration hearing or after this

5    Court granted a motion to compel.  That is not how parties proceeding in good faith approach

6    their contractual arrangements.  DoorDash cannot rewrite its arbitration clauses whenever an

7    arbitrator issues a ruling the company does not like.

8         This Court should freeze the status quo and order DoorDash and its counsel to stop

9    forcing Petitioners to sign new agreements pending a decision on the permissibility of this

10   conduct by an arbitrator.  At a bare minimum, the Court should issue a temporary injunction

11   prohibiting DoorDash and its counsel from forcing Petitioners to sign new agreements until this

12   Court decides Petitioners' pending Motion to Compel Arbitration.

13                      **II.    BACKGROUND[2]**

14   **A.    Each Petitioner and DoorDash Agreed to Arbitrate Petitioners' Misclassification**

15        **Claims Individually Before AAA.**

16        Since at least 2014, DoorDash has required Dashers to sign a contract containing a

17   "Mutual Arbitration Provision" before making any delivery for the company.  *See Magana v.*

18   *DoorDash, Inc.*, 343 F. Supp. 891, 895 (N.D. Cal. 2018).  Although DoorDash has periodically

19   revised its contract over the years, it has left the arbitration clause almost entirely untouched.

20   *Compare* Keller Decl., Ex. B (DoorDash's 2019 AAA Agreement) *with id.*, Ex. C (DoorDash's

21   2016 AAA Agreement).  The arbitration clause expressly covers claims arising out of a Dasher's

22   "classification as an independent contractor," *id.*, Ex. B § XI.1, and it requires individual

23   arbitration, *see id.* § XI.3 (providing that the parties "waive their right to have any dispute or

24   claim brought, heard or arbitrated as, or to participate in, a class action, collective action and/or

25   representative action").  It also provides that a Dasher may "apply to a court of competent

26   jurisdiction for temporary or preliminary injunctive relief on the ground that without such relief

27   ───────────────
     [2] Petitioners' Motion to Compel Arbitration, Dkt. No. 4, contains additional details of Petitioners'
     attempts to arbitrate their claims and DoorDash's refusal to do so.

28

1   the arbitration provided in this paragraph may be rendered ineffectual."  Id. § XI.5.i.  Each

2   Petitioner signed the DoorDash contract, thereby agreeing to the Mutual Arbitration Provision.

3   Keller Decl. ⁋ 4.

4          The arbitration clause provides that each Petitioner's arbitration "shall be governed by the

5   [AAA's] Commercial Arbitration Rules."  Keller Decl., Ex. B § XI.5.  Those rules state that

6   "[w]hen parties agree to arbitrate under [the Commercial Rules] . . . they thereby authorize the

7   AAA to administer the arbitration."  Commercial Rule 2.[3]  The rules expressly allow AAA to

8   "require the parties to deposit in advance of any hearings such sums of money as it deems

9   necessary to cover the expense of the arbitration, including the arbitrator's fee."  Commercial

10  Rule 56 (emphasis added).

11  **B.     DoorDash Stalls, and Then Refuses to Proceed with Petitioners' AAA Arbitrations.**

12         On August 26, 2019, in reliance on the parties' agreement, Petitioners' counsel filed

13  individual demands for arbitration before AAA on behalf of each Petitioner.  AAA determined

14  that each Petitioner's demand met AAA's filing requirements, and it imposed a deadline of

15  October 14, 2019 for DoorDash to pay the filing fees necessary for AAA to empanel an

16  arbitrator for each Petitioner's action.  *See* Keller Decl. ¶ 6; Commercial Rule 56; AAA

17  Employment Fee Schedule at 2 (imposing a $1,900 filing fee on companies responding to

18  arbitration demands).  AAA had recently determined, in conjunction with prior demands filed by

19  counsel for Petitioners, that because each claimant had filed an individual demand as required by

20  DoorDash's arbitration agreement, DoorDash was obligated to pay a filing fee for each claimant.

21  Keller Decl., Ex. I.  DoorDash had objected, arguing that, although DoorDash had insisted on

22  individual arbitrations, it was unreasonable for AAA to require a separate fee for each individual

23  arbitration.  *Id.*  DoorDash argued that AAA should have forced the claimants to stage their

24  arbitrations, rather than proceeding simultaneously, and that AAA should have collected a filing

25  fee only for those arbitrations that would proceed immediately.  *Id.*  But AAA overruled those

26  objections, recognizing that once a claimant meets his or her filing requirements for individual

27

28  [3] *Available at* https://www.adr.org/sites/default/files/CommercialRules_Web_FINAL_1.pdf.

arbitration, the Commercial Rules do not permit the respondent to delay commencement of arbitration.  Keller Decl., Ex. J.  Further, the applicable fee schedule requires DoorDash to submit a separate fee for each arbitration.  Keller Decl., Ex. I.  In short, as a result of AAA's rulings, DoorDash was obligated to proceed with each Petitioner's arbitration and to pay the filing fees and other costs associated with each arbitration without delay.

DoorDash sought a 30-day extension of the October 14 deadline, claiming it needed time to prepare to pay the required fees.  Keller Decl., Ex. E ("In the past, AAA has extended the filing-fee deadlines to provide DoorDash sufficient time to identify claimants and obtain the necessary approvals for large payments.  Here, both the number of claimants and the amount of the filing-fee demand—2,250 and $4,275,000.00—are much larger than before, and require additional time.").  AAA granted a 14-day extension, to October 28, 2019.  Keller Decl. ¶ 9.

