# Morgan Lewis

**Kimberley E. Lunetta**
Of Counsel
(212) 309-6656
Kimberley.Lunetta@morganlewis.com

**Andrew P. Frederick**
Associate
(650) 843-7565
Andrew.Frederick@morganlewis.com

December 12, 2019

**VIA E-FILE AND HAND DELIVERY**

Honorable William Alsup
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom 12 – 19th Floor
450 Golden Gate Ave., San Francisco, CA  94102

    Re:    *Terrell Abernathy, et al. v. DoorDash, Inc.,* Case No. 3:19-cv-07545-WHA

Dear Judge Alsup:

    We represent nonparty the International Institute for Conflict Prevention and Resolution, Inc., formerly known as the Center for Public Resources, Inc., ("CPR") in responding to two third-party subpoenas served on December 2, 2019 by Plaintiffs Terrell Abernathy, et al. ("Plaintiffs") in the above-referenced action.  We submit this letter pursuant to Paragraph 34 of the Court's Supplemental Order Setting Initial Case Management Conference in Civil Cases ("Supplemental Order") to ask for the Court's assistance with respect to the broad requests contained in these subpoenas.  One subpoena calls for the deposition of CPR's corporate designee on 37 separate examination topics, to be taken in New York, NY.  (Ex. A).  The second subpoena includes 16 separate requests for the production of documents.  (Ex. B).  Both subpoenas were served on December 2, returnable on December 11, 2019.

    We understand that the subpoenas arose out of the hearing before Your Honor on November 25, 2019, concerning Plaintiffs' application for a Temporary Restraining Order, which Plaintiffs subsequently withdrew.  It appears that the sole issue remaining before the Court is Defendant DoorDash's Motion to Compel Arbitration.  The only connection between this action and CPR is that DoorDash's current arbitration agreement with its delivery drivers includes a Mutual Arbitration Provision that designates the CPR Administered Arbitration Rules and, when applicable, the CPR Employment-Related Mass Claims Protocol (the "Protocol") as governing any arbitration.  During the November 25 hearing, the Court permitted Plaintiffs the following limited discovery from CPR – "one deposition. Go to CPR, do a 30(b)(6). And then all the communications with Gibson Dunn, with DoorDash, to show how the rule got written." *See* transcript at 66:17-19.

    CPR takes seriously its obligation to respond to discovery and wishes to cooperate.  However, Plaintiffs' subpoenas appear to go far beyond the contours set forth by Your Honor – communications with Gibson Dunn and Door Dash regarding the development of the Protocol.  Further, in contravention of the Court's Supplemental Order No. 32(a), limiting 30(b)(6) depositions to a maximum of 10 topics, Plaintiffs seek deposition testimony on **37** separate

Honorable William Alsup
December 12, 2019
Page 2

topics – none of which is expressly limited to the Court's tailored instruction. (Ex. A). Instead, 12 Examination Topics seek testimony on *all* discussions CPR had with *anyone*, whether internally or externally, concerning the idea or the terms of the Protocol, as well as the identities of each individual involved in any way in those discussions. *See* Ex. B, Examination Topics 6, 8 through 14, 17 through 25. 11 more Examination Topics seek information on CPR unrelated to the Protocol, Gibson Dunn, or DoorDash, including:

- The number of arbitrations administered by CPR each year, without limitation as to time (Ex. A, Topic 7);

- The existence of any plans to develop new rules or protocols related to mass claims without limitation to the Protocol at issue, the identities of those involved, and related documents (Topics 28-30);

- Financial transactions between CPR and *any individual or entity* that played *any* role whatsoever in the development of the Protocol at issue, and related documents (Topics 32-33); and

- The existence and terms of any agreements with any individual or entity that played a role whatsoever in the development of the Protocol at issue, and related documents (Topics 34-35).

