# EXHIBIT B

Andrew P. Frederick
andrew.frederick@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA 94304
(650) 843-7565

Kimberley E. Lunetta (*pro hac vice* pending)
kimberley.lunetta@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(212) 309-6656

*Attorneys for International Institute
for Conflict Prevention and Resolution, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| TERRELL ABERNATHY, *et al.*,<br><br>                Petitioners,<br><br>vs.<br><br>DOORDASH, INC.,<br><br>                Respondent. | Case No. 3:19-cv-07545-WHA<br><br>**CPR'S OBJECTIONS AND RESPONSES TO SUBPOENA FOR PRODUCTION OF DOCUMENTS** |

    TO:    Warren Postman
             wdp@kellerlenkner.com
         KELLER LENKNER LLC
         1300 I Street, N.W., Suite 40E
         Washington, D.C. 20005
         (202) 749-8334

## **INTRODUCTION**

    The International Institute for Conflict Prevention and Resolution, formerly known as the Center for Public Resources, Inc. ("CPR"), is a 501(c)(3) not-for-profit organization formed in

1977, among other things, to identify alternatives to litigation and resolve legal conflicts more effectively and efficiently. In the 1980s, CPR developed a Policy Statement on Alternatives to Litigation, also known as the "CPR Pledge," to encourage parties to discuss alternate approaches to resolving their disputes, such as mediation, instead of automatically launching into litigation. To date, approximately 4,000 operating entities, including both parents and affiliates, and approximately 1,500 law firms have committed to the CPR Pledge. The mission of CPR remains today to spearhead innovation and promote excellence in dispute prevention and resolution.

CPR operates through two arms: The CPR Institute and CPR Dispute Resolution. The CPR Institute is a think tank, whose members include arbitrators, mediators, companies, law firms, government, and academics. The CPR Institute convenes its members on committees to share best practices and to develop innovative tools and resources for dispute prevention and resolution, such as arbitration rules, mediation procedures, dispute resolution programs, guides, and protocols. Over the years, CPR has developed tools related to the resolution of employment claims and mass claims, such as:

- *The Model Procedures for Mediation and Arbitration of Employment Disputes* developed by a Committee of lawyers representing employees and employers, as well as academics and neutrals;

- *CPR's Master Guide to Mass Claims Facilities* compiled by a Commission co-chaired by Kenneth Feinberg and Deborah Greenspan; and

- *Cutting Edge Advances in Resolving Workplace Disputes*, published together with Cornell's Scheinman Institute.

The CPR Institute also provides dispute resolution training and has conducted that training for courts from time to time. The CPR Institute publishes a monthly international newsletter on related topics. Finally, the CPR Institute is an advocate for expanding the capacity for dispute prevention and resolution through, for example, international initiatives in countries like Brazil, collaborating on protocols for cybersecurity protection in Alternative Dispute Resolution ("ADR"), and advancing the selection of more diverse neutrals in ADR.

CPR Dispute Resolution is a service provider that provides neutrals for and administers ADR proceedings, such as mediation, arbitration, early neutral evaluation, dispute resolution boards and mini-trials. CPR's arbitrators and mediators, where applicable, will conduct arbitrations and mediations pursuant to the rules and procedures generated by the CPR Institute.

CPR has been aware of the need for innovation in the employment-related mass claims space in the wake of thousands of individual claims being brought to arbitration at the same time with almost identical issues. Earlier this year, the law firm of Gibson Dunn reached out to CPR to request assistance in administering – on a prospective basis – additional arbitrations expected to be brought against one of its clients, DoorDash. Gibson Dunn expressed concern over the current options for administration of a mass of claims and the fee structures being imposed and asked whether CPR could offer alternative fee solutions. For the reasons noted above, CPR was eager to innovate in the area of mass claims and, rather than just focusing on alternative fees, took the opportunity presented to lend its expertise and resources to think anew and find an efficient and fair process for resolving these claims for all parties involved.

As a result, CPR developed the Employment-Related Mass Claims Protocol (the "Protocol"). In developing the Protocol, CPR invited and received input from a variety of stakeholders. These stakeholders included labor and employment counsel with experience representing management and employees on an individual and class basis, and attorneys with mass claims, complex commercial litigation, and arbitration experience, some of whom are also prominent arbitrators and mediators, including one of the foremost experts in facilitating the resolution of mass claims. CPR also consulted with particular members of its Board of Directors, who have served as an advisor to ALI's Restatement of Employment Law and who have chaired the New York Chief Judge's Advisory Committee on Alternative Methods of Dispute Resolution. While advising from the outset that the Protocol was being developed for the broader marketplace and to balance the interest of all parties, CPR received input from Gibson Dunn and in-house counsel at DoorDash to gain their perspective on the practical application of the Protocol, and whether and how the new approach improved upon the current market options available for resolving mass arbitration claims.

