Keller | Lenkner

December 13, 2019

*Submitted via ECF*

Honorable William Alsup
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom 12
450 Golden Gate Ave.
San Francisco, CA 94102

Re:     *Abernathy, et al., v. DoorDash, Inc.*, Case No. 3:19-cv-07545-WHA

Judge Alsup:

We represent the Petitioners in this matter—2,236 couriers who deliver DoorDash orders to its customers, who allege that they have been misclassified as independent contractors and denied adequate compensation, and who seek to compel DoorDash to arbitrate their disputes. ECF No. 1 at ¶ 1. We write to address the letter brief filed by the International Institute for Conflict Prevention and Resolution, Inc., the arbitral forum known as "CPR" that is designated in the new arbitration agreement DoorDash began forcing its couriers to sign on November 9, 2019. ECF No. 137.

On November 25, the Court held a hearing on Petitioners' motion for a temporary restraining order, seeking to enjoin DoorDash from continuing to force its new arbitration agreement on Petitioners after it had failed to arbitrate under its existing agreement. Recognizing that unconscionability is a fact-intensive inquiry, the Court ordered the parties to engage in certain expedited discovery. The Court advised Petitioners to take a Rule 30(b)(6) deposition of CPR and obtain its correspondence with Gibson Dunn and DoorDash to show how CPR's Employment-Related Mass Claims Protocol was written. Nov. 25, 2019 Tr. at 66:17–19.

Four days later, Petitioners served CPR with a subpoena seeking the testimony of a corporate representative and the production of documents. The subpoena sought discovery concerning the genesis of CPR's new mass claims protocol, CPR's connections to those who offered input into the protocol's development, and CPR's ability to effectuate the protocol. *See generally* ECF Nos. 137-1, 137-2. CPR objected to the discovery, claiming it seeks information that is not relevant to the issues, is unduly burdensome, and invades unspecified privacy interests. *See* ECF Nos. 137 at 1–3, 137-1 at 2:4–23, 137-2 at 5:5–6:15.

CPR's objections confirm a number of Petitioners' suspicions about the new protocol. CPR concedes it created the Employment-Related Mass Claims Protocol in response to a request from Gibson Dunn

on behalf of DoorDash.  *See* ECF No. 137-2 at 3:7–26. ("Earlier this year, the law firm of Gibson Dunn reached out to CPR to request assistance in administering – on a prospective basis – additional arbitrations expected to be brought against one of its clients, DoorDash . . . As a result, CPR developed the Employment-Related Mass Claims Protocol").  And CPR concedes that Gibson Dunn and DoorDash helped write the new rules.  *Id.* at 3:25–6 ("CPR received input from Gibson Dunn and in-house counsel at DoorDash.").  In addition, Gibson Dunn is listed on CPR's website as a "Visionary"—CPR's highest category of "Major Donors."[1]  Gibson Dunn was not listed as a member in CPR's 2018 annual review, suggesting that Gibson Dunn may have made a major financial contribution to CPR shortly before CPR created the Mass Claims Protocol.[2]  DoorDash's counsel presumably knew all of this at the hearing on Petitioners' motion for a temporary restraining order.

To be substantively fair, an arbitration agreement must provide for a neutral arbitrator and provide the same remedies that otherwise would be available to the employee in court.  *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 681–89 (Cal. 2000); *see also Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009) ("It is axiomatic that a fair trial in a fair tribunal is a basic requirement of due process.").

In light of CPR's admission that its rules were created for DoorDash, at DoorDash's request, and with the input of DoorDash and its lawyers, the extent to which CPR incorporated suggestions from other stakeholders, the identity of those stakeholders, and how CPR weighed the input of those stakeholders against DoorDash's interests are directly relevant to whether the Court should conclude that CPR is a neutral forum.

CPR expressly relies on the unspecified involvement of other unspecified parties as the basis to legitimize the process it undertook in creating the new protocol.  *See* ECF No. 137 at 3 ("In developing the Protocol, CPR invited and received input from a variety of stakeholders.").  But with all due respect to CPR's carefully phrased descriptions, one is still left to guess who these "stakeholders" were, what involvement they had, and what weight their input was given.

Nevertheless, CPR maintains that it should not be required to respond to requests seeking the identity of anyone who contributed to the protocol's development or the content of that contribution, *see, e.g.*, ECF No. 137-1 at 5:19–6:21, or the amount of money Gibson Dunn, DoorDash, or any other "contributor" to the protocol has given to CPR, *see, e.g.*, *id.* at 13:1–14:7.  CPR even objects to producing documents that specifically refer to Petitioners' counsel.  *See* ECF No. 137-2 at 10:8–14.

The Court made clear the relevance of this discovery at the TRO hearing, commenting that "[i]t would be an important fact, to me at least, on unconscionability if in order to get away from the AAA, you ran

---

[1] https://www.cpradr.org/about/cpr-major-donors.

[2] https://issuu.com/csdesignworks/docs/cpr_ar17?e=2550004/59194407.

off to CPR and cooked up some custom made deal, and then -- and then you really wrote the terms yourself, and now you're foisting that on to the people who can't opt out within 30 days." Nov. 25, 2019 Tr. at 65:14–19.  Full discovery is necessary to determine the extent to which the Court's hypothetical is, in fact, exactly what happened.

Petitioners' requests are not unreasonably burdensome.  CPR's counsel informed Petitioners' counsel that CPR only began developing the Mass Claims Protocol in mid-September, after Gibson Dunn reached out on behalf of DoorDash.  It is unlikely that CPR has generated a burdensome amount of documents since that time, and CPR has made no showing that a burdensome volume of information would be responsive to Petitioners' requests.

Relatedly, the scope of the 30(b)(6) noticed by Petitioners is not overly broad or unreasonable.  While the Notice enumerated more than ten sub-topics, it identified only seven major examination topics, which were tailored to understand a single initiative implemented over a 3-month time period, what CPR's standard processes and structures are, and how CPR is funded.  *See* ECF No. 137-1.  As compared to many 30(b)(6) depositions, the scope of what Petitioners propose to address is relatively narrow.

The information Petitioners seek cannot be obtained from a party to the lawsuit.  To our knowledge, neither DoorDash nor Gibson Dunn is in possession of the feedback CPR received from other parties as the protocol was being drafted, CPR's normal procedures concerning development of new protocols, or CPR's capacity to adjudicate a large number of disputes simultaneously.  CPR was at the center of the creation of the new protocol and is in the best position to answer questions about its creation and CPR's ability to effectuate it.

Petitioners' requests are not disproportionate to the issues in this case.  The issues raised here are extremely important to DoorDash workers, who were pressured by DoorDash to sign the CPR agreement and may be stuck with an inferior process for resolving their claims.

The facts that are currently known should call into doubt the propriety of CPR's Mass Claims Protocol.  Only full responses to Petitioners' straightforward discovery requests can remove the cloud of impropriety from CPR's rules.

Sincerely,

*[signature]*

Warren Postman