**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

555 Mission Street
San Francisco, CA 94105-0921
Tel 415.393.8200
www.gibsondunn.com

Joshua S. Lipshutz
Direct: +1 202.955.8217
Fax: +1 202.530.9614
JLipshutz@gibsondunn.com

December 19, 2019

SUBMITTED VIA ECF

Honorable William Alsup
U.S. District Court of the Northern District of California
San Francisco Courthouse, Courtroom 12
450 Golden Gate Ave.
San Francisco, CA  94102

Re:   *Abernathy et al. v. DoorDash, Inc.*, No. 3:19-cv-07545-WHA

Dear William Alsup:

Gibson, Dunn & Crutcher LLP submits this letter pursuant to the Court's order that "Counsel for defendant please file a response addressing the extent to which they (as well as DoorDash) participated in developing the employment-related mass claims protocol with CPR." Dkt. 140. As discussed below, Gibson Dunn's initial communication with CPR regarding its new procedures took place on May 14, 2019—months before Keller Lenkner filed the arbitration claims at issue in this case, and Gibson Dunn had similar communications with JAMS and AAA regarding similar procedures. There is nothing nefarious about any such communications, and CPR has already agreed to produce its communications with Gibson Dunn. While none of the discovery is relevant because CPR's procedures are not the subject of any motion to compel by Petitioners and may never be, neither DoorDash nor Gibson Dunn has made any attempt to prevent any such discovery; DoorDash has simply preserved its relevance objections. To Gibson Dunn's knowledge, no documents are being withheld based on these objections, and Gibson Dunn does not intend to participate in any meet and confer between CPR and the Petitioners or appear at any hearing that may take place at the same time over such matters.

Nonetheless, below we provide the required response to the Court's question about the extent of Gibson Dunn's and DoorDash's communications with CPR, along with pertinent background information.

A.    **Mass Arbitration Demands Create A Need For A New Arbitration Protocol.**

DoorDash, like many other companies, has entered into arbitration agreements with thousands of individuals who use its service. The company believes strongly in the benefits of arbitration for companies and individual workers alike, allowing disputes to be resolved expediently and efficiently with minimal cost to the worker. DoorDash is often engaged in

dozens—and sometimes hundreds—of arbitrations across the country, including many in California.

In March 2019, Keller Lenkner and several other Plaintiffs' firms began sending DoorDash letters threatening to file thousands of simultaneous arbitration demands, which they asserted would trigger millions of dollars in nonrefundable administrative fees payable to AAA, unless DoorDash agreed to pay those attorneys an equivalent sum of money. For example, Keller Lenkner's initial demand letter, sent on behalf of 3,000 Dashers, sought payment from DoorDash based on DoorDash's potential obligation of $20 million in arbitration filing fees. *See* Ex. A. A mediation between DoorDash and Keller Lenkner was unsuccessful in resolving these issues.

DoorDash is not the first company to face this type of "mass arbitration" situation. In the past several years, companies like AT&T and Macy's have faced "class action-style arbitration" by Plaintiffs' firms who file hundreds or thousands of arbitration demands at once. Andrea Cann Chandrasekher & David Horton, *Arbitration Nation: Data from Four Providers*, 107 CAL. L. REV. 1, 55 (Feb. 2019). In 2018, Keller Lenkner filed approximately 12,500 arbitration demands against Uber and 3,420 arbitration demands against Lyft. *See* Erin Mulvaney, *Plaintiffs Lawyers Pressure Lyft to Pay Millions in Arbitration Fees*, LAW.COM (Dec. 14, 2018), https://bit.ly/2Z11iit; Erin Mulvaney, *"Calling Uber on Their Bluff," Plaintiffs Lawyers Strike Back to Compel Arbitration*, LAW.COM (Dec. 6, 2018), https://bit.ly/2Z2yJkB. In recent months, Keller Lenkner has filed or threatened to file thousands of arbitration demands against other companies, including Postmates and DraftKings. *See* Chris Villani, *Ruling on Arbitration Due Soon In DraftKings & FanDuel MDL*, LAW360 (Aug. 28, 2019), https://bit.ly/34tCtgc. Keller Lenkner and other law firms have used social media to gather names, hold those names until they have a long list of putative "clients," and then send those lists to companies as leverage to extract settlements. *See* "*Calling Uber*," *supra*.

