1   Keith A. Custis (#218818)
      kcustis@custislawpc.com
2   CUSTIS LAW, P.C.
    1875 Century Park East, Suite 700
3   Los Angeles, California 90067
    (213) 863-4276
4   Justin Griffin (#234675)
      justingriffin@quinnemanuel.com
5   QUINN EMANUEL URQUHART & SULLIVAN, LLP
    865 S. Figueroa St., 10th Floor
6   Los Angeles, California 90017
    (213) 443-3100
7
    Andrew Schapiro (*pro hac vice forthcoming*)
8     andrewschapiro@quinnemanuel.com
    QUINN EMANUEL URQUHART & SULLIVAN, LLP
9   191 N. Upper Wacker Dr., Suite 2700
    Chicago, Illinois 60606
10  (312) 705-7472

Ashley Keller (*pro hac vice*)
  ack@kellerlenkner.com
Travis Lenkner (*pro hac vice*)
  tdl@kellerlenkner.com
Marquel Reddish (*pro hac vice*)
  mpr@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

Warren Postman (*pro hac vice*)
  wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

11  *Attorneys for Petitioners*

12                    **UNITED STATES DISTRICT COURT**
                    **NORTHERN DISTRICT OF CALIFORNIA**
13                     **SAN FRANCISCO DIVISION**

14

15  TERRELL ABERNATHY, et al.,              Case Nos.   3:19-cv-07545
                                                        3:19-cv-07646
16                *Petitioners*,

17      vs.                                 **AMENDED MOTION**
                                            **TO COMPEL ARBITRATION**
18  DOORDASH, INC.,
                                            **Date**:      February 10, 2020
19                *Respondent*.             **Time**:      2:00 p.m.
                                            **Judge**:     Hon. William H. Alsup
20

21

22  CHRISTINE BOYD, et al.,

23                *Petitioners*,

24      vs.

25  DOORDASH, INC.,

26                *Respondent*.

27

28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on February 10, 2020 at 2:00 p.m. or as soon thereafter as the matter may be heard, Petitioners will and hereby do move this Court, pursuant to Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, for an order compelling Respondent DoorDash, Inc. to arbitrate Petitioners' underlying misclassification claims.

Each Petitioner and DoorDash entered into an agreement requiring them to arbitrate the issue of whether that Petitioner is an independent contractor or a DoorDash employee.  Pursuant to that agreement, each Petitioner filed an individual demand for arbitration with the American Arbitration Association ("AAA"), the organization that the parties' agreement states must administer the arbitration.  DoorDash failed to comply with the parties' agreement because it refused to comply with AAA's administrative determinations regarding the filing fees DoorDash must pay under the agreement and AAA's rules—fees AAA requires before it will empanel arbitrators and begin Petitioners' arbitrations.  Accordingly, DoorDash has "fail[ed], neglect[ed], or refus[ed] . . . to arbitrate under a written agreement for arbitration." 9 U.S.C. § 4.  Pursuant to the FAA, this Court should "direct[] that such arbitration proceed in the manner provided for in [the parties'] agreement." *Id.*

This motion is based on this notice of motion, the attached memorandum of points and authorities, the declarations of Ashley Keller and Marquel Reddish, all records on file with this Court, and such further oral and written arguments as may be presented at, or prior to, the hearing on this matter.

1   Dated: December 23, 2019                    Respectfully submitted,

2                                               /s/ Ashley Keller
    Keith A. Custis (#218818)                   Ashley Keller (*pro hac vice*)
3     kcustis@custislawpc.com                     ack@kellerlenkner.com
    CUSTIS LAW, P.C.                             Travis Lenkner (*pro hac vice*)
4   1875 Century Park East, Suite 700             tdl@kellerlenkner.com
    Los Angeles, California 90067                Marquel Reddish (*pro hac vice*)
5   (213) 863-4276                                mpr@kellerlenkner.com
                                                KELLER LENKNER LLC
6   Justin Griffin (#234675)                    150 N. Riverside Plaza, Suite 4270
      justingriffin@quinnemanuel.com            Chicago, Illinois 60606
7   QUINN EMANUEL URQUHART                      (312) 741-5220
      & SULLIVAN, LLP
8   865 S. Figueroa St., 10th Floor             Warren Postman (*pro hac vice*)
    Los Angeles, California 90017                 wdp@kellerlenkner.com
9   (213) 443-3100                              KELLER LENKNER LLC
                                                1300 I Street, N.W., Suite 400E
10  Andrew Schapiro (*pro hac vice forthcoming*) Washington, D.C. 20005
      andrewschapiro@quinnemanuel.com           (202) 749-8334
11  QUINN EMANUEL URQUHART
      & SULLIVAN, LLP
12  191 N. Upper Wacker Dr., Suite 2700
    Chicago, Illinois 60606
13  (312) 705-7472

14  *Attorneys for Petitioners*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Keith A. Custis (#218818)
  kcustis@custislawpc.com
CUSTIS LAW, P.C.
1875 Century Park East, Suite 700
Los Angeles, California 90067
(213) 863-4276

Justin Griffin (#234675)
  justingriffin@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
(213) 443-3100

Andrew Schapiro (*pro hac vice forthcoming*)
  andrewschapiro@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
191 N. Upper Wacker Dr., Suite 2700
Chicago, Illinois 60606
(312) 705-7472

Ashley Keller (*pro hac vice*)
  ack@kellerlenkner.com
Travis Lenkner (*pro hac vice*)
  tdl@kellerlenkner.com
Marquel Reddish (*pro hac vice*)
  mpr@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

Warren Postman (*pro hac vice*)
  wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

*Attorneys for Petitioners*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| TERRELL ABERNATHY, et al.,<br><br>*Petitioners*,<br><br>vs.<br><br>DOORDASH, INC.,<br><br>*Respondent*. | Case Nos.   3:19-cv-07545<br>                3:19-cv-07646<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AMENDED MOTION TO COMPEL ARBITRATION**<br><br>**Date**:   February 10, 2020<br>**Time:**   2:00 p.m.<br>**Judge:**   Hon. William H. Alsup |
| CHRISTINE BOYD, et al.,<br><br>*Petitioners*,<br><br>vs.<br><br>DOORDASH, INC.,<br><br>*Respondent*. | |

# <u>TABLE OF CONTENTS</u>

I.        INTRODUCTION ................................................................................................. 1

II.       BACKGROUND ................................................................................................... 5

     A.     DoorDash Imposes a Broad Arbitration Clause on Dashers.......................................... 5

     B.     Petitioners File Individual Arbitration Demands That AAA Determines Meet the Initial Filing Requirements. ........................................................................... 8

     C.     DoorDash Fails to Pay the Filing Fees Required by AAA to Empanel Individual Arbitrators, Forcing AAA to Close Petitioners' Arbitrations. ................. 9

     D.     DoorDash's Counsel Drafts A New Agreement and Advises DoorDash to Send it Directly to Petitioners, in Circumvention of Counsel. ............................... 11

     E.     DoorDash Misrepresents to Petitioners and the Court That It Cannot Determine If It Has an Agreement to Arbitrate with Petitioners. .................................. 12

     F.     DoorDash Works with a Plaintiffs' Firm That Has Not Been Appointed Class Counsel to Pursue a Prohibited Class Action.................................................. 13

III.      STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4) ...................................... 15

IV.      ARGUMENT ..................................................................................................... 15

     A.     The Parties Formed an Arbitration Agreement That Covers the Present Disputes............................................................................................................. 16

     B.     DoorDash Has Breached the Mutual Arbitration Provision. ....................................... 17

     C.     DoorDash Cannot Offer Any Legitimate Justification for Its Refusal to Comply With Its Own Arbitration Agreement. ......................................................... 17

     D.     This Court Should Compel DoorDash to Arbitrate. .................................................. 23

V.       CONCLUSION................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                **PAGE(s)**

*Allemeir v. Zyppah, Inc.*,
   No. 18-7437-PA, 2018 WL 6038340 (C.D. Cal. Sept. 21, 2018)......................................23, 24

*American Express Company v. Italian Colors Restaurant*,
   2012 WL 6759408 (2012)..........................................................................................................8

*American Express Company v. Italian Colors Restaurant*,
   570 U.S. 228 (2013).................................................................................................................8

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011).............................................................................................5, 7, 8, 15, 22

*Brown v. Dillard's, Inc.*,
   430 F.3d 1004 (9th Cir. 2005) ...........................................................................................17, 20

*C&L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.*,
   532 U.S. 411 (2001)............................................................................................................16, 20

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ................................................................................................23

*Edwards v. DoorDash, Inc.*,
   No. H–16–2255, 2017 WL 5514302 (S.D. Tex. Oct. 18, 2017)..............................................21

*Fordjour v. Washington Mut. Bank*,
   No. 07-cv-1446-MMC (PR), 2008 WL 295092 (N.D. Cal. Feb. 1, 2008) .........................2, 23

*Halloran v. Davis*,
   No. 2:12-cv-01011-CBM, 2013 WL 12153551 (C.D. Cal. Aug. 15, 2013)............................24

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019)....................................................................................................1, 16, 17

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002).............................................................................................................1, 16

*Lifescan, Inc. v. Premier Diabetic Services, Inc.*,
   363 F.3d 1010 (9th Cir. 2004) ..............................................................................................4, 20

