1   Keith A. Custis (#218818)
      kcustis@custislawpc.com
2   CUSTIS LAW, P.C.
3   1875 Century Park East, Suite 700
    Los Angeles, California 90067
4   (213) 863-4276

5   Justin Griffin (#234675)
      justingriffin@quinnemanuel.com
6   QUINN EMANUEL URQUHART & SULLIVAN, LLP
    865 S. Figueroa St., 10ᵗʰ Floor
7   Los Angeles, California 90017
    (213) 443-3100
8
    Andrew Schapiro (*pro hac vice forthcoming*)
9     andrewschapiro@quinnemanuel.com
    QUINN EMANUEL URQUHART & SULLIVAN, LLP
10  191 N. Upper Wacker Dr., Suite 2700
    Chicago, Illinois 60606
11  (312) 705-7472

12  *Attorneys for Petitioners*

Ashley Keller (*pro hac vice*)
  ack@kellerlenkner.com
Travis Lenkner (*pro hac vice*)
  tdl@kellerlenkner.com
Marquel Reddish (*pro hac vice*)
  mpr@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

Warren Postman (*pro hac vice*)
  wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

13           **UNITED STATES DISTRICT COURT**
14          **NORTHERN DISTRICT OF CALIFORNIA**
             **SAN FRANCISCO DIVISION**

15                                    )
    TERRELL ABERNATHY, et al.,        )   Case Nos.   3:19-cv-07545
16                                    )                3:19-cv-07646
                                      )
17          *Petitioners,*            )   **DECLARATION OF ASHLEY
                                      )   KELLER IN SUPPORT OF
18     vs.                            )   PETITIONERS' AMENDED MOTION
                                      )   TO COMPEL ARBITRATION
19  DOORDASH, INC.,                   )
                                      )   **Judge:**      Hon. William H. Alsup
20          *Respondent.*             )
                                      )
21  ─────────────────────────        )   **Date**:      February 10, 2020
                                      )   **Time:**      2:00 p.m.
22  CHRISTINE BOYD, et al.,           )   **Judge:**     William H. Alsup
                                      )
23          *Petitioners,*            )
                                      )
24     vs.                            )
                                      )
25  DOORDASH, INC.,                   )
                                      )
26                                    )
            *Respondent.*             )
27                                    )
28

                    DECLARATION OF ASHLEY KELLER
            CASE NUMBERS: 3:19-cv-07545 & 3:19-cv-07646

1    I, Ashley Keller, declare based on personal knowledge as follows:

2    1.    I am a Partner at Keller Lenkner LLC, counsel for Petitioners in this matter.

3    2.    I have personal knowledge of the facts stated herein, and if called upon as a witness,

4    I could and would testify competently thereto.

5    3.    This declaration is submitted in support of Petitioners' Amended Motion to Compel

6    Arbitration.

7    4.    On July 2, 2019, Keller Lenkner filed demands for individual arbitration with AAA

8    and DoorDash on behalf of 250 Dashers.  Attached as Exhibit A is a true and correct copy of one

9    of those demands.  With these demands, Keller Lenkner also attached a copy of DoorDash's

10   standard arbitration agreement.

11   5.    AAA determined that those 250 claimants met their filing requirements, and it

12   imposed a deadline of August 6, 2019 for DoorDash to pay its share of the filing fees necessary to

13   empanel arbitrators and proceed with the 250 individual arbitrations.

14   6.    On July 29, 2019, DoorDash requested a two-week extension of AAA's payment

15   deadline so it could review each "arbitration demand, analyze its compliance with DoorDash's

16   arbitration agreement, and research company records to try to identify the 250 claimants who are

17   purportedly asserting claims."  Attached as Exhibit B is a true and correct copy of that email.

18   7.    After completing that process, DoorDash did not raise any objection to AAA's

19   administrative determination that each claimant had met his or her filing requirements, and it paid

20   the fees necessary for AAA to empanel arbitrators.

21   8.    On August 26, 2019, Keller Lenkner filed demands for individual arbitration with

22   AAA and DoorDash on behalf of 2,250 claimants (the "*Abernathy* claimants").  Attached as Exhibit

23   C is a true and correct copy of the email accompanying those arbitration demands.  And attached

24   as Exhibit D is a true and correct copy of one of those arbitration demands.

25   9.    Keller Lenkner promptly satisfied the *Abernathy* claimants' filing-fee obligations.

26   10.   On September 27, 2019, Keller Lenkner filed demands for arbitration on behalf of

27   4,000 claimants (the "*Boyd* claimants").  Attached as Exhibit E is a true and correct copy of the

28   email accompanying those arbitration demands.  And attached as Exhibit F is a true and correct

1    copy of one of those arbitration demands.

