Keith A. Custis (#218818)
  kcustis@custislawpc.com
CUSTIS LAW, P.C.
1875 Century Park East, Suite 700
Los Angeles, California 90067
(213) 863-4276

Justin Griffin (#234675)
  justingriffin@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
(213) 443-3100

Andrew Schapiro (*pro hac vice forthcoming*)
  andrewschapiro@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
191 N. Upper Wacker Dr., Suite 2700
Chicago, Illinois 60606
(312) 705-7472

Ashley Keller (*pro hac vice*)
  ack@kellerlenkner.com
Travis Lenkner (*pro hac vice*)
  tdl@kellerlenkner.com
Marquel Reddish (*pro hac vice*)
  mpr@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

Warren Postman (*pro hac vice*)
  wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

*Attorneys for Petitioners*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| TERRELL ABERNATHY, et al.,<br><br>    *Petitioners,*<br><br>vs.<br><br>DOORDASH, INC.,<br><br>    *Respondent.* | Case Nos. 3:19-cv-07545<br>3:19-cv-07646<br><br>**DECLARATION OF AARON ZIGLER IN SUPPORT OF PETITIONERS' REPLY IN SUPPORT OF AMENDED MOTION TO COMPEL ARBITRATION**<br><br>**Judge:** Hon. William H. Alsup |
| CHRISTINE BOYD, et al.,<br><br>    *Petitioners,*<br><br>vs.<br><br>DOORDASH, INC.,<br><br>    *Respondent.* | **Date:** February 10, 2020<br>**Time:** 2:00 p.m.<br>**Judge:** William H. Alsup |

2 of 27

I, Aaron M. Zigler, declare based on personal knowledge as follows:

1.    I certify that the statements made in this instrument are true and correct. I make the following statement based upon my own personal knowledge and if called upon as a witness, I could and would testify competently thereto.

2.    I am a lawyer first admitted to practice in 2001. I am currently admitted to practice in the highest courts of the States of Missouri, Illinois, New York and California; the Second, Seventh and Ninth Federal Circuit Courts of Appeal; and in several Federal district courts, including the Northern District of California.

3.    I am a Partner at Keller Lenkner LLC, counsel for Petitioners in this matter.

4.    This declaration is submitted in support of Petitioners' Amended Motion to Compel Arbitration.

5.    Following this Court's November 25, 2019 hearing and the issuance of Petitioners' subpoena, I was tasked with obtaining relevant discovery from International Institute for Conflict Prevention and Resolution, Inc., the arbitral forum designated in DoorDash's new arbitration agreement and known as CPR. This assignment included participating in efforts to resolve CPR's objections to Petitioners' subpoena, as well as preparing for and taking the deposition of CPR's President and CEO, Allen Waxman.

6.    On December 24, 2019, CPR produced 513 pages of documents reflecting or concerning its discussions with Gibson, Dunn & Crutcher LLP and DoorDash about the Employment-Related Mass Claims Protocol. On December 26, 2019, CPR produced an additional 17 pages of documents. CPR designated each of these documents "confidential" under the Protective Order in this case. I personally reviewed each of these documents in preparing for Mr. Waxman's deposition.

7.    On December 27, 2019, I took the deposition of CPR CEO Allen Waxman in New York at the office of his counsel. Mr. Waxman was represented by Kimberly Lunetta, Samantha Padilla, and Sara DeStefano of Morgan, Lewis & Bockius, LLP and Anna Hershenberg of CPR. DoorDash was represented at the deposition by Jesenka Mrdjenovic of Gibson Dunn. A copy of the transcript of Mr. Waxman's deposition is attached as Exhibit O to the Declaration of Joshua

1   Lipshutz, ECF No. 157-5.

2      8.   ████████████████████████████████████

3   ████████████████████████████████████████████

4   ████████████████████████████████████████████

5   ██████████

6      9.   As CPR's CEO Allen Waxman testified during his deposition: "Gibson Dunn had

7   reached out to us and raised an issue that they had in particular relating to [arbitration] fees.  We

8   responded by developing a protocol and welcomed their input on the protocol from a practical

9   application standpoint."  Waxman Dep. Tr. at 119:17-21.

10     10.   CPR is an ADR provider that has historically focused on business-to-business

11   disputes.  It holds itself out as the "leading independent resource helping business and their lawyers

12   resolve disputes more efficiently."  Tr. 14:22-15:20.

13     11.   On March 20, 2019, Keller Lenkner notified DoorDash that it represented over

14   3,000 clients who intended to pursue misclassification claims in arbitration before with AAA.

