Keith A. Custis (#218818)
    kcustis@custislawpc.com
CUSTIS LAW, P.C.
1875 Century Park East, Suite 700
Los Angeles, California 90067
(213) 863-4276

Justin Griffin (#234675)
    justingriffin@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
(213) 443-3100

Andrew Schapiro (*pro hac vice*)
    andrewschapiro@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
191 N. Upper Wacker Dr., Suite 2700
Chicago, Illinois 60606
(312) 705-7472

Ashley Keller (*pro hac vice*)
    ack@kellerlenkner.com
Travis Lenkner (*pro hac vice*)
    tdl@kellerlenkner.com
Marquel Reddish (*pro hac vice*)
    mpr@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

Warren Postman (*pro hac vice*)
    wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

*Attorneys for Petitioners*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

|  |  |
|---|---|
| TERRELL ABERNATHY, et al., | Case Nos.   3:19-cv-07545 |
| *Petitioners*, | 3:19-cv-07646 |
| vs. | **PETITIONERS' OPPOSITION TO DOORDASH, INC.'S MOTION TO STAY PROCEEDINGS** |
| DOORDASH, INC., | |
| *Respondent*. | **Date**:       February 10, 2020 |
| | **Time**:      2:00 p.m. |
| | **Judge**:     Hon. William H. Alsup |
| CHRISTINE BOYD, et al., | |
| *Petitioners*, | |
| vs. | |
| DOORDASH, INC., | |
| *Respondent*. | |

1

## <u>TABLE OF CONTENTS</u>

2

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 3

STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4) ..................................... 6

ARGUMENT ....................................................................................................... 6

    A.    The FAA Requires That DoorDash Be Compelled to Arbitrate Without Delay, and That Cannot Be Overridden by Appeals to the Efficiency of Class Actions.. 8

    B.    Petitioners Would Suffer Substantial Damage From Having Their Already-Delayed Arbitrations Indefinitely Stayed. ........................................................... 10

    C.    No Hardship or Inequity Will Result From Denying a Stay. ............................. 12

    D.    Staying This Matter Will Not Serve the "Orderly Course of Justice." ............... 15

CONCLUSION ................................................................................................... 17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                                                   **PAGE(s)**

*Abernathy v. S. Cal. Edison*,
   885 F.2d 525 (9th Cir. 1989) .................................................................................................14

*Advanced Internet Techs., Inc. v. Google, Inc.*,
   Nos. C-05-02579-RMW & C-05-02885-RMW, 2006 WL 889477 (N.D. Cal.
   April 5, 2006)...................................................................................................................9, 10

*Alila-Katita v. U.S. Bank Nat'l Ass'n*,
   No. 16-CV-03950-JSW, 2017 WL 8948735 (N.D. Cal. May 2, 2017) ...................................16

*Arch Ins. Co. v. Mitchell Eng'g Co.*,
   No. C 10-04558 CW, 2011 WL 240735 (N.D. Cal. Jan. 24, 2011)........................................16

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011)................................................................................................................6

*Bernstein v. Virgin Am., Inc.*,
   No. 15-CV-02277-JST, 2018 WL 3349183 (N.D. Cal. July 9, 2018)....................................17

*Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*,
   490 F.3d 718 (9th Cir. 2007) ................................................................................................10

*Bushley v. Credit Suisse First Boston*,
   360 F.3d 1149 (9th Cir. 2004) .............................................................................................1, 2

*Camping Constr. Co. v. Dist. Council of Iron Workers*,
   915 F.2d 1333 (9th Cir. 1990) ..............................................................................................14

*Casserly v. Power Balance*, LLC,
   No. 11-cv-00670-AG, 2011 WL 13220130 (C.D. Cal. June 13, 2011)............................16, 17

*In re Cintas Corp. Overtime Pay Arbitration Litig.*,
   No. C06-1781-SBA, 2009 WL 1766595 (N.D. Cal. June 22, 2009)..............................2, 8, 14

*Clark v. Am. Residential Servs. LLC*,
   175 Cal. App. 4th 785 (2009) ...............................................................................................16

*Clinton v. Jones*,
   520 U.S. 681 (1997)................................................................................................................7

*CSNK Working Capital Fin. Corp. v. Next Creation Holdings*,
   No. 17-CV-00305-HRL, 2017 WL 3310678 (N.D. Cal. Aug. 3, 2017) .................................14

| | |
|---|---|
| 1 | **CASES (cont.)**                                                             **PAGE(s)** |

*Dean Witter Reynolds, Inc. v. Byrd,*
   470 U.S. 213 (1985) ................................................................................................8

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.,*
   498 F.3d 1059 (9th Cir. 2007) ...............................................................................11

*Divxnetworks, Inc. v. Gericom AG,*
   No. 04CV2537 WQHWMC, 2007 WL 4538623 (S.D. Cal. Dec. 19, 2007).........15

*Dunk v. Ford Motor Co.,*
   48 Cal. App. 4th 1794 (1996) ................................................................................16

*Dynamex v. Superior Court,*
   4 Cal. 5th 903 (2018), *reh'g denied* (June 20, 2018) .............................................5

*Fordjour v. Wash. Mut. Bank,*
   No. 07-cv-1446-MMC (PR), 2008 WL 295092 (N.D. Cal. Feb. 1, 2008) .....................1, 8, 16

*Graphic Commc'ns. Union, Chi. Paper Handlers' & Electrotypers' Local No. 2 v.*
   *Chi. Tribune Co.,*
   779 F.2d 13 (7th Cir. 1985) ....................................................................................9

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) .................................................................................9

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
   139 S. Ct. 524 (2019) ..............................................................................................6

*Howsam v. Dean Witter Reynolds, Inc.,*
   537 U.S. 79 (2002) ................................................................................................15

*Iowa Utilities Board v. FCC,*
   109 F.3d 418 (8th Cir. 1996) ................................................................................14

*Jian Guo v. ZTO Express (Cayman) Inc.,*
   No. 17-CV-05357-JST, 2017 WL 6547746 (N.D. Cal. Dec. 22, 2017) ................10

*Jones v. Travelers Cas. Ins. Co. of Am.,*
   No. 13-CV-02390-LHK, 2013 WL 4511648 (N.D. Cal. Aug. 22, 2013)...............12

*K.H.B. by & through K.D.B. v. UnitedHealthcare Ins. Co.,*
   No. C 18-04175 WHA, 2018 WL 4913666 (N.D. Cal. Oct. 10, 2018) .................12

*Leyva v. Certified Grocers of Cal., Ltd.,*
   593 F.2d 857 (9th Cir. 1979) ...........................................................................7, 11

1

**CASES (cont.)**                                                                                    **PAGE(s)**

2

3
*Lockyer v. Mirant,*
398 F.3d 1098 (9th Cir. 2005) .................................................................7, 12, 13, 14

4
*Marvel Enters., Inc. v. Walt Disney Co.,*
No. 04-cv-9000, 2006 WL 8433948 (C.D. Cal. Oct. 3, 2006) ...................................8

5

6
*Meras Eng'g, Inc. v. CH2O, Inc.,*
No. C-11-0389 EMC, 2013 WL 146341 (N.D. Cal. Jan. 14, 2013) .........................10

7

8
*Moses H. Cone Mem. Hospital v. Mercury Constr. Corp.,*
460 U.S. 1 (1983)...............................................................................................1, 2, 8

9
*PaineWebber Inc. v. Farnam,*
843 F.2d 1050 (7th Cir. 1988) ...........................................................................9, 15

10

11
*Pascal v. Concentra, Inc.,*
No. 19-CV-02559-JCS, 2019 WL 5458282 (N.D. Cal. Oct. 24, 2019)...................10

12

13
*Perron v. Hewlett-Packard Co.,*
No. 10-CV-00695-LHK, 2011 WL 1344221 (N.D. Cal. Apr. 8, 2011) ..................11

14
*Pieterson v. Wells Fargo v. Bank, N.A.,*
No. 17-cv-02306-EDL, 2019 WL 1466963 (N.D. Cal. Feb. 14, 2019)...................16

15

16
*In re Piper Funds, Inc., Inst. Gov't Income Portfolio Litig.,*
71 F.3d 298 (8th Cir. 1995) ...........................................................................1, 2, 9, 12

17

18
*Preston v. Ferrer,*
552 U.S. 346 (2008)...............................................................................................9

19
*Rego v. Am. Honda Motor Co.,*
No. 12-cv-01193-VAP, 2012 WL 12953740 (C.D. Cal. Sept. 20, 2012)...............16

20

21
*Sandpiper Vill. Condo. Ass'n, Inc. v. La-Pac. Corp.,*
428 F.3d 831 (9th Cir. 2005) ...............................................................................9

22

23
*VIA Techs., Inc. v. ASUS Computer Int'l.,*
No. 14-CV-03586-BLF, 2015 WL 13427794 (N.D. Cal. Dec. 4, 2015) .................16

**STATUTES**

24

25
9 U.S.C. § 3.......................................................................................................2

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

The Federal Arbitration Act ("FAA") requires courts to enforce agreements to arbitrate according to their terms.  If a valid, binding arbitration clause specifies individual arbitration, a court must compel individual arbitration.  "[T]he terms of the FAA do not allow a district court to exercise its discretion when faced with such a request." *Fordjour v. Wash. Mut. Bank*, No. 07-cv-1446-MMC (PR), 2008 WL 295092, at *1 (N.D. Cal. Feb. 1, 2008).  Courts must "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1153 (9th Cir. 2004) (internal quotation marks omitted).  And the FAA's statutory command cannot be cast aside based on policy arguments about the efficiency of class actions or the costs of duplicative proceedings. *See In re Piper Funds, Inc., Inst. Gov't Income Portfolio Litig.*, 71 F.3d 298, 303 (8th Cir. 1995) (holding that the "statutory right to arbitrate may not be sacrificed on the altar of efficient class action management"); *Moses H. Cone Mem. Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983) (The FAA "requires piecemeal resolution when necessary to give effect to an arbitration agreement.").

Once upon a time, these arguments were DoorDash's stock in trade.  For years, the company defeated claims on behalf of its large (and growing) group of couriers by asserting its contractual right to individual arbitration.  As DoorDash repeatedly reminded courts, it does not matter that a class action may be the most efficient way to resolve such disputes; it does not matter how strong plaintiffs' case is on the merits; and it does not matter that many Dashers, absent a class, may never pursue individual arbitration, and thus may never receive redress for their meritorious claims. *See, e.g.,* Keller Decl. Ex. HH, Dkt. 152-34.  Agreements to arbitrate must be quickly enforced according to their terms.

Petitioners heeded the lessons DoorDash taught.  They are thousands of Dashers who have followed DoorDash's contract to the letter: they seek individual arbitration as required by the parties' valid and enforceable arbitration clause.  The FAA entitles them to that relief. *See* Dkt. 151 at 15–23; Dkt. 164 at 3–8.  But DoorDash apparently is willing to arbitrate only when a small number of Dashers invoke their contractual rights.  Now, as DoorDash faces thousands of demands

for arbitration—which is the obvious consequence of injuring hundreds of thousands of people who have no recourse in court—it refuses to honor its contract.  It prefers instead to resolve Petitioners' claims for a song (and perhaps less than that) through a contractually forbidden class-action settlement.  The *Marciano* deal—which was negotiated on the quick, with a law firm that has never been appointed by any court to represent the putative class—would give many Petitioners less than half of what they paid in arbitration filing fees.  And it purports to eliminate their right to arbitrate without their affirmative consent.  Absent class members who do not take action to accept the deal would see their claims extinguished for no consideration.  The class settlement has not been granted preliminary approval—indeed, it has not even been set for a hearing.  It is woefully inadequate.  And it is riddled with procedural deficiencies.  Yet DoorDash now claims that Petitioners' unambiguous right to compel arbitration should be placed on indefinite hold so they can be forced to participate in a class action they have a contractual right to avoid.  DoorDash's unabashed hypocrisy is as stunning as it is lawless.

A party aggrieved by another's refusal to arbitrate according to contract has a right to speedy resort to the arbitral forum.  *Bushley*, 360 F.3d at 1153; *In re Cintas Corp. Overtime Pay Arbitration Litig.*, No. C06-1781-SBA, 2009 WL 1766595, at *5 (N.D. Cal. June 22, 2009) (declining to stay arbitration because it would be "antithetical to the spirit and intent of the arbitration process").  It is litigation that must be stayed in favor of arbitration, not arbitration that must be stayed in favor of litigation.  *See* 9 U.S.C. § 3; *In re Piper Funds, Inc.*, 71 F.3d at 303; *Moses H. Cone*, 460 U.S. at 20.  DoorDash has not cited, and Petitioners are not aware of, a single case in which a party who was entitled to compel arbitration nonetheless was denied relief because the court speculated that she might later choose to participate in a class-action settlement.  Just the opposite is so.  The FAA requires that DoorDash be compelled to arbitrate without delay, and it does not allow Petitioners' right to prompt arbitration to be balanced against the efficient management of a class action.  That is especially so here, where enforcing the arbitration agreement according to its terms requires respect for the parties' mutual promise not even to participate in a class proceeding.  *See* Ex. E to Am. Pet. To Compel Arbitration § XI.3, ECF No. 150-4 (Mutual Arbitration Provision: "CONTRACTOR and DOORDASH mutually agree that . . .

2

both waive their right to have any dispute or claim brought, heard, or arbitrated as, or <u>to participate in</u>, a class action." (emphases added)); *see also* Keller Decl., Ex. II, Tr. at 29:22–23, ECF No. 152-35 (The Court, responding to Doordash's suggestion that the case should be stayed pending *Marciano*: "There is no class. You've got a class action waiver."). DoorDash is unambiguously breaching its arbitration agreement by attempting to convert the *Marciano* case into a classwide resolution of Petitioners' claims. It cannot now use its breach of contract to stall Petitioners' motion to compel, which seeks to remedy DoorDash's <u>separate</u> breach for failure to arbitrate.

Even putting the FAA to one side, the conventional stay factors do not support the relief DoorDash seeks. First, the indefinite stay DoorDash requests would inflict serious harms on Petitioners. Many Petitioners are low-income workers who have been fighting for the better part of a year merely to gain access to arbitration, which is the only forum that can require DoorDash to pay them the minimum wages required by law. DoorDash's bid for delay would continue effectively to deny the protection of the labor laws to people living paycheck to paycheck. That would not just inflict a grave injury; it would be cruel. Second, DoorDash cannot establish any hardship or inequity from proceeding apace. The purported injuries of which it complains either are not injuries at all (i.e., being forced to comply with its contractual promises) or are highly speculative, contradicted by the record, and foreclosed as a matter of law. Third, a stay would not serve the "orderly course of justice" because the *Marciano* court's approval of the proposed settlement (if it ever occurs) would not simplify any of the distinct legal and factual issues this Court faces in deciding Petitioners' fully briefed motion to compel arbitration.

This stay motion is the latest step in DoorDash's tireless campaign to deny Petitioners' contractual and statutory rights to prompt resolution of their claims. This Court should put a stop to DoorDash's tactics by denying its motion to stay and granting Petitioners' motion to compel.

## BACKGROUND[1]

In March 2019, Petitioners' counsel notified DoorDash that it represented thousands of clients who intended to pursue individual arbitrations. *See* Postman Decl. in Supp. of Pet'r's Opp'n ("Postman Decl.") ¶ 5. On September 10, 2019, after months of stalling individual arbitrations at

---

[1] Because this Court is familiar with the factual background, Petitioners highlight only the most salient facts here.

AAA, DoorDash secretly participated in mediation with plaintiffs' counsel in *Marciano*, Lichten & Liss-Riordan, P.C. ("LLR").  *See* Dkt. 151 at 13.  At the time, *Marciano* involved only PAGA claims, and it had been stayed since December 2018.  *See id*.  LLR had not been appointed—and still has not been appointed—by any court to represent the class of Dashers implicated in *Marciano*.  *See id.* at 14.  But at their secret meeting, DoorDash and LLR agreed to pursue a "settlement-only class" that seeks to release not only PAGA claims, but also the individual claims of all California and Massachusetts Dashers—including Petitioners, whom DoorDash knew were already represented by counsel and had filed individual arbitration demands.  *Id*.

Putting aside that DoorDash has violated the Mutual Arbitration Provision simply by participating in the current *Marciano* class proceedings, the proposed settlement it concocted with LLR suffers from numerous deficiencies.  First among them, the class contains a "blow up" provision under which DoorDash can back out of the deal if more than 1,000 individuals choose to opt out of it.  Keller Decl., Ex. AA § 7.9, ECF No. 152-27.  That creates an inherent conflict of interest for LLR, which can be appointed class counsel and receive attorneys' fees only if it can prevent Petitioners and other absent class members from opting out and continuing with their individual actions.  *See id*.  This pecuniary conflict of interest is reflected in numerous terms of the settlement that attempt to restrict class members' ability to opt out.  For example, although the settlement was signed electronically, class members can opt in electronically, and DoorDash conducts most of its business through electronic contracts, the proposed settlement would require that opt-out forms "be mailed to the Settlement Administrator" and bear a "physical ('wet ink') signature."  *Id.* § 7.1 (emphasis added).  The proposed settlement also purports to prohibit class members who are represented by counsel from authorizing their counsel to sign opt-out forms on their behalf.  *Id*. (opt-outs can be signed only by a class member or by a "Legally Authorized Representative (who is not the Settlement Class Member's counsel)").  The settlement goes so far as to prohibit counsel even to assist a class member in submitting his or her opt-out form to ensure it is valid.  *Id.* ("Requests for exclusions must be exercised individually by the Settlement Class Member (or their Legally Authorized Representative who is not the settlement class member's counsel), even if the settlement class member is represented by counsel." (emphasis added)).

1    Anyone who cannot overcome those significant obstacles to effectuating a valid opt-out

2    will lose his or her claims and receive nothing.  *Id.* § 7.4 (Any class member who fails to opt out

3    will have his or her claims "dismissed with prejudice and released . . . <u>even if they never received

4    actual notice of the Action or this proposed settlement</u>." (emphasis added)).  Although the total

5    settlement amount is $39.5 million, that figure says more about the number of workers whose

6    rights DoorDash has violated than the value each class member would receive.  *See* Keller Decl.

7    ¶ 45, ECF No. 152.  After deducting LLR's proposed fees of $13.2 million, service awards, PAGA

8    fees, and administration fees, each participating class member would receive an average of $122

9    (assuming a 50% participation rate)—less than half of the $300 many Petitioners had to pay simply

10   to file their claims at AAA.  *Id.*  Non-responsive class members would receive nothing, but they

11   would still have their claims extinguished.  The consideration in *Marciano* is so woefully

12   inadequate that it is <u>less</u> on a per-Dasher basis than a prior class settlement between the same

13   parties (Cynthia Marciano and DoorDash) negotiated by the same lawyers (LLR and Gibson, Dunn

14   & Crutcher LLP) <u>before</u> the California Supreme Court's decision in *Dynamex v. Superior Court*

15   (2018) 4 Cal. 5th 903, 961, *reh'g denied* (June 20, 2018), which made Dashers' claims inarguably

16   stronger.  *See* Postman Decl., Ex. B at 15.  To use this Court's words, the proposed *Marciano*

17   settlement is the very definition of a "sweetheart deal."  Keller Decl., Ex. II, Tr. at 58:23–24, ECF

18   No. 152-35.

19   DoorDash's lawyers and LLR are seeking approval of a nearly identical settlement

20   agreement in *Rimler v. Postmates*.  *See* Keller Decl. ¶ 46, ECF No. 152.  But a California judge

21   scrapped the initial preliminary approval hearing and issued a lengthy order that raised a host of

22   significant concerns regarding the fairness of that settlement and its lack of protections for absent

23   class members.  *See id.*, Ex. BB.  In fact, the *Marciano* settlement is one of at least three nearly

24   identical proposed class settlements that LLR and Gibson Dunn negotiated within a few months—

25   all for the benefit of defendants who face a large number of individual arbitrations filed by

26   Petitioners' counsel.  *See* Postman Decl. ¶ 6.  Indeed, the third of these proposed settlements,

27   involving the delivery service Caviar, appears to have been negotiated as part of the same

28

1    meditation that led to the *Marciano* deal.[2] *See id.*

2        Several Petitioners in this action have sought to intervene in *Marciano* and objected to the

3    proposed settlement on a number of grounds.  *See* Postman Decl. ¶ 9; *id.*, Ex. B .  Those Petitioners

4    are not alone; other putative class members have raised a host of strong, substantive objections to

5    the proposed settlement.  *See id*, Exs. C–E.  The *Marciano* plaintiffs' motion for preliminary

6    approval was set to be heard on January 30, 2020.  *See id.*, Ex. A.   But on January 24, 2020, the

7    state court vacated the hearing because it determined that the parties had failed to designate the

8    case as complex.  *Id.*  The court stated that it would "issue a further scheduling order once the

9    matter has been reassigned to the Complex Civil Litigation Department of this Court."  *Id.*  As of

10   this filing, no scheduling order has been entered.  *Id.* ¶ 8.

11                **STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4)**

12        Whether the Court should deny DoorDash's request to stay this action for an indefinite

13   period of time where granting such a stay would conflict with the FAA and where each

14   conventional stay factor tips heavily against granting a stay.

15                            **ARGUMENT**

16        DoorDash has not come close to proving that a stay is warranted.  Federal law is clear:

17   courts must promptly enforce agreements to arbitrate according to their terms.  That result cannot

18   be denied through recourse to policy arguments about judicial efficiency or the superiority of class

19   actions.  The Supreme Court has reaffirmed this principle time after time, often at the behest of

20   companies such as DoorDash.  *See, e.g.*, *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S.

21   Ct. 524, 529 (2019); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  Particularly

22   where an arbitration clause forbids participation in class proceedings, a stay pending class

23   proceedings would be anathema to the FAA.  It would disregard the terms of the parties' contract,

24   favor class over individual proceedings, and allow resort to arbitration, if at all, haltingly rather

25   than expeditiously.  That would flout decades of the Supreme Court's FAA jurisprudence, as

26   _____

27   [2] The timing of these settlements—and the fact that LLR had not yet been appointed class counsel
     when it negotiated them—is concerning by itself.  But the fact that LLR negotiated settlements in
28   the same mediation on behalf of two separate classes that it did not represent is particularly
     alarming, as it creates a high risk that the interests of one class could have been traded off against
     the interests of the other.

1    DoorDash knows all too well.

2         The result is the same under the traditional stay factors.  A party seeking a stay bears the

3    burden of proof.  *See Clinton v. Jones*, 520 U.S. 681, 708 (1997).  In considering a stay request,

4    courts weigh: (1) "the possible damage which may result from the granting of a stay"; (2) "the

5    hardship or inequity which a party may suffer in being required to go forward"; and (3) "the orderly

6    course of justice measured in terms of simplifying or complicating of issues, proof, and questions

7    of law which could be expected to result from a stay."  *Lockyer v. Mirant*, 398 F.3d 1098, 1110

8    (9th Cir. 2005).  Because there is "a fair possibility that the stay . . . will work damage to someone

9    else," DoorDash faces the heightened standard of proving "a clear case of hardship or inequity.*"

10   Id.* at 1112 (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (2005)) (emphasis added).  And

11   because DoorDash invokes a separate proceeding as the basis for requesting the stay, a "stay should

12   not be granted unless it appears likely the other proceedings will be concluded within a reasonable

13   time in relation to the urgency of the claims presented to the court."  *Leyva v. Certified Grocers of*

14   *Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979).

15        All of those factors cut strongly against granting a stay.  First, Petitioners will suffer

16   substantial damage from having this matter stayed indefinitely, whereas DoorDash will not suffer

17   any legally cognizable harm.  Second, DoorDash has not shown and cannot show that being held

18   to its own contract would impose "hardship or inequity," let alone a "clear case" of either.  It is

19   black-letter law that being a litigant does not constitute "hardship or inequity," and paying the

20   costs associated with arbitration does not constitute "irreparable harm."  Finally, the "orderly

21   course of justice" cuts against DoorDash.  If a settlement is ever approved in *Marciano*, it would

22   be in the indefinite future.  Even assuming a settlement is eventually approved (which is far from

23   certain), it is unlikely that a meaningful number of Petitioners would choose to participate in a

24   settlement that offers them less on average than their arbitration filing fees and fails to provide the

25   injunctive relief they seek in arbitration.  In any event, the speculative possibility that a class might

26   someday be approved will not simplify the "issues, proof, and questions of law" that face this

27   Court in deciding Petitioners' fully briefed motion to compel.

28

**A.      The FAA Requires That DoorDash Be Compelled to Arbitrate Without Delay, and That Cannot Be Overridden by Appeals to the Efficiency of Class Actions.**

As DoorDash itself has argued, the FAA prescribes a narrow role for courts in enforcing agreements to arbitrate:

> In such cases, as here, the court <u>only</u> asks (1) whether the parties entered into a valid arbitration agreement and, if so, (2) whether the agreement contains a valid delegation clause.  If so, <u>the agreement must be enforced without further inquiry</u>.

Keller Decl. Ex. HH, Dkt. 152-34 (first emphasis in original) (internal quotation marks omitted); *see also Fordjour*, 2008 WL 295092, at * 1 ("The terms of the FAA do not allow a district court to exercise its discretion when faced with such a request; rather, the court is required to direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."). Moreover, the right to arbitrate includes the right to proceed to arbitration <u>quickly</u>.  As part of that right, Congress intended that courts would "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."  *Moses H. Cone*, 460 U.S. at 22; *see also In re Cintas Corp. Overtime Pay Arbitration Litig.*, 2009 WL 1766595, at *5.

The structure of the FAA reflects these principles.  Where a controversy contains some issues that must be arbitrated and other issues that need not be arbitrated, the FAA requires that courts stay the litigation in favor of the arbitration.  *See e.g.*, *Marvel Enters., Inc. v. Walt Disney Co.*, No. 04-cv-9000, 2006 WL 8433948, at *2 (C.D. Cal. Oct. 3, 2006) ("The FAA compels district courts to stay litigation of any matter within the scope of an arbitration agreement until arbitration is completed." (citing 9 U.S.C. § 3)).  And the Supreme Court long ago established that a court commits reversible error if it stays arbitration because it believes it will be more efficient to resolve a non-arbitrable controversy first.  *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221–24, (1985).  In other words, in a situation where simultaneously litigating in court and in arbitration might be inefficient, the FAA requires that the arbitration proceed <u>first</u>.  That is true even where the claims in court belong in court.  It follows *a fortiori* where, as here, the court proceeding is a class action that is expressly prohibited by an arbitration agreement.

DoorDash's request—that the Court indefinitely deny Petitioners their right to arbitrate because it ostensibly would be more efficient to resolve Petitioners' claims in a class action—turns

the FAA on its head.  The Mutual Arbitration Provision indisputably requires DoorDash to arbitrate Petitioners' misclassification claims and forbids them to participate in class proceedings. Staying this matter in favor of class proceedings would subvert the FAA's command that arbitration agreements be enforced as written, and it would allow DoorDash to continue flouting its contractual obligation to arbitrate because it has suddenly discovered the efficiency of class proceedings.  *See In re Piper Funds, Inc.*, 71 F.3d at 303 (holding that a class member's "contractual and statutory right to arbitrate may not be sacrificed on the altar of efficient class action management.").

Moreover, a stay would further rob Petitioners of the speed and efficiency that arbitration is supposed to provide.  *See Preston v. Ferrer*, 552 U.S. 346, 357 (2008) ("A prime objective of an agreement to arbitrate is to achieve streamlined proceedings and expeditious results." (internal quotation marks omitted)); *PaineWebber Inc. v. Farnam*, 843 F.2d 1050, 1052–53 (7th Cir. 1988) (denying request to stay arbitration pending appeal and noting that "arbitration . . . is supposed to be a speedy and inexpensive alternative to litigation . . . . [A]rbitration is neither quick nor cheap when one party litigates to the gills."); *see also Graphic Commc'ns. Union, Chi. Paper Handlers' & Electrotypers' Local No. 2 v. Chi. Tribune Co.,* 779 F.2d 13, 15 (7th Cir. 1985) (denying request to stay arbitration pending appeal and noting that "[a]rbitration is supposed to be swift.  It will not be swift if orders to arbitrate are routinely stayed pending appeals from those orders."). Indefinitely staying the Court's decision on the fully-briefed motion to compel arbitration would disregard these well-established principles.

DoorDash argues that "[f]ederal courts regularly stay actions when an overlapping settlement agreement is subject to approval by a state court."  Dkt. 158 at 3.  But the cases DoorDash cites in support involved either: (1) a federal court's enjoining a parallel state court class action that would interfere with the federal court's jurisdiction of an earlier-approved class-action settlement, *see Sandpiper Vill. Condo. Ass'n, Inc. v. La-Pac. Corp.*, 428 F.3d 831, 845 (9th Cir. 2005) (describing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)); or (2) a federal court's staying its own action in deference to a more advanced class proceeding involving the same legal and factual issues, *see, e.g., Advanced Internet Techs., Inc. v. Google, Inc.*, Nos. C-05-02579-

1   RMW & C-05-02885-RMW, 2006 WL 889477 (N.D. Cal. April 5, 2006).  The reasons for staying

2   one judicial action on the merits in favor of another judicial action on the merits are wholly

3   inapplicable here.  Courts often wield inherent or statutory discretion to consider the strong interest

4   in judicial economy, which in turn may support a stay.  But they have no such discretion under the

5   FAA.  A valid and binding arbitration clause must be enforced according to its terms, whatever

6   the efficiency costs.  DoorDash's cases do nothing to combat this fundamental tenet of federal law.

7       **B.      Petitioners Would Suffer Substantial Damage From Having Their Already-**

8                 **Delayed Arbitrations Indefinitely Stayed.**

9           Each Petitioner has an individual contractual right to resolve his or her claim in arbitration.

10   Yet DoorDash has frustrated Petitioners' ability to arbitrate for the better part of a year.  Any

11   further delay in favor of a class proceeding would inflict substantial damage on Petitioners,

12   because they have a contractual right to avoid <u>precisely this result</u>.  A stay for the purpose of

13   forcing them to participate in class proceedings is a direct denial of their contractual rights.

14           Petitioners' injury would be particularly substantial because DoorDash's requested stay is

15   indefinite.  *See Pascal v. Concentra, Inc.*, No. 19-CV-02559-JCS, 2019 WL 5458282, at *1, *3

16   (N.D. Cal. Oct. 24, 2019) (finding that the plaintiffs "will be damaged" by "the length of the stay,

17   which is indeterminate" where it was based on a decision from the FCC that the proponent claimed

18   "may issue . . . soon"); *Jian Guo v. ZTO Express (Cayman) Inc.*, No. 17-CV-05357-JST, 2017 WL

19   6547746, at *3 (N.D. Cal. Dec. 22, 2017) (finding that the plaintiff would be harmed by a stay

20   pending a decision from the Supreme Court because "it is not presently known when the Supreme

21   Court will issue a decision"); *Meras Eng'g, Inc. v. CH2O, Inc.*, No. C-11-0389 EMC, 2013 WL

22   146341, at *4 (N.D. Cal. Jan. 14, 2013) (finding that the plaintiff would be harmed by a stay

23   pending the outcome of a related district court case because it was uncertain when that could would

24   render a decision); *see also Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr.,*

25   *Inc.*, 490 F.3d 718, 724 (9th Cir. 2007) ("[L]engthy and indefinite stays place a plaintiff effectively

26   out of court . . . such stays create a danger of denying justice by delay.").

27           Far from imposing a "short delay" as DoorDash claims, Dkt. 158 at 8, the proposed stay

28   through "final approval" of any settlement is indefinite in nature.  The delay even in holding the

preliminary approval hearing illustrates this point.  At the parties' TRO hearing, DoorDash's counsel asked this Court to delay Petitioners' motion to compel and convert the hearing on that motion into a "check-back or a status" because "[t]here will be a hearing on December 17th for preliminary approval in *Marciano*."  Keller Decl., Ex. II, Tr. at 59:25, 59:8–9, ECF No. 152-35.  The state court later reset the December 17 hearing for January 30.  And it recently vacated the January 30 hearing and said it would be rescheduled once the case is designated as complex and reassigned.  *See* Postman Decl., Ex. A.  As of this submission, no date has been set.  And even assuming the hearing is rescheduled for sometime in the near future, preliminary approval is far from guaranteed.  As noted above and in the attached objections from putative class members, *see id*, Exs. B–E, the proposed settlement suffers from a litany of procedural and substantive flaws that will likely result in the court's denying preliminary approval outright or requesting supplemental briefing.  Indeed, when the *Rimler* court was tasked with evaluating a substantially similar settlement agreement negotiated by LLR and DoorDash's counsel, it raised a host of concerns about the proposed settlement's substantive and procedural fairness—and it pushed the preliminary approval hearing by two months from its original date of November 22, 2019 to January 31, 2020.  Postman Decl. ¶ 11.  Just yesterday, Petitioners' counsel was informed that the hearing scheduled for January 31, 2020 has been postponed yet again, and a new hearing date has not even been set.  *Id.*

    The indefinite nature of DoorDash's requested stay tips sharply against DoorDash's motion.  *See Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) ("Generally, stays should not be indefinite in nature."); *Perron v. Hewlett-Packard Co.*, No. 10-CV-00695-LHK, 2011 WL 1344221, at *2 (N.D. Cal. Apr. 8, 2011) (denying a stay pending an appeal in a another class action in part because "a stay would have the effect of delaying this action for an indefinite period, possibly more than a year").  This is particularly true given that this case involves Petitioners' urgent claims regarding their right to a minimum wage.  *See Leyva*, 593 F.2d at 864 (remanding to the district court to reevaluate the propriety of the stay with an eye towards "the urgent nature of the statutory right to minimum compensation provided by the Fair Labor Standards Act and the strong congressional policy favoring prompt payment of wages").

The rights Petitioners seek to enforce are both backward and forward looking, which also counsels against a stay.  In addition to past damages, Petitioners' seek injunctive relief against DoorDash for continuing its misclassification policy.  *See, e.g.,* Keller Decl., Exs. D, F, ECF Nos. 152-4, 152-6 (individual demand forms from Terrell Abernathy and Christine Boyd showing that they are seeking declaratory as well as equitable relief for DoorDash's continuing violations of the law).  Where a party has a strong claim for injunctive relief, the equities for a stay are necessarily weaker.  *See Lockyer,* 398 F.3d at 1112 ("Unlike the plaintiffs in *CMAX* and *Leyva*, who sought only damages for past harm, the Attorney General seeks injunctive relief against ongoing and future harm . . . . There is more than just a 'fair possibility' of harm to the Attorney General, and to the interests of the electricity consumers of northern California whose interest he seeks to protect."); *see also K.H.B. by & through K.D.B. v. UnitedHealthcare Ins. Co.*, No. C 18-04175 WHA, 2018 WL 4913666, at *4 (N.D. Cal. Oct. 10, 2018) ("[S]tays are disfavored where, as here, plaintiff seeks an award of injunctive relief against ongoing harm."); *Jones v. Travelers Cas. Ins. Co. of Am.*, No. 13-CV-02390-LHK, 2013 WL 4511648, at *3 (N.D. Cal. Aug. 22, 2013) (holding that plaintiff would suffer damage from a stay because it would prevent them from obtaining injunctive relief to stop the defendant from employing a discriminatory policy).

DoorDash claims that Petitioners will suffer "no damage" from a stay because they can "opt out" of the settlement.  Dkt. at 158 at 5.  That is wrong as a matter of fact and as a matter of law.  There is no indication that Petitioners will be able to formally opt out any time soon, because there is no basis to believe the settlement will be granted preliminary approval any time soon.  Moreover, courts hold that a party seeking arbitration cannot be forced to wait for the formal opt-out process to be underway before obtaining its right to arbitration.  *See In re Piper Funds, Inc.,* 71 F.3d at 303.  Given the injury that Petitioners would suffer from a stay, DoorDash must make a "<u>clear case</u> of hardship or inequity."  *See Lockyer*, 398 F.3d at 1112 (emphasis added).  It has not done so.

### C.    No Hardship or Inequity Will Result From Denying a Stay.

DoorDash has a contractual obligation to proceed with Petitioners' individual arbitrations. Remarkably, DoorDash does not contest this point.  But just as the Mutual Arbitration Provision

plainly requires arbitration of misclassification claims, the arbitration clause just as clearly forbids the parties to participate in a class action. DoorDash may no longer like the obligations in the contract it drafted. But being required to honor one's contractual obligations is neither a cognizable hardship nor inequitable.

DoorDash next argues that both it and Petitioners will suffer hardship or inequity if this case proceeds as scheduled. As for DoorDash, it claims it will suffer "hardship" because it will "be forced to pay nonrefundable filing fees for claims that have already been settled" and face unnecessary and duplicative litigation. Dkt. 158 at 6–7. As to Petitioners, DoorDash bizarrely claims that they "may be harmed by receiving confusing or conflicting communications regarding multiples cases." *Id.* at 5. Neither of those arguments has any merit.

The supposed harm that would befall DoorDash is speculative and foreclosed as a matter of law by controlling precedent. On the facts, DoorDash's argument that it would have to pay filing fees for claims "that have already been settled" is entirely speculative. It assumes that the *Marciano* settlement would be preliminarily and finally approved <u>before</u> this Court issued a decision on the motion to compel. That is highly unlikely, given that the preliminary approval hearing has been postponed indefinitely, the preliminary approval motion is unlikely to succeed on the first try (if at all), and final approval would occur (if at all) many months after preliminary approval. On the other hand, Petitioners' motion to compel arbitration is fully briefed and set for hearing in a matter of days. DoorDash's unlikely and highly speculative "injury" tied to arbitration filing fees surely does not constitute a "<u>clear case</u> of hardship or inequity." *Lockyer*, 398 F.3d at 1112 (emphasis added).

Moreover, it is doubly speculative to suggest that a meaningful number of Petitioners would choose to participate in the grossly inadequate settlement. DoorDash suggests that Petitioners might choose to participate in the settlement because 13 Dashers represented by Petitioners' counsel have accepted offers of judgment. Dkt. 158 at 4. That is wildly misleading. DoorDash fails to disclose that it has offered settlements to 742 Dashers represented by Petitioners' counsel; that those offers were for an average of $210 per person; and that only 13 of the 742 Dashers (or 1.75%) accepted. *See* Postman Decl. ¶ 5. The fact that 98.25% of Dashers who were

offered a settlement worth <u>more</u> than they would be offered in the *Marciano* settlement rejected that offer is compelling evidence that, even if the *Marciano* settlement were approved, the overwhelming majority of Petitioners would choose not to participate in it.[3]

Even putting aside the speculative factual nature of DoorDash's claims of hardship, inequity, and irreparable harm, its arguments also fail on the law. The Ninth Circuit has held that "being required to defend a suit, without more, does not constitute a clear case of hardship or inequity." *Lockyer*, 398 F.3d at 1112 (internal quotation marks omitted); *see also CSNK Working Capital Fin. Corp. v. Next Creation Holdings*, No. 17-CV-00305-HRL, 2017 WL 3310678, at *2 (N.D. Cal. Aug. 3, 2017) ("Concerning the second interest, Next Creations asserts only that, absent a stay, the parties will spend unnecessary resources in duplicative litigation . . . . [T]he Ninth Circuit has held that incurring the costs of defending a suit, without more, does not constitute a clear case of hardship or inequity."). The Ninth Circuit has also made clear that a party <u>does not</u> suffer irreparable harm simply by having to undergo what it believes to be "unnecessary" or improper arbitration proceedings. *See Camping Constr. Co. v. Dist. Council of Iron Workers*, 915 F.2d 1333, 1349 (9th Cir. 1990) ("The district court's principal error lies in its assumption that unnecessarily undergoing arbitration proceedings constitutes irreparable injury. That is simply not the case."); *see also Abernathy v. S. Cal. Edison*, 885 F.2d 525, 529 (9th Cir. 1989) ("[I]t seems clear that an order compelling arbitration does not ordinarily harm the losing party irreparably.").[4] And many courts in this circuit and throughout the country have held, <u>as a matter of law</u>, that a party is <u>not</u> irreparably harmed by the costs and expenses associated with arbitration. *See In re Cintas Corp. Overtime Pay Arbitration Litig.*, 2009 WL 1766595, at *5 ("Moreover, any additional

---

[3] Moreover, DoorDash once again attempts to deny the individual nature of the relief Petitioners seek by asking that <u>every</u> Petitioner's rights be put on hold because <u>a few</u> Petitioners might eventually give up their right to arbitrate. Even if the *Marciano* settlement were approved and a few Petitioners chose to participate in it, that would provide no basis to deny every other Petitioner his or her right to arbitrate. If and when a particular Dasher chooses to participate in a class settlements, he can of course choose to withdraw his arbitration demand.

[4] DoorDash cites *Iowa Utilities Board v. FCC*, 109 F.3d 418, 426 (8th Cir. 1996), for the broad proposition that "threat of unrecoverable economic loss" constitutes irreparable injury. Dkt. 158 at 6. But that case involved a narrow, inapplicable context: a party challenging a government agency's proposed rule that would cause the party to suffer expenses that it categorically could not recoup in a later suit against the agency. The case had nothing to do with private arbitration, and as the Ninth Circuit has made clear, undergoing even "<u>unnecessary</u>" arbitration proceedings is not irreparable harm. *See Camping Constr. Co.*, 915 F.2d at 1349 (emphasis added).

1   cost resulting from the Respondents' involvement in the pending arbitration, as a matter of law,

2   does not constitute irreparable harm."); *Divxnetworks, Inc. v. Gericom AG*, No. 04CV2537

3   WQHWMC, 2007 WL 4538623, at *3 (S.D. Cal. Dec. 19, 2007) (same); *see also PaineWebber*

4   *Inc.*, 843 F.2d at 1051 (same).  DoorDash's complaints about having to pay what it believes to be

5   potentially unnecessary arbitration filing fees do not constitute "irreparable harm" or a "clear

6   showing of inequity and hardship."

7           DoorDash's bizarre argument about the hardship and inequity that <u>Petitioners</u> will suffer

8   absent a stay is equally unavailing.  First, DoorDash cannot defeat or delay Petitioners' motion by

9   invoking Petitioners' rights.  Although DoorDash's concern for Petitioners' rights is touching, it

10  is clear that DoorDash really is concerned with its own interests in reducing its liability, not a

11  desire to make sure Petitioners maximize their recovery.  Moreover, as discussed in Petitioners'

12  reply brief in support of their motion to compel, DoorDash's allegations that Petitioners' counsel

13  do not actually represent Petitioners are completely baseless.  *See* Dkt. 164 at 11–15.  DoorDash's

14  further speculation that Petitioners' counsel will not inform Petitioners of the settlement terms is

15  as outlandish as it is unfounded.  *See id.*  Counsel will, of course, advise Petitioners of any class

16  settlement options if any are approved.  And every Petitioner would receive the same class notice

17  as every other class member.  Allowing Petitioners to pursue their individual claims in the

18  meantime will not deprive Petitioners of any information.  The only harm to Petitioners would be

19  to have their rights to arbitration delayed even further.

20          **D.      Staying This Matter Will Not Serve the "Orderly Course of Justice."**

21          DoorDash claims that the third stay factor tips in its favor because staying this matter while

22  they seek preliminary and final approval of the *Marciano* settlement will "simplify issues" before

23  this Court.  Dkt. 158 at 7.  That argument does not pass the straight-face test.

24          As an initial matter, the issues and legal claims before this Court and the state court in

25  *Marciano* are completely different.  Under the FAA, this Court is tasked with the limited

26  determination of whether Petitioners have a valid arbitration agreement that covers the dispute

27  between them and DoorDash.  *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84

28  (2002).  Because Petitioners have already established these dispositive facts, *see* Dkts. 151, 164,

1    this Court should now compel arbitration under the FAA.  *See Fordjour*, 2008 WL 295092, at *1.

2    On the other hand, the issues before the state court in *Marciano* concern: (1) whether the proposed

3    settlement class meets the requirements for class certification, *see Dunk v. Ford Motor Co.*, 48

4    Cal. App. 4th 1794, 1806 (1996), and (2) whether the proposed settlement is "fair and reasonable,"

5    *Clark v. Am. Residential Servs. LLC*, 175 Cal. App. 4th 785, 799 (2009).  Waiting for the state

6    court to approve or reject the proposed class settlement will have no bearing on the facts and law

7    that control the motion to compel.  And as this Court has noted, even if the *Marciano* settlement

8    is approved, "at least some reasonable number of [Petitioners]" will opt out of it, "and so I will

9    still have a case.  I'll still have to make rulings on it."  Keller Decl., Ex. II, Tr. at 63:5–8, ECF No.

10   152-35.  A stay will therefore do nothing to simplify the task before this Court.  *See Alila-Katita*

11   *v. U.S. Bank Nat'l Ass'n*, No. 16-CV-03950-JSW, 2017 WL 8948735, at *4 (N.D. Cal. May 2,

12   2017) ("[T]he *Duran* appeal only involves issues relating to class certification in that case.  Thus,

13   the *Duran* appeal will not simplify the substantive issues presented in this case."); *VIA Techs., Inc.*

14   *v. ASUS Computer Int'l*, No. 14-CV-03586-BLF, 2015 WL 13427794, at *3 (N.D. Cal. Dec. 4,

15   2015) (denying a stay where the defendants had "not shown that there is a substantial legal overlap

16   among the actions as the Taiwan actions currently involve only a fraction of the trade secrets

17   involved in this case and there are different standards of proof involved in the proceedings"); *Arch*

18   *Ins. Co. v. Mitchell Eng'g Co.*, No. C 10-04558 CW, 2011 WL 240735, at *2 (N.D. Cal. Jan. 24,

19   2011) ("A stay would not serve an orderly and efficient resolution of this case.  Although this

20   action arises from the same disputes being litigated in the seven other lawsuits, the legal issues in

21   this action are not the same as those presented in the other cases.").

22           The three cases DoorDash cites in support of the supposed efficiency gains from a stay are

23   all plainly distinguishable.  Each involved <u>dueling class actions</u> where the same or similar legal

24   and factual issues were presented to multiple courts at the same time, so staying one class action

25   in favor of another, more advanced one obviously served the interest of judicial economy.  *See*

26   *Pieterson v. Wells Fargo v. Bank, N.A.*, No. 17-cv-02306-EDL, 2019 WL 1466963, at *1–3 (N.D.

27   Cal. Feb. 14, 2019); *Rego v. Am. Honda Motor Co.*, No. 12-cv-01193-VAP, 2012 WL 12953740,

28   at *4 (C.D. Cal. Sept. 20, 2012); *Casserly v. Power Balance*, LLC, No. 11-cv-00670-AG, 2011

WL 13220130, at *2 (C.D. Cal. June 13, 2011).  But this is not a class action, and the issues before this Court do not overlap at all with those before the state court in *Marciano*.

DoorDash's judicial-economy argument also rings hollow because it waited until the eleventh hour to seek this stay.  DoorDash and LLR first agreed to their back-room deal in *Marciano* in September 2019, and LLR filed the preliminary approval motion on November 21, 2019.  But rather than seek a stay when Petitioners first filed in this Court in mid-November 2019, DoorDash waited until mid-January 2020 to do so.  This came <u>after</u> the Court had already invested significant time in multiple hearings, resolved a discovery dispute, and allowed the parties to engage in discovery in support of the now fully-briefed motion to compel.  The late nature of DoorDash's stay motion destroys its argument.  Staying this matter <u>now</u> would not conserve significant resources, because the necessary resources for this matter have nearly all been expended.  *See, e.g.*, *Bernstein v. Virgin Am., Inc.*, No. 15-CV-02277-JST, 2018 WL 3349183, at *3 (N.D. Cal. July 9, 2018) ("Virgin knew about the potential overlap between this case and the Ninth Circuit Airline Cases for several months before it filed its stay motion . . . . [But] Virgin waited until March 16, 2018 to file its motion—after the parties had prepared and responded to, and the Court had read and heard argument on, motions for decertification and summary judgment. Were Virgin serious about conserving resources, it would have filed its stay motion earlier.").  This further reveals the true motivation behind DoorDash's motion: to erect yet another hurdle to Petitioners' ability to vindicate their rights in arbitration.[5]

## CONCLUSION

For the foregoing reasons, DoorDash's motion for a stay should be denied.

---

[5] DoorDash raises two arguments at the end of its brief that do not provide any support for its stay request.  First, DoorDash appears to argue that the parties' class-action waiver does not preclude the proposed *Marciano* settlement because courts have approved settlements despite the existence of those waivers.  *See* Dkt. 158 at 7.  But the cases DoorDash cites did not involve a settlement's being approved over a non-party's objection that it violated a class action waiver in an arbitration agreement.  Second, DoorDash claims that Petitioners' arbitrations will be delayed anyway, citing the pace of AAA's administration of the 250 matters currently being arbitrated between DoorDash and other Dashers represented by Petitioners' counsel.  Dkt. 158 at 8.  But as Petitioners made clear in their reply brief in support of the motion to compel, DoorDash is responsible for any delays in those arbitrations, and AAA is the forum DoorDash chose.  *See* Dkt. 164 at 14–15.

17

PETITIONERS' OPPOSITION TO DOORDASH'S MOTION TO STAY PROCEEDINGS
CASE NUMBERS: 3:19-cv-07545 & 3:19-cv-07646

1  Dated: January 30, 2020

2

3  Keith A. Custis (#218818)
   kcustis@custislawpc.com
   CUSTIS LAW, P.C.
4  1875 Century Park East, Suite 700
   Los Angeles, California 90067
5  (213) 863-4276

6  Justin Griffin (#234675)
   justingriffin@quinnemanuel.com
7  QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
8  865 S. Figueroa St., 10th Floor
   Los Angeles, California 90017
9  213-443-3100

10 Andrew Schapiro (pro hac vice)
   andrewschapiro@quinnemanuel.com
11 QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
12 191 N. Upper Wacker Dr., Suite 2700
   Chicago, IL 60606
13 (312) 705-7472

14 *Attorneys for Petitioners*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

/s/ Ashley Keller
Ashley Keller (*pro hac vice*)
  ack@kellerlenkner.com
Travis Lenkner (*pro hac vice*)
  tdl@kellerlenkner.com
Marquel Reddish (*pro hac vice*)
  mpr@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

Warren Postman (*pro hac vice*)
  wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334