# Exhibit B

1  Keith A. Custis (#218818)
       kcustis@custislawpc.com
2  CUSTIS LAW, P.C.
3  1875 Century Park East, Suite 700
   Los Angeles, California 90067
4  (213) 863-4276

5  Tom Kayes (#327020)
       tk@kellerlenkner.com
6  Aaron Zigler (#327318)
       amz@kellerlenkner.com
7  KELLER LENKNER LLC
8  150 N. Riverside Plaza, Suite 4270
   Chicago, Illinois 60606
9  (312) 741-5220
   *Attorneys for Proposed Intervenors and Objectors*
10 *Tatiana Bluford, Becky Elliott, and Latasha Grider*

**ELECTRONICALLY**
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**12/10/2019**
**Clerk of the Court**
**BY: BOWMAN LIU**
**Deputy Clerk**

11          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
12              **FOR THE COUNTY OF SAN FRANCISCO**

13  CYNTHIA MARCIANO and DAVID          )   Case No. CGC-18-567869
14  CRISTINI, in their capacity as Private   )
    Attorney General Representatives,      )   *Assigned for all purposes to the*
15                                         )   *Honorable Ethan P. Schulman*
16              *Plaintiffs,*              )
                                           )   **OPPOSITION TO PRELIMINARY**
17          vs.                            )   **APPROVAL OF CLASS ACTION**
                                           )   **SETTLEMENT**
18  DOORDASH, INC.,                        )
                                           )   **Date**:        December 17, 2019
19              *Defendant.*               )   **Time:**        9:30 a.m.
                                           )   **Dept.:**       302
20                                         )
                                           )
21                                         )
22  _____ )

23

24

25

26

27

28

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

   A.  INTRODUCTION ......................................................................................................... 1

   B.  STATEMENT OF FACTS ............................................................................................ 3

   C.  ARGUMENT ................................................................................................................ 3

      1.  This Court Should Not Certify a Class That Includes Intervenors.................................. 3

         a)  The Claims at Issue Here Must Be Resolved in Individual Arbitration. ................. 4

         b)  The Requirements for Class Certification Are Not Satisfied................................... 8

            (1) Settlement Plaintiffs' Claims and Defenses Are Not Typical............................ 8

            (2) Settlement Plaintiffs and Their Counsel Are Not Adequate. ........................... 10

            (3) A Class Settlement Is Not Superior. ................................................................. 11

      2.  The Proposed Settlement Is Not Fair or Reasonable....................................................... 12

         a)  The Court Has Not Been Provided Adequate Information. .................................... 12

         b)  The Settlement Infringes on Contractual and Statutory Rights. ............................ 14

         c)  The Settlement Is Facially Unreasonable.............................................................. 15

   D.  CONCLUSION............................................................................................................ 15

# TABLE OF AUTHORITIES

**CASES**

*Ali v. U.S.A. Cab Ltd.*
(2009) 176 Cal. App. 4th 1333 ........................................................................... 4

*Amchem Products, Inc. v. Windsor*
(1997) 521 U.S. 591 ..................................................................................... 9, 10

*AT&T Mobility v. Concepcion*
(2011) 563 U.S. 333 .......................................................................................... 5

*Basurco v. 21st Century Ins. Co.*
(2003) 108 Cal. App. 4th 110 ......................................................................... 12

*Caro v. Procter & Gamble Co.*
(1993) 18 Cal. App. 4th 644 ............................................................................. 9

*Clark v. Am. Residential Servs. LLC*
(2009) 175 Cal. App. 4th 785 ..................................................................... 3, 13

*Dunk v. Ford Motor Co.*
(1996) 48 Cal. App. 4th 1794 ........................................................................... 3

*Dynamex v. Superior Court*
(2018) 4 Cal. 5th 903, *reh'g denied* (June 20, 2018) ....................................... 1

*Golden Eagle Ins. Co. v. Foremost Ins. Co.*
(1993) 20 Cal. App. 4th 1372, *as modified on denial of reh'g* (Jan. 7, 1994) ........... 5

*Gonzales v. San Gabriel Transit., Inc.*
(Cal. App. Oct. 8, 2019) No. B282377, 2019 WL 4942213 .............................. 9

*Graham v. Scissor-Tail, Inc.*
(1981) 28 Cal. 3d 807 ....................................................................................... 7

*Henry Schein, Inc. v. Archer & White Sales, Inc.*
(2019) 139 S. Ct. 524 ....................................................................................... 7

*Howard v. Babcock*
(1993) 6 Cal. 4th 409 ...................................................................................... 10

*J.P. Morgan & Co., Inc. v. Superior Court*
(2003) 113 Cal. App. 4th 195 ......................................................................... 10

*Kakani v. Oracle Corp.*
(N.D. Cal. June 19, 2007) No. C-06-06493-WHA, 2007 WL 1793774 ................ 14

*Kullar v. Foot Locker Retail, Inc.*
(2008) 168 Cal. App. 4th 116 ..................................................................... 3, 13

*Luckey v. Superior Court*
(2014) 228 Cal. App. 4th 81 ............................................................................. 3

*Martinez v. Master Prot. Corp.*
    (2004) 118 Cal. App. 4th 107 ................................................................................. 6

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
    (1983) 460 U.S. 1 .................................................................................................... 7

*Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles*
    (2010) 186 Cal. App. 4th 399 ............................................................................... 13

*Ortiz v. Fibreboard Corp.*
    (1999) 527 U.S. 815 ................................................................................................ 9

*Smith, Smith & Kring v. Superior Court (Oliver)*
    (1997) 60 Cal. App. 4th 573 ................................................................................. 10

*Wagner v. Stratton Oakmont, Inc.*
    (9th Cir. 1996) 83 F.3d 1046 .................................................................................. 7

*Wold v. League of Cross of Archdioceses of San Francisco*
    (1931) 114 Cal. App. 474 ........................................................................................ 5

**STATUTES**

29 U.S.C. § 216(b) ....................................................................................................... 14

9 U.S.C. § 2 ........................................................................................................ 4, 5, 14

**OTHER AUTHORITIES**

*Lawson v. Grubhub*
    (9th Cir. 2018) No. 18-15386, Reply Brief of Appellants ....................................... 8

*Magana v. DoorDash, Inc.*
    (N.D. Cal. July 12, 2018) 4:18-cv-3395-PJH, Def.'s Mot. Compel Arb., ECF No. 14 ..... 5, 6, 7

*Marciano v. DoorDash, Inc. (Marciano I)*
    (L.A. Super. May 24, 2017) Case No. CGC-15-548102, Am. Class Action Settlement
    Agreement and Release ..................................................................................... 11, 15

**RULES**

Cal. Rule of Professional Conduct 4.2(a) ..................................................................... 10

Code Civ. Proc. § 1281 ........................................................................................ 4, 5, 14

OPPOSITION TO PRELIMINARY APPROVAL OF CLASS SETTLEMENT
CASE NO. CGC-18-567869

## MEMORANDUM OF POINTS AND AUTHORITIES

### A.   INTRODUCTION

Three weeks ago, Judge Massullo rejected a nearly identical class-action settlement negotiated by the same counsel. Keller Decl., Ex. P. This Court should do the same. Just like the rejected settlement, the proposed settlement in this case would give putative class members a small fraction of the relief to which they are entitled under well-established law. Indeed, if approved, this settlement would award class members 43% less on a per class member average than they received in a previous settlement entered into by the same parties. That is unjustifiable given the prior settlement occurred before the California Supreme Court's decision in *Dynamex v. Superior Court* (2018) 4 Cal. 5th 903, 961, *reh'g denied* (June 20, 2018), which indisputably increased the strength of the claims at issue. In addition to the inadequate consideration, it would impede putative class members' ability to opt out of the class. And it would prevent putative class members from using their counsel of choice to pursue their claims against DoorDash in individual arbitration.

DoorDash and the Plaintiffs in this action (the "Settlement Plaintiffs") are asking this Court to resolve the misclassification claims of DoorDash's California and Massachusetts drivers ("Dashers") on a class-wide basis. But DoorDash's contract with most of the putative class members expressly prohibits DoorDash from "participat[ing] in a class action, collective action and/or representative action."  Keller Decl., Ex. A § XI.3. Approval of a proposed settlement that purports to include Intervenors would violate that contract and the Federal Arbitration Act ("FAA"). As DoorDash has successfully argued on numerous occasions, a class action cannot be certified where, as here, an arbitration agreement prohibits participating in a class action.[1]

DoorDash appears to concede this point by foisting a new agreement permitting class action settlements on its current Dashers earlier this month. Within days of that new agreement's rollout,

---

[1] To the extent DoorDash and the Settlement Plaintiffs attempt to dispute the above analysis, that dispute must <u>itself</u> be submitted to arbitration. The Mutual Arbitration Provision expressly provides that "All other disputes with respect to whether this Mutual Arbitration Provision is unenforceable, unconscionable, applicable, valid, void or voidable shall be determined exclusively by an arbitrator, and not by any court." Keller Decl., Ex. A § XI.3.

a federal court called into question its validity, and DoorDash conceded that any Dasher who opted out of that agreement would be bound by the previous Mutual Arbitration Provision that forbids participation in any class action. Regardless, the new agreement's change permitting class action settlements shows that DoorDash's prior agreements mean what they say: Both parties agreed to be barred from participating in class proceedings such as the settlement DoorDash asks this Court to approve.

Even apart from DoorDash's obligation to resolve Intervenors' claims exclusively in arbitration, the Court should deny the motion for at least two independent reasons:

First, Settlement Plaintiffs cannot establish the requirements for certifying the proposed class. The Settlement Plaintiffs are not representative or typical of the class they seek to represent. They have not demonstrated the same willingness—as have thousands of other class members—to pursue individual actions in arbitration, to insist that DoorDash reclassify them as employees, or to pursue claims under local minimum-wage ordinances. They also have argued for a steep discount to their claims based on the meritless contention that *Dynamex* may not apply retroactively, even though (i) a California appellate court has held otherwise, and (ii) many class members did not work for DoorDash until after *Dynamex* was decided and thus have no plausible reason to accept such a discount. This disparity presents a structural conflict of interest between those with stronger claims and weaker claims that cannot be countenanced.

Settlement Plaintiffs and their counsel also are not adequate to protect the interests of class members like Intervenors who wish to pursue individual arbitrations. In fact, Settlement Plaintiffs and their counsel have a direct economic interest in preventing absent class members from pursuing individual actions. That conflict has caused them to propose a settlement that purports to eliminate class members' contractual right to arbitrate without their affirmative assent, erects barriers to individual actions, and attempts to interfere with Intervenors' and other class members' constitutional right to their counsel of choice. And a class settlement here is not superior to individual actions: thousands of Dashers have already shown that they have been able to retain counsel and pursue individual actions.

OPPOSITION TO PRELIMINARY APPROVAL OF CLASS SETTLEMENT
CASE NO. CGC-18-567869

1    Second, the proposed settlement is not fair or reasonable. As a threshold matter, Settlement

2    Plaintiffs have not provided the Court with enough information to assess the adequacy of the

3    settlement. But even a cursory review of the settlement reveals numerous fatal flaws. The settlement

4    purports to extinguish each class member's right to individual arbitration through mere inaction,

5    even though that right cannot be waived absent affirmative consent. And it purports to extinguish

6    FLSA claims for class members who do not submit a claim. The settlement also offers implausibly

7    low compensation for class members' individual claims.

8        For these reasons, this Court should deny Settlement Plaintiffs' Motion for Preliminary

9    Class Approval.

10       **B.     STATEMENT OF FACTS**

11       Intervenors incorporate the "Statement of Facts" from their Motion for Leave to Intervene,

12   filed concurrently with this Opposition.

13       **C.     ARGUMENT**

14       At the class-action-settlement stage, the Court must determine (a) whether the proposed

15   class meets the requirements for class certification, *Dunk v. Ford Motor Co.* (1996) 48 Cal. App.

16   4th 1794, 1806, and (b) whether the proposed settlement "is fair and reasonable," *Clark v. Am.*

17   *Residential Servs. LLC* (2009) 175 Cal. App. 4th 785, 799. In carrying out this inquiry, "the [C]ourt

18   has a fiduciary responsibility as guardians of the rights of the absentee class members." *Kullar v.*

19   *Foot Locker Retail, Inc.* (2008) 168 Cal. App. 4th 116, 129 (internal quotation marks omitted).

20   Where, as here, "there has been no adversary [class] certification" the Court must "more carefully"

21   scrutinize the class settlement to ensure that "the absent class members, whose rights may not have

22   been considered by the negotiating parties, be adequately protected against fraud and collusion."

23   *Luckey v. Superior Court* (2014) 228 Cal. App. 4th 81, 94 (internal quotation marks omitted).

24       The Settlement Plaintiffs have not established that the proposed class meets the

25   requirements for class certification or that the proposed settlement is fair or reasonable. Each of

26   those failures independently requires that preliminary approval be denied.

27       **1.     This Court Should Not Certify a Class That Includes Intervenors.**

28   This Court should not certify the settlement class because it purports to resolve the claims

of thousands of individuals, including Intervenors, whose claims cannot be resolved in a class proceeding without their affirmative consent. And Settlement Plaintiffs cannot show that there are: "(1) predominant questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." *Ali v. U.S.A. Cab Ltd.* (2009) 176 Cal. App. 4th 1333, 1344 (internal quotation marks omitted). Nor can they show that a "class action is 'superior' to separate lawsuits by class member." *Id.* at 1352-53.

### a)        *The Claims at Issue Here Must Be Resolved in Individual Arbitration.*

DoorDash entered into a valid contract with each Intervenor that expressly prohibits DoorDash from entering into a class-wide settlement. In that agreement, DoorDash made a binding and irrevocable promise that "any and all claims" by an Intervenor—including claims arising from an Intervenor's "classification as an independent contractor"—will <u>exclusively</u> "be resolved in individual arbitration." Keller Decl., Ex. A §§ XI.1, XI.3. As part of that promise, DoorDash unambiguously agreed not even to <u>participate</u> in any class action: "CONTRACTOR and DOORDASH <u>mutually agree</u> that by entering into this agreement to arbitrate, both waive their right to have any dispute or claim brought, heard or arbitrated as, or <u>to participate in</u>, a class action, collective action and/or representative action." *Id.* § XI.3 (emphases added).

By attempting to participate in a class-action settlement that encompasses Intervenors' claims, DoorDash is violating the express terms of its agreement with Intervenors. Under both California and federal law, courts must give full effect to arbitration agreements and enforce them according to their terms. *See* Code Civ. Proc. § 1281 (stating that a written arbitration agreement "is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract"); 9 U.S.C. § 2 (same). Because DoorDash's contract prohibits DoorDash from resolving Intervenors' claims in a class proceeding, and because that agreement must be given effect, this Court should not certify a class including Intervenors.

DoorDash cannot avoid its obligation to arbitrate Intervenors' claims by asserting that class-wide resolution of those claims would be more efficient or reflect better public policy. The Supreme Court has squarely held that the FAA preempts any attempt to override the plain meaning of an

arbitration agreement based on a public policy favoring class-wide resolution. *AT&T Mobility v. Concepcion* (2011) 563 U.S. 333, 347–51.

The argument against DoorDash's ability to participate in this settlement can be made solely by quoting DoorDash's own arguments:  The agreement between DoorDash and Intervenors is valid because it includes "the parties' mutual promises to arbitrate disputes." *Magana*, Def.'s Mot. Compel Arb. at 17. Intervenors' claims that they were "misclassified as [] independent contractor[s] . . . fall squarely within the scope of the Arbitration Agreement." *Id*. at 18. "The FAA controls the parties' arbitration agreement, and imposes a heavy burden on [parties seeking] to avoid arbitration." *Id*. at 12. And "the FAA preempts all conflicting state laws, which means states cannot create special exceptions to the enforcement of arbitration agreements governed by the FAA." *Id*. at 13.

Although Settlement Plaintiffs and DoorDash may assert that the class settlement should proceed because Intervenors can opt out of the class later, any such argument ignores the parties' "mutual promises."  Intervenors' Mutual Arbitration Provision gives Intervenors an unambiguous right to prevent DoorDash from pursuing <u>any</u> class resolution that includes their claims. Intervenors are entitled to enforce that right, and that right is "irrevocable" except on grounds applicable to any other contract. Code Civ. Proc. § 1281; 9 U.S.C. § 2.

Although parties of course can agree to modify a contract, such changes must meet the same requirements to enter a binding agreement in the first place, including mutual, affirmative consent. *Wold v. League of Cross of Archdioceses of San Francisco* (1931) 114 Cal. App. 474, 481 (holding that the "silence or inaction" of a party to a contract cannot "bind him to a modification of the terms of a written" agreement); *Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1993) 20 Cal. App. 4th 1372, 1385, *as modified on denial of reh'g* (Jan. 7, 1994) ("As a general rule, silence or inaction does not constitute acceptance of an offer."). And the DoorDash agreement expressly states that it "<u>shall not</u> be modified, altered, changed or amended in any respect, unless <u>in writing and signed by both parties</u>."  Keller Decl., Ex. A § XIV.1 (emphases added).

DoorDash cannot escape its promise to Intervenors not to participate in a class action by cutting a side deal with Settlement Plaintiffs. *Martinez v. Master Prot. Corp.* (2004) 118 Cal. App.

4th 107, 116 (modification of arbitration agreement was "ineffective" because the "arbitration agreement is a fully integrated contract"). DoorDash may not participate in a class action that includes Intervenors' claims—or the claims of any other absent party—without each individual's affirmative, written consent to modify the Mutual Arbitration Provision. Because Intervenors do not consent, certification of a class including their claims would violate the plain terms of the Mutual Arbitration Provision and the Federal Arbitration Act.

Indeed, the plain language of the class action waiver provides for no exceptions: it covers "any dispute or claim." Keller Decl., Ex. A § XI.3. And just as DoorDash has concede, "[h]ere, there is no ambiguity in the agreement." *Magana*, Def.'s Mot. Compel. at 18 (emphasis added). As DoorDash has argued many times over, "absent some ambiguity in the agreement . . . it is the language of the contract that defines the scope of disputes subject to arbitration." *Id.* at 18 (quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (alterations omitted)). As a federal court rightly pointed out when DoorDash attempted to use its proposed settlement in this case as justification to stay the *Abernathy* and *Boyd* Petitioners' motion to compel arbitration, "There is no class. You've got a class action waiver." Keller Decl., Ex. P, p. 29:22-23.

Realizing this, DoorDash attempted to change its agreement on November 9, 2019, when it added the following language to the end of its class-action waiver: "For sake of clarification only, nothing in this paragraph shall be construed to prohibit settlement on a class-wide, collective, and/or representative basis." Keller Decl., Ex. K § XI. 3. But that provision does not apply to any Dashers who have not made deliveries after November 9, 2019—which would be most class members. And it does not apply to any Dashers, like Intervenors, and thousands of other Dashers represented by Intervenors' counsel, who have made deliveries after November 9 but opted out of that agreement and are governed by the previous arbitration agreement. *See* Mot. For Leave to Intervene (Dec. 9, 2019), p. 9.

Despite DoorDash's repeated arguments that the prior arbitration agreement was "unambiguous," if DoorDash now contends that this new addition was "clarifying" a previous ambiguity regarding its ability to enter into class-action settlements, that argument also fails. As DoorDash has repeatedly argued: "Courts must 'interpret the contract by applying general state-

law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration.'" *Magana*, Def.'s Mot. Compel at 8 (quoting *Wagner v. Stratton Oakmont, Inc.* (9th Cir. 1996) 83 F.3d 1046, 1049); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 24–25. California principles of contract interpretation require the Court to resolve "ambiguities against the drafting party," which "applies with peculiar force in the case of a contract of adhesion." *Graham v. Scissor-Tail, Inc.* (1981) 28 Cal. 3d 807, 820, n.16. For Intervenors and any class members not governed by the recently revised arbitration agreement, the Court should construe any ambiguity as to whether DoorDash is permitted to participate in class-action settlements in favor of arbitration—and in favor of the interpretation DoorDash has advocated for years—which Intervenors adopt here.[2]

Finally, any argument that a class may be certified is further barred by the delegation clause in DoorDash's Mutual Arbitration Provision. When the parties' contract "delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.* (2019) 139 S. Ct. 524, 530. DoorDash's Mutual Arbitration Provision clearly and unmistakably states that only an arbitrator may decide whether the agreement bars DoorDash from participating in the proposed settlement. Specifically, the agreement provides that "[a]ll other disputes with respect to whether this Mutual Arbitration Provision is unenforceable, unconscionable, applicable, valid, void or voidable <u>shall be determined exclusively by an arbitrator</u>, and not by any court." Keller Decl., Ex. A § XI.3 (emphasis added). Any argument that DoorDash is somehow permitted to resolve Intervenors' claims in a class action necessarily involves a question regarding whether

---

[2] DoorDash and Settlement Plaintiffs also cannot justify ignoring the plain terms of the Mutual Arbitration Provision by arguing that courts have previously approved class settlements that include members who have a right to individual arbitration. Intervenors cannot find, and DoorDash and Settlement Plaintiffs have not identified, any case in which an intervenor asserted those rights. That courts have approved settlements where no party objected on this ground does not support the claim that a class can be certified where, as here, a party does raise such an objection.

OPPOSITION TO PRELIMINARY APPROVAL OF CLASS SETTLEMENT
CASE NO. CGC-18-567869

the Class Action Waiver is "applicable." *Id.* Under the Mutual Arbitration Agreement's plain terms, the task of applying the Class Action Waiver must be conducted by an arbitrator.

So long as DoorDash is proposing a class settlement that would encompass Intervenors' claims, this Court may not decide the motion for preliminary approval and should instead stay these proceedings pending arbitration.

### b) *The Requirements for Class Certification Are Not Satisfied.*

#### (1) <u>Settlement Plaintiffs' Claims and Defenses Are Not Typical.</u>

The typicality requirement exists to ensure that class representatives are pursuing claims in a manner that is representative of all members of the class. *See Kizer v. Tristar Risk Mgmt.* (2017) 13 Cal. App. 5th 830, 840, *as modified* (July 26, 2017), *rev. denied* (Nov. 1, 2017). Settlement Plaintiffs cannot make that showing for a host of reasons.

<u>First</u>, Settlement Plaintiffs have shown no interest in pursuing claims individually, which places them in a fundamentally different legal position than Intervenors and the thousands of putative class members who are pursuing individual arbitrations. Indeed, Settlement Plaintiffs have argued <u>against</u> Intervenors' right to proceed in individual arbitration. *See generally Magana*, Opp'n Mot. Compel Arbitration, ECF No. 32. And Settlement Plaintiffs have treated the obligation to arbitrate as a <u>defense</u> that warrants a <u>discount</u> to their recovery in any settlement. *See* Mot. Prelim. Approval at 14. Yet Settlement Plaintiffs simultaneously concede that parties such as Intervenors, who are willing to pursue individual arbitration, are likely to obtain a <u>greater</u> recovery. *See id.* at 8 (noting that those "who have filed an arbitration demand will have their mileage credit doubled"). This clear contradiction illustrates that Settlement Plaintiffs simply are not representative of Intervenors and the thousands of other Dashers pursuing individual arbitration.

<u>Second</u>, in attempting to justify the paltry consideration provided by the settlement, Settlement Plaintiffs claim they may be subject to a partial defense to liability: that the *Dynamex* standard does not apply retroactively. Mot. Prelim. Approval at 14–15. That claim is not credible, given that Settlement Plaintiffs' counsel has previously represented to the U.S. Court of Appeals for the Ninth Circuit that parties "cannot seriously argue that *Dynamex* does not apply retroactively." *Lawson v. Grubhub* (9th Cir. 2018) No. 18-15386, Reply Brief of Appellants, p. 10.

1    Settlement Plaintiffs' counsel was right in *Lawson* and is wrong here: the argument that *Dynamex*

2    does not apply retroactively is borderline frivolous. *Gonzales v. San Gabriel Transit., Inc.* (Cal.

3    App. Oct. 8, 2019) No. B282377, 2019 WL 4942213 (holding *Dynamex* applies retroactively). But

4    in all events, this defense is facially inapplicable to the thousands of Dashers who worked for

5    DoorDash after *Dynamex*, including Intervenors. Settlement Plaintiffs thus have conceded that they

6    face a defense that is not typical of the class they seek to represent. *Amchem Products, Inc. v.*

7    *Windsor* (1997) 521 U.S. 591, 625–26 ("[A] class representative must be part of the class and

8    'possess the same interest and suffer the same injury' as the class members."); *Ortiz v. Fibreboard*

9    *Corp.* (1999) 527 U.S. 815, 857 (Because the settlement included more valuable and less valuable

10   claims, it created a conflict among class members, requiring the creation of subclasses represented

11   by separate counsel.)

12         Third, Settlement Plaintiffs do not appear interested in pursuing or valuing injunctive relief

13   requiring DoorDash to reclassify its Dashers as employees. *Dynamex* surely requires this relief for

14   all Dashers going forward. Settlement Plaintiffs, on this issue as well, are not appropriate

15   representatives for the class they seek to represent.

16         Fourth, Settlement Plaintiffs have attempted to release class members' claims under the

17   numerous and varied local ordinances that provide civil penalties for minimum-wage violations.

18   *See* Settlement Agreement § 3.27 (defining "Settlement Class Members' Released Claims" as

19   including "the Los Angeles Office of Wage Standards Ordinance, the San Francisco Admin. Code

20   Minimum Wage Ordinance, and any similar state or local ordinances"). Yet Settlement Plaintiffs

21   have not shown that they worked in any of the municipalities that impose such penalties, such that

22   they could bring those claims. A class representative is not typical of the class if he or she cannot

23   bring the same claims that could be brought by absent class members. *See Caro v. Procter &*

24   *Gamble Co.* (1993) 18 Cal. App. 4th 644, 664. A plaintiff who brings claims under the Fair Labor

25   Standards Act and California law clearly cannot purport to release the claims of class members

26   under the laws of all 50 states. For the same reason, the fact that Settlement Plaintiffs have brought

27   claims under California law does not permit them to release local-ordinance claims they do not

28   themselves possess. *See Rimler*, Order at 2, 9–10 (requesting Settlement Plaintiffs to submit

9

OPPOSITION TO PRELIMINARY APPROVAL OF CLASS SETTLEMENT
CASE NO. CGC-18-567869

1   declarations explaining "whether they have worked in each of the municipalities that impose civil

2   penalties that are being released, and if not, why it is proper to release class members' local

3   ordinance claims that they do not themselves possess") .

4                      (2)      Settlement Plaintiffs and Their Counsel Are Not Adequate.

5           To satisfy the adequacy prong of class certification, the "class representative's personal

6   claim must not be inconsistent with the claims of other members of the class." *J.P. Morgan & Co.,*

7   *Inc. v. Superior Court* (2003) 113 Cal. App. 4th 195, 212. But here, Settlement Plaintiffs' claims

8   are inconsistent with Intervenors' and other class members' claims insofar as Settlement Plaintiffs

9   have affirmatively opposed arbitration of their misclassification claims, while Intervenors and

10  thousands of other similarly situated class members have actively pursued arbitration.

11          This difference creates an inherent conflict between Settlement Plaintiffs and their counsel

12  on the one hand, and Dashers who wish to pursue individual arbitrations on the other. DoorDash

13  has committed to settling with the Settlement Plaintiffs <u>only</u> if fewer than 1,000 class members opt

14  out of the settlement. Settlement Agreement § 7.9. If too many Dashers opt out of the proposed

15  class in favor of individual actions, Settlement Plaintiffs and their counsel will not receive the

16  compensation they seek in the settlement. Thus, Settlement Plaintiffs' and their counsel's economic

17  interests are directly contrary to the interests of those pursuing individual actions.

18          Settlement Plaintiffs and their counsel are also inadequate because they have attempted to

19  interfere with the choice of counsel exercised by Intervenors and thousands of other class members.

20  It is a longstanding principle that clients have the right to be represented by counsel of their own

21  choosing. *Howard v. Babcock* (1993) 6 Cal. 4th 409, 425 (pointing out the court's "legitimate

22  concerns of assuring client choice of counsel"); *Smith, Smith & Kring v. Superior Court (Oliver)*

23  (1997) 60 Cal. App. 4th 573, 580 (same). The Rules of Professional Conduct reflect the importance

24  of this right in numerous ways, including by prohibiting attorneys from communicating directly

25  with parties they know to be represented about the subject of that representation. *See* Cal. Rule of

26  Professional Conduct 4.2(a).

27          Intervenors and thousands of other Dashers have chosen to be represented by Keller

28  Lenkner and signed individual engagement agreements with that firm. Intervenors Decls. ¶¶ 9, 17;

Keller Decl. ¶ 22. Yet Settlement Plaintiffs' counsel now asks this Court to appoint them as counsel and authorize them to do what the Rules of Professional Conduct otherwise would forbid—communicate a settlement offer directly to a represented party. But Settlement Plaintiffs' counsel have not stopped there. In addition to trying to communicate with Keller Lenkner's clients, they have proposed a settlement that would interfere with class members' choice of counsel by erecting obstacles to Keller Lenkner assisting Intervenors in effecting a request for exclusion. *See* Settlement Agreement § 7.1. The proposed settlement does this by (a) refusing to recognize opt-out forms that are signed by counsel on behalf of putative class members, (b) refusing to accept anything less than a physical, "wet ink" signature, and (c) appearing to refuse to recognize opt-out forms that are submitted by their counsel on a Dasher's behalf. *Id.* In fact, the agreement allows many types of legal representatives to help Intervenors opt out of the settlement <u>except</u> the one type of legal representative Intervenors engaged for the specific purpose of helping them pursue claims against DoorDash. *Id.* Tellingly, the prior settlement between the same parties did not have these onerous opt-out requirements. Rather, in that case, any "Legally Authorized Representative"[3] could both sign and submit a request for exclusion on behalf of the Settlement Class Member. Keller Decl., Ex. R, *Marciano v. DoorDash, Inc.* (*Marciano I*) (L.A. Super. May 24, 2017) Case No. CGC-15-548102, Am. Class Action Settlement Agreement and Release § 7.1. Settlement Plaintiffs and their counsel cannot legitimately justify their onerous and self-interested opt-out requirements here.

(3)    <u>A Class Settlement Is Not Superior.</u>

Third, the class vehicle is not superior to individual actions. To determine "whether a class action would be superior to individual lawsuits, the court will usually consider four factors: (1) [t]he interest of each member in controlling his or her own case personally; (2) [t]he difficulties, if any, that are likely to be encountered in managing the class action; (3) [t]he nature and extent of any litigation by individual class members already in progress involving the same controversy; and (4) [t]he desirability of consolidating all claims in a single action before the court." *Basurco v. 21st*

---

[3] "Legally Authorized Representative" included "any . . . legally appointed person responsible for handling the business affairs of a Settlement Class member." Keller Decl., Ex. R § 2.15.

1   *Century Ins. Co.* (2003) 108 Cal. App. 4th 110, 121.

2   Here, these factors demonstrate that a class action would not be superior. The individual

3   class members have a strong interest in controlling their own litigation because Settlement Plaintiffs

4   are attempting to release absent class members' claims for pennies on the dollar. This class action

5   would be difficult to manage given the many divergent interests with respect to arbitration of

6   claims. There is no need for a class action at this point because Intervenors and thousands of other

7   Dashers have already commenced arbitration proceedings. Finally, it is not possible to consolidate

8   all the claims in this case because Intervenors and thousands of class members have already

9   exercised their contractually guaranteed right to <u>individual</u> arbitration.

10   It is clear that thousands of people can bring individual actions and that these actions afford

11   them a better opportunity to obtain meaningful value for their claims. DoorDash's desire to avoid

12   these individual actions only confirms as much. Many of the flaws described above could be

13   ameliorated by the simple step of excluding from the class definition all Dashers who have pursued

14   individual arbitrations. That DoorDash required these claims to be included in the class and insisted

15   on terms that interfere with those Dashers' ability to opt out, illustrates that these Dashers are likely

16   to recover far more in individual actions.

17   **2.      The Proposed Settlement Is Not Fair or Reasonable.**

18   Another intervenor has pointed out numerous other flaws in the proposed settlement. *See*

19   LaRonda Robinson Opp'n to Mot. For Prelim. Approval (Dec. 4, 2019); *see also* Keller Decl.,

20   Ex. Q. Those flaws are more than enough reason to deny preliminary approval of the settlement,

21   and Intervenors will not belabor those points. Instead, Intervenors will emphasize several additional

22   flaws.

23   *a)      The Court Has Not Been Provided Adequate Information.*

24   Settlement Plaintiffs attempt to shield the patently unfair settlement from serious review by

25   claiming that it is entitled to a "presumption of fairness."  Mot. Prelim. Approval at 9. But for the

26   presumption of fairness to attach, Settlement Plaintiffs must demonstrate, among other things, that

27   the "investigation and discovery are sufficient to allow counsel and the court to act intelligently."

28

OPPOSITION TO PRELIMINARY APPROVAL OF CLASS SETTLEMENT
CASE NO. CGC-18-567869

1    *Kullar*, 168 Cal. App. 4th at 128 (internal quotation marks omitted).

2            The settlement agreement is not entitled any presumption of fairness because Settlement

3    Plaintiffs have failed to provide this Court with enough information to adequately assess it.

4    Proponents of a proposed class-action settlement must submit to the court <u>actual data</u>—e.g., payroll

5    records, declarations of employees about hours worked, timesheets, etc.—that support the

6    proponents' claims about the extent of damages or sufficiency of the compensation under the

7    settlement. *See Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles* (2010) 186 Cal. App. 4th 399,

8    408-11; *Clark*, 175 Cal. App. 4th at 801–05; *Kullar*, 168 Cal. App. 4th at 129–34. It is not enough

9    for the parties to simply assert that they exchanged the necessary data. *See Kullar*, 168 Cal. App.

10   4th at 129. And asserting that a claim has "absolutely no value" based on counsel's evaluation does

11   not suffice. *See Clark*, 175 Cal. App. 4th at 802. If the Court lacks enough data to assess the

12   settlement, approving the settlement is an abuse of discretion. *See Kullar*, 168 Cal. App. 4th at 134.

13           Settlement Plaintiffs' submissions are deficient in the same manner as the submissions that

14   were found inadequate in *Kullar* and *Clark*. Settlement Plaintiffs' counsel has submitted a

15   declaration stating that she "exchang[ed] extensive data" with DoorDash and used the data to

16   extrapolate and determine likely total damages. Liss-Riordan Decl. ¶ 7. The declaration later

17   ascribes vague valuations for some—but not all—of the proposed claims that class members would

18   be releasing, presumably based on these "data" as well as counsel's legal analyses. *See id.* ¶¶ 16,

19   17, 21, 25, 29 (assigning "negligible value" or "no value" to various claims.). But Settlement

20   Plaintiffs never attach any of the referenced "data." Without any data, it is not possible for this

21   Court to conduct its required, independent analysis to determine whether the settlement fairly

22   compensates the absent class members when considering the strengths of their claims. *See Munoz*,

23   186 Cal. App. 4th 410. Without this information, the Court should deny Settlement Plaintiffs'

24   motion for preliminary approval. *See Clark*, 175 Cal. App. 4th at 801-05; *Kullar*, 168 Cal. App. 4th

25   at 129–34.[4]

26   _____

27   [4] Settlement Plaintiffs' misrepresentation that the settlement here is "8 times the size" of a prior
     settlement achieved in *Marciano I* because the proposed aggregate settlement consideration in this
28   case is greater than in *Marciano I*, Mot. Prelim. Approval at 2, underscores why the Court needs

1                **b)**        ***The Settlement Infringes on Contractual and Statutory Rights.***

2    It cannot be disputed that Intervenors and thousands of other putative class members have

3    a contractual right to individually arbitrate their disputes—a right they have already exercised. And

4    it cannot be disputed that DoorDash's own contract forbids it even to participate in a class

5    proceeding. These rights, by their very nature, mean that Intervenors and other Dashers have a right

6    not to have their claims against DoorDash prejudiced by class proceedings. These contractual rights

7    are "irrevocable, save upon such grounds as exist for the revocation of any contract." Code Civ.

8    Proc. § 1281; *see also* 9 U.S.C. § 2. And black letter contract law (as well as the Mutual Arbitration

9    Provision) provide that these rights may be revoked only based on both parties' <u>affirmative</u> assent.

10   *See supra* pp. 7–11.

11   Just as DoorDash's own contract prohibits class actions, the FLSA prohibits traditional class

12   actions and authorizes only opt-in collection actions. 29 U.S.C. § 216(b) ("No employee shall be a

13   party plaintiff to any such action unless he gives his consent in writing to become such a party and

14   such consent is filed in the court in which such action is brought."). Voluntary opt-ins may be bound

15   by a release, but it is "unconscionable to try to take away the FLSA rights of all workers, whether

16   or not they choose to join in affirmatively." *Kakani v. Oracle Corp.* (N.D. Cal. June 19, 2007) No.

17   C-06-06493-WHA, 2007 WL 1793774, at *7. Here, Settlement Plaintiffs and their counsel attempt

18   to release the FLSA claims of settlement class members <u>regardless</u> of whether they submit a claim

19   to be part of the settlement. *See* Settlement Agreement § 2.37 (including FLSA claims in

20   "Settlement Class Members' Released Claims"); *id.* § 7.4 ("All Settlement Class Members who are

21   not included in the Opt-Out List approved by the Court shall be bound by this Agreement, and all

22   their claims shall be dismissed with prejudice and releases as provided for herein, even if they never

23   received actual notice of the Action or the proposed settlement.").

24   Despite all this, Settlement Plaintiffs have asked this Court to approve a claims-only, opt-

25   out settlement that would purport to revoke these contractual and statutory rights through silence

26   

---

27   data to conduct its own analysis of the value of the released claims. As discussed more fully below
on page 15, the settlement in *Marciano I*, which occurred <u>before</u> *Dynamex*, was actually 43%
28   greater on a per Dasher average than the settlement proposed here.

OPPOSITION TO PRELIMINARY APPROVAL OF CLASS SETTLEMENT
CASE NO. CGC-18-567869

rather than consent. Any such settlement would directly violate the Mutual Arbitration Provision, California law, the FAA, and the FLSA, and therefore cannot be deemed "fair and reasonable."[5]

### c)      The Settlement Is Facially Unreasonable.

The settlement agreement attempts to release the meritorious claims of Intervenors and other absent class members for a paltry amount. Depending on class member participation rates, the settlement consideration likely averages between $61 per Dasher with 100% participation and $122 per Dasher with 50% participation. *See* Mot. Prelim. Approval at 5 (total consideration is $39.5 million (less $13,166,666.67 in attorney fees, $640,000 in settlement administration fees, $35,000 in incentive payments, $562,500 in PAGA penalties) divided by 419,409 Dashers). But in a settlement negotiated between the same parties before *Dynamex* was decided, the average claim value was between $107.07 per Dasher with 100% participation and $214.14 per Dasher with 50% participation. Keller Decl., Ex. R §§ 2.21, 2.3, 2.32, 2.37, 2.38 (total consideration was $5,000,000 (less $1,250,000 in attorney fees, $52,220.51 in settlement administration fees, [6] $15,000 in incentive payments, $75,000 in PAGA penalties) divided by 33,695 Dashers[7]). Settlement Plaintiffs have provided no justification for why class members should receive <u>less</u> for the release of their claims after *Dynamex* than they received before. The fact that Settlement Plaintiffs' counsel is seeking to release the claims of Intervenors and others on these terms is, by itself, proof that they are operating under a fatal conflict of interest and are not adequate representatives of class members pursing individual arbitrations.

### D.      CONCLUSION

For all the foregoing reasons, this Court should deny Settlement Plaintiffs' motion for preliminary approval.

---

[5] Settlement Plaintiffs and DoorDash could easily fix the illegality of the proposed settlement by making it an opt-in settlement. That settlement structure is common in the labor and employment space because FLSA requires it. And making it an opt-in settlement would ensure only those Dashers that wish to affirmatively waive their FLSA claims and right to individual arbitration would be included.

[6] The *Marciano I* Settlement Agreement did not include administrative costs. Intervenors assumed the same pro rata settlement administration costs in this agreement of $1.55 per class member.

[7] Keller Decl., Ex. S.

OPPOSITION TO PRELIMINARY APPROVAL OF CLASS SETTLEMENT
CASE NO. CGC-18-567869

1   Dated: December 10, 2019                    Respectfully submitted,

2

3                                               Keith A. Custis (#218818)
                                                  kcustis@custislawpc.com
4                                               CUSTIS LAW, P.C.
                                                1875 Century Park East, Suite 700
5                                               Los Angeles, California 90067
                                                (213) 863-4276
6

7                                               Tom Kayes (#327020)
                                                  tk@kellerlenkner.com
8                                               Aaron Zigler (#327318)
                                                  amz@kellerlenkner.com
9                                               KELLER LENKNER LLC
                                                150 N. Riverside Plaza, Suite 4270
10                                              Chicago, Illinois 60606
                                                (312) 741-5220
11

12                                              *Attorneys for Proposed Intervenors and
                                                Objectors*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO PRELIMINARY APPROVAL OF CLASS SETTLEMENT
CASE NO. CGC-18-567869