Having stalled AAA's administrative process as long as possible, DoorDash then refused to proceed with arbitration.  On the night its filing fees were due, DoorDash told AAA that it would not pay the fees it owed because it had identified "significant deficiencies with claimants' filings."  Keller Decl., Ex. G.  DoorDash did not describe any of the purported "deficiencies."  *See id.*  Nor did it identify a single Petitioner whom it could not locate in its records.  *See id.*  With DoorDash unwilling to proceed with Petitioners' arbitrations, AAA emailed DoorDash and Petitioners' counsel on November 8, 2019, confirmed that DoorDash had not paid the fees necessary to empanel arbitrators, and stated that it had "administratively closed [Petitioners'] files."  Keller Decl., Ex. H.

Only later did it become clear why DoorDash refused to explain its objections and provide Petitioners with an opportunity to cure any purported defects: DoorDash never intended to abide by the agreement it forced Petitioners to sign.

**C.**     **DoorDash Sends a New Arbitration Agreement Directly to Petitioners That**
           **Purports to Change the Terms of Arbitration.**

At the same time DoorDash's attorneys were stalling AAA's payment deadlines, it appears they also were hatching a plan for DoorDash to avoid complying with the terms of its own arbitration agreement. Counsel and DoorDash implemented that plan on Saturday, November 9—the day after AAA administratively closed Petitioners' files. As DoorDash's outside counsel later admitted to Petitioners' counsel, Keller Decl., Ex. L, DoorDash began imposing a new arbitration agreement on DoorDash couriers who reported for work by logging into the DoorDash app. The new agreement purports to "supersede[] any prior contract between the parties." Keller Decl., Ex. M § XIV. Based on the admission of DoorDash's counsel, it appears that every DoorDash courier, including Petitioners, must sign the new agreement in order to make deliveries for DoorDash. *See* Keller Decl., Ex. L. Some Petitioners have already received the new agreement, while Petitioners who have not attempted to make a DoorDash delivery since November 9 have not. Keller Decl. ⁋ 19.

The new agreement is tailor-made to grant DoorDash the administrative relief that AAA has already denied. Like the AAA agreement Petitioners have invoked to arbitrate their claims, the new agreement requires both Petitioners and DoorDash to "waive their right to have any dispute or claim brought, heard or arbitrated as, or to participate in, a class action, collective action and/or representative action." Keller Decl., Ex. M XI.3. But the arbitration procedures imposed by the new agreement are anything but individual.

The agreement provides for arbitration governed by the "Administered Arbitration Rules" of the International Institute for Conflict Prevention & Resolution ("CPR"). *Id.* § XI.5. The agreement further provides that "when applicable," arbitrations shall be governed by the CPR's "Employment-Related Mass-Claims Protocol," which was announced three days before DoorDash incorporated it into the new agreement.[4] That Protocol, in turn, would force most

---

[4] *See* CPR Launches New Mass Claims Protocol and Procedure (Nov. 6, 2019), https://www.cpradr.org/news-publications/press-releases/2019-11-06-cpr-launches-new-mass-claims-protocol-and-procedure.

1    Petitioners covered by the agreement to delay their arbitration demands for years.  The protocol

2    purportedly applies when, as happened here, "greater than 30 individual employment-related

3    arbitration claims of a nearly identical nature are . . . filed . . . against the same Respondent(s) in

4    close proximity one to another."  Keller Decl., Ex. N at 2.  In such a case, the CPR will randomly

5    select ten "test" arbitrations to proceed, while the remaining claimants' arbitrations are

6    indefinitely stayed.  *Id.*  at 2-4.  After those ten test arbitrations are completed, purportedly

7    within 120 days, the parties—including claimants who have not yet begun arbitration—<u>must</u>

8    mediate their claims for an additional 90 days.  *See id.* at 4.  Only then, nearly a year after filing

9    their demands for individual arbitration, may claimants potentially proceed with their individual

10   arbitrations if the mediation is unsuccessful.  *See id.* at 4.  Those arbitrations "shall proceed in a

11   sequence determined by CPR, which sequence shall in part turn on the timing of these

12   notifications and on any other factors necessary for the efficient and orderly arbitration of the

13   remaining claims."  *Id.* at 4.  CPR lists only 60 arbitrators as part of its employment panel.

14   Keller Decl., Ex. O.  Thus, if <u>every</u> arbitrator was able to decide 10 of Petitioners' arbitrations

15   per year in addition to their normal case load, hundreds of claimants would not have a right to

16   begin arbitration until four years from now.

17          Put simply, the new arbitration agreement purports to eliminate the legal right to proceed

18   with arbitration before AAA, which Petitioners had already invoked months ago and seek to

19   enforce in this action, and to replace it with an inferior process.  Under DoorDash's long-

20   standing AAA arbitration agreement, which DoorDash has repeatedly invoked to force Dashers

21   to arbitrate misclassification claims, *see Magana*, 343 F. Supp. 3d 891,3d 891, each Petitioner

22   has the right to pursue individual arbitration promptly.  The new agreement purports to force

23   Petitioners into a collective proceeding.  Of the 2,236 Petitioners, only <u>ten</u> could even begin

24   arbitration in the next 220 days.  Moreover, the new agreement purports to release DoorDash

25   from the consequences of breaching its AAA arbitration agreement—i.e., to release the very

26   claims being litigated in this action—with Petitioners, by "superseding" that agreement.

27

28

MOTION FOR A TEMPORARY RESTRAINING ORDER

DoorDash's counsel did not notify Petitioners' counsel that it was sending Petitioners the new agreement, despite exchanging several emails and participating in a phone call with Petitioners' counsel in the week before DoorDash issued the new agreement.  Keller Decl. ¶ 18. DoorDash did not provide Petitioners' counsel the opportunity to discuss the new agreement with Petitioners, despite knowing that Petitioners were planning to compel arbitration under the very agreement DoorDash's new agreement purports to supersede.  *Id.* ¶ 8.  And when Petitioners' counsel raised the issue with one of DoorDash's outside counsel, Joshua S. Lipshutz, Mr. Lipshutz claimed that the new agreement was issued to Petitioners "in the ordinary course of business" and that "none of the changes to the IC Agreement are about the subject of [Petitioners' counsel's] representation" of Petitioners.  Keller Decl., Ex. L.

Unsurprisingly, Petitioners and other Dashers represented by Petitioners' counsel are confused and concerned about the new agreement.  As illustrated by the declaration of Petitioner Alison Jackson, which is submitted with this motion, DoorDash is forcing the new agreement on Dashers in a way that leaves them no actual choice, let alone an informed choice, regarding whether to agree to it.  DoorDash confronted Ms. Jackson with the new agreement when she signed on to make deliveries on November 11, 2019:

> [B]efore I could begin making deliveries, DoorDash presented me with its new terms and agreement. It would not let me proceed until I accepted its terms.  I thought that the new agreement was merely an update to the app. I did not realize that this agreement contained new provisions that could affect my ongoing case against DoorDash.  I did not have enough time to thoroughly read through the agreement. The update caught me at a time where, if I did not sign quickly, I would lose the hours that I was signed up to work.  I accepted the terms of the agreement even though I did not have the time to fully read through and understand them. I did so because I rely on the income being a Dasher provides, and I did what I had to do to start working.

Jackson Decl. ¶¶ 8–11.

### III.    STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4)

Whether DoorDash and its counsel should be enjoined from sending a revised arbitration agreement directly to individuals whom they know are actively pursuing arbitration and are represented by counsel, when the revised agreement purports to release the claims in this action.

# IV.   ARGUMENT

A party seeking temporary injunctive relief "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1142 (9th Cir. 2018); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that the standards for a temporary restraining order and a preliminary injunction are "substantially identical").  A temporary restraining order also may issue where "serious questions going to the merits [are] raised and the balance of hardships tips sharply in [plaintiff's] favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

## A.   Petitioners Are Likely to Prevail on the Merits.

Petitioners are entitled to a temporary restraining order on two grounds, each of which is independently sufficient to warrant preserving the status quo.

### 1.   Requiring Petitioners to Sign a New Agreement Prejudicing Their Claims in This Action Is a Grave Violation of the Rules of Professional Conduct.

By orchestrating a new agreement that purports materially to alter Petitioners' arbitration rights, counsel for DoorDash violated ethical rules that prohibit them from communicating with represented parties.  That counsel used their client as a conduit is irrelevant; the ethical rules do not permit violations of professional conduct by proxy.

California Rule of Professional Conduct 4.2(a) unequivocally forbids any attorney to "communicate directly or indirectly about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter."  Moreover, under Rule 8.4, "[i]t is professional misconduct for a lawyer to . . . violate these rules or the State Bar Act, knowingly assist, solicit, or induce another to do so, or do so through the acts of another" (emphasis added).  Because these rules prohibit an attorney from "indirectly" communicating with a represented party—including by using their client as a conduit for improper conduct—an attorney is prohibited from "drafting documents, correspondence, or other written materials" that

1    will be delivered to the opposing party that is represented by counsel. *San Francisco Unified*

2    *Sch. Dist. ex rel. Contreras v. First Student, Inc.*, 213 Cal. App. 4th 1212, 1235 (2013).  A

3    classic example of "overreaching" under this rule is the attorney "assisting the client in securing

4    from the represented person an enforceable obligation . . . without the opportunity to seek the

5    advice of counsel."  ABA Formal Op. 11-461; *see also Contreras*, 213 Cal. App. 4th at 1236

6    ("[A]n attorney crosses the line in advising a client about such communications [with a

7    represented party] when the attorney prepares binding legal documents that the client plans to

8    ask the opposing party to sign."); *In re Marietta*, 223 Kan. 11, 11 (1977) (finding an ethical

9    violation where an attorney prepared a legally binding child-support release and caused his client

10   to share the release with the opposing party, who was represented by counsel).  That is exactly

11   the case here.

12           The material provisions of the arbitration agreement have not changed for many years,

13   including designating AAA as the arbitral forum.  *Compare* Keller Decl., Ex. C § XI (2016

14   agreement), *with id.*, Ex. B § XI (2019 agreement).  After Petitioners and other similarly situated

15   Dashers filed arbitration demands under these provisions, DoorDash's counsel raised an array of

16   objections, including that the filing fees set forth in AAA's rules and fee schedules were

17   unreasonable, that DoorDash wanted most of the arbitrations to be delayed indefinitely while

18   only a few proceeded, and that the arbitration demands were deficient.  *See id.*, Ex. I.  AAA

19   overruled those objections.  *See id.*, Ex. J.  But DoorDash was determined to get what it wanted,

20   notwithstanding its contractual obligation to abide by AAA administrative determinations.  So it

21   wrote its objectives into a new arbitration clause.  While Petitioners' demands were pending,

22   Petitioners' counsel indicated that Petitioners would pursue "judicial remedies" if DoorDash

23   refused to proceed with their arbitrations before AAA.  *See id.*, Ex. F.  The day after AAA

24   administratively closed Petitioners' demands due to DoorDash's failure to pay the fees, *see id.*,

25   Ex. H, DoorDash issued the materially altered arbitration provisions directly to Petitioners, *see*

26   *id.*, Ex. L.

27

28

The new agreement shifts arbitration administration from AAA to the International Institute for Conflict Provision and Resolution ("CPR").  *See* Keller Decl., Ex. M § XI.  The new agreement further incorporates by reference the CPR's "Employment-Related Mass Claims Protocol."  *See id.*, Ex. N.  That protocol, in turn, would require that all but ten Petitioners' arbitrations be stayed indefinitely.  *See id.*  CPR publicly announced the protocol on November 6, 2019, *see* CPR Launches New Mass Claims Protocol and Procedure, available at https://www.cpradr.org/news-publications/press-releases/2019-11-06-cpr-launches-new-mass-claims-protocol-and-procedure. DoorDash began sending its new agreement to Dashers just three days later.  That timing, combined with the protocol's content, suggest that DoorDash's counsel was at least aware of the protocol before it was public, if not an active participant in the protocol's drafting.

Similarly concerning, DoorDash's counsel arranged to roll out the new agreement on a Saturday, the day after AAA administratively closed Petitioners' files.  Even if DoorDash had changed its arbitration agreement in the ordinary course, it would be difficult to believe that those changes would have been conceived and implemented without the involvement of any in-house or outside counsel—counsel who knew that Petitioners and other Dashers had filed individual arbitration demands with AAA and were represented by counsel.  But in this context—when DoorDash changed its arbitral forum for the first time in years, to rules that it prefers given that it faces thousands of demands for individual arbitration, on the day after AAA administratively closed thousands of individual demand files because DoorDash refused to pay the required filing fees—it is implausible in the extreme to suggest that the legal strategy regarding how to alter DoorDash's arbitration process was conceived and executed by a non-lawyer.  Given those facts, at this phase of the proceeding Petitioners easily carry their burden to demonstrate a likely violation of Rule 4.2(a).  Petitioners are confident that discovery will show that the legal strategy behind altering DoorDash's arbitration agreement—including sending the new agreement directly to represented parties—originated with, and was masterminded by, DoorDash's in-house and outside lawyers.

Indeed, when Petitioners' counsel learned of the effort to impose new arbitration agreements and reminded DoorDash's counsel of their ethical duties under Rule 4.2(a), *see id.*, Ex. K, DoorDash's outside counsel did not deny that he or his colleagues orchestrated the legal strategy embodied in the new agreements.  Rather, he claimed that such involvement was permitted because it was "in the ordinary course" and supposedly did not relate to a matter in which Petitioners were represented by counsel.  *Id.*, Ex. L.  That argument blinks reality and has been rejected before, in a case where the very same outside counsel represented a defendant who was sanctioned for the very same misconduct.  In *O'Connor v. Uber Technologies, Inc.*, Uber initiated a similar rollout to all its drivers of an updated contractor agreement that purported to change the arbitration forum and impose an onerous opt-out provision.  2013 WL 6407583, at *4 (N.D. Cal. Dec. 6, 2013).  The court denied Uber's "business communication" argument, noting that "[n]o court has held that the characterization of the communication as official business in and of itself immunizes such a communication from [] scrutiny."  *Id.*  The court noted that there was "a distinct possibility that the arbitration provision and class waiver imposed by Uber was motivated at least in part by the pendency of class action lawsuits which preceded the new Licensing Agreement."  *Id.*[5]  Such cause for suspicion is self-evident here as well given the timing and content of the new arbitration agreement.

*O'Connor* fits in a long line of cases chastising, enjoining, and even sanctioning defendants for doing precisely what DoorDash has done here: Directly communicating with individuals it knows are participating in an ongoing action against it, to impair their ability to pursue that action.  That line is exemplified by *Cobell v. Norton*, in the U.S. District Court for the District of Columbia.  In *Cobell*, class plaintiffs moved for a preliminary injunction barring

---

[5] One of DoorDash's outside counsel, Joshua S. Lipshutz of Gibson, Dunn & Crutcher LLP, also represented Uber in *O'Connor*.  Although Mr. Lipshutz appears to have joined the matter after Uber was sanctioned for its improper communications, he signed multiple briefs that litigated the sanctions issue on appeal.  *O'Connor*, N.D. Cal., Case No. 14-16078, Reply, pp. 12-15, ECF No. 38; *id.*, Supplemental Brief, pp. 33-34, ECF No. 96; *Mohamed v. Uber Technologies, Inc., et al.*, 9th Cir., Case No. 15-16178, Mot. Stay, p. 5, n.6, ECF No. 14.  Counsel therefore is well aware that no "court has held that the characterization of the communication as official business in and of itself immunizes such a communication from [] scrutiny."  *O'Conner*, 2013 WL 6407583, at *4.

the defendant from sending "statements of account" to class members that would effectively

extinguish those class members' right to relief if they did not object to the statement within sixty

days.  212 F.R.D. 14, 17 (D.D.C. 2002).  Given the statement's effect on the class members'

right to relief, the court noted that it was "difficult . . . to imagine a form of communication that

would relate more directly to the claims involved in this litigation."  *Id.*  The court thus granted

the preliminary injunction, holding that it was "improper" to "send[] notices to individual class

members that have the effect of extinguishing the rights of those class members without first

seeking the approval of this Court."  *Id.* at 19.  An injunction barring the communications was

necessary to mitigate a "significant risk of serious interference with the rights of class members."

*Id.*

The *Cobell* court further referred the defendant's counsel to the district court's

disciplinary panel to determine whether counsel had violated that court's version of Rule 4.2.  *Id.*

at 20.  The defendant argued, in part, that counsel did not violate the rule because the

communications were made "in the ordinary course of business."  *Id.* at 22.  The court agreed

that "communications occurring in the ordinary course of business between litigants would not

constitute communications 'about the subject matter of the representation.'"  *Id.*  "Thus, for

example, the quarterly statements of account distributed by defendants to account holders who

are also class members would not implicate Rule 4.2 because defendants possess an independent

reason to send out such statements."  *Id.*  The communications at issue, however, "fundamentally

alter[ed] the class members' ability to enjoy the benefits of any relief that the Court might

order . . . . It [could not], therefore, be seriously disputed that the improper notices sent to

individual class members constitute[d] communications 'about the subject matter of the

representation.'"  *Id.*  The court held that this "troubling" behavior warranted further

investigation, and it barred the defendant from further contacting class members about the

litigation without the court's approval.  *Id.* at 24.

Numerous cases are in accord.  *See, e.g.*, *Camp v. Alexander*, 300 F.R.D. 617, 625–27

(N.D. Cal. 2014) (invalidating declarations obtained by the defendant from putative class

1  members via a "one-sided[]" letter "discourag[ing] participation in the collective action," and

2  requiring that a corrective notice be sent to those class members); *Wright v. Adventures Rolling*

3  *Cross Country, Inc.*, No. 12-0982-EMC, 2012 WL 2239797, at *5 (N.D. Cal. June 15, 2012)

4  (enjoining defendants from communicating with potential class members after the defendants

5  emailed members threatening consequences if they participated in the suit); *Civil v. Spirit*

6  *Delivery & Distrib. Servs.*, No. 13-12635-TSH, 2017 WL 1115162, at *1–2 (D. Mass. Mar. 24,

7  2017) (enforcing an order enjoining the defendant from communicating with prospective class

8  members after the defendant contacted "proposed class members to obtain releases which would

9  exclude them from the case"); *see also Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1227–

10 31 (S.D. Ala. 2008) (entering a protective order after learning that the defendant "engaged in

11 communications with prospective class members that were abusive and that threatened the

12 proper functioning of this litigation"); *Recinos-Recinos v. Express Forestry, Inc.*, No. Civ. A. 05-

13 1355, 2006 WL 197030, at *8–12 (E.D. La. Jan. 24, 2006) (entering a protective order

14 prohibiting defendants from contacting potential opt-in plaintiffs in an FLSA collective action

15 after the defendants' agents engaged in a campaign designed to threaten, intimidate, and coerce

16 plaintiffs to withdraw their claims); *Nguyen v. Inter-Coast Int'l Training, Inc.*, No. B270305,

17 2018 WL 1887347, at *8 (Cal. Ct. App. Apr. 20, 2018) (holding an arbitration agreement

18 unconscionable when the company issued the agreement to putative class members and "did not

19 apprise the employees at the time of signing these agreements that their rights in the class action

20 could be affected thereby").

21     The cases above reflect the premise that Rule 23(e) of the Federal Rules of Civil

22 Procedure gives courts the authority to treat absent class members as represented parties who are

23 participating, at least in some sense, in the ongoing action.  That in turn renders communication

24 with absent class members subject to the ethical requirements of Rule 4.2 and its equivalents.

25 Here, each Petitioner is not merely "deemed" to be represented by operation of Rule 23; rather,

26 each Petitioner has signed an individual engagement agreement directly retaining counsel.  It

27

28

1  follows *a fortiori* that this Court has inherent authority to prohibit counsel and DoorDash's

2  improper communications to Petitioners.

3          2.          Petitioners Are Likely to Demonstrate in Arbitration That DoorDash's Attempt to

4                       Change the Arbitration Agreement is Unlawful.

5          DoorDash's conduct in frustrating and delaying arbitration under the AAA agreement

6  and then forcing Petitioners to agree to eliminate their right to arbitrate before AAA violates the

7  implied covenant of good faith and fair dealing.  It also constitutes unlawful retaliation against

8  Petitioners for filing claims under the California Labor Code.  Each of those issues presents a

9  dispute between the parties that is committed to an arbitrator under the AAA arbitration

10 agreement.  *See* Keller Decl., Ex. B § XI.3.  Accordingly, this Court cannot resolve these issues

11 through a permanent injunction.  But the parties' arbitration agreement and Federal Rule of Civil

12 Procedure 65 empower this Court to grant injunctive relief to preserve the status quo pending a

13 resolution of these disputes by an arbitrator.  *See* id. § XI.5.i (Stating that when, absent judicial

14 relief, a party's unlawful conduct would result in "the arbitration provided in [the Mutual

15 Arbitration Provision] [being] rendered ineffectual," a Dasher may "apply to a court of

16 competent jurisdiction for temporary or preliminary injunctive relief.").  When these legal issues

17 ultimately are decided, Petitioners are likely to prevail.

18          a)          *DoorDash's Attempt to Force Petitioners to Give Up Their Dispute-*

19                       *Resolution Rights After They Invoked Them Violates the Covenant of Good*

20                       *Faith and Fair Dealing.*

21         The implied covenant of good faith and fair dealing underlies agreements to arbitrate just

22 as it is part of all other contracts.  *Serpa v. California Sur. Investigations, Inc.*, 215 Cal. App. 4th

23 695, 706 (2013)*, as modified* (Apr. 19, 2013)*, as modified* (Apr. 26, 2013) ("Application of the

24 implied covenant of good faith and fair dealing is no different in the arbitration context.").  "The

25 scope of the duty of good faith and fair dealing depends upon the purposes of the particular

26 contract because the covenant 'is aimed at making effective the agreement's promises.'"

27 *Kransco v. American Empire Surplus Lines Ins. Co.*, 2 P.3d 1, 8 (Cal. 2000).  "In order to

28

16
MOTION FOR A TEMPORARY RESTRAINING ORDER
CASE NO. 3:19-cv-07545

1  establish a breach of the covenant of good faith and fair dealing, a plaintiff must show: '(1) the

2  parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any

3  conditions precedent to the defendant's performance occurred; (4) the defendant unfairly

4  interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff

5  was harmed by the defendant's conduct.'"  *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,

6  No. 16-MD-02752-LHK, 2017 WL 3727318, at *48 (N.D. Cal. 2017).  Each of those elements is

7  satisfied here.

8       DoorDash and each Petitioner each entered into a contract that mutually obligated each

9  party to resolve any disputes through arbitration at AAA.  *See* Keller Decl., Ex. B § XI ("Mutual

10  Arbitration Provision").  Like all arbitration agreements, the Mutual Arbitration Provision laid

11  out the procedures and process by which the parties would resolve any disputes—and it did so

12  <u>before</u> those disputes arose.  Specifically, the contract required that the parties submit any

13  dispute for administration by AAA, which would collect fees and appoint an arbitrator to provide

14  "a speedy and efficient method for resolving disputes."  *Id.* § XI.5.d.

15       Petitioners fulfilled their obligations under the contract, and any conditions precedent to

16  DoorDash's performance occurred.  As AAA determined in an administrative ruling that must be

17  accepted as controlling here, Petitioners complied with their obligations under the agreement by

18  filing individual arbitration demands with the AAA and satisfying their filing-fee obligations.

19  *See id.* ¶ 6.

20       DoorDash unfairly interfered with Petitioners' rights to receive the benefits of the

21  contract.  After Petitioners invoked their rights under the Mutual Arbitration Provision to

22  arbitrate at AAA, DoorDash refused to comply with its own agreement.  *See id.*, Ex. I.  At the

23  same time, it and its lawyers were hatching a plan to develop different procedures and coerce

24  Petitioners—after they had already invoked AAA procedures and satisfied all conditions

25  precedent—into releasing their right to arbitrate before AAA on pain of being unable to work for

26  DoorDash.

27

28

1    It has now become clear that while DoorDash was negotiating an extension of its filing-

2   fee deadline at AAA, feigning that it might comply with its agreement, *id.*, Ex. E, it was working

3   in the background to undermine Petitioners' right to have their claims heard before AAA.

4   DoorDash's request for an extension "to provide DoorDash sufficient time to identify any

5   claimants and obtain the necessary approvals for large payments," *id.*, was nothing more than a

6   stall tactic while it worked with another arbitration company—CPR—to implement rules that

7   DoorDash liked more.  That became clear when, on a Saturday, one day after AAA

8   "administratively closed" Petitioners' files due to DoorDash's failure to pay the filing fees

9   necessary to commence their arbitrations, Keller Decl., Ex. H, DoorDash released a new

10   arbitration agreement to Petitioners and thousands of other drivers it knows are represented by

11   Petitioners' counsel that swapped out the AAA for CPR, Keller Decl., Ex. L.

12    If DoorDash's scheme is not enjoined, Petitioners will be harmed by DoorDash's

13   conduct.  In order to keep working, Petitioners will be forced to sign an agreement that purports

14   to release the contractual rights they already invoked.  And they will be forced to do so without

15   the advice of the counsel they specifically retained to vindicate those rights.

16    This attempted bait-and-switch is contrary to the very premise of the Mutual Arbitration

17   Provision, which binds DoorDash to comply with its procedures once they are invoked just as it

18   binds Petitioners.  Indeed, a California court has specifically held that, under California law, the

19   covenant of good faith and fair dealing prohibits a defendant from unilaterally modifying an

20   arbitration agreement after a party brings claims under that agreement.  *See Peleg v. Neiman*

21   *Marcus Group, Inc.*, 140 Cal. Rptr. 3d 38 (Cal. App. 2012).  In *Peleg*, plaintiffs challenged the

22   enforceability of an arbitration agreement on the ground that it allowed an employer to make

23   unilateral modifications to an arbitration agreement that would apply retroactively to claims that

24   had already accrued.  *Id.* at 43–44.  In analyzing whether the arbitration agreement could be

25   unilaterally modified, the court held that, "under California contract law, the covenant of good

26   faith and fair dealing may save an arbitration agreement from being illusory notwithstanding the

27   absence of an express savings clause."  *Id.* at 67.  That was because a defendants' ability to

28

unilaterally modify an arbitration agreement is "impliedly restricted by the covenant so that changes do not apply" to "claims, [already] accrued or known."  Emphasizing why the implied covenant of good faith and fair dealing must be read to ensure employers are unable to change the mutual arbitration process ex post, the *Peleg* court identified the exact issue that DoorDash's conduct presents here: Were employers able to manipulate their arbitration agreements at will, "the employer could amend the contract in anticipation of a specific claim, altering the arbitration process to the employee's detriment and making it more likely the employer would prevail.  The employer could also terminate the arbitration contract altogether, opting for a judicial forum if that seemed beneficial to the company."[6] *Id*. at 42; *see also Salgado v. Carrows Restaurants, Inc.*, 33 Cal. App. 5th 356, 362–63 (2019) (Suggesting that an arbitration agreement sent to a represented party could be void and remanding to trial court for fact finding); *Nguyen*, 2018 WL 1887347, at *8 (holding arbitration agreement unconscionable when the company issued the agreement to putative class members and "did not apprise the employees at the time of signing these agreements that their rights in the class action could be affected thereby.").

Nor can DoorDash argue that, because it requires each driver to hit "I Accept" on the dasher app before the driver can begin making deliveries, its revised agreement is not the type of unilateral modification at issue in *Peleg*.  As it relates to a Dasher's right to arbitrate before AAA, the revised agreement is an obvious contract of adhesion.  DoorDash drafts it without any input from drivers, and DoorDash makes signing the agreement a condition of their continued employment.  The agreement is presented in a take-it-or-leave-it fashion, and drivers do not have the ability to continue working while they consult an attorney.  Given that drivers need to work and make a living, many accept the terms out of necessity, not informed consent.  Further, on DoorDash's theory, DoorDash could repeat this same cycle the minute CPR makes a ruling

---

[6] Although the *Peleg* court's holding ultimately was based on Texas law, many other courts have relied on *Peleg* to reach the same conclusion under California law.  *See Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1473–74 (Cal. App. 2013)*, as modified* (Oct. 2, 2013); *Serpa*, 215 Cal. App. 4th at 706; *Moua v. Optum Servs., Inc.*, 320 F. Supp. 3d 1109, 1114 (C.D. Cal. 2018); *Totten v. Kellogg Brown & Root, LLC*, 152 F. Supp. 3d 1243, 1253 (C.D. Cal. 2016); *Rowsell v. American Express Bank, FSB*, 2018 WL 4710092, at *9 (Cal. App. 2018).

1   DoorDash dislikes—halting all proceedings and rolling out a new arbitration agreement with a

2   new arbitration forum.  That is the opposite of good faith, as the *Peleg* court recognized.

3       In sum, the implied covenant of fair dealing prevents a party for unilaterally modifying

4   an arbitration agreement after a claim has already accrued.  Because DoorDash breached that

5   covenant by unilaterally modifying its arbitration agreement after Petitioners filed their demands

6   with the AAA, DoorDash breached the covenant.  While, any dispute between Petitioners and

7   DoorDash in this regard must be resolved in individual arbitration administered by AAA, the

8   parties' arbitration agreement expressly authorizes Petitioners to obtain temporary injunctive

9   relief from this Court to ensure their right to arbitration will not be "rendered ineffectual." Keller

10  Decl., Ex. B § XI.5.i.

11          b)      *DoorDash's Attempt to Deprive Petitioners of Their Right to AAA*

12                  *Arbitration Because They Filed Claims Under the Labor Code Constitutes*

13                  *Unlawful Retaliation.*

14      DoorDash's conduct also constitutes unlawful retaliation under the California Labor

15  Code.  Labor Code § 98.6(a) provides that "[a] person shall not discharge an employee or in any

16  manner discriminate, retaliate, or take any adverse action against any employee or applicant for

17  employment because the employee or applicant engaged in any conduct delineated in this

18  chapter."  Labor Code § 98.6(b)(1) further provides that "[a]ny employee who is . . . subjected to

19  an adverse action, or in any other manner discriminated against in the terms and conditions of his

20  or her employment because the employee" filed claims under the Labor Code "shall be entitled

21  to reinstatement and reimbursement for lost wages and work benefits caused by those acts of the

22  employer."

23      Counsel is not aware of another defendant that has been so audacious as to strip an

24  employee's right to arbitrate in response to the employee's having filed an arbitration.  As a

25  result, there is no precedent that addresses the implications of such conduct under Labor Code §

26  98.6.  Nevertheless, DoorDash's actions were "self-evidently" "adverse action[s]," and a change

27  to the "terms and conditions" of employment that was taken as a direct result of Petitioners'

28

1    filing claims under the Labor Code.  The right to proceed with arbitration promptly before AAA

2    rather than being required to wait years to proceed with arbitration before CPR clearly is one of

3    the important "terms and conditions" of Petitioners' employment with DoorDash.  By purporting

4    to strip Petitioners of that right because Petitioners filed claims against DoorDash, DoorDash

5    engaged in precisely the sort of conduct that is regulated by the anti-retaliation provision.

6          Moreover, DoorDash specifically intended its unlawful retaliation to ensure that "the

7    arbitration provided in [the Mutual Arbitration Provision will] be rendered ineffectual."  Keller

8    Decl. Ex. B, § XI.5.i.  Accordingly, under the plain terms of Labor Code § 98.6 and the Mutual

9    Arbitration Provision, Petitioners are entitled to a preliminary injunction to preserve their rights

10   to AAA arbitration while they pursue a permanent injunction and other remedies, *see* §

11   98.6(b)(3), in arbitration.

12   **B.    Petitioners Will Be Irreparably Injured Absent a Temporary Restraining Order.**

13         With each passing day, DoorDash presents its unlawfully revised agreement to more

14   Petitioners without the involvement of their counsel, and it requires them to sign the agreement if

15   they want to keep working for DoorDash.  Petitioners' counsel has reminded DoorDash's

16   counsel that "Doordash attorneys may propose material changes to DoorDash's agreement to our

17   clients only through us."  Keller Decl., Ex. K.  But DoorDash's counsel has insisted that

18   Petitioners "will receive the same communications from DoorDash as all other Dashers," despite

19   the fact that they are represented by counsel.  *Id.*  Petitioners therefore have no other recourse but

20   court intervention.  Without it, DoorDash will continue to communicate directly with parties the

21   company's counsel knows are represented.

22         Circumvention of the right to counsel is an irreparable injury *per se*—as illustrated by the

23   decisions described above, courts that identify improper communications sent to represented

24   parties enjoin the improper communications without further analysis.  *See supra* at 13–15.  It is

25   no answer for DoorDash to argue that its and its counsel's unethical and unlawful conduct may

26   continue until Petitioners explain how their counsel would advise them and how that advice

27   would affect their conduct.  Requiring that showing would violate the right to attorney-client

28

1   communication that Rule 4.2 is meant to protect, by forcing Petitioners' counsel to disclose how

2   they would advise their clients.  Petitioners have a right to receive the advice of their counsel at

3   the same time they receive a legal document drafted by DoorDash's attorneys that purports to

4   prejudice their claims in this action.

5   **C.    The Balance of Equities Favors Petitioners, as DoorDash Will Suffer No Injury**

6   **from a Short Delay.**

7         Although DoorDash forces more Petitioners each day to choose between preserving their

8   arbitration rights or earning a living, DoorDash will not suffer any legitimate injury if this Court

9   grants injunctive relief.  DoorDash claims it updated its arbitration agreement in the ordinary

10  course of business.  Keller Decl., Ex. L.  If that is true, and if the agreement is not meant to

11  undermine Petitioners' claims or this pending motion to compel, then DoorDash will face no real

12  harm in waiting to present revised arbitration terms to Petitioners and other drivers represented

13  by counsel for the short period of time needed for arbitrators to resolve on a permanent basis

14  whether they are in fact permitted to do so—or, at a minimum, the period of time needed for this

15  Court to decide Petitioners' motion to compel.

16        Any suggestion by DoorDash that it will suffer harm in the event of temporary injunctive

17  relief would show only that DoorDash believes its new arbitration agreement puts DoorDash in a

18  materially better position vis-à-vis Petitioners' claims.  Although DoorDash of course has a

19  pecuniary interest in circumventing Petitioners' counsel in order to undermine Petitioners' ability

20  to vindicate their rights, that interest is not a legitimate one.  To the contrary, DoorDash's apparent

21  urgency in sending a revised arbitration agreement to Petitioners—and forcing them to accept it as

22  a condition of continuing to work—only underscores DoorDash's true motivations and the

23  impropriety of its and its counsel's actions.

24                          **V.    CONCLUSION**

25        For the foregoing reasons, this Court should issue a temporary injunction ordering

26  DoorDash and its counsel to stop forcing Petitioners to sign new arbitration agreements pending

27  a decision on the permissibility of that conduct by an arbitrator.  At a bare minimum, the Court

28

1  should issue a temporary injunction prohibiting DoorDash and its counsel from forcing

2  Petitioners to sign new agreements until this Court decides Petitioners' pending Motion to

3  Compel Arbitration.

4

5  Dated: November 17, 2019                 Respectfully submitted,

6

7                                          /s/ Keith A. Custis
                                           Keith A. Custis (#218818)
8                                            kcustis@custislawpc.com
                                           CUSTIS LAW, P.C.
9                                          1875 Century Park East, Suite 700
                                           Los Angeles, California 90067
10                                         (213) 863-4276

11                                         Ashley Keller (*pro hac vice forthcoming*)
12                                           ack@kellerlenkner.com
                                           Travis Lenkner (*pro hac vice forthcoming*)
13                                           tdl@kellerlenkner.com
                                           Marquel Reddish (*pro hac vice forthcoming*)
14                                           mpr@kellerlenkner.com
                                           KELLER LENKNER LLC
15                                         150 N. Riverside Plaza, Suite 4270
                                           Chicago, Illinois 60606
16                                         (312) 741-5220

17
                                           Warren Postman (*pro hac vice forthcoming*)
18                                           wdp@kellerlenkner.com
                                           KELLER LENKNER LLC
19                                         1300 I Street, N.W., Suite 400E
                                           Washington, D.C. 20005
20                                         (202) 749-8334

21
                                           *Attorneys for Petitioners*
22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2          I certify that I shall cause the foregoing document to be served on DoorDash Inc. at its

3   registered agent for service of process, Registered Agent Solutions, Inc. 1220 S. Street, Suite 150,

4   Sacramento, CA 95811, on or around November 18, 2019.

5          I further certify that I will provide an electronic copy of the foregoing document to

6   DoorDash's outside counsel (Joshua S. Lipshutz and Michael Holecek of Gibson, Dunn &

7   Crutcher LLP) immediately upon filing the document with the Court via CM/ECF.

8

9          Dated: November 17, 2019                    /s/ Keith A. Custis

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28