Plaintiffs' subpoena for production of documents (Ex. B) includes **16** separate requests, only **2** of which are limited to documents related to the parties in this action, their counsel, and their role in development of the Protocol at issue. (Ex. B, Requests 13 and 14). Like the majority of the Examination Topics, the remaining document requests seek documents unrelated to, or far broader than the discovery contemplated by the Court. Most include documents related to the broad and overly burdensome Examination Topics discussed above. Others include requests for CPR's employee directory, CPR's processes, policies, procedures, and guidelines, and sweeping categories of communications not related to the parties to this action or the Protocol (Requests 2, 3, 5, 6, and 7).

The undersigned counsel has met and conferred by phone with Plaintiffs' counsel over all issues in this letter, including CPR's objections to the breadth of the subpoenas, and offered to produce documents within the scope of discovery contemplated by the Court on the record – communications between CPR and DoorDash or Gibson Dunn regarding the development of the Protocol. CPR further offered to make its President and CEO, Allen Waxman, available for examination on these topics. Despite numerous discussions, Plaintiffs' counsel has remained unwilling to narrow the scope of the subpoenas to conform to the scope suggested by Your Honor.

CPR has already explained to Plaintiffs' counsel how the Protocol was developed. Earlier this year, the law firm of Gibson Dunn reached out to CPR to request assistance in administering – on a prospective basis – additional arbitrations expected to be brought against one of its clients, DoorDash. Gibson Dunn expressed concern over the current options for administration of a mass of claims and the fee structures being imposed and asked whether CPR could offer alternative fee solutions. CPR was eager to innovate in the area of mass claims and, rather than just focusing on alternative fees, took the opportunity presented to lend its expertise

Honorable William Alsup
December 12, 2019
Page 3

and resources to think anew and find an efficient and fair process for resolving these claims for all parties involved.

      As a result, CPR developed the Employment-Related Mass Claims Protocol.  In developing the Protocol, CPR invited and received input from a variety of stakeholders.  These stakeholders included labor and employment counsel with experience representing management and employees on an individual and class basis, and attorneys with mass claims, complex commercial litigation, and arbitration experience, some of whom are also prominent arbitrators and mediators, including one of the foremost experts in facilitating the resolution of mass claims.  CPR also consulted with particular members of its Board of Directors, who have served as advisors to ALI's Restatement of Employment Law and who have chaired the New York Chief Judge's Advisory Committee on Alternative Methods of Dispute Resolution.  While advising from the outset that the Protocol was being developed for the broader marketplace and to balance the interests of all parties, CPR received input from Gibson Dunn and in-house counsel at DoorDash to gain their perspective on the practical application of the Protocol, and whether and how the new approach improved upon the current market options available for resolving mass arbitration claims.  Responding directly to the Court's inquiry, however, Gibson Dunn did not write the terms of the Protocol.  (*See* 11/25/19 hearing tr. at 65:13-19).  Rather, as set forth above, it was CPR that conceived, wrote the terms, and controlled the Protocol's development.

      On November 4, 2019, CPR launched the Protocol on its website.  The Protocol provides a procedurally and substantively fair and neutral process for the adjudication of mass arbitration claims, the terms of which are apparent on the face of the Protocol itself.  For example, the Protocol provides for expedited "test" or bellwether arbitrations to be followed by a mediation process that encourages resolution of all claims.  If that process is unsuccessful, the Protocol allows claimants to ***opt-out*** of the process and proceed with their claims in court.  CPR also provides other features, including that the employee alone nominates the arbitrator for each case from a Master List of arbitrators provided by CPR and that the employer pays all fees – including for the arbitrators, the mediator, and the administrator – other than a filing fee.

      We respectfully request that the Court set a conference to allow CPR to be heard on these issues and to determine the appropriate path forward.  We apologize for burdening the Court with this discovery dispute and appreciate the Court's assistance in resolving this issue.

      Respectfully,

***s/ Andrew P. Frederick***

Andrew P. Frederick
Kimberley E. Lunetta, admitted *pro hac vice*

Counsel for International Institute for
   Conflict Prevention and Resolution, Inc.

cc:     Warren Postman (via e-file), James Fogelman (via e-file)