Responding directly to the Court's inquiry, Gibson Dunn did not write the terms of the Protocol. (*See* transcript of 11/25/19 hearing at 65:13-19). Rather, as set forth above, it was CPR that conceived of, wrote the terms of, and controlled the development of the Protocol.

On November 4, 2019, CPR launched the Protocol on its website. The Protocol provides for "test" arbitrations followed by a mediation process that encourages resolution of all claims. If that process is unsuccessful, the Protocol allows claimants to opt-out of the process and proceed with their claims in court. The Protocol provides a procedurally and substantively fair and neutral process, including the following features:

- The employer pays all fees – including for the arbitrators, the mediator, and the administrator. The employee will only be responsible for whatever filing fee the employee would have to pay if he or she first went to court;

- The employee – and the employee alone – nominates the arbitrator for each case from a Master List of arbitrators provided by CPR. The employer is bound to arbitrate with one of the neutrals nominated by the employee;

- The arbitrator will be free to award any remedy available under applicable law;

- Both sides will need to have adequate access to relevant information;

- Both sides will have the right to be represented by counsel;

- Arbitrations are to be convened close to the employee's home; and

- The final decision of the arbitrator must be a written, reasoned award.

## **GENERAL OBJECTIONS**

With this context in mind, and although CPR is unclear on how the development of the Protocol (as opposed to the terms of the Protocol itself) is relevant to the instant case, CPR takes seriously its obligation to facilitate the court's and the parties' resolution of this matter and wants to cooperate. Accordingly, CPR will respond to the Subpoenas. However, CPR should not be required to respond beyond the contours set forth by the judge relating to communications with Gibson Dunn and Door Dash. (*See* transcript of 11/25/19 hearing at 66:17-19 ("all the communications with Gibson Dunn, with DoorDash, to show how the rule got written.")). As a

result, we object generally to the requests that seek information beyond communications with Gibson Dunn and DoorDash regarding the development of the Protocol.

More specifically, CPR offers the following general objections, without waiving any specific objections to the requests as set forth below:

**1. General Objection No. 1.** It is our understanding that no issue of unconscionability relating to the CPR Protocol is presently before the Court. If it were, however, it would turn on the *terms* of the Protocol, not on the *methods for developing* the Protocol. *Serpa v. California Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 703 (2013) ("Substantive unconscionability focuses on the actual terms of the agreement and evaluates whether they create an 'overly harsh' or 'one-sided' result . . . ."). Accordingly, CPR objects to the Subpoenas on the grounds of relevance and proportionality. Subject to and without waiving these general objections, CPR is confident that should the substantive fairness of the Protocol be challenged in the future, the Court will find that it does not contain the one-sided provisions that courts have previously rejected. "Substantive unconscionability 'may take various forms,' but typically is found in the employment context when the arbitration agreement is 'one-sided' in favor of the employer without sufficient justification. . . ." *Serpa*, 215 Cal. App. 4th at 703 (internal citations omitted). Here, the Protocol does not contain any provisions that alter the statute of limitations for employees' claims, limit the types of remedies employees can recover, or unreasonably limit the types of discovery employees may conduct. *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal. App. 4th 1199, 1212-13 (1998); *Fittante v. Palm Springs Motors, Inc.*, 105 Cal. App. 4th 711, 722-725 (2003); *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519 (1997); *Kinney v. United Healthcare Services, Inc.*, 70 Cal. App. 4th 1322 (1999). Rather, the Protocol allows the employees to *opt out* of arbitration if the mediation process has been unsuccessful, allows the employees – and them alone – to choose the arbitrator for each arbitration, and allows the employees to have the fees for arbitration almost exclusively covered by the employer. In short, the Protocol allows for the same rights and remedies in a private, neutral forum that would be afforded to Petitioners in court, and then some.

**2.   General Objection No. 2.**  CPR further objects to the Subpoenas on the grounds that they impose an undue and unnecessary burden on CPR, as the discovery permitted by the Court can be obtained in its entirety from Respondent DoorDash and its counsel.  It is unnecessary to require CPR to devote precious resources to gathering, reviewing, and producing documents that a party has in its possession.

**3.   General Objection No. 3.**  CPR further objects to the Subpoenas to the extent they are overbroad and call for the production of confidential, proprietary, and sensitive information belonging to CPR or third parties.  As described above, CPR consulted numerous stakeholders, including labor and employment counsel with experience representing management and employees on an individual and class basis, attorneys with mass claims and complex commercial litigation and arbitration experience, some of whom are also prominent arbitrators and mediators.  Candid feedback and collaboration with third parties is critical to CPR's mission to develop innovative alternatives to litigation and resolve legal conflicts more effectively and efficiently; yet, those third parties who consulted with CPR on the Protocol had no reason to expect that their candid input would potentially embroil them in future litigation.

## SPECIFIC OBJECTIONS AND RESPONSES

**DOCUMENT REQUEST NO. 1.:**

**Please produce an organizational chart for the International Institute for Conflict Prevention and Resolution, Inc. ("CPR"), including paid staff and contractors as well as all paid or unpaid Directors, committees, advisory committees, working groups, and councils, and members of those groups.**

**OBJECTIONS AND RESPONSE:**

CPR objects to this request on the grounds that it is overly broad, unduly burdensome, and harassing.  CPR further objects to this request on the grounds that it seeks information not relevant to the issue articulated by the Court during the November 25, 2019 hearing in the above-captioned action – namely communications between CPR and Door Dash and/or its counsel

Gibson Dunn regarding the development of CPR's Employment-Related Mass Claims Protocol dated November 4, 2019 (Exhibit 1 to Subpoena to CPR to Produce Documents).

**DOCUMENT REQUEST NO. 2.:**

**Please produce a directory or other document sufficient to identify by name, position, email address, and phone, all of CPR's current employees.**

**OBJECTIONS AND RESPONSE:**

*See* objections to Request No. 1.

**DOCUMENT REQUEST NO. 3.:**

**Please produce any policies, procedures, guidelines, or other documents reflecting or commenting on how CPR prepares, revises, drafts, and announces new rules or protocols, such as the Employment-Related Mass Claims Protocol announced by press release dated November 6, 2019.**

**OBJECTIONS AND RESPONSE:**

*See* objections to Request No. 1.

**DOCUMENT REQUEST NO. 4.:**

**Please produce any documents, including memoranda and emails, that summarize the total number of arbitrations and/or employment-related arbitrations administered by CPR each year.**

**OBJECTIONS AND RESPONSE:**

*See* objections to Request No. 1.

**DOCUMENT REQUEST NO. 5**

**Please produce all internal CPR documents, including memoranda, guidelines, protocols, emails, and other documents that refer to mass claims or mass arbitrations. The time period for this request is from November 1, 2018 to the present.**

**OBJECTIONS AND RESPONSE:**

CPR objects to this request on the grounds that it is overly broad, unduly burdensome, and harassing. CPR further objects to this request on the grounds that it seeks information not relevant to the issue articulated by the Court during the November 25, 2019 hearing in the above-

1  captioned action – namely Door Dash and/or its counsel Gibson Dunn's communications with
2  CPR regarding the development of CPR's Employment-Related Mass Claims Protocol (Exhibit 1
3  to Subpoena to CPR to Produce Documents).

4  **DOCUMENT REQUEST NO. 6**

5  **Please produce all communications among CPR employees, staff, or agents that refer**
6  **to mass claims. The time period for this request is from November 1, 2018 to the present.**

7  **OBJECTIONS AND RESPONSE:**

8  *See* objections to Request No. 5.  Subject to and without waiving these objections, CPR
9  will produce communications between CPR and DoorDash or Gibson Dunn regarding the
10 development of Exhibit 1.

11 **DOCUMENT REQUEST NO. 7**

12 **Please produce all communications between, on the one hand, CPR employees, staff,**
13 **or agents, and, on the other hand, any other party or person, that refer to mass claims. The**
14 **time period for this request is from November 1, 2018 to the present.**

15 **OBJECTIONS AND RESPONSE:**

16 *See* objections to Request No. 5.  Subject to and without waiving these objections, CPR
17 will produce communications between CPR and DoorDash or Gibson Dunn regarding the
18 development of Exhibit 1.

19 **DOCUMENT REQUEST NO. 8**

20 **Please produce all drafts, versions, and mark-ups of the Employment-Related Mass**
21 **Claims Protocol ("Mass Claims Protocol"), a copy of which is attached as Exhibit 1 for your**
22 **reference.**

23 **OBJECTIONS AND RESPONSE:**

24 *See* objections to Request No. 5.  Subject to and without waiving these objections, CPR
25 will produce documents evidencing communications between CPR and DoorDash or Gibson
26 Dunn regarding the development of Exhibit 1.

27
28

**DOCUMENT REQUEST NO. 9**

**Please produce all communications, no matter who to or from and no matter the original form, that refer to the Mass Claims Protocol (or any predecessor protocol or variant under any other name), any draft of it, the process of drafting it, or the reasons for drafting it.**

**OBJECTIONS AND RESPONSE:**

*See* objections to Request No. 5.  Subject to and without waiving these objections CPR will produce communications between CPR and DoorDash or Gibson Dunn regarding the development of Exhibit 1.

**DOCUMENT REQUEST NO. 10**

**Please produce all documents, other than drafts and communications, that refer to the Mass Claims Protocol (or any predecessor under any other name), any draft of it, the process of drafting it, or the need to draft it.**

**OBJECTIONS AND RESPONSE:**

*See* objections to Request No. 5.  Subject to and without waiving these objections, CPR will produce documents related to CPR, DoorDash and/or Gibson Dunn regarding the development of Exhibit 1.

**DOCUMENT REQUEST NO. 11**

**Please produce any guidelines or other documents written to help implement and apply the Mass Claims Protocol.**

**OBJECTIONS AND RESPONSE:**

*See* objections to Request Nos. 1 and 5.

**DOCUMENT REQUEST NO. 12**

**Please produce any calendar entries or meeting invitations, agendas, notes, minutes, transcripts, or recordings from any meetings or calls where the Mass Claims Protocol was mentioned or discussed.**

**OBJECTIONS AND RESPONSE:**

*See* objections to Request No. 5. CPR further objects to the extent the request calls for documents protected from disclosure by the attorney-client privilege. CPR further objects to this request on the grounds that it is vague and ambiguous. Subject to and without waiving these objections, CPR will produce documents evidencing communications between CPR and DoorDash or Gibson Dunn regarding the development of Exhibit 1.

**DOCUMENT REQUEST NO. 13**

**Please produce all documents that refer to Keller Lenkner, DoorDash, Ashley Keller, Travis Lenkner, or Warren Postman, including communications directed to or sent by CPR. The time period for this request is from November 1, 2018 to the present.**

**OBJECTIONS AND RESPONSE:**

*See* objections to Request No. 5. Subject to and without waiving these objections, CPR will produce documents evidencing communications between CPR and DoorDash or Gibson Dunn regarding the development of Exhibit 1.

**DOCUMENT REQUEST NO. 14**

**Please produce all documents that refer to, are an agreement with, or were sent to DoorDash, Inc. The time period for this request is November 1, 2018 to the present.**

**OBJECTIONS AND RESPONSE:**

*See* objections to Request No. 5. Subject to and without waiving these objections, CPR will produce responsive non-privileged documents, if any are identified.

**DOCUMENT REQUEST NO. 15**

**Please produce all documents that refer to, are an agreement with, or were sent to Gibson, Dunn & Crutcher LLP or Littler Mendelson P.C. The time period for this request is November 1, 2018 to the present. This request does not include any documents that were sent to or by CPR solely and exclusively because of an arbitration that was administered by CPR prior to November 4, 2019, and in which Gibson, Dunn & Crutcher LLP or Littler Mendelson P.C. was counsel to a party.**

**OBJECTIONS AND RESPONSE:**

*See* objections to Request No. 5.  Subject to and without waiving these objections, CPR will produce responsive documents related to the development of the Protocol, if any are identified.

**DOCUMENT REQUEST NO. 16**

**Please produce all documents that reflect or refer to any financial transactions, including donations, between CPR and any of DoorDash, Inc., Gibson, Dunn & Crutcher LLP, or Littler Mendelson P.C. The time period for this request is January 1, 2017 to the present. This request does not include any financial transaction that is solely and exclusively related to the payment of arbitration fees in strict accordance with a publicly available CPR fee schedule.**

**OBJECTIONS AND RESPONSE:**

*See* objections to Request No. 5.  Subject to and without waiving these objections, CPR will produce responsive documents related to the development of the Protocol, if any are identified.

**AS TO OBJECTIONS ONLY:**

MORGAN, LEWIS & BOCKIUS LLP
Attorneys for the International Institute for Conflict Prevention and Resolution, Inc.

 /s/ ***Kimberley E. Lunetta***
Kimberley E. Lunetta, *pro hac vice* pending
Andrew P. Frederick

Dated: December 11,  2019

## **CERTIFICATE OF SERVICE**

I, Kimberley E. Lunetta, hereby certify that a true and correct copy of CPR's Objections and Responses to Plaintiffs' Notice to Produce Documents was served on December 11, 2019 via email upon:

> Warren Postman
>   wdp@kellerlenkner.com
> KELLER LENKNER LLC
> 1300 I Street, N.W., Suite 40E
> Washington, D.C. 20005
> (202) 749-8334

                                            s/*Kimberley E. Lunetta*
                                            Kimberley E. Lunetta