Because mass arbitration is a relatively new development, arbitration organizations like AAA are ill-equipped to handle it. The arbitral rules and fee schedules that were developed for small numbers of bilateral arbitrations, and the limited number of qualified arbitrators, were simply not designed with this volume of demands in mind. Take, for example, the experience of DoorDash and Keller Lenkner with AAA so far.

On July 2, 2019, Keller Lenkner filed its first 250 arbitration demands with AAA. Each demand was identical and lacked individual allegations about any Dasher's purported experience with DoorDash, facts sufficient to show that any Dasher had ever signed an arbitration agreement with DoorDash, and the amount in controversy (as required by AAA's rules). DoorDash's investigation revealed that dozens of the 250 claimants had never even

**GIBSON DUNN**

Honorable William Alsup
December 19, 2019
Page 3

signed up for a DoorDash account, let alone completed any DoorDash deliveries.  Nonetheless, Keller Lenkner refused to withdraw its demands and pressed AAA to assess filing fees against DoorDash.

DoorDash also informed AAA that it could not locate many of the 250 claimants in its database.  But without any investigation into the validity of the arbitration demands, AAA issued a single invoice to DoorDash for $475,000 in nonrefundable filing fees ($1,900 each for 250 arbitrations).  On September 4, 2019, DoorDash paid the filing fees to initiate those arbitrations.

From the start, AAA struggled to administer the 250 arbitrations.  AAA did not begin sending out arbitrator-selection lists until October 8, 2019.  On December 11, 2019—more than three months after DoorDash paid its filing fees—AAA reported that it had assigned only 85 of the 250 cases to arbitrators (and many of those cases had been assigned to the same arbitrator).  AAA told the parties that it was having difficulty finding arbitrators for so many claims and asked the parties to, among other things, consent to arbitrators that they had previously struck as unacceptable or unqualified.

Despite the challenges that Keller Lenkner's 250 demands created for AAA, Keller Lenkner filed an additional 6,250 boilerplate arbitration claims in August and September 2019 and demanded that DoorDash immediately pay nonrefundable filing fees.  The new demands were deficient for many of the same reasons as the original 250 demands, including because they contained no individualized allegations, did not plead any facts demonstrating that each claimant had actually entered into an arbitration agreement with DoorDash, and did not allege the amount in controversy.

AAA asked the parties to meet and confer about the validity of the arbitration demands. DoorDash explained the deficiencies to Keller Lenkner on a meet-and-confer call, and also explained that a preliminary investigation revealed that hundreds of the claimants were not actually Dashers who had entered into arbitration agreements with DoorDash.  But Keller Lenkner refused to withdraw any arbitration demands or correct the deficiencies, and the parties reported to AAA that the meet and confer had been unsuccessful.

AAA immediately sent an email stating that Keller Lenkner's arbitration demands were valid, without ever hearing DoorDash's objections to the demands, and without making any attempt to enforce its own rules (such as that arbitration demands must allege the amount in controversy).  AAA also never addressed DoorDash's repeated concerns that AAA lacked the capacity to arbitrate 6,250 claims in an expedient and cost-effective manner, and that it was improper to collect nonrefundable filing fees for claims that might not be assigned to arbitrators for years, if ever.  Nonetheless, AAA emailed DoorDash an invoice for $11.875 million in fees.

GIBSON DUNN

Honorable William Alsup
December 19, 2019
Page 4

Keller Lenkner made clear that, regardless of AAA's capacity to arbitrate claims, it would continue to file demands. Keller Lenkner claims that it represents 23,000 Dashers (which would trigger $43.7 million in initial filing fees for DoorDash under the same AAA rules).

AAA, for its part, stated that it would continue to invoice DoorDash for nonrefundable filing fees regardless of its capacity to handle arbitrations, and regardless of whether the claimants ever had any contact with DoorDash. According to AAA, so long as claimants' counsel provides "a list of names" even "in crayon," AAA would bill DoorDash $1,900 for each claimant's name provided. Indeed, when Gibson Dunn asked hypothetically whether, if claimants' counsel submitted one million names to AAA with adequate fee-waiver requests, AAA would invoice DoorDash $19 billion, the AAA representative responded "yes."

**B.     Gibson Dunn Communicates With Several Arbitration Organizations, Including CPR, Regarding Mass Arbitration.**

Gibson Dunn discussed AAA's administration of mass arbitrations with several AAA representatives over the course of many months. AAA told Gibson Dunn that it was already aware of certain challenges with mass arbitrations, and that it had a committee looking for solutions. AAA's representatives were happy to receive input from Gibson Dunn based on the firm's practical experience with mass arbitrations, and Gibson Dunn provided that input. Gibson Dunn offered several potential solutions, including the deferment of filing fees until arbitrators are assigned, discounted filing fees for both sides (claimants and respondents) when a high volume of similar arbitration demands are filed, and charging companies annual flat fees for administration regardless of the number of arbitrations filed.

AAA reported that it had decided to address the challenges of mass arbitrations by publishing a new "group filing-fee schedule." Under AAA's new fee schedule, if 25 or more arbitration demands are filed simultaneously against the same party by claimants represented by the same counsel, discounted and deferred filing fees apply. AAA announced that the schedule would be published on July 1, 2019, but that rollout was delayed until July 15, then to August 1, and then finally to November 1. *See* AAA, *Employment/Workplace Fee Schedule* (Nov. 1, 2019), https://bit.ly/2rWv3V3.

At the same time, Gibson Dunn attorneys had multiple discussions with JAMS representatives about their approach to mass arbitration. JAMS representatives stated that they were aware of challenges posed by mass arbitration, and JAMS openly received Gibson Dunn's thoughts and ideas for addressing those challenges. At this time, Gibson Dunn is unaware of any published fee schedules or protocols by JAMS specifically addressing the issue of mass arbitrations, but understands that JAMS has been making modifications to its rules and fee schedules on a case-by-case basis.

**GIBSON DUNN**

Honorable William Alsup
December 19, 2019
Page 5

      Gibson Dunn also contacted CPR to discuss these same issues.  CPR was already aware of the unique problems associated with mass arbitrations, having published an article on the subject in February 2019—several months *before* Gibson Dunn first contacted it regarding mass arbitrations.  *See* CPR, *More on Mass Individual Arbitration As an Alternative to Class Arbitration* (Feb. 15, 2019), https://bit.ly/35LjXS5.  Gibson Dunn's first communication with CPR on this topic was on May 14, 2019.  CPR was eager to discuss these complex arbitration issues and try to find a solution that would be fair and balanced to claimants and respondents.  As it did with AAA, Gibson Dunn proposed several ideas for addressing mass arbitration's challenges, including various types of new fee schedules.  CPR stated that its preference was to create a new protocol for mass arbitrations, and welcomed Gibson Dunn's input.

      Over the next several months, Gibson Dunn attorneys participated in approximately six substantive phone calls with CPR representatives to share Gibson Dunn's practical experience with, and ideas for handling, mass arbitrations.  In-house counsel for DoorDash participated in approximately three of those phone calls and offered perspectives from a company that had actually been a party to a mass arbitration.  As CPR has since reported, CPR also invited and received input from a variety of stakeholders, including labor-and-employment counsel on both the labor side and the management side, and prominent arbitrators and mediators.  Dkt. 137-2 at 4 (CPR's Objections).

      CPR completed a draft of the Employment Related Mass Claims Protocol (the "CPR Protocol") and shared it with Gibson Dunn on October 10, 2019.  As CPR has stated, "Gibson Dunn did not write the terms of the Protocol.  Rather, … it was CPR that conceived of, wrote the terms of, and controlled the development of the Protocol."  Dkt. 137-2 at 5 (CPR's Objections, citation omitted.)  Gibson Dunn made some suggestions to CPR for potential changes to the draft protocol, based on Gibson Dunn's experience with mass arbitration.  But CPR unilaterally decided which suggestions to accept or reject, and finalized the protocol on November 4, 2019.

      At all times, the goal of the CPR Protocol was to create a fair protocol that would make mass arbitration more administrable and withstand any procedural or substantive challenges.  The protocol's express aim is to complete 10–20 bellwether arbitrations in less than six months (by comparison, little progress has been made to date in any of the 250 cases with AAA's protocol).  Under the CPR Protocol, the claimant nominates the arbitrator for each case from CPR's Master List of arbitrators, and the company/employer is bound to arbitrate with one of the neutrals nominated by the claimant.  Giving claimants unilateral say in arbitrator selection is both worker-friendly and designed to expedite the arbitration process by avoiding rank-and-strike lists.  Moreover, after completion of the 10–20 bellwether arbitrations and a mediation, claimants can choose to proceed with individual arbitrations or *opt-out* of arbitration entirely

GIBSON DUNN

Honorable William Alsup
December 19, 2019
Page 6

and file claims in court. This innovative feature of CPR's protocol provides unprecedented rights and options to claimants.[1]

Gibson Dunn told CPR that DoorDash would like to implement the new CPR Protocol in the next iteration of DoorDash's Independent Contractor Agreement ("ICA"), which DoorDash periodically updates and amends, and urged CPR to publish the protocol as soon as possible. CPR published the protocol on November 4, 2019, and DoorDash published the updated ICA on the DoorDash mobile app on November 9, 2019. Thus, any Dasher who has logged onto his or her DoorDash account since November 9 has had the opportunity to review the updated ICA and the CPR Protocol and determine whether he or she wants to agree to the new arbitration terms with DoorDash or opt out of arbitration entirely and resolve disputes with DoorDash in court.[2]

C.  **Recent Discovery Validates DoorDash's Decision Not To Pay Almost $12 Million In Nonrefundable Fees And Explore Other Arbitration-Administrator Options.**

Recent discovery confirms that Gibson Dunn and DoorDash were right to explore mass-arbitration solutions with CPR. AAA requested almost $12 million in nonrefundable fees for 6,250 Petitioners, but further investigation shows that DoorDash has no record of 142 of those people in DoorDash's database, 39 people appear in the database but never completed the application process, and 263 people completed applications but never used the DoorDash app to perform a single delivery. Thus, Petitioners and AAA would have forced DoorDash to pay nonrefundable arbitration filing fees for at least 444 people—or $843,600—for entirely frivolous claims, all because Keller Lenkner refused to vet, or improperly vetted, its purported clients before initiating arbitration demands on DoorDash.

Another recent mass arbitration brought by Keller Lenkner reveals similar statistics. In a case involving 5,255 arbitration demands by Keller Lenkner against Postmates, the

---

[1] Keller Lenkner complains that many claimants may have to wait several months until the bellwether arbitrations are complete. However, all but 85 of Keller Lenkner's initial 250 claimants are still waiting for AAA to select their arbitrators, almost six months after they served their arbitration demands. Further, Keller Lenkner routinely forces its clients to wait before filing their demands until the firm has gathered a large number of additional claimants, so it can threaten companies with a large number of arbitrations all at once. CPR's new protocol has the potential to resolve claims on a much faster schedule.

[2] As DoorDash explained to the Court at the November 25, 2019 hearing, DoorDash will permit any of the 6,250 Petitioners who filed arbitrations with AAA before November 9, 2019, to continue to arbitrate with AAA if they opt out of DoorDash's new arbitration agreement.

Honorable William Alsup
December 19, 2019
Page 7

company reported that 1,299 claimants lacked valid claims because, for example, they never signed up with Postmates or released their claims in a prior classwide settlement. *See Adams v. Postmates*, No. 4:19-cv-03042-SBA, Dkt. 262-1 at 7 (N.D. Cal. Dec. 11, 2019).

Moreover, some Keller Lenkner arbitration demands have been filed on behalf of claimants who appear to be *represented by different counsel*. Indeed, at least one of the Petitioners in this case already filed an arbitration against DoorDash through a different plaintiffs' firm, DoorDash paid the filing fee, and the parties are presently in arbitration. Petitioners' motion to compel effectively seeks to require DoorDash to pay a *second* nonrefundable filing fee to arbitrate that same individual's claims.[3] Given the way various plaintiffs' firms are currently using social media and other Internet platforms to "harvest" client names for mass arbitration demands, it is not at all surprising that many individuals are appearing on multiple client lists. But that does not excuse Keller Lenkner's failure to properly vet its clients, and it means that parties should not be forced to reflexively pay nonrefundable arbitration filing fees simply because the opposing counsel presents a list of names to the arbitration organization.

\* \* \*

Gibson Dunn and DoorDash have nothing to hide with respect to their communications with CPR, which were above board and directed at finding fair solutions to complex arbitration issues. CPR has already agreed to provide Petitioners with the communications between CPR and Gibson Dunn or DoorDash, if this Court should order such a production, which will bear out the description set forth above. Any discovery into the CPR Protocol, however, is premature and irrelevant, as Petitioners are not moving to compel arbitration under that protocol, and DoorDash has not attempted to (and may never) force any Petitioner to arbitrate with CPR. Further, the terms of the CPR Protocol speak for themselves, and the fairness of those terms should be judged without any reference to how they came about.

In any event, Gibson Dunn and DoorDash understand the present discovery dispute to be between CPR and Petitioners only. They do not intend to attend the meet and confer session between those parties or the subsequent hearing on that discovery dispute, and they defer to the Court's judgment as to the propriety of discovery from CPR.

---

[3] In the Postmates case, 584 of Keller Lenkner's "clients" were apparently represented by other counsel. *See Adams*, *supra*, ECF No. 262-1 at 9. Indeed, Keller Lenkner even purported to represent the *named plaintiff* who had signed the settlement agreement while represented by other counsel. *See Rimler v. Postmates, Inc.*, No. CGC-18-567868, Decl. of T. Evangelis in Support of Postmates's Opp. to the Lemaster Objectors' App. for Leave to Intervene, ¶ 6 (S.F. Super. Ct. Nov. 6, 2019).

GIBSON DUNN

Honorable William Alsup
December 19, 2019
Page 8

Respectfully submitted,

*/s/ Joshua S. Lipshutz*

Joshua S. Lipshutz

# EXHIBIT A

# Keller | Lenkner

March 20, 2019

Mr. Keith Yandell
Chief Business and Legal Officer
DoorDash, Inc.
901 Market Street, Sixth Floor
San Francisco, CA 94103

Re:     Arbitration Demands

Dear Mr. Yandell:

Keller Lenkner LLC represents more than 3,000 DoorDash drivers in California and Illinois. Our investigation shows that DoorDash has misclassified these drivers as independent contractors and improperly withheld their tips, resulting in violations of their rights under federal, state, and local wage-and-hour laws. As required by DoorDash's agreement with its drivers, we are prepared to serve individual demands for arbitration for each client with the American Arbitration Association ("AAA"). Enclosed are draft arbitration demands, as well as a list of clients for your reference.

Although DoorDash's agreement requires individual arbitration, we understand that individual arbitration is expensive. As you know, DoorDash's agreement requires DoorDash to pay all arbitration-related costs, including arbitration retainers and filing fees. Applying its Employment/Workplace Fee Schedule, AAA will require DoorDash to pay a $2,200 filing fee, a $750 administrative fee, and an arbitrator's retainer of $4,000 or more.

If we conclude that it is necessary to proceed to arbitration, we believe it is in our clients' interests to proceed with every arbitration simultaneously. Based on 3,000 drivers, proceeding to arbitration would obligate DoorDash to pay AAA more than $20 million—to say nothing of DoorDash's attorneys' fees and its underlying liability, which we believe is substantial. These numbers will continue to grow, as several hundred additional DoorDash drivers engage our firm each week.

Before we serve demands on AAA that will trigger DoorDash's obligation to pay the costs outlined above, it would be sensible for the parties to explore whether we can agree on an alternative process for resolving our clients' claims. Provided that DoorDash would agree to at least a short period of tolling, we would agree to wait to file our clients' demands in order to discuss such an alternative process.

Please let me know if there is a convenient time between now and March 27, 2019, when you or a member of your team is available to discuss next steps. Feel free to contact me by email at ack@kellerlenkner.com. Thank you in advance for your prompt attention to this matter.

Sincerely,

Ashley Keller

**PROOF OF SERVICE**

I, Stephanie Balitzer, declare as follows:

I am employed in the County of Los Angeles, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 333 South Grand Avenue, Los Angeles, California 90071-3197, in said County and State. On December 19, 2019, I served the following document(s):

**DEFENDANT DOORDASH, INC. DECEMBER 19, 2019 LETTER BRIEF**

On the parties stated below, by the following means of service:

CUSTIS LAW, P.C.
Keith A. Custis
  kcustis@custislawpc.com
1875 Century Park East, Suite 700
Los Angeles, California 90067
(213) 863-4276

KELLER LENKNER LLC
Ashley Keller
  ack@kellerlenkner.com
Travis Lenkner
  tdl@kellerlenkner.com
Marquel Reddish
  mpr@kellerlenkner.com
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

Warren Postman
  wdp@kellerlenkner.com
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

☑ **BY ELECTRONIC TRANSFER TO THE CM/ECF SYSTEM**: On this date, I electronically uploaded a true and correct copy in Adobe "pdf" format of the above-listed document(s) to the United States District Court's Case Management and Electronic Case Filing (CM/ECF) system. After the electronic filing of a document, service is deemed complete upon receipt of the Notice of Electronic Filing ("NEF") by the registered CM/ECF users.

☑ **(FEDERAL)** I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 19, 2019

          */s/ Stephanie Balitzer*
          Stephanie Balitzer