*Magana v. DoorDash, Inc.*,
   343 F. Supp. 3d 891 (N.D. Cal. 2018) .....................................................................................5

*Pre-Paid Legal Servs. v. Cahill*,
   786 F.3d 1287 (10th Cir. 2015) ..............................................................................................20

**CASES CONT.**                                                           **PAGE(s)**

*Rent-A-Center, W., Inc. v. Jackson*,
   561 U.S. 63 (2010)...........................................................................................7, 19

*Sink v. Aden Enterprises, Inc.*,
   352 F.3d 1197 (9th Cir. 2003) .......................................................................17, 21

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
   489 U.S. 468 (1989)..............................................................................................24

*Williams v. Tully*,
   No. C-02-05687-MMC, 2005 WL 645943 (N.D. Cal. Mar. 18, 2005) ...................20

**STATUTES**

9 U.S.C. § 4..................................................................................................5, 16, 23

Lab. Code § 226 ......................................................................................................9

**RULES**

American Arbitration Association Commercial Arbitration Rules,
   Rule R-1(a).......................................................................................................6, 7
   Rule R-2 ...............................................................................................6, 17, 20
   Rule R-56 .........................................................................................6, 9, 17, 20
   Rule R-8 ...............................................................................................6, 20

**OTHER AUTHORITIES**

DoorDash's Mot. Compel Arbitration, *Arkin v. DoorDash, Inc.*,
   No. 1:19-cv-4357-NGG-RER, Dkt. No. 19 (E.D.N.Y. Nov. 27, 2019) ...................7

DoorDash's Mot. Compel Arbitration, *Mckay v. DoorDash, Inc.*,
   No. 3:19-cv-04289-MMC, Dkt. No. 26 (N.D. Cal. Aug. 12, 2019) ........................7

Order Granting Mot. Compel Arbitration, *Adams v. Postmates Inc.*,
   No. 4:19-cv-03042-SBA, Dkt. No. 253 (N.D. Cal. Oct. 22, 2019) ........................21

S.B. 707, S. Judiciary Comm., 2019-2020, Reg. Sess. (Cal. 2019)..............5, 14, 24, 25

MEMORANDUM IN SUPPORT OF AMENDED MOTION TO COMPEL ARBITRATION
CASE NUMBERS: 3:19-cv-07545 & 3:19-cv-07646

# I.    INTRODUCTION

Petitioners are 5,879 couriers who work for DoorDash, Inc.[1]  Petitioners allege that DoorDash misclassifies them as independent contractors—depriving them of a minimum wage, overtime pay, and other protections required by federal, state, and local law.  DoorDash has largely avoided liability for misclassifying its workers by requiring couriers to sign an "Independent Contractor Agreement" ("ICA") that contains a "Mutual Arbitration Provision" ("MAP").  The MAP bars both Petitioners and DoorDash from participating in any class action, and it requires them to resolve their claims in individual arbitration administered by the American Arbitration Association ("AAA").  The MAP also contains a delegation clause that requires the parties to arbitrate threshold disputes about whether or how arbitration should proceed.

DoorDash has repeatedly relied on the MAP to prevent its couriers, whom it calls "Dashers," from litigating misclassification claims in a class action.  And DoorDash has aggressively enforced its delegation clause to require that plaintiffs arbitrate any threshold arguments about whether arbitration was appropriate in the first place.  *See* Declaration of Ashley Keller, Ex. HH (collecting examples).  DoorDash has a perfect record when it moves to compel arbitration, thanks to a line of Supreme Court decisions holding that the Federal Arbitration Act ("FAA") requires strict enforcement of arbitration agreements.  In advocating for those decisions, defendants have long told courts that, although arbitration deprives employees of the benefits of class actions, it does <u>not</u> limit employees' right to bring their claims.  Instead, individual arbitration allows employees to resolve their claims in an efficient and speedy manner.

These precedents produce a simple test: a court <u>must</u> grant a motion to compel arbitration if: (1) the parties have entered into a valid arbitration agreement, and (2) the agreement covers the dispute.  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002).  If the parties have delegated to an arbitrator threshold questions about <u>whether</u> the parties should arbitrate, the court must compel arbitration wherever the parties have entered into a valid arbitration agreement.  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019).

---

[1] Pursuant to the briefing schedule approved by the Court, Petitioners' counsel are filing a single amended petition and submitting a single set of briefs in both of the above-captioned cases.  This motion refers to the Petitioners in both cases collectively.

In this case, that simple test produces a simple answer. DoorDash has now produced data confirming that every Petitioner signed a valid arbitration agreement binding the parties to arbitrate before AAA. DoorDash cannot dispute that each Petitioner's misclassification claims fall within the scope of the arbitration agreement. And DoorDash cannot dispute that any arguments about the sufficiency of Petitioners' demands or how the arbitrations should proceed must themselves be arbitrated, under the MAP's delegation clause. As a result, this Court should compel arbitration as to each Petitioner. *Fordjour v. Washington Mut. Bank*, No. 07-cv-1446-MMC (PR), 2008 WL 295092, at *1 (N.D. Cal. Feb. 1, 2008) ("The terms of the FAA do not allow a district court to exercise its discretion when faced with such a request; rather, the court is required to direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").

The only complexity in this case comes from DoorDash's tortured attempts to back out of its own contract. DoorDash championed arbitration when only a small number of Dashers sought it. But as soon as DoorDash faced a large number of claims in arbitration, it tried to erect a series of roadblocks to prevent Petitioners from arbitrating. None of those efforts should succeed.

First, although Petitioners' counsel provided DoorDash detailed contact information for each Petitioner, DoorDash claimed that it could not find Dasher accounts for a large percentage of Petitioners—and thus, that they were not Dashers. Keller Decl. ¶ 39, Ex. W. Petitioners' counsel repeatedly asked DoorDash for the names of those Petitioners, so counsel could supply additional information. DoorDash refused to identify a single such Petitioner. *Id.* ¶ 40. DoorDash further disputed—without any basis—that Keller Lenkner LLC represents Petitioners. To preempt these arguments, counsel obtained a signed declaration from Petitioners explaining that they worked for DoorDash and had retained Keller Lenkner to pursue arbitration on their behalf.

Second, after AAA made an administrative determination that Petitioners had met all of their filing requirements and that DoorDash was required to move forward with each Petitioner's claims, DoorDash refused to commence arbitrations. DoorDash did not inform AAA of any specific basis for refusing to arbitrate, telling AAA only that there were "significant deficiencies" in Petitioners' demands. DoorDash's refusal to comply with AAA's determinations caused AAA to close Petitioners' arbitrations, necessitating this motion.

Third, unbeknownst to Petitioners, in mid-September DoorDash's lawyers contacted the International Institute for Conflict Prevention & Resolution, Inc. ("CPR")—to which DoorDash's law firm is a major donor—asking for urgent assistance to write new rules to govern Petitioners' claims.  Under the new CPR rules, a defendant who faces more than 30 claims at a time can force all but 10 of those claims to be held in abeyance for bellwether arbitrations and then decided sequentially, thereby forcing large numbers of claimants to wait years to have their claims heard.  The day after AAA closed Petitioners' demands, DoorDash sent this updated ICA (the "CPR Agreement") to Petitioners in circumvention of their counsel and required them to sign it before beginning their next shift.  Dashers can avoid this agreement, DoorDash maintains, but only if they send DoorDash a hard copy of an additional signed form.  *See* Am. Pet., Ex. F § XI, Keller Decl. ¶ 43.

Fourth, DoorDash negotiated with a law firm that does not even purport to represent Petitioners, Lichten & Liss-Riordan, P.C. ("LLR"), in hopes of releasing Petitioners' claims through a class action—in direct violation of its obligation to Petitioners not to participate in a class action.  LLR has not been approved by any court as adequate to represent the interests of a class of Dashers in any pending action.  But LLR and DoorDash nonetheless struck a deal to release Petitioners' claims in a proposed "settlement-only class" for a paltry sum.  Under the proposed deal, Dashers who file a claim would receive on average approximately $122 (at a 50% participation rate)—less than half of the initial filing fee many Petitioners paid to AAA.  Absent class members who do not file a claim will lose their rights in exchange for no consideration, unless they submit an opt-out statement.  But DoorDash can "blow up" the settlement if too many absent class members opt out, which means LLR has a direct economic interest in preventing absent class members from preserving their claims by opting out.  That conflict of interest is reflected in the numerous obstacles to opting out that LLR and DoorDash agreed to impose on absent class members.  A Dasher can preserve her rights only by submitting a hard-copy letter signed in wet ink.  (Immune to irony, DoorDash's in-house counsel executed the proposed settlement via DocuSign.)  Moreover, the settlement appears to render an opt-out letter invalid if a Dasher receives help from her lawyer in submitting it.  *See* Keller Decl., Ex. AA at 45.

MEMORANDUM IN SUPPORT OF AMENDED MOTION TO COMPEL ARBITRATION
CASE NUMBERS: 3:19-cv-07545 & 3:19-cv-07646

1    Finally, DoorDash misrepresented the record to this Court.  For months, Petitioners'

2    counsel sent DoorDash lists of clients that included each client's name, mailing address, phone

3    number, and email address.  Yet DoorDash's counsel told this Court that Petitioners had not

4    provided information that would allow DoorDash to locate Petitioners in its system or identify the

5    applicable arbitration agreement.  After the Court suggested that DoorDash stop "hid[ing] the

6    ball," Keller Dec. ¶ 53, Ex. II, H'rg Tr. (Nov. 25, 2019) p. 54:15, DoorDash produced data

7    confirming it was able to identify over 96% of the *Abernathy* and *Boyd* claimants and their

8    applicable arbitration agreements using information Petitioners provided <u>months earlier</u>.  *Id.* ¶ 41.[2]

9    Although DoorDash threw up roadblocks to frustrate Petitioners' ability to obtain

10   arbitration, Petitioners persevered.  For the 5,879 Petitioners in these actions, DoorDash's legal

11   obligation is clear: DoorDash has produced data confirming that each Petitioner is party to a valid

12   agreement to arbitrate with DoorDash.  DoorDash has refused to arbitrate.  The FAA requires that

13   DoorDash be compelled to arbitrate.

14   DoorDash's attempts to wiggle out of its obligation to arbitrate do not hold water.

15   DoorDash told this Court that Petitioners' arbitration demands had "deficiencies," Keller Dec., Ex.

16   II, but DoorDash has repeatedly told courts they are not allowed to consider such threshold

17   arguments, which are delegated to the arbitrator, and arbitration must be compelled whenever the

18   parties have agreed to the MAP.  Keller Decl., Ex. HH.  Moreover, DoorDash never identified

19   these supposed deficiencies to AAA, and AAA determined that the demands were sufficient.  The

20   MAP expressly incorporates AAA rules, which make AAA's determination binding.  And

21   controlling precedent holds that courts will not second-guess AAA's determinations.  *See Lifescan,*

22   *Inc. v. Premier Diabetic Servs., Inc*, 363 F.3d 1010, 1011–13 (9th Cir. 2004).

23   DoorDash also should not be allowed to invoke the CPR Agreement for Petitioners who

24   were forced to sign it and have not yet submitted an opt-out form.  Discovery on this issue is

25

---

26   [2] Petitioners' counsel and DoorDash are conferring about the *Abernathy* and *Boyd* claimants whose
     arbitration demands were filed simultaneously with Petitioners' demands, and who DoorDash
27   claims do not have an account with the company, have never made a delivery, or have opted out
     of arbitration altogether.  Those claimants are not included in this Amended Petition, but
28   Petitioners' counsel may seek to add them at a later date.

MEMORANDUM IN SUPPORT OF AMENDED MOTION TO COMPEL ARBITRATION
CASE NUMBERS: 3:19-cv-07545 & 3:19-cv-07646

1   ongoing, and Petitioners will seek leave to file a short supplemental brief after discovery ends to

2   show why the CPR Agreement is unconscionable.

3          Finally, DoorDash cannot deprive Petitioners of their right to compel arbitration by asking

4   this Court to stay Petitioners' right to relief in favor of a class proceeding that is expressly barred

5   by the MAP.  As DoorDash and its counsel have argued for years, the Supreme Court long ago

6   made clear that policy arguments about the efficiency of class actions must yield to the FAA's

7   command that agreements to arbitrate be enforced according to their terms.  *See AT&T Mobility*

8   *LLC v. Concepcion*, 563 U.S. 333, 352 (2011).

9          DoorDash's steadfast obstruction of Petitioners' right to arbitrate warrants two related

10  remedies.  First, the Court should issue an order directing that arbitration proceed immediately "in

11  the manner provided for in [its] agreement," 9 U.S.C. § 4, which includes compliance with AAA's

12  administrative requirements and deadlines.  Second, the Court should award substantive remedies

13  recently enacted in California Senate Bill 707.  Effective January 1, 2020, where a business is more

14  than 30 days overdue in its obligation to pay arbitration costs, the business shall be compelled to

15  arbitration in which it must pay the plaintiff's costs and reasonable attorneys' fees.

16                              **II.    BACKGROUND**

17  **A.    DoorDash Imposes a Broad Arbitration Clause on Dashers.**

18         Since at least 2014, DoorDash has required every Dasher to sign a contract containing a

19  MAP before making any delivery for the company.  *See Magana v. DoorDash, Inc.*, 343 F. Supp.

20  3d 891, 895 (N.D. Cal. 2018).  The MAP provides that DoorDash and each Dasher "mutually

21  agree" to resolve exclusively in arbitration "all claims arising out of or relating to this Agreement,

22  [including] CONTRACTOR's classification as an independent contractor."    Am. Pet.,

23  Ex. F § XI.1.[3]  The arbitration must be individual: both Petitioners and DoorDash "waive their

24  right to have any dispute or claim brought, heard or arbitrated as, or to participate in, a class action,

25  collective action and/or representative action."  *Id.* § XI (emphasis added).  DoorDash has

26  produced data confirming that each Petitioner signed a version of the ICA.  *See* Keller Decl. ¶ 41

27  ───────────────
    [3] Although DoorDash has made minor revisions to the MAP over the years, the key provisions
28  remained substantially the same prior to the CPR Agreement.  For convenience, Petitioners will
    cite and quote the most recent AAA agreement.

1   and Ex. A (listing applicable agreement for each Petitioner and summarizing the number of

2   Petitioners subject to each agreement as of December 22, 2019).[4]

3          If the parties dispute their obligation to commence arbitration under the MAP, or how that

4   provision should be applied, that dispute itself must be submitted to an arbitrator.  *See* Am. Pet.,

5   Ex. F § XI.3 ("All other disputes with respect to whether this Mutual Arbitration Provision is

6   unenforceable, unconscionable, applicable, valid, void or voidable shall be determined exclusively

7   by an arbitrator, and not by any court.").  The only exception to this broad delegation clause is that

8   a court may decide whether the Provision's "Class Action Waiver is unenforceable,

9   unconscionable, void or voidable." *Id.*  Petitioners do not contend that the Class Action Waiver is

10  "unenforceable, unconscionable, void or voidable" and instead ask this Court to compel

11  exclusively individual arbitration.  The arbitration clause also provides that each Petitioner's

12  arbitration "shall be governed by [AAA's] Commercial Arbitration Rules." *Id.* § XI.5.[5]

13         By designating the Commercial Arbitration Rules to govern disputes, DoorDash and

14  Dashers are "deemed to have made th[o]se rules a part of their arbitration agreement" and thereby

15  "authorize the AAA to administer the arbitration."  Commercial Rules 1(a), 2.  Once an individual

16  arbitrator is appointed, "[t]he arbitrator shall interpret and apply the[] rules insofar as they relate

17  to the arbitrator's powers and duties."  Commercial Rule 8.  But before an individual arbitrator has

18  been appointed, or where a rule does not involve the "arbitrator's powers and duties," the rules

19  "shall be interpreted and applied by the AAA." *Id.*  AAA is authorized to "require the parties to

20  deposit in advance of any hearings such sums of money as it deems necessary to cover the expense

21  of the arbitration, including the arbitrator's fee."  Commercial Rule 56 (emphasis added).

22         The Commercial Rules specify the fee schedule for Petitioners' arbitrations.  AAA's

---

[4] As explained further in the Keller Declaration, once this Court ordered DoorDash to search its records, DoorDash produced data confirming that it identified over 96% of the *Abernathy* and *Boyd* claimants within just a few days. *See* Keller Decl. ¶ 41.  Petitioners' counsel are providing additional information to DoorDash so it can locate the remaining claimants in its system. *Id.* Counsel also identified errors in DoorDash's search process—for example, DoorDash failed to identify Dashers based on email addresses that counsel subsequently confirmed are associated with DoorDash accounts, and DoorDash stated it was confident that a Dasher had not performed any deliveries for DoorDash when the Dasher provided incontrovertible proof that he had. *Id.* ¶ 42. Counsel is continuing to confer with DoorDash regarding these issues. *See supra* n. 2.
[5] *Available at* https://www.adr.org/sites/default/files/CommercialRules_Web_FINAL_1.pdf.

Employment Fee Schedule applies where, as here, workers bring claims asserting they were misclassified as independent contractors.  Commercial Rule 1, n*.  The Employment Fee Schedule in effect when Petitioners filed their demands caps an individual's filing fee at $300 and imposes a $1,900 filing fee on companies responding to arbitration demands.  Employment Fee Schedule at 1.[6]  It further provides that "[t]he employer or company's share of filing fees is due as soon as the employee or individual meets his or her filing requirements."  *Id.* at 2.

DoorDash has repeatedly relied on its MAP to force Dashers' misclassification claims to arbitration.  As DoorDash emphasized just last month, "[e]very time DoorDash has moved to compel arbitration under one of its Arbitration Agreements, the court has compelled arbitration or stayed proceedings pending arbitration."  Keller Decl., Ex. GG, DoorDash's Motion to Compel Arbitration at 7, *Arkin v. DoorDash, Inc.*, No. 1:19-cv-4357-NGG-RER (E.D.N.Y. Nov. 27, 2019) (emphasis added).  DoorDash also has consistently prevailed in its argument that the delegation clause requires Dashers to arbitrate questions about the fairness of proceeding in arbitration.  As DoorDash has explained:

> Before reaching . . . gateway issues, however, a court must first examine the agreement to determine whether the parties agreed to commit threshold questions of arbitrability to the arbitrator.  *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional antecedent agreement the party seeking arbitration asks the court to enforce . . . .").  If the parties have "clearly and unmistakably" agreed to delegate questions of arbitrability to the arbitrator, then the arbitrator must decide the threshold issues.

Keller Decl., Ex. EE, DoorDash's Motion to Compel Arbitration at 9, *Mckay v. DoorDash, Inc.*, No. 3:19-cv-04289-MMC (N.D. Cal. Aug. 12, 2019).

Cases such as *Rent-A-Center* and *Concepcion* reflect a decades-long campaign by the business community arguing for strict enforcement of arbitration agreements that contain class-action waivers.  Employment-rights attorneys have long argued that allowing defendants to eliminate class actions is unfair, because bringing claims individually is highly inefficient and prevents employees from vindicating their rights in any meaningful numbers.  But the business

---

[6]  *Available at* https://www.adr.org/sites/default/files/Employment_Fee_Schedule1Nov19.pdf. AAA has since updated its Employment Fee Schedule, but the new schedule applies only to demands for arbitration filed on or after November 1, 2019.

MEMORANDUM IN SUPPORT OF AMENDED MOTION TO COMPEL ARBITRATION
CASE NUMBERS: 3:19-cv-07545 & 3:19-cv-07646

community successfully rebutted those arguments before the Supreme Court by emphasizing that defendants typically pay most of the costs of arbitration, and by contending that individual arbitration offers an adequate forum for any and all plaintiffs to vindicate their rights. *See, e.g., Concepcion*, 563 U.S. at 337 (requiring individual arbitration while noting that AT&T's arbitration agreement requires AT&T to "pay all costs" of the arbitration). For example, in *American Express Company v. Italian Colors Restaurant*, 570 U.S. 228 (2013), the U.S. Chamber of Commerce— which touts itself as "the world's largest business federation"—assured the Supreme Court that class-action waivers would not preclude access to justice because plaintiffs' firms could vindicate the rights of thousands of clients at once in individual arbitration:

> Although bilateral arbitration requires each claimant to bring a separate proceeding, nothing about arbitration prevents claimants (or their attorneys) from sharing the expenses of expert witnesses, fact investigation, and attorney preparation. . . .

> For example, prior to *Concepcion* a plaintiff had filed a putative class action alleging that AT&T improperly measures the amount of data used by iPhones and iPads. . . . Subsequently, counsel for [the plaintiff] filed separate demands for arbitration on behalf of over 1,000 claimants—each making virtually identical allegations and relying on the same expert witness . . . .

> These examples demonstrate that, especially in an era in which the Internet and social media can be used effectively to reach out to potential claimants, individual plaintiffs (and their counsel) can readily identify other businesses or individuals with similar claims who can share in the costs of pursuing claims.

Brief of the Chamber of Commerce of the United States of America, et al., at *27–30, *Am. Express Co. v. Italian Colors Rest.*, 2012 WL 6759408 (December 28, 2012).

**B.    Petitioners File Individual Arbitration Demands That AAA Determines Meet the Initial Filing Requirements.**

On July 2, 2019, Petitioners' counsel filed demands for arbitration on behalf of 250 Dashers who are not petitioners in this action. *See* Keller Decl. ¶ 4. Like all of Petitioners' demands, each of the 250 demands was submitted on AAA's official demand form, contained each claimant's individual information, described each claimant's individual claims, and requested individual relief. *See id.*, Ex. A. Counsel also attached a copy of DoorDash's standard arbitration agreement. *Id.* Because DoorDash requires Dashers to accept its agreement through "clickwrap," DoorDash does not obtain or create a unique arbitration agreement for each Dasher. Reddish Decl. ¶ 5. Each

Dasher's demand declined to state an amount in controversy, explaining instead that information necessary to calculate damages was exclusively within the control of DoorDash.  *Id.* ¶ 14.[7]  Having filed thousands of demands with AAA, Petitioners' counsel knew that AAA does not interpret its rules to require an amount in controversy in this situation.  *Id.* ¶ 15.

AAA determined that each demand met AAA's filing requirements and invoiced DoorDash for its share of the filing fees.  *See id.* ¶ 5.  On July 29, DoorDash requested a two-week extension to pay filing fees so it could review each "arbitration demand, analyze its compliance with DoorDash's arbitration agreement, and research company records to try to identify the 250 claimants."  *Id.*, Ex. B.  After completing that process, DoorDash did not object to AAA's administrative determination that each claimant had met his or her filing requirements, and it paid the fees necessary for AAA to empanel arbitrators.  *See id.* ¶ 7.

On August 26, 2019, Petitioners' counsel filed demands for arbitration on behalf of 2,250 claimants (the "*Abernathy* claimants").  *Id.* ¶ 8.  On September 27, 2019, Petitioners' counsel filed demands on behalf of 4,000 claimants (the "*Boyd* claimants").  *Id.* ¶ 10.  Each demand was submitted on AAA's demand form, contained each Petitioner's individual information, described each Petitioner's individual claims, and requested individual relief.  *See id.*, Exs. D, F.  Petitioners' counsel paid over $1.2 million in filing fees.  *Id.* ¶ 12.[8]  AAA determined that each Petitioner's demand met AAA's filing requirements.  *Id.* ¶¶ 17, 18.

**C.   DoorDash Fails to Pay the Filing Fees Required by AAA to Empanel Individual Arbitrators, Forcing AAA to Close Petitioners' Arbitrations.**

Once AAA determined that each Petitioner had met his or her filing fee requirements, it confirmed that DoorDash was obligated to pay its corresponding share of filing fees so that AAA could empanel arbitrators.  *See Id.* ¶ 26; Am. Pet., Ex. C § XI.5.c; Commercial Rule 56;

---

[7] DoorDash does not provide Dashers with pay records that track their full hours worked or the miles they drove.  *Id.* ¶ 13. Moreover, DoorDash refused to provide pay records, notwithstanding repeated requests by Petitioners' counsel under California Labor Code § 226, which requires production of such records.  *Id.*  Accordingly, it was not possible for Petitioners to calculate hourly pay net of mileage costs.  *Id.*

[8] This amount reflects the total advanced by Petitioners' counsel for the *Abernathy* and *Boyd* Petitioners combined and further reflects that some Petitioners were granted hardship-based fee waivers by AAA.  *Id.*  AAA refunded Petitioners' fees after DoorDash refused to proceed and AAA administratively closed the arbitrations.

Employment Fee Schedule at 2.  On September 23, 2019, AAA imposed a deadline of October 14, 2019 for DoorDash to pay the fees it owed for the *Abernathy* claimants.  *Id.* ¶ 17.  On October 3, 2019, AAA imposed a deadline of October 24, 2019 for DoorDash to pay the fees it owed for the *Boyd* claimants.  *Id.* ¶ 18.  AAA subsequently extended the deadline for the *Abernathy* claimants to October 28, 2019 and the deadline for the *Boyd* claimants to November 7, 2019.  *Id.* ¶ 20.  Both extensions were at DoorDash's request, so it supposedly could "review" Petitioners' demands and "research company records" to identify Petitioners.  *Id.* ¶¶ 19, 21.  From August 26 to October 27, 2019, DoorDash did not raise a single objection to the sufficiency of Petitioners' demands.  *Id.* ¶ 23.

Rather than comply with AAA's order as it had done with the comparable demands previously filed by 250 Dashers, DoorDash refused to arbitrate Petitioners' claims.  On the night its filing fees were due for the *Abernathy* claimants, DoorDash sent an email to AAA stating it would not pay the fees for the *Abernathy* or *Boyd* claimants because it had identified "significant deficiencies with claimants' filings."  *Id.*, Ex. L.  DoorDash did not describe for AAA any of the purported "deficiencies."  *See id.*  Nor did it identify—to Petitioners or AAA—a single Petitioner who it could not locate in its records.  *See id.*

AAA responded the next day, confirming that it had made "an administrative determination that the minimum filing requirements have been met by Claimants."  *Id.*, Ex. N.  AAA then directed DoorDash that "[i]f Respondent has a specific question regarding information provided, or not provided, by Claimants, please advise in writing by October 31, 2019."  *Id.*  AAA provided one more opportunity for DoorDash to meet its filing fee requirements, stating that "[DoorDash's] fees remain due by November 7, 2019."  *Id.*  On October 31, DoorDash wrote: "In response to your email below, DoorDash does not have any specific questions for AAA regarding Claimants' arbitration demands at this time."  *Id.* ¶ 27, Ex. O.  On November 8, 2019, AAA emailed DoorDash and Petitioners' counsel and confirmed that DoorDash had failed to pay the fees necessary to empanel arbitrators and, "accordingly, [AAA] ha[d] administratively closed [Petitioners'] files." *Id.*, Ex. P.

**D.**     **DoorDash's Counsel Drafts A New Agreement and Advises DoorDash to Send it Directly to Petitioners, in Circumvention of Counsel.**

As Petitioners described in their motion for a Temporary Restraining Order, at the same time DoorDash's attorneys were stalling AAA's payment deadlines, they were hatching a plan to change the rules that would purportedly apply to Petitioners' arbitrations.  DoorDash's outside counsel, Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), contacted CPR, an association where Gibson Dunn is one of the largest donors.  *Id.* ¶ 36.  Gibson Dunn first raised the possibility of a new set of arbitration rules with CPR in May, shortly after it learned that Petitioners' counsel represented a large number of Dashers.  *Id.*  It followed up in mid-September, before DoorDash's filing deadlines at AAA, and urged CPR to quickly create new rules.  *Id.*  Gibson Dunn was actively involved in the review process, including six "substantive phone calls" with CPR about the content of the rules, three of which included in-house counsel at DoorDash.  *Id.*  As DoorDash's deadline approached, Gibson Dunn urged CPR to publish the rules as soon as possible.  *Id.*

On Saturday, November 9—the day after AAA closed Petitioners' files—DoorDash began imposing a new arbitration agreement on Dashers when they reported for work by logging into the DoorDash app.  *Id.* ¶ 32.  The agreement provides that arbitrations shall be governed by the CPR's "Employment-Related Mass-Claims Protocol."  *Id.* ¶ 36.  When a defendant faces more than 30 similar claims" in close proximity one to another," CPR will randomly select 10 "test" arbitrations to proceed, while the remaining claimants' arbitrations are indefinitely stayed.  *Id.*, Ex. T at 2–4.  After those 10 test arbitrations are completed, purportedly within 120 days, the parties—including claimants who have not yet begun arbitration—must mediate their claims for an additional 90 days.  *See id.* at 3–4.  Only then may claimants potentially proceed with their individual arbitrations if the mediation is unsuccessful.  *See id.* at 4.  Those arbitrations "shall proceed in the order determined by the random sequential numbers . . . , with as many proceeding simultaneously as practicable."  *Id.* at 4.  CPR lists only 63 arbitrators as part of its employment panel.  *Id.* ¶ 35, Ex. U.  If every arbitrator were able to decide 10 arbitrations per year in addition to his or her normal case load, a defendant such as DoorDash that is facing thousands of claims would be able to prevent most of them from even <u>beginning</u> arbitration for years.

**E.      DoorDash Misrepresents to Petitioners and the Court That It Cannot Determine If It Has an Agreement to Arbitrate with Petitioners.**

After Petitioners' counsel provided DoorDash with the name, phone number, mailing address, and email address for its clients, *id.* ¶ 38, DoorDash repeatedly told counsel that it had searched its records and a large percentage of clients could not be identified as Dashers, *id.* ¶ 39.

For example, Mr. Lipshutz stated: "As we have discussed with you previously with respect to the [*Abernathy* and *Boyd* claimants], as best we can tell, it seems that approximately 15-20% or more of the claimants have no relationship to DoorDash whatsoever and therefore no basis for seeking arbitration of any claims." *Id.*, Ex. W; *see also id.*, Ex. V (stating that, of the first 250 claimants filed, "dozens of the people on your list cannot be located in our system and do not appear to be Dashers").   Petitioners' counsel repeatedly asked DoorDash to identify those individuals and made clear that counsel (a) would provide supplemental information to help DoorDash identify those individuals and (b) would <u>not</u> pursue claims for any individual who DoorDash showed did not have a valid basis to seek arbitration. *Id.* ¶ 40.   Because every Dasher must sign the ICA, establishing that an individual is a Dasher establishes that she has a right to arbitrate.[9]   Reddish Dec. ¶ 6.   DoorDash refused to confer with Petitioners' counsel to address the issue.

DoorDash's counsel repeated its misrepresentations to this Court.   Responding to the Court's suggestion that DoorDash could have identified Petitioners and their applicable arbitration agreement in its records, Mr. Fogelman stated:

> Mr. Fogelman: I didn't say we couldn't tell with sufficient information.  <u>They didn't give us the information.</u>
> The Court: They gave you the name. Look up Joe Jones and –
> . . . .
> Mr. Fogelman: But how many Joe Joneses are there, and how do I know that's the Joe Jones in our system, if there is one.  We asked for email addresses that they link to their account and <u>were not provided those with these claimants.</u>

---

[9] While a tiny fraction of Dashers submit an opt-out form within 30 days of signing up and avoid arbitration entirely, data provided by DoorDash show that this fraction is less than 0.2%.  *See* Reddish Decl. ¶ 7.   Therefore, showing that an individual is a Dasher establishes a 99.8% chance that she is a party to a valid arbitration agreement.  *See id.*

*Id.*, Ex. II, H'rg Tr. (Nov. 25, 2019) p. 47:5-22 (emphasis added).  The Court then issued an order directing Petitioners to submit supplemental declarations stating the email address they believe to be associated with their Dasher account and the dates during which they worked.[10]  Dkt. No. 50.

In an attempt to avoid formal discovery, DoorDash finally conducted a proper search of its records.  Based on information <u>DoorDash already had in its possession</u>, Keller Decl. ¶ 38.  DoorDash produced data confirming that it was able to locate over 96% of the *Abernathy* and *Boyd* claimants.[11]  Mr. Lipshutz's representation to opposing counsel that "as best we can tell, it seems that approximately 15-20% or more of the claimants have no relationship to DoorDash whatsoever," *id.* ¶ 39, was false.  Mr. Fogelman's representation to the Court that "[w]e asked for email addresses that they link to their account and were not provided those with these claimants," *id.*, Ex. H at 47:5-22, was false.

## F.   DoorDash Works with a Plaintiffs' Firm That Has Not Been Appointed Class Counsel to Pursue a Prohibited Class Action.

DoorDash has spent years successfully compelling misclassification claims to individual arbitration.  But once DoorDash faced a significant number of claims in individual arbitration, DoorDash attempted to enter into a class-wide settlement on behalf of all California and Massachusetts Dashers.  *See* Keller Decl. ¶ 45, Ex. AA, Class Action Settlement Agreement and Release ("Settlement Agreement") § 2.35.  On September 10, 2019, DoorDash conducted a mediation with LLR, who is counsel in *Marciano v. DoorDash*, a PAGA case pending in California state court that had been stayed since December 7, 2018.  *See id.* ¶ 44.  LLR has not

---

[10] 5,010 Petitioners have submitted declarations in the form directed by the Court's Order.  Reddish Decl. ¶ 10, Ex. D.  The remaining Petitioners have not yet signed the declaration, but had already signed a declaration providing some of this information, and are submitting that declaration to the Court.  *Id.* ¶ 10, Ex. F.  As explained below, counsel submits that those declarations, together with discovery obtained from DoorDash, unambiguously establishes the right of each Petitioner to compel arbitration.

[11] Counsel for Petitioners previously provided the information as part of a broader client list.  Keller Decl. ¶ 38.  For DoorDash's convenience, Petitioners' counsel provided a list of the information for only Petitioners following the TRO hearing.  *Id.* ¶ 41.  However, both lists, as well as Petitioners' demands, contained a unique ID number for each Petitioner, making it easy to cross reference Petitioners.  *Id.*; *see, e.g.*, *id.*, Ex. D.  And while a handful of *Abernathy* and *Boyd* claimants were not on the earlier client lists, before this action DoorDash never identified a single individual petitioner as someone for whom it did not have enough information to search its records.  *Id.* ¶ 40.

been appointed by any Court to serve as class counsel in any pending action against DoorDash. *Id.* On November 21, LLR moved for preliminary approval of a "settlement-only" class. *Id.* The motion asks the state court to certify a settlement releasing not only the PAGA claims to which *Marciano* was originally limited, but also the individual claims of all California and Massachusetts Dashers, including Petitioners, whom DoorDash knows are <u>already</u> represented by counsel and have filed individual actions. *Id.* DoorDash and LLR sought approval of a nearly identical settlement agreement in *Rimler v. Postmates*. *Id.* ¶ 46. A California judge has raised a host of "significant concerns" regarding the fairness of that settlement and the degree to which it fails to protect absent class members. *Id.*, Ex. BB. Those concerns apply with equal force here.

Of particular relevance, the proposed settlement class contains a "blow up" provision, under which DoorDash can back out of the deal if more than 1,000 individuals choose to opt out. *Id.*, Ex. AA § 7.9. This creates an inherent conflict of interest for LLR, which can be appointed class counsel and receive attorneys' fees only if it can prevent Petitioners and other absent class members from continuing with their individual actions or otherwise preserving their rights. *Id.* This pecuniary conflict of interest is reflected in numerous terms of the settlement that attempt to restrict class members' ability to opt out of it. First, although the settlement was signed electronically, class members can opt in electronically, and DoorDash conducts most of its business through electronic contracts, the settlement purports to require that opt-out forms "be mailed to the Settlement Administrator" and bear a "<u>physical ('wet ink') signature</u>." *Id.* § 7.1 (emphasis added). Second, the proposed settlement purports to prohibit class members who are represented by counsel from authorizing their counsel to sign an opt-out form on their behalf. *Id.* (valid opt-outs can be signed by a class member or by a "Legally Authorized Representative (who is not the Settlement Class Member's counsel)"). Third, even if a class member personally signs an opt-out form in wet ink, the settlement suggests counsel could not assist a class member in submitting his or her opt-out form. *Id.* ("Requests for exclusions must be <u>exercised individually</u> by the Settlement Class Member (or their Legally Authorized Representative who is not the settlement class member's counsel), even if the settlement class member is represented by counsel." (emphasis added)).

Although the settlement imposes significant obstacles to effectuating a valid opt out, anyone who cannot overcome those obstacles <u>will lose his or her claims and receive nothing</u>. *Id.* § 7.4 (Any class member who fails to opt out will have his or her claims "dismissed with prejudice and released . . . . <u>even if they never received actual notice of the Action or this proposed settlement</u>." (emphasis added)). Finally, while the total settlement amount is $39.5 million, this figure says more about the number of workers whose rights DoorDash has violated than the value each class member will receive. *Id.* ¶ 45. After deducting LLR's proposed fees of $13.2 million, each class member would receive an average of $122 (assuming a 50% participation rate)—less than half of the $300 many Petitioners already paid to file their claims at AAA. *Id.*

## III.   STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4)

This motion presents two primary issues: (1) whether the Court should compel DoorDash to adhere to its arbitration agreement and comply with AAA's administrative determinations regarding the requirements for commencing Petitioners' arbitrations; and (2) whether this Court should, pursuant to California Senate Bill 707, compel arbitration in which DoorDash must pay Petitioners' costs and reasonable attorneys' fees.

## IV.   ARGUMENT

The FAA requires that courts strictly "enforce [arbitration agreements] according to their terms." *Concepcion*, 563 U.S. at 339. As part of that mandate, the FAA codifies the right of a party to specific performance of an arbitration agreement. *See* 9 U.S.C. § 4 (A party to an arbitration agreement who is "aggrieved by the alleged failure" of another party to arbitrate may obtain an "order directing that such arbitration proceed in the manner provided for in such agreement."). Petitioners and DoorDash have entered into valid agreements to arbitrate Petitioners' claims. Those agreements call for administration by AAA under AAA's Commercial Rules. They further require that any arguments about how to apply the arbitration agreements be submitted to the arbitrator—which of course requires the parties to meet AAA's administrative requirements so an arbitrator can be appointed.

Petitioners did everything required of them to commence arbitration under the MAP and AAA's Rules. AAA made an administrative determination that Petitioners had met all their

1    requirements.  AAA further determined that DoorDash was obligated under AAA's Rules to pay

2    its share of the filing fees so Petitioners' arbitrations could commence.  The MAP makes those

3    rules binding on DoorDash.  *See C&L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of*

4    *Okla.*, 532 U.S. 411, 419 n.1 (2001) (when specified by contract, AAA Rules "are not secondary

5    interpretive aides that supplement [the] reading of the contract; they are prescriptions incorporated

6    by the express terms of the agreement itself").  But even though DoorDash has repeatedly enforced

7    its MAP and its delegation clause to avoid facing claims in court, DoorDash now refuses to

8    commence arbitration "in the manner provided for in [its] agreement."  9 U.S.C. § 4.  DoorDash

9    has offered no explanation for refusing to arbitrate other than supposed "deficiencies" with

10   Petitioners' demands.  But in addition to being meritless, such arguments may be resolved only by

11   AAA and the arbitrator; they provide no basis for this Court to decline to compel arbitration.

12          DoorDash's actions make clear that it does not actually support the right of a meaningful

13   number of Dashers to pursue arbitration; rather, it is willing to comply with the MAP it drafted

14   only so long as a small number of Dashers invoke it.  That is not a choice DoorDash's contract

15   and the FAA allow it to make.  This Court should compel DoorDash to arbitrate.  If the Court does

16   so, California law requires that DoorDash be ordered to pay Petitioners' costs and reasonable

17   attorneys' fees in the resulting arbitrations.

18   **A.     The Parties Formed an Arbitration Agreement That Covers the Present Disputes.**

19          The FAA requires courts to compel arbitration where (1) the parties have entered into a

20   valid arbitration agreement, and (2) the agreement covers the dispute.  *See Howsam*, 537 U.S. at

21   83–84.  Where, as here, the parties have delegated questions regarding whether or how the parties

22   must arbitrate, the court need only determine that the parties have entered into a valid arbitration

23   agreement.  *See Schein*, 139 S. Ct. at 530.

24          DoorDash has produced data underlining confirming that every Petitioner is a party to the MAP.  *See*

25   Keller Decl. ¶ 41.  The fact that the parties have entered into a valid arbitration agreement is

26   sufficient by itself to compel arbitration.  *Schein*, 139 S. Ct. at 530.  DoorDash's agreement

27   delegates to the arbitrator any question regarding the application of the arbitration agreement.  *See*

28   Am. Pet., Ex. A § XI.3.  Therefore, any dispute about whether or how the arbitration agreement

1   between DoorDash and Petitioners applies to Petitioners' claims must itself be resolved in

2   arbitration.   Regardless, there also is no dispute that Petitioners' claims are arbitrable: the

3   arbitration agreement explicitly identifies a dispute over a Dashers' "classification as an

4   independent contractor" as one that must be arbitrated.  *Id.* § XI.1.

5   **B.   DoorDash Has Breached the Mutual Arbitration Provision.**

6   AAA made an administrative determination that Petitioners met their filing requirements.

7   *See* Keller Decl. ¶¶ 17, 18.  It further exercised its administrative authority to "require the parties

8   to deposit in advance of any hearings such sums of money as it deems necessary to cover the

9   expense of the arbitration, including the arbitrator's fee."  Commercial Rule 56.  Specifically, it

10  required that DoorDash pay filing fees according to the Employment Arbitration Fee Schedule so

11  it could empanel arbitrators to oversee Petitioners' individual arbitrations.  *See* Keller Decl., Ex.

12  H.  DoorDash refused to comply with AAA's deadlines, causing AAA to administratively close

13  Petitioners' arbitrations.  *See id.*, Ex. P.

14  A party defaults on its obligation to arbitrate when its failure to meet its fee obligations

15  causes the arbitral forum to close the arbitration.  *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1013

16  (9th Cir. 2005); *Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1199–1200 (9th Cir. 2003).  This well-

17  established rule reflects common sense.  Before AAA has closed an arbitration, it retains

18  administrative authority over the parties and will direct them to take the necessary steps to

19  commence arbitration.  *See* Commercial Rule 2.  But after AAA closes an arbitration, AAA will

20  no longer take steps to commence the arbitration.  *See* Keller Decl. ¶ 29, Ex. P (AAA responding

21  to counsel for Postmates, who is also counsel for DoorDash: "Inasmuch as the closed cases are not

22  pending before AAA, we will not consider or respond to any further correspondence on those

23  cases.").

24  **C.   DoorDash Cannot Offer Any Legitimate Justification for Its Refusal to Comply**

25  **With Its Own Arbitration Agreement.**

26  Under the agreement's delegation clause and the AAA Rules, any arguments about

27  Petitioners' compliance with the MAP cannot be decided by this Court and must instead be

28  submitted to an arbitrator.  *See Schein*, 139 S. Ct. at 530 ("Just as a court may not decide a merits

17

question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator."). The issues DoorDash has raised to date provide no basis for refusing to proceed to arbitration. To the contrary, they are simply additional, threshold disputes that DoorDash is obligated to arbitrate.

1.     **DoorDash's Meritless Complaints About "Deficiencies" in Petitioners' Demands Must Be Raised with the Arbitrator.**

In opposing Petitioners' Temporary Restraining Order, DoorDash suggested that Petitioners' demands were deficient because Petitioners provided only a "general copy" of DoorDash's arbitration agreement and failed to state an amount in controversy. Dkt. 35 at 8. Those arguments are not a valid basis for avoiding arbitration.

First, DoorDash never raised those issues with AAA. Not with regard to the first 250 arbitrations filed by Petitioners' counsel with AAA and not with regard to the *Abernathy* or *Boyd* claimants. DoorDash suggested to this Court that AAA failed to give it an opportunity to raise these concerns. *See* Dkt No. 144 ("AAA immediately sent an email stating that Keller Lenkner's arbitration demands were valid, without ever hearing DoorDash's objections to the demands"). That suggestion is risible. DoorDash had from July 2 (when the first 250 demands were filed in the same manner) to October 28 (AAA's deadline for DoorDash to pay its filing fee obligation) to raise these issues. Instead, DoorDash intentionally declined to do so, stating on October 28 only that there were "significant deficiencies" in the demands. *See* Keller Decl. ¶ 24, Ex. L. In response, AAA reiterated its prior conclusion that the demands were sufficient, but invited DoorDash to provide specifics: "If Respondent has a specific question regarding information provided, or not provided, by Claimants, please advise in writing by October 31, 2019." *See id.* ¶ 26, Ex. N. DoorDash then stated, "[i]n response to your email below, DoorDash does not have any specific questions for AAA regarding Claimants' arbitration demands at this time." *See id.* ¶ 27, Ex. O. DoorDash may have refused to specify its objections because it knew AAA does not interpret its rules to require an amount in controversy, and that Petitioners had already provided AAA with information that would allow it to locate the applicable arbitration agreement. Or perhaps DoorDash <u>wanted</u> AAA to close Petitioners' arbitrations so it could send Petitioners the

CPR agreement the next day.  But whatever the reason, DoorDash made a tactical choice not to raise its objections with AAA.  It is stunningly misleading for DoorDash to suggest otherwise.

If DoorDash's arguments were properly before this Court, they would reflect precisely the sort of tactical sandbagging that results in waiver.  Exhibits A and B to the Amended Petition to Compel Arbitration list the amount in controversy and applicable arbitration agreement for each Petitioner.  If DoorDash had raised these issues and AAA had required Petitioners to provide this information, Petitioners would have explained that they had already identified the applicable arbitration agreement and would have supplied an amount in controversy.  DoorDash cannot hide its objections from AAA and then complain that AAA did not make Petitioners address them.

But in all events, under the delegation clause, any arguments about how to apply the requirements of the ICA and AAA Rules must _themselves_ be submitted to an arbitrator, not this Court.  DoorDash must therefore proceed to arbitration, where it can raise its meritless arguments.  DoorDash knows full well that any arguments about "gateway issues" are not an excuse to refuse to arbitrate.  DoorDash has repeatedly made arguments like the following to courts:

> "In such cases, as here, the court only asks (1) whether the parties entered into a valid arbitration agreement and, if so, (2) whether the agreement contains a valid delegation clause.  If so, the agreement must be enforced without further inquiry."

> "The parties' Arbitration Agreement delegates all other issues, including the existence and validity of the Arbitration Agreement and whether it applies to this dispute, to the arbitrator.  Therefore, even if Plaintiff raises issues contesting the enforceability of the Arbitration Agreement, the Court should compel arbitration, in accord with the parties' express and unequivocal agreement that the arbitrator decide such issues."

_Id._, Ex. HH (collecting cases in which DoorDash argued arbitrability must be decided by arbitrator).  Before DoorDash can raise its meritless arguments that Petitioners failed to comply with threshold requirements to arbitrate, it first must comply with its own "antecedent agreement" to submit those arguments to an arbitrator.  _Rent-A-Center_, 561 U.S. at 70.

### 2.   Disagreements Regarding Filing Fees Must be Resolved by AAA.

DoorDash also cannot justify its refusal to arbitrate by attempting to dispute AAA's filing-fee determinations.  Under AAA's rules, which the parties expressly incorporated into their agreement, AAA has the exclusive authority to interpret those rules, subject to subsequent review

in some instances by an arbitrator.  As noted, "[w]hen parties agree to arbitrate under [AAA rules,]" they "thereby authorize the AAA administer the arbitration," Commercial Rule 2.  And where no arbitrator is yet available, the rules "shall be interpreted and applied by the AAA." Commercial Rule 8.  The rules clearly authorize AAA to require a business to submit filing fees in order to appoint an arbitrator.  Commercial Rule 56.  Moreover, the Employment Fee Schedule further provides that "[t]he employer or company's share of filing fees is due as soon as the employee or individual meets his or her filing requirements."  Fee Schedule at 2.  These rules "are not secondary interpretive aides that supplement [the] reading of the contract; they are prescriptions incorporated by the express terms of the agreement itself." *C&L Enters.*, 532 U.S. at 419 n.1.  AAA applied its rules.  And under the plain terms of the parties' contract and AAA Rules, AAA's administrative determination cannot be second-guessed in court.

Where a party disagrees with AAA's administrative determinations, it may be able to submit that disagreement to the arbitrator once he or she is appointed.  What it cannot do, however, is ignore AAA's determination and prevent an arbitral appointment in the first place.  An unbroken line of cases confirms this conclusion.  *See Lifescan*, 363 F.3d at 1011–13 (conclusively deferring to determination of AAA to require fees from party); *see also Pre-Paid Legal Servs. v. Cahill*, 786 F.3d 1287, 1297 (10th Cir. 2015) (holding that a party defaulted on its arbitration agreement when AAA terminated the arbitration due to the party's nonpayment); *Williams v. Tully*, No. C-02-05687-MMC, 2005 WL 645943, at *7 (N.D. Cal. Mar. 18, 2005) ("[T]he AAA . . . ha[s] the authority, under the AAA Rules, to require [parties] to pay certain of the estimated arbitration fees in advance, and to terminate the arbitration when [they] fail[] to do so.").  As the court in *Williams* explained in deferring to AAA's fee determinations, "[o]nce it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator."  2005 WL 645943 at *5.  Where a party refuses to pay filing fees imposed by the arbitral forum required under its arbitration agreement, it has breached that agreement.  *See, e.g.*, *Pre-Paid Legal Servs.*, 786 F.3d at 1294 ("Mr. Cahill breached the arbitration agreement by failing to pay his fees in accordance with AAA rules."); *Brown*, 430 F.3d at 1009–10 ("Dillard's clearly breached the

arbitration agreement" by failing to pay its "share of the filing fee"); *Sink*, 352 F.3d at 1201 ("Aden's failure to pay required costs of arbitration was a material breach of its obligations in connection with the arbitration.").

DoorDash can hardly complain that it is required to arbitrate the question of whether it must arbitrate with Petitioners, as DoorDash has argued for years that its delegation clause requires precisely that result. *See, e.g.*, *Edwards v. DoorDash, Inc.*, No. H–16–2255, 2017 WL 5514302, at *12 (S.D. Tex. Oct. 18, 2017) (requiring the plaintiffs to arbitrate the question of whether they must arbitrate their claims against DoorDash). DoorDash also cannot be heard to complain that the cost of proceeding with individual arbitrations is high. As a court in this district held in a recent case involving the same counsel and the same procedural posture as this matter:

> Postmates expends considerable energy accusing Petitioners of using the cost of the arbitration process as a means of coercing Postmates into settling their claims expeditiously. However, under the Fleet Agreement drafted by Postmates which its couriers are required to sign, Petitioners had no option other than to submit their misclassification claims in the form of an arbitration demand—which is precisely what they did. Since the Fleet Agreement bars class actions, each demand must be submitted on an individual basis. Thus, the possibility that Postmates may now be required to submit a sizeable arbitration fee in response to each individual arbitration demand is a direct result of the mandatory arbitration clause and class action waiver that Postmates has imposed upon each of its couriers.

Keller Decl. ¶ 48, Ex. DD, Order Compelling Arbitration at 7, *Adams v. Postmates Inc.*, No. 4:19-cv-03042-SBA (N.D. Cal. Oct. 22, 2019). Here, too, under the agreement DoorDash drafted, each Petitioner had no option other than to submit her misclassification claims in the form of an individual arbitration demand. And here, too, DoorDash cannot complain about costs that are the direct—and entirely foreseeable—consequence of requiring each courier to bring claims individually in a forum that charges separate filing fees for each arbitration.

**3.     DoorDash Cannot Rely on the CPR Agreement to Avoid Its Obligation to Arbitrate at AAA.**

As of December 22, 2019, 1,820 Petitioners were required to "click through" the CPR Agreement in order to keep driving for DoorDash. Reddish Decl., Exs. B, C. Of those, 1,507 Petitioners submitted a timely opt-out form; 113 Petitioners submitted an untimely opt-out form;

and the remaining 200 Petitioners have not yet submitted an opt-out form.[12]   *Id.* ¶ Ex. C. DoorDash's counsel stipulated to the Court that the CPR Agreement allows any Petitioner who submits a timely opt-out form to retain her right to arbitrate at AAA. Keller Decl., Ex. II, Hr'g Tr. (Nov. 25, 2019) at 51:20–52:2. Accordingly, the 1,507 Petitioners who submitted timely opt-out forms are not subject to the CPR Agreement. The remaining 313 Petitioners also should not be subject to the CPR Agreement, because forcing them to arbitrate under that agreement would be procedurally and substantively unconscionable. As the Court is aware, discovery related to the development of the CPR mass arbitration protocol is ongoing. To the extent DoorDash opposes AAA-administered arbitration for any of the remaining 313 Petitioners on the ground that they are subject to the CPR Agreement, those Petitioners request the opportunity to brief unconscionability once discovery is complete.

### 4. DoorDash Cannot Rely on the Proposed Class Settlement in *Marciano* to Delay or Deny Petitioners' Right to Arbitrate.

At argument on Petitioners' Motion for a Temporary Restraining Order, counsel for DoorDash appeared to suggest that Petitioners' motion to compel arbitration should be stayed because DoorDash now wants to pursue a class action. *See* Keller Decl., Ex. II, Hr'g Tr. at 59:16–60:6, 62:14–63:1. The irony of that suggestion is striking. DoorDash has argued for years that the MAP allows it to compel into individual arbitration any plaintiff who wants to pursue a class proceeding. One can only imagine DoorDash's reaction if a plaintiff had suggested that DoorDash's motion to compel should be stayed while the plaintiff sought class certification. Irony aside, the FAA obviously does not contain an exception to arbitration for parties who wish to pursue a class action. The Supreme Court has held just the opposite. *Concepcion*, 563 U.S. at 347–51. To be sure, DoorDash is always free to offer Petitioners a settlement—whether through a class settlement or directly—and Petitioners could choose to accept it. But as both a legal and a

---

[12] These numbers will change as counsel continues to submit opt-outs for Petitioners. (Counsel offered to provide opt-outs to DoorDash in electronic format for DoorDash's convenience, but DoorDash insisted that opt outs be mailed in hard copy, Keller Decl ¶ 43). Counsel will provide updated numbers to the Court with its reply brief and at any hearing on this motion.

1    practical matter, the fact that DoorDash might eventually offer Petitioners the opportunity to accept

2    a class settlement does not justify denying Petitioners their right to arbitrate without delay.

3    **D.       This Court Should Compel DoorDash to Arbitrate.**

4           Because DoorDash and each Petitioner entered into a valid arbitration agreement covering

5    that Petitioner's underlying wage-and-hour claims, and because DoorDash has breached that

6    agreement, this Court's role is clear:  It should "enforce the arbitration agreement in accordance

7    with its terms," *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000),

8    and issue an "order directing that such arbitration proceed in the manner provided for in such

9    agreement," 9 U.S.C. § 4; *see also Fordjour*, 2008 WL 295092, at *1 ("[T]he terms of the FAA

10   do not allow a district court to exercise its discretion when faced with such a request; rather, the

11   court is required to direct the parties to proceed to arbitration on issues as to which an arbitration

12   agreement has been signed.").

13          The Court should order two remedies to address DoorDash's non-compliance.[13]

14          First, where, as here, a party has refused to comply with AAA's administrative

15   determinations requiring the party to submit fees to commence arbitration, the proper remedy is

16   for the Court to order the party to comply with those determinations.  *Allemeir v. Zyppah, Inc.*, No.

17   18-7437-PA, 2018 WL 6038340, at *1 (C.D. Cal. Sept. 21, 2018), is on all fours with this case.

18   The petitioner in *Allemeir* filed a demand for arbitration with AAA against his former employer,

19   and AAA determined that he had satisfied his filing requirements.  *Id.* at *1.  AAA then ordered

20   the employer to pay its share of the filing fees.  *Id.*  But the employer repeatedly disregarded

21   AAA's requests that the employer pay its share of the filing fees, causing AAA ultimately to close

22   petitioner's arbitration due to the employer's nonpayment.  *Id.* at *1–2.  The district court granted

23   a motion to compel and ordered the employer to proceed with the petitioner's arbitration by

24   "pay[ing] any fees that the AAA allocate[d] to it and . . . comply[ing] with any other requirements

25

_____

26   [13] Petitioners intend to seek leave to file a supplemental brief following discovery (and before any
     hearing on this motion) to demonstrate that DoorDash should not be able to rely on the CPR
27   agreement to avoid arbitration.  To the extent that issue is not ready for decision by the time of the
     hearing on this motion, Petitioners respectfully request that the Court compel arbitration without
     delay as to all Petitioners who have not signed, or have timely opted out of, the CPR agreement
28   and issue a subsequent decision as to the remaining Petitioners.

that the AAA impose[d]." *Id.* at *4; *see also Halloran v. Davis*, No. 2:12-cv-01011-CBM, 2013 WL 12153551, at *3 (C.D. Cal. Aug. 15, 2013) (ordering the parties to "submit their claims to arbitration and pay arbitration fees and costs as required by the rules and procedures of the AAA"). DoorDash breached its contractual obligations by refusing to comply with AAA's administrative requirements to commence arbitrations. This Court should remedy DoorDash's breach by ordering it to comply with AAA's determinations in order to proceed with arbitration.

Second, the Court should award substantive remedies under California contract law, which governs arbitration agreements where, as here, the law furthers rather than undermines enforcement of agreements to arbitrate. *See Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989) ("The FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration."). The California Legislature recently codified and expanded upon the remedies for a breach of an arbitration agreement. *See* S.B. 707, 2019–2020 Reg. Sess. (Cal. 2019), to be codified at Cal. Code Civ. P. § 1281.97.[14] Consistent with traditional contract law, Senate Bill 707 confirms that a party to an arbitration agreement may require specific performance of a breaching party, including an order that the breaching party pay the fees necessary to proceed with arbitration. *Id.*

Senate Bill 707 further provides:

> (a) In an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration administrator, the drafting party to pay certain fees and costs before the arbitration can proceed, if the fees or costs to initiate an arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement . . . .

> (b) If the drafting party materially breaches the arbitration agreement and is in default under subdivision (a), the employee or consumer may . . . :
> > . . . .
> > (2) Compel arbitration in which the drafting party shall pay reasonable attorney's fees and costs related to the arbitration.

Keller Decl., Ex. LL at 6, Senate Bill No. 707.[15]

---

[14] *Available at* http://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201920200SB 707. Senate Bill 707 takes effect on January 1, 2020.

[15] The Bill expressly defines employee to include "any person who is, was, or who claims to have been misclassified as an independent contractor." *Id.* § 1280(f).

1        As stated on its face, Senate Bill 707 requires that an employer who breaches its agreement

2    be compelled to pay the claimant's reasonable attorney's fees and costs related to the arbitration

3    <u>without regard to whether the claimant prevails in the arbitration</u>.

4        The impetus for Senate Bill 707 was precisely the tactic DoorDash employed in this case.

5    As explained in a report by the Senate Judiciary Committee:

6        Recently, a concerning and troubling trend has arisen: employers are refusing to
     pay required fees to initiate arbitration, effectively stymieing the ability of

7    employees to assert their legal rights. For example, . . . [a]s a result of [a ruling
     compelling arbitration], 12,500 drivers for Uber were forced to file individual

8    arbitration demands in order to have their claims heard.  However, very few of these
     driver's cases have proceeded [because Uber failed to pay the required filing fees].

9

10   Keller Decl., Ex. KK at 6–7, California Senate Judiciary Committee Report on Senate Bill 707.

11   The Bill was intended to "deter bad actors" who place employees "in limbo, with no avenue to

12   pursue their legal rights."  Keller Decl., Ex. KK at 8, California Assembly Committee on Judiciary

13   Report on Senate Bill 707 Assembly Report at 8.  This is particularly important where a company's

14   breach blocks wage claims, which are quite "significant to the employee, who may not be able to

15   pay bills, rent or other expenses that could result in the loss of their residence, or damage to their

16   credit rating, while the dispute remains unresolved." *Id.* at 8-9.

17       Applying the text and purpose of this provision produces a clear result in this case.

18   Petitioners brought arbitrations against DoorDash in which "the rules of the arbitration

19   administrator" require DoorDash to "pay certain fees and costs before the arbitration can proceed."

20   Keller Decl., Ex. LL at 6 (quoting language to be codified at Cal. Code Civ. P. § 1281.97).  Because

21   "the fees or costs to initiate an arbitration proceeding [have not been] paid within 30 days after the

22   due date, the drafting party is in material breach of the arbitration agreement." *Id.*  Accordingly,

23   Petitioners have the right to "[c]ompel arbitration in which the drafting party shall pay reasonable

24   attorney's fees and costs related to the arbitration."  This result serves the clear purpose of the

25   statute—to deter DoorDash and other employers from continuing to obstruct the arbitration

26   process that they have used so long to their advantage.

27                         **V.**    **CONCLUSION**

28       For the foregoing reasons, Petitioners' motion to compel arbitration should be granted.

1    Dated: December 23, 2019                          Respectfully submitted,

2                                                       /s/ Ashley Keller
     Keith A. Custis (#218818)                          Ashley Keller (*pro hac vice*)
3        kcustis@custislawpc.com                            ack@kellerlenkner.com
     CUSTIS LAW, P.C.                                    Travis Lenkner (*pro hac vice*)
4    1875 Century Park East, Suite 700                      tdl@kellerlenkner.com
     Los Angeles, California 90067                       Marquel Reddish (*pro hac vice*)
5    (213) 863-4276                                          mpr@kellerlenkner.com
                                                         KELLER LENKNER LLC
6    Justin Griffin (#234675)                            150 N. Riverside Plaza, Suite 4270
         justingriffin@quinnemanuel.com                  Chicago, Illinois 60606
7    QUINN EMANUEL URQUHART                               (312) 741-5220
     & SULLIVAN, LLP
8    865 S. Figueroa St., 10ᵗʰ Floor                     Warren Postman (*pro hac vice*)
     Los Angeles, California 90017                           wdp@kellerlenkner.com
9    213-443-3100                                        KELLER LENKNER LLC
                                                         1300 I Street, N.W., Suite 400E
10   Andrew Schapiro (*pro hac vice forthcoming*)        Washington, D.C. 20005
         andrewschapiro@quinnemanuel.com                 (202) 749-8334
11   QUINN EMANUEL URQUHART
     & SULLIVAN, LLP
12   191 N. Upper Wacker Dr., Suite 2700
     Chicago, IL 60606
13   (312) 705-7472

14   *Attorneys for Petitioners*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

|  |  |
|---|---|
| TERRELL ABERNATHY, et al., | Case Nos.   3:19-cv-07545 |
| *Petitioners*, | 3:19-cv-07646 |
| vs. | **[PROPOSED] ORDER GRANTING** |
|  | **AMENDED MOTION** |
| DOORDASH, INC., | **TO COMPEL ARBITRATION** |
| *Respondent*. |  |
| _____ |  |
| CHRISTINE BOYD, et al., |  |
| *Petitioners*, |  |
| vs. |  |
| DOORDASH, INC., |  |
| *Respondent*. |  |
| _____ |  |

Petitioners moved this Court for an order compelling Respondent DoorDash, Inc. to arbitrate the claims raised in each Petitioner's demand for individual arbitration, filed with the American Arbitration Association ("AAA") pursuant to the parties' contract.  The Court, having considered the motion and supporting papers, any opposition, reply, or other submissions of the parties, counsels' arguments, and any other material properly before the Court, and for good cause shown, hereby grants the petition to compel arbitration and orders as follows:

DoorDash must arbitrate each Petitioner's claims according to the terms of the parties' arbitration agreement, including by complying with AAA's administrative determinations regarding the requirements and deadlines for commencing Petitioners' arbitrations.

DoorDash must pay each Petitioner the costs and reasonable attorneys' fees incurred by that Petitioner in his or her arbitration.

1

2       **IT IS SO ORDERED.**

3

4

5

6       Dated: _____              By:_____

7                                                  Hon. William H. Alsup
                                                    United States District Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28