2        11.    Keller Lenkner promptly satisfied the *Boyd* claimants' filing-fee obligations.

3        12.    In total, Keller Lenkner paid more than $1.2 million in filing fees on Petitioners'

4    behalf.  This amount reflects that some Petitioners were granted hardship-based fee waivers by

5    AAA.  AAA refunded these fees to Petitioners' counsel after DoorDash refused to proceed and

6    AAA administratively closed Petitioners' arbitrations.

7        13.    Based on Keller Lenkner's review of our clients' Dasher apps, DoorDash does not

8    provide its Dashers with the data necessary to track the number of hours they have worked or the

9    miles they have driven while making DoorDash deliveries.  Keller Lenkner has repeatedly

10   requested, under California Labor Code § 226, that DoorDash provide that data for Dashers

11   represented by Keller Lenkner.  DoorDash has refused to comply with those requests.  Attached as

12   Exhibit G is a true and correct copy of the email chain containing Keller Lenkner's records requests.

13       14.    The demands for arbitration filed on behalf of the *Abernathy* and *Boyd* claimants—

14   and the 250 claimants for whom DoorDash has paid the filing fees required by AAA to commence

15   arbitration—did not state an amount in controversy because the information necessary to accurately

16   calculate that amount is exclusively within DoorDash's control.

17       15.    Based on Keller Lenkner's experience filing thousands demands for arbitration with

18   AAA on behalf of gig-economy couriers in other matters, AAA does not interpret its rules to require

19   an amount in controversy in this situation.

20       16.    Exhibits A and B to the Amended Petition to Compel list an amount in controversy

21   for each Petitioner.  Keller Lenkner calculated that amount in controversy based on each

22   Petitioner's best recollection of his or her DoorDash delivery history, relying on assumptions where

23   necessary.  Without data exclusively within DoorDash's control, each Petitioner's amount in

24   controversy is necessarily an imperfect approximation of that Petitioner's damages.

25       17.    On September 23, 2019, AAA sent an email to DoorDash's outside counsel (i)

26   confirming that each of the *Abernathy* claimants' demands met AAA's filing requirements, and (ii)

27   setting October 14, 2019, as the deadline for DoorDash to pay the filing fees necessary to empanel

28   arbitrators and commence those claimants' arbitrations.  Attached as Exhibit H is a true and correct

1  copy of that email.

2      18.    On October 3, 2019, AAA sent an email to DoorDash's outside counsel (i)

3  confirming that each of the *Boyd* claimants' demands met AAA's filing requirements, and (ii)

4  setting October 24, 2019, as the deadline for DoorDash to pay the filing fees necessary to empanel

5  arbitrations and commence those claimants' arbitrations.  Attached as Exhibit I is a true and correct

6  copy of one of those arbitration demands.

7      19.    On October 7, 2019, DoorDash's outside counsel requested a 30-day extension of

8  AAA's payment deadline for the *Abernathy* claimants so counsel could review each "arbitration

9  demand, analyze its compliance with DoorDash's arbitration agreement, and research company

10  records to try to identify the 2,250 claimants who are purportedly asserting claims."  Attached as

11  Exhibit J is a true and correct copy of that email.

12      20.    AAA granted DoorDash an extension to October 28, 2019.

13      21.    On October 16, 2019, DoorDash's outside counsel requested a 14-day extension of

14  AAA's payment deadline for the *Boyd* claimants so counsel could review each "arbitration demand,

15  analyze its compliance with DoorDash's arbitration agreement, and research company records to

16  try to identify the 4,000 claimants who are purportedly asserting claims."  Attached as Exhibit K is

17  a true and correct copy of that email.

18      22.    AAA granted DoorDash an extension to November 7, 2019.

19      23.    From August 26, 2019 to October 27, 2019, DoorDash did not raise a single

20  objection to the sufficiency of Petitioners' demands, to either AAA or Keller Lenkner.

21      24.    On the evening of October 28, 2019, the day DoorDash's filing fees were due for

22  the *Abernathy* claimants, DoorDash's outside counsel sent an email to AAA stating that DoorDash

23  would not pay the filing fees that AAA had determined were necessary to proceed with arbitration

24  for both the *Abernathy* and *Boyd* claimants because, according to counsel, there were "significant

25  deficiencies with the claimants' filings, rendering the demands insufficient to launch arbitration

26  under the DoorDash Independent Contractor Agreement, as well as AAA's own rules."  Attached

27  as Exhibit L is a true and correct copy of that email.

28      25.    On October 29, 2019, Keller Lenkner emailed DoorDash's outside counsel and

1    AAA, noted that Petitioners' demands were comparable to the 250 demands DoorDash had

2    previously acknowledged were non-frivolous, and requested that AAA schedule an administrative

3    call to discuss DoorDash's objections further.  Attached as Exhibit M is a true and correct copy of

4    that email.

5         26.    That same day, AAA sent an email to the parties rejecting DoorDash's objection.

6    AAA stated that it had made "an administrative determination that the minimum filing requirements

7    have been met by [Petitioners]."  It provided a final deadline of November 7, 2019 for DoorDash

8    to pay the filing fees required to empanel arbitrators for Petitioners' arbitrations.  And it stated that

9    if the fees were not paid by that deadline,"the AAA will decline to administer these cases and the

10   files will be closed."  AAA further noted that "[i]f Respondent has a specific question regarding

11   information provided, or not provided, by Claimants, please advise in writing by October 31, 2019."

12   Attached as Exhibit N is a true and correct copy of that email.

13        27.    On October 31, 2019, DoorDash sent an email to AAA stating that it "[i]n response

14   to your email below, DoorDash does not have any specific questions for AAA regarding Claimants'

15   arbitration demands at this time."  Attached as Exhibit O is a true and correct copy of that email.

16        28.    DoorDash did not pay the filing fees necessary to proceed with a single Petitioner's

17   arbitration.

18        29.    On November 8, 2019, AAA sent an email to the parties' counsel (i) confirming that

19   DoorDash had failed to pay the fees required to proceed with Petitioners' arbitrations, and

20   (ii) stating that AAA had "administratively closed [Petitioners'] files" due to DoorDash's lack of

21   payment.  Attached as Exhibit P is a true and correct copy of AAA's November 8, 2019 email.

22        30.    On November 13, 2019, Keller Lenkner became aware that DoorDash may be

23   issuing a revised arbitration agreement to couriers who it knew were represented by Keller Lenkner

24   and were pursuing arbitration against it.

25        31.    That same day Keller Lenkner sent an email to DoorDash's outside counsel, Gibson,

26   Dunn & Crutcher LLP ("Gibson Dunn"), reminding them of their obligations under California Rule

27   of Professional Conduct 4.2(a).  Attached as Exhibit Q is a true and correct copy of that email.

28        32.    On November 14, 2019, Gibson Dunn confirmed, via email, that DoorDash had

1    issued the revised arbitration agreement beginning on November 9, 2019.  Attached as Exhibit R

2    is a true and correct copy of that email.

3            33.     Before November 14, 2019, DoorDash had not notified Keller Lenkner that it was

4    sending Keller Lenkner's clients a revised agreement, despite DoorDash's outside counsel having

5    exchanged several emails and participated in a phone discussion with Keller Lenkner over the

6    previous week.  Attached as Exhibit S is a true and correct copy of DoorDash's revised arbitration

7    agreement.

8            34.     The new agreement replaces AAA with the International Institute for Conflict

9    Prevention and Resolution ("CPR"), as the arbitration organization designated to administer

10   arbitrations between DoorDash and Dashers.  The new agreement further states that, where

11   applicable, Dashers' arbitrations shall be governed by CPR's Employment-Related Mass-Claims

12   Protocol.  Attached as Exhibit T is a true and correct copy of that protocol.

13           35.     CPR only appears to have 63 arbitrators on its "employment panel."  Attached as

14   Exhibit U is the list of CPR arbitrators on that panel.  Keller Lenkner's staff generated the exhibit

15   by (i) logging into CPR's website at https://www.cpradr.org/neutrals/find-a-neutral, (ii) selecting

16   the filters shown in the exhibit, (iii) copying the data generated by the website into the exhibit, and

17   (iv) numbering the arbitrators in the exhibit for clarity.

18           36.     On December 2, 2019, Keller Lenkner served a subpoena on CPR.  From meet and

19   confer negotiations with CPR's counsel regarding the subpoena, information posted on CPR's

20   website, and filings with this Court, Keller Lenkner has learned the following information about

21   Gibson Dunn's involvement with CPR generally, and the assistance they provided in creating the

22   Employment-Related Mass-Claims Protocol more specifically:

23           •       Gibson Dunn is listed on CPR's website as one of the organization's largest donors.

24           •       According to Gibson Dunn's filing with this Court, *see* Dkt. No. 144, Gibson Dunn

25                   first raised the possibility of a new set of arbitration rules with CPR in May 2019.

26                   This contact occurred not long after DoorDash was informed by Petitioners' counsel

27                   that counsel represented a large number of Dashers who were planning to file

28                   arbitration demands against DoorDash.

1

2

3

- In mid-September, after Keller Lenkner filed demands for arbitration on behalf of the *Abernathy* claimants, Gibson Dunn again followed up with CPR and urged it to quickly create new rules.

4

5

6

7

- By Gibson Dunn's own admission, *see* Dkt. No. 144, Gibson Dunn was actively involved in reviewing and providing feedback on CPR's new rules, including by participating in six "substantive phone calls" with CPR about the content of the new rules. Three of those calls involved DoorDash's inhouse counsel.

8      37.    Keller Lenkner reserves the right, on behalf of Petitioners, to supplement this

9   information after conducting further discovery and deposing CPR's witness in the coming weeks.

10      38.    In the course of requesting its clients' pay records under California Labor Code §

11   226, Keller Lenkner has provided DoorDash rolling lists of its clients' names, mailing addresses,

12   personal email addresses, and unique ID numbers.  Keller Lenkner sent DoorDash client lists

13   containing this information on March 28, 2019, April 15, 2019 (over 900 Petitioners), July 18, 2019

14   (over 1,600 additional Petitioners), August 12, 2019 (over 2,000 additional Petitioners), and

15   October 10, 2019 (over 1,200 additional Petitioners).  The most recent list contained the name,

16   phone number, mailing address, and personal email address of 99.7% of the original list of

17   Petitioners filed in *Abernathy* and *Boyd*.[1]  *See generally* Ex. G.

18      39.    Despite having that information for nearly all Petitioners and more than 10,000

19   additional Dashers represented by Keller Lenkner, Gibson Dunn has repeatedly told Keller Lenkner

20   that DoorDash searched its records and a large number of Keller Lenkner clients could not be

21   identified as Dashers.  For example, on July 11, 2019, in response to the demands filed by the 250

22   claimants mentioned above, DoorDash stated that "dozens of the people on your list cannot be

23   located in [DoorDash's] system and do not appear to be Dashers."  Attached as Exhibit V is a true

24   and correct copy of that email.  Likewise, on November 14, 2019, DoorDash again claimed that it

25   was unable to find a sizable percentage of claimants: "As we have discussed with you previously

26   with respect to the [*Abernathy* and *Boyd* claimants], as best we can tell, it seems that approximately

27

28
---
[1] 16 original Petitioners, 8 from *Abernathy* and 8 from *Boyd*, do not appear to have been included in Keller Lenkner's October 10 records request.

1    15-20% or more of the claimants have no relationship to DoorDash whatsoever and therefore no

2    basis for seeking arbitration of any claims." Attached as Exhibit W is a true and correct copy of

3    that email.

4          40.     In response to these types of claims from DoorDash, Keller Lenkner repeatedly

5    asked DoorDash to identify these individuals, and made clear that we (i) would provide

6    supplemental information to help DoorDash identify those individuals and (ii) would not pursue

7    claims for any individual whom DoorDash showed did not have a valid basis to seek arbitration.

8    Before Petitioners filed this action, DoorDash refused to identify a signel Keller Lenkner client

9    who it could not identify in its records. Attached as Exhibits X and Y are true and correct copies

10   of emails making these requests.

11         41.     On December 4, 2019, after the Court had ordered DoorDash to search its records,

12   Keller Lenkner provided DoorDash with a list of *Abernathy* and *Boyd* claimants that contained

13   those claiments' names, mailing addresses, personal email addresses, and unique ID numbers—the

14   same information Keller Lenkner previously provided in its records requests. DoorDash produced

15   data for that list of claimants confirming that it was able to locate over 96% of the claimants, based

16   on the information that Keller Lenkner had previously provided. DoorDash's production further

17   confirmed that the Petitioners covered by the Amended Petition and Motion to Compel (i) have

18   made deliveries for DoorDash; and (ii) have not opted out of arbitration.

19         42.     While Keller Lenkner contends that substantially all of the remaining *Abernathy* and

20   *Boyd* claimants have valid claims against DoorDash that DoorDash must arbitrate, Keller Lenkner

21   has not included those claimants in the Amended Petition and Motion to Compel, so that the parties

22   may meet and confer further about their claims. Keller Lenkner is providing additional information

23   to DoorDash so that it can locate those claimants in its system. Keller Lenkner has also identified

24   errors in DoorDash's search process—for example, DoorDash failed to identify Dashers based on

25   email addresses that counsel subsequently confirmed are associated with DoorDash accounts, and

26   DoorDash stated it was confident that a Dasher had not performed any deliveries for DoorDash

27   when the Dasher provided incontrovertible proof that he had.

28         43.     Counsel for Petitioners offered to provide opt-outs to DoorDash in electronic format

1    for DoorDash's convenience, but DoorDash insisted that opt-outs be mailed in hard copy.

2    44.    According to court filings, DoorDash recently agreed to a class-wide settlement on

3    behalf of all California and Massachusetts Dashers, in *Marciano v. DoorDash, Inc.*, No. CGC-18-

4    567869 (San. Fran. Sup. Ct. 2018). *Marciano* originally raised only PAGA claims, and the case

5    had been stayed since December 7, 2018. The settlement agreement was reached after Gibson

6    Dunn and the law firm representing the *Marciano* plaintiff, Lichten & Liss-Riordan, P.C. ("LLR"),

7    conducted a mediation on September 10, 2019. To my knowledge, LLR has not been appointed by

8    any Court to serve as class counsel in any pending action against DoorDash. LLR filed a motion

9    for preliminary approval on November 21, 2019.

10    45.    The *Marciano* settlement seeks to release the claims of approximately 419,000

11    California and Massachusetts Dashers for $39.5 million. After deducting LLR's proposed fees of

12    $13.2 million, each class member would receive an average of $122 (assuming a 50% participate

13    rate), less than half of the $300 many Petitioners paid to file their arbitration demands. The motion

14    for preliminary approval asks the state court to certify a settlement that would allow LLR to

15    communicate settlement offers to all California and Massachusetts Dashers, including Petitioners.

16    Attached as Exhibit Z is a true and correct copy of the Motion for Preliminary Approval in

17    *Marciano*. Attached as Exhibit AA is a true and correct copy of the Class Action Settlement

18    Agreement and Release.

19    46.    The same law firms involved in the *Marciano* settlement—LLR and Gibson Dunn—

20    recently drafted a nearly identical settlement agreement in *Rimler v. Postmates, Inc.*, No. CGC-18-

21    567868 (San. Fran. Sup. Ct. Nov. 22, 2019). A California judge has already raised a host of

22    "significant concerns" regarding the fairness of that settlement and the degree to which it fails to

23    protect the interests of absent class members. Attached as Exhibit BB is a true and correct copy of

24    the Tentative Ruling Re Motion for Preliminary Approval of Class Settlement in *Rimler*.

25    47.    Gibson Dunn also represents Postmates in arbitrations brought by Keller Lenkner

26    on behalf of Postmates couriers, before AAA. In a recent email regarding those arbitrations, AAA

27    made clear that after it closes arbitrations it will no longer take steps to commence arbitration.

28    However, AAA also confirmed that, if a respondent pays the filing fees owed to commence

1   arbitration after the arbitration has been closed, and if the claimant consents to reopen the

2   arbitration, AAA will reopen and move forward with the arbitration.  Attached as Exhibit CC is a

3   true and correct copy of that email.

4           48.     Attached as Exhibit DD is a true and correct copy of the order compelling arbitration

5   in *Adams v. Postmates Inc.*, No. 4:19-cv-03042-SBA (N.D. Cal. Oct. 22, 2019).

6           49.     Attached as Exhibit EE is a true and correct copy of DoorDash's Motion to Compel

7   Arbitration in *Mckay v. DoorDash, Inc.*, No. 3:19-cv-04289-MMC (N.D. Cal. Aug. 12, 2019).

8           50.     Attached as Exhibit FF is a true and correct copy of DoorDash's Motion to Compel

9   Arbitration in *Magana v. DoorDash, Inc.*, No. 4:18-cv-03395-PJH (N.D. Cal. July 12, 2018).

10          51.     Attached as Exhibit GG is a true and correct copy of DoorDash's Motion to Compel

11  Arbitration in *Arkin v. DoorDash, Inc.*, No. 1:19-cv-4357-NGG-RER (E.D.N.Y. Nov. 27, 2019).

12          52.     Attached as Exhibit HH is a chart listing cases in which DoorDash filed a motion to

13  compel arbitration, along with select quotations from DoorDash's motions.

14          53.     Attached as Exhibit II is a true and correct copy of the transcript of the TRO

15  proceedings that were held on November 25, 2019.

16          54.     Attached as Exhibit JJ is a true and correct copy of California Senate Bill 707.

17          55.     Attached as Exhibit KK is a true and correct copy of the California Senate Judiciary

18  Committee's  Report on Senate Bill 707.

19          56.     Attached as Exhibit LL is a true and correct copy of the California Assembly

20  Committee on Judiciary's Report on Senate Bill 707.

21

22  I affirm that the foregoing is true under penalty of perjury under the laws of the United States.

23

24  Signed on December 23, 2019 in Chicago, Illinois

25                                                          /s/ Ashley Keller
                                                            Ashley Keller
26

27

28