15     12.   Shortly thereafter, Michael Holecek of Gibson Dunn reached out to CPR ██████

16   ████████████████  May 17, 2019 Corr. from H.  Erickson to N.  Hanft, CPR_000007, attached

17   to this Declaration as Exhibit A.  Helena Erickson, Senior VP of CPR, ██████████  Mr.

18   Holecek's call, ████████████████████████████████████████████████

19   █████████  *Id.* She █████████████  Mr. Holecek's ████████████████

20   ████████████████████████████████████████████████

21   ████████████████████████████████████████████████

22   ██████  *Id.*

23     13.   Nothing happened until Mr. Holecek reached out again in September—three weeks

24   after Petitioners had filed 2,500 arbitration demands against DoorDash with AAA.

25     14.   Mr. Holecek called Ms.  Erickson ████████████████████████████

26   ████████████████████████████████████████████████

27   ██████  Sept.  18, 2019 Corr. from M. Holecek to H.  Erickson, CPR_000009, attached to this

28   Declaration as Exhibit B.

15.     Ms. Erickson ██████████████████████████████████████
██████ Sept. 18, 2019 Corr. from H.  Erickson to A. Waxman, CPR_000012, attached to this Declaration as Exhibit C.

16.     They spoke again two days later, with Mr. Holecek ███████████████
███████████████████████████████████████████████████████████████
██████████████████. Sept. 20, 2019 Corr. from H.  Erickson to A. Waxman, CPR_000050, attached to this Declaration as Exhibit D.

17.     The next business day, Mr. Holecek was on the phone with Mr. Waxman discussing the misclassification claims against DoorDash. Tr. 125:6-129:6.  By that Friday, Ms. Erickson ███ ██████████████ Mr. Holecek ███████████████████████████ Sept. 27, 2019 Corr. from H. Erickson to A. Waxman, CPR_000514 attached to this Declaration as Exhibit E; Tr. at 251:24-252:04.

18.     The next week, Mr.  Waxman ████████████████████████████████
██████████████████████████████████ Oct. 2, 2019 Corr. from A. Waxman to T. Sabatino and J. Kiernan, CPR_000087, attached to this Declaration as Exhibit F; Tr. 133:23-134:12.  Mr. Waxman ██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
████████████████████████ *Id.*  Mr. Waxman ███████████████ Gibson Dunn ███████
██████████████████████████████████████████████████████████████ Gibson Dunn ████████████████████████ Tr. at 216:06-217:06.

19.     That Sunday night, Mr. Waxman ██████████████████ Mr. Holecek ████████
██████████████████████████████████████████████████████████████
███████████████ Mr. Waxman wrote: ███████████████████████████████████
██████████████████████████████████████████████████████████████ Oct. 6, 2019, Corr. from A. Waxman to M. Holecek, CPR_000107, attached to this Declaration as Exhibit G.

20.     The next day Mr. Waxman and Ms. Erikson were on the phone with Greg Farano, Head of Litigation for DoorDash, and Mr. Holecek to discuss their concerns about CPR's draft protocol. Tr. 170:06-14.  The following Monday morning, CPR ████████████████

1    [REDACTED] Mr. Holecek that Mr. Waxman [REDACTED]

2    [REDACTED] Oct. 14, 2019 Corr. from A. Waxman to M. Holecek, CPR_000189, attached to this

3    Declaration as Exhibit H.  The next day, Mr. Holecek [REDACTED] Oct. 15, 2019 Corr.

4    from M. Holecek to A. Waxman, CPR_000198, attached to this Declaration as Exhibit I.  According

5    to DoorDash, Gibson Dunn participated in six substantive calls with CPR regarding the protocol,

6    three of which included DoorDash's in-house counsel.  ECF No. 144 at 5.

7        21.    The following week, Mr. Waxman [REDACTED] Mr.

8    Holecek and Josh Lipshutz of Gibson Dunn and Mr. Farano of DoorDash, stating:

9    [REDACTED]

10   [REDACTED]

11   [REDACTED]

12   Oct. 24, 2019 Corr. from A. Waxman to M. Holecek, CPR_000222, attached to this Declaration as

13   Exhibit J.

14       22.    [REDACTED] *See, e.g.*, Oct. 28, 2019 Corr.

15   from A. Waxman to M. Holecek, CPR_000247 attached to this Declaration as Exhibit K; Oct. 29,

16   2019 Corr. from A. Waxman to M. Holecek, CPR_000259 attached to this Declaration as Exhibit

17   L; October 30, 2019 Corr. from A. Waxman to M. Holecek, CPR_000277 attached to this

18   Declaration as Exhibit M.

19       23.    Despite DoorDash's and Gibson Dunn's active participation in the drafting of the

20   protocol, CPR did not discuss the protocol at any point with any lawyer representing drivers

21   asserting misclassification claims. Tr. at 111:11-112:15; 115:09-15.

22       24.    Towards the end of the month Gibson Dunn and DoorDash [REDACTED]

23   [REDACTED]

24   [REDACTED]

25       25.    On October 28, 2019—the day of DoorDash's final deadline to pay filing fees to

26   AAA for 2,250 demands—Mr. Holecek emailed AAA to state that DoorDash would not pay the

27   filing fees necessary for any Petitioners' demands to proceed.  The next day, October 29, 2019, Mr.

28   Waxman [REDACTED]

1   ██████████████████████████████████████████████████████████████

2   ███████████████████████████████████ Oct. 29, 2019 Corr. from A. Waxman to T. Sabatino and J.

3   Kiernan, CPR_000255 attached to this Declaration as Exhibit N.

4          26.     That evening, however, AAA extended DoorDash's fee deadline to November 7,

5   2019; the following Thursday.  Mr. Holecek then, ████████████████████████████ Mr.

6   Waxman ███████████████████████████████████████████████████████████████

7   ████████ Oct. 30, 2019 Corr. from M. Holecek to A. Waxman, CPR_000291, attached to this

8   Declaration as Exhibit O.

9          27.    ████████████████████████████████████████████

10   ██████████████████████████████   ████████████████████████

11   ████████████████████ Oct. 31, 2019 Corr. from A. Waxman to M. Holecek,

12   CPR_000297, attached to this Declaration as Exhibit P; Tr. 220:23-221:1; 229:24-230:3.   On

13   October 31, 2019, Mr. Farano wrote to Mr. Waxman ██████████████████████████

14   ████████ Oct. 31, 2019 Corr. from G. Farano to A. Waxman, CPR_000303, attached to this

15   Declaration as Exhibit Q.  On November 4, 2019, Mr. Waxman notified Mr. Holecek that ████

16   ███████████████████████ Nov. 4, 2019 Corr. from A. Waxman to M. Holecek, CPR_000310,

17   attached to this Declaration as Exhibit R.

18          28.     On November 8, 2019, AAA administratively closed Petitioners' files due to

19   DoorDash's failure to pay the required filing fees.  ECF No. 151 at 10.  The very next day—a

20   Saturday—DoorDash rolled out its new arbitration agreement to Dashers, including Petitioners,

21   when they reported for work by logging into the DoorDash app.  *Id.* at 11.  This new agreement

22   requires Dashers to arbitrate under CPR's Employment-Related Mass Claims Protocol.  *Id.*

23          29.     Although the discovery from CPR tells a compelling story of how and why the Mass

24   Claims Protocol was created, there are still questions that are unanswered.

25          30.     During his deposition, Mr. Waxman refused to answer a number of questions on the

26   advice of counsel.  For example, I asked Mr. Waxman to identify other parties who commented on

27   the protocol and Mr. Waxman refused to answer on the advice of counsel. Tr. at 156:20-22; 187:17-

28   192:20; 194:8-195:5; 206:12-25.

DECLARATION OF AARON M.  ZIGLER
CASE NUMBERS: 3:19-cv-07545 & 3:19-cv-07646

31.     I asked Mr. Waxman about the availability of the neutrals available to CPR, to understand CPR's capability to handle a large volume of claims.  Mr. Waxman refused to answer on the advice of counsel.  Tr. at 55:21-57:15.

32.     I asked Mr. Waxman how the Mass Claim Protocol's expected fee structure would impact CPR's revenue.  Mr. Waxman refused to answer on the advice of counsel.  Tr. 232:15-23.

33.     I asked Mr. Waxman to confirm CPR's descriptions of the subject areas of its arbitrations and the identities of its major donors, listed on its 2019 "Annual Review."  Mr. Waxman refused to answer on the advice of counsel.  Tr. 62:2-65:3.

34.     Although CPR's website and Annual Review tout Gibson Dunn as a donor, Mr. Waxman also refused to answer on the advice of counsel questions concerning the amount of money paid to CPR by Gibson Dunn or DoorDash.  Tr. at 65:4-24.

35.     I asked Mr. Waxman to describe the other Rules, Protocols or Guidance he had worked on at CPR, to understand whether the Employment-Related Mass Claims Protocol was consistent with CPR's prior practices.  Mr. Waxman refused to answer on the advice of counsel. Tr. at 34:16-36:20.

36.     I asked Mr. Waxman to describe the process that was followed the last time CPR modified its arbitration Rules.  Tr. 43:3-43:16.  Mr. Waxman refused to answer on the advice of counsel.  Tr. 43:17-22.

37.     Mr. Waxman also refused to answer on the advice of counsel questions concerning how long prior CPR processes took to develop, who was involved in developing those processes, and who advocated for any changes.  Tr. 44:19-47:9.

38.     I asked Mr. Waxman to describe his employment history, to lay a foundation for questions concerning CPR's interest in a "book of business."  Tr. 47:1249:9.  Mr. Waxman refused to answer on the advice of counsel.  *Id.*

39.     I pressed Mr. Waxman's counsel to explain the basis for her instructions not to answer, in an effort to resolve our dispute.  Tr. 78:25-81:15.  We took a break in the deposition, and I sought to determine if the Court could be reached to resolve the dispute.  Upon consulting the Court's website I learned that the Court was unavailable that day.

40.     Mr. Waxman refused to answer on the advice of counsel any questions concerning actions taken after the November 4, 2019 launch of the Mass Claims Protocol.  This included questions concerning additional conversations with Gibson Dunn or DoorDash, Tr. 241:16-242:8, Judge Scheindlin's involvement as the newly announced head of arbitrations subject to the Protocol, Tr. 248:2-21, and any other businesses that may have adopted CPR's Mass Claims Protocol, Tr. 249:18-250:13.

41.     Mr. Waxman also testified that he did not remember Keller Lenkner "coming up" when CPR was creating the Mass Claims Protocol.  Tr. at 253:24-254:06.

42.     Following my review of Mr. Waxman's transcript, I reached out to his counsel in a further attempt to resolve our discovery dispute.  I proposed that Petitioners would agree not to seek to compel further discovery if CPR would produce: 1) documents sufficient to show the amount of all payments from Gibson Dunn and DoorDash to CPR since 2017; 2) all drafts of the Mass Claims Protocol; 3) all documents reflecting invitations to comment or comments on the protocol; 4) all documents (*e.g.* forwards and replies) relating to CPR_303; the email from Mr. Farano ███████████████████; 5) all documents (*e.g.* forwards and replies) relating to CPR_310; the email ███████████████████████████; and 6) all documents mentioning Ashley Keller, Travis Lenkner, Warren Postman or Keller Lenkner.

43.     In the course of those discussions, it because clear that responsive documents created after November 4, 2019 had not been produced.  I requested production of those documents.

44.     Although Ms. Lunetta agreed to produce documents that reflect communications between CPR, Gibson Dunn, and DoorDash; and communications internally that reflect conversations with DoorDash or Gibson Dunn regarding the protocol after November 4, 2019, she refused to produce communications with anyone other than Gibson Dunn and DoorDash.  She would not produce all drafts of the protocol.  She would not produce additional comments on the protocol. Jan 19, 2020 Corr. from K.  Lunetta to A. Zigler, attached to this Declaration as Exhibit. S.

45.     As of the execution of this declaration, no additional documents from CPR have been produced.

DECLARATION OF AARON M.  ZIGLER
CASE NUMBERS: 3:19-cv-07545 & 3:19-cv-07646

1    I affirm that the foregoing is true under penalty of perjury.

2

3    Signed on January 23, 2020.

4                                                          /s/ Aaron M.  Zigler
5                                                          Aaron M.  Zigler

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF AARON M.  ZIGLER
CASE NUMBERS: 3:19-cv-07545 & 3:19-cv-07646

# Exhibit A
# DOCUMENT FILED UNDER SEAL

# Exhibit B

# DOCUMENT FILED UNDER SEAL

# Exhibit C

# DOCUMENT FILED UNDER SEAL

# Exhibit D

# DOCUMENT FILED UNDER SEAL

# Exhibit E

# DOCUMENT FILED UNDER SEAL

# Exhibit F

# DOCUMENT FILED UNDER SEAL

# Exhibit G

# DOCUMENT FILED UNDER SEAL

# Exhibit H

# DOCUMENT FILED UNDER SEAL

# Exhibit I
# DOCUMENT FILED UNDER SEAL

# Exhibit J

# DOCUMENT FILED UNDER SEAL

# Exhibit K

# DOCUMENT FILED UNDER SEAL

# Exhibit L

# DOCUMENT FILED UNDER SEAL

# Exhibit M

# DOCUMENT FILED UNDER SEAL

# Exhibit N

# DOCUMENT FILED UNDER SEAL

# Exhibit O

# DOCUMENT

# FILED

# UNDER

# SEAL

# Exhibit P

# DOCUMENT FILED UNDER SEAL

# Exhibit Q

# DOCUMENT FILED UNDER SEAL

# Exhibit R
# DOCUMENT FILED UNDER SEAL