# Exhibit C

Steven M. Tindall (Cal. Bar No. 187862)
Aaron Blumenthal (Cal. Bar No. 310605)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: 510-350-9700
Facsimile: 510-350-9701
E-Mail: smt@classlawgroup.com
E-Mail: ab@classlawgroup.com

Jahan Sagafi (Cal. Bar No. 224887)
Relic Sun (Cal. Bar No. 306701)
Molly Frandsen (Cal. Bar No. 320094)
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA  94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-Mail: jsagafi@outtengolden.com
E-Mail: rsun@outtengolden.com
E-Mail: mfrandsen@outtengolden.com

*Attorneys for Proposed Intervenor and Objector M. Romero*

**ELECTRONICALLY**
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**12/12/2019**
**Clerk of the Court**
BY: DAVID YUEN
Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**FOR THE COUNTY OF SAN FRANCISCO**

| | |
|---|---|
| CYNTHIA MARCIANO, and DAVID CRISTINI, in their capacity as Private Attorney General Representatives,<br><br>Plaintiffs,<br><br>v.<br><br>DOORDASH, INC.,<br><br>Defendant. | Case No. CGC-18-567869<br><br>*Assigned for all purposes to the Honorable Ethan P. Schulman*<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MATTHEW ROMERO'S MOTION TO INTERVENE AND OBJECTIONS TO PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**<br><br>Hearing Date: January 14, 2020<br>Hearing Time: 9:30 am<br>Hearing Place: Dept. 302<br>Reservation No: 012110114-12 |

# TABLE OF CONTENTS

I. Introduction....................................................................................................1

II. Factual and Procedural Background................................................................1

III. Argument........................................................................................................2

   A. Intervenor Satifies the Requirements for Intervention...................................3

      1. Intervention Is Timely..............................................................................3

      2. Intervenor Is Entitled to Intervene in this Action as a Matter of Right..........4

      3. Alternatively, Intervenor Meets the Standard for Permissive Intervention.....4

   B. The Court Should Deny Preliminary Approval of the Proposed Class Action Settlement ........................................................................................6

      1. This settlement delivers less value than the same parties' deal two years ago, despite the current class's stronger claims and negotiating position..........7

      2. The settlement improperly releases meritorious claims in exchange for zero compensation........................................................................................8

      3. The settlement improperly hinders DoorDash drivers' ability to take advantage of the availability of other counsel................................11

IV. Conclusion....................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

Cases

*Allen v. California Water & Tel. Co (,*
 1947) 31 Cal. 2d 104 .................................................................................................................3
*Bame v. City of Del Mar,*
 (2001) 86 Cal.App.4th 1346 .....................................................................................................3
*Bustop v. Super. Ct.,*
 (1977) 69 Cal.App.3d 66 ..........................................................................................................3
*City and County of San Francisco v. State of California,*
 (2005) 128 Cal.App.4th 1030 ...................................................................................................6
*Duran v. Obesity Research Inst., LLC,*
 (2016) 1 Cal.App.5th 635 .........................................................................................................7
*Dynamex Operations W. v. Superior Court,*
 (2018) 4 Cal.5th 903 .................................................................................................................8
*Hernandez v. Restoration Hardware, Inc.,*
 (2018) 4 Cal.5th 260 .................................................................................................................4
*Kullar v. Foot Locker Retail, Inc.,*
 (2008) 168 Cal.App.4th 116 .....................................................................................................6
*Lindelli v. Town of San Anselmo,*
 (2006) 139 Cal.App.4th 1499 ...................................................................................................5
*Lofton v. Wells Fargo Home Mortg.,*
 (2018) 27 Cal.App.5th 1001 .....................................................................................................3
*Mann v. Superior Ct.,*
 (1942) 53 Cal. App. 2d 272 ......................................................................................................3
*Morillion v. Royal Packing Co.,*
 22 Cal.4th 575 (2000) .............................................................................................................11
*Sanders v. Pacific Gas & Electric Co.,*
 (1975) 53 Cal. App. 3d 661 ......................................................................................................3
*Siena Court Homeowners Assn. v. Green Valley Corp.,*
 (2008) 164 Cal.App.4th 1416 ...................................................................................................5
*Simpson Redwood Co. v. State of California,*
 (1987) 196 Cal.App.3d 1192 ................................................................................................3, 5
*Timebridge Enterprises, Inc. v. City of Santa Rosa,*
 (1978) 86 Cal. App. 3d 873 ......................................................................................................5
*Ward v. Tilly's, Inc.,*
 (2019) 31 Cal.App.5th 1167 ...................................................................................................11
*Wershba v. Apple Computer, Inc.,*
 91 Cal.App.4th .........................................................................................................................6

Statutes

Cal. Labor Code § 226(a)(7) .........................................................................................................10
Cal. Labor Code § 226(e)(1) .........................................................................................................10
Cal. Labor Code § 351 ....................................................................................................................9

§ 226(a)(8) ............................................................................................................................10

## I. INTRODUCTION

Proposed Intervenor Matthew Romero, a DoorDash driver ("Intervenor"), seeks leave to intervene to protect his interests from being harmed by the settlement before the Court. The settlement is based on an insufficient record and is unfair to the proposed class members.

This class settlement is fundamentally flawed because it only places real value on one claim while at the same time releasing all. Thousands of DoorDash drivers are pursuing these claims in arbitration—the forum that DoorDash chose and which it is now abandoning and reverting to the class action device that is expressly prohibited in its contracts with its drivers. To make matters worse, the class settlement seeks a class-wide release in what was a PAGA-only case, which settling plaintiffs seek to hastily amend to add in the released claims. And the settlement seeks to institute a burdensome opt-out process that is contrary to California class action jurisprudence. This Court should not approve what amounts to an end-run around DoorDash's arbitration obligations.

The *Marciano II* settlement would extinguish Intervenor's and class members' valuable damages claims under the Labor Code, Wage Order 9, *Dynamex*, and AB 5 at a steep discount. With such strong claims – and given the strong pressure on DoorDash being brought to bear by Intervenor, the nearly one thousand drivers represented by Intervenor's counsel, and thousands more whose counsel are also objecting simultaneously – a comprehensive release for pennies on the dollar is highly inappropriate and should be rejected.

Intervenor respectfully requests that the Court (1) grant his Motion to Intervene, and (2) deny preliminary approval of the proposed settlement, or, in the alternative, continue the December 17 preliminary approval hearing to January 14, which is the same date as the scheduled hearing on this motion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Intervenor and hundreds of fellow drivers represented by Intervenor's counsel are

1   pursuing claims for damages and injunctive relief against DoorDash in arbitration and
2   litigation.  Currently, Intervenor's counsel represent (i) 40 drivers in active arbitrations in
3   the AAA against DoorDash, (ii) approximately 540 drivers who negotiated a tolling
4   agreement with DoorDash as of November 15, 2019, and who are ready to pursue their
5   rights in arbitration or litigation, and (iii) hundreds of additional drivers poised to assert
6   their rights in arbitration, litigation, or the tolling agreement.  Every month, hundreds of
7   additional drivers contact Intervenor's counsel seeking representation.  And still many
8   more have already retained other counsel to represent them in individual arbitrations
9   against DoorDash.  Simply put, the claims against DoorDash are motivating many
10  thousands of DoorDash drivers to sue—on an individual basis as necessary—to vindicate
11  their rights under California and other states' laws.

12  These drivers assert that DoorDash misclassified them as independent contractors
13  and therefore failed to abide by the traditional employment law protections set forth under
14  California law, such as minimum wages, expense reimbursements, and other protections.

15  The instant suit was filed on July 5, 2018.  At the time it was filed, it was not a
16  proposed class action, but instead brought claims only under the Private Attorneys
17  General Act (PAGA). On November 21, 2019, the *Marciano* Plaintiffs moved for
18  preliminary approval of a proposed class action settlement.  The proposed settlement
19  would release a broad spectrum of claims for many thousands of DoorDash drivers, while
20  providing compensation for only one of those claims.  *See* Settlement Agreement, ¶ 5.3
21  (compensating class members, who file claims, based only on miles driven).

22  In addition, the proposed settlement contains procedures that make opting out of
23  the settlement more cumbersome than is typically required: (1) The settlement requires a
24  "wet ink" signature rather than allowing e-signatures (which are now commonly used
25  inside and outside of litigation), and (2) a prohibition on opting out through a legal
26  representative.  Decl. of Shannon Liss-Riordan in Supp. of Pls.' Mot. for Prelim. Approval
27  of Class Action Settlement ("Liss-Riordan Decl."), ¶ 14 & Ex. A-1 (Class Notice) at 7.
28

## III.   ARGUMENT

### A.   Intervenor Satisfies the Requirements for Intervention.

Intervenor is a member of the proposed *Marciano* settlement class.  Class members are generally permitted to intervene, because each member is entitled to a share of the recovery, giving them a direct and immediate interest in the outcome.  *See, e.g., Mann v. Superior Ct.* (1942) 53 Cal.App.2d 272, 280; *Bame v. City of Del Mar* (2001) 86 Cal.App.4th 1346, 1364.  Courts must liberally construe the intervention statute in favor of intervention.  *Simpson Redwood Co. v. State of California* (1987) 196 Cal.App.3d 1192, 1201.

#### 1.   Intervention Is Timely.

Intervention should be asserted within a reasonable time.  *Sanders v. Pacific Gas & Electric Co.* (1975) 53 Cal.App.3d 661, 668; *Allen v. California Water & Tel. Co* (1947) 31 Cal.2d 104, 108.  "Timeliness is measured from the date the proposed interveners knew or should have known their interests in the litigation were not being adequately represented."  *Lofton v. Wells Fargo Home Mortg.* (2018) 27 Cal.App.5th 1001, 1013 (internal citation omitted).  Intervention is also timely when the motion to intervene precedes any ruling that would make intervention less practicable.  *See Bustop v. Super. Ct.* (1977) 69 Cal.App.3d 66, 72.

At the time that Intervenor filed his arbitration demand in September 2019, and when he agreed to tolling in November 2019, he was not aware of any settlement talks addressing his claims.[1]  In fact, the *Marciano* case asserted only PAGA claims. *See* Operative Complaint, *Marciano v. DoorDash Inc.* (Cal. Super. Ct. July 11, 2018) No. CGC-18-567869.  The federal class actions, *Magana* and *Austin*, had both been compelled to arbitration.  Liss-Riordan Decl. ¶ 6.  Thus, there had been no active classwide litigation of claims against DoorDash.

On November 21, 2019, the *Marciano* preliminary approval motion and proposed

---

[1] Decl. of Steven M. Tindall in Supp. of Matthew Romero's Mot. to Intervene ("Tindall Decl.") ¶ 13.

settlement were filed. Intervenor's counsel learned of that motion the Monday before Thanksgiving. Tindall Decl. ¶ 14. DoorDash's counsel sent Intervenor's counsel a copy of the *Marciano* settlement agreement on December 2. *Id.* ¶ 15. Intervenor brings this motion just ten court days after learning of the settlement and seven court days after receiving the settlement agreement. For that reason, and because this motion to intervene precedes the Court's evaluation of the proposed settlement, this motion is timely.

### 2. Intervenor Is Entitled to Intervene in this Action as a Matter of Right.

Intervenor is entitled to intervene as a matter of right. To intervene as a matter of right, the proposed intervener must (1) claim an interest in the property or transaction that is the subject of the litigation; (2) establish that he or she is "so situated that the disposition of the action may impair or impede that person's ability to protect that interest"; and (3) establish that his or her interests will not be adequately represented by the existing party. Code of Civ. Proc. § 387(d)(1); *see also Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260, 267 ("Unnamed class members may become parties of record to class actions" by filing a timely complaint in intervention. "For intervention as a matter of right under section [387(d)(9)], intervenors must show they are class members whose interests are not adequately represented by the existing parties.").

First, Intervenor is a member of the proposed settlement class here and therefore has a legal and financial interest in the outcome of *Marciano*. Second, the *Marciano* settlement would release Intervenor's and similarly situated drivers' claims (many of whom may not yet know that counsel is available and willing to prosecute their claims individually, rather than settling for the small fraction of their claims' worth, as is being offered under this settlement). Even those drivers savvy enough to opt out are being subjected to an unduly onerous opt-out process, which may have the effect of impeding many drivers' ability to protect their own interests. Third, and most importantly, Intervenor's interests are not being adequately represented in *Marciano*, as detailed below.

### 3. Alternatively, Intervenor Meets the Standard for Permissive Intervention.

Alternatively, the Court should grant Intervenor leave to intervene under Code of Civ. Proc. §387(d)(2). Permissive intervention under this provision is appropriate if a proposed intervener can show that "(1) the proper procedures have been followed; (2) the nonparty has a direct and immediate interest in the action; (3) the intervention will not enlarge the issues in the litigation; and (4) the reasons for the intervention outweigh any opposition by the parties presently in the action." *Siena Court Homeowners Assn. v. Green Valley Corp.* (2008) 164 Cal.App.4th 1416, 1428. Intervenor satisfies these requirements.

First, this motion follows the proper procedures for intervention.

Second, Intervenor has an interest in the action. For "a party be permitted to intervene it is not necessary that his interest in the action be such that he will inevitably be affected by the judgment. It is enough that there be a substantial probability that his interests will be so affected." *Timebridge Enterprises, Inc. v. City of Santa Rosa* (1978) 86 Cal.App.3d 873, 881. Courts have allowed applicants to intervene where, as here, they assert a direct interest in the litigation. *See, e.g., Lindelli v. Town of San Anselmo* (2006) 139 Cal.App.4th 1499, 1501, 1505; *Simpson Redwood Co.*, 196 Cal.App.3d at 1204. Intervenor has a direct, immediate interest in this litigation because the *Marciano* settlement threatens to release his legal claims and impair his ability to seek relief.

Third, the proposed Complaint in Intervention is similar in nature to the operative *Marciano* complaint and does not raise different or additional legal theories that will expand the case. *See* Tindall Decl., Ex. A. Intervenor seeks to intervene simply to address the proposed Marciano *settlement*, not to add new issues or otherwise enlarge the litigation.

Fourth, Intervenor's interest in participating in this action outweighs the original parties' interests in completing the settlement approval process without intervention. "The permissive intervention statute balances the interests of others who will be affected by the judgment against the interests of the original parties in pursuing their litigation

unburdened by others." *City and County of San Francisco v. State of California* (2005) 128 Cal.App.4th 1030, 1036. In proposed class action settlements such as this, the Court has a duty to protect absent class members and "should not give rubber-stamp approval." *Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 130. This is especially true given the limited litigation that has been conducted here. *See, e.g., Roe v. SFBSC Mgmt., LLC*, No. 17-17079, Slip Op. at 14 (9th Cir. Dec. 11, 2019) ("That procedural burden is more strict when a settlement is negotiated absent class certification."). Intervenor can provide information to the Court relevant to settlement approval. Intervention is fully warranted.

### B. The Court Should Deny Preliminary Approval of the Proposed Class Action Settlement.

The pending settlement warrants heightened scrutiny because it precedes certification of a litigation class. *Wershba v. Apple Computer, Inc.* (2011) 91 Cal.App.4th 224, 240. Courts give particularly heavy scrutiny to settlements where a defendant negotiates with only one plaintiff while multiple overlapping actions are pending, given the potential risk of a reverse auction, settling on insufficient information, or undervaluing of class members' claims. *See Duran v. Obesity Research Inst., LLC* (2016) 1 Cal.App.5th 635, 643 & n.4 (the existence of multiple overlapping suits may raise the issue of a "reverse auction," which is "when the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the [trial court] will approve a weak settlement that will preclude other claims against the defendant").

#### 1. This settlement delivers less value than the same parties' deal two years ago, despite the current class's stronger claims and negotiating position.

With such heightened scrutiny applied, this settlement simply does not warrant approval. In short, although class members have a variety of meritorious claims, the proposed settlement provides compensation for only one of those claims: expense

reimbursements.  The settlement provides *zero* compensation for several other claims yet contains a broad release that wipes those claims away.  The Court should not approve the large-scale release of claims where the releasing class members are receiving no compensation in exchange for the release of those particular claims.

To start with the most basic valuation of the proposed settlement, consider its predecessor:  In 2017, the same plaintiff and same counsel reached a $5 million settlement with DoorDash on behalf of a class of nearly 34,000.  Plaintiffs' Motion in Support, *Marciano I v. DoorDash* (Cal. Super. Ct. May 9, 2017) No. 15-548101, at *8.  The current proposed settlement includes about 420,000 class members—nearly a 12-fold increase in size.  A settlement here on par with the previous settlement would thus deliver $60 million to the class.  Yet those same parties are asking this Court to approve a settlement that delivers a mere $39.5 million.

This might be an acceptable result if there were good reason to believe this class has *weaker* claims than the previous class.  But to the contrary, class members here are in a stronger position than at the time of the previous settlement, yet are receiving less value per class member.

Notably, the law has shifted in the class's favor.  In 2018, the California Supreme Court adopted the "ABC test," shifting the burden to DoorDash to prove its delivery drivers are independent contractors, rather than employees.  *See Dynamex Operations W. v. Superior Court* (2018) 4 Cal.5th 903, 955.  Under the test, all off DoorDash's drivers are *presumed* to be "employees," until proven otherwise.  *Id*.  And DoorDash has little hope of overcoming this presumption:  among other things, DoorDash would have to show that its food-delivery drivers fall outside the company's "usual course of business." *Id*.  This would be near impossible.  As DoorDash acknowledges on its own website, the company is in the business of "connect[ing] people with the best [food] in their cities," which it does by "facilitating door-to-door delivery."  *See* https://www.doordash.com/about/.  DoorDash, in short, would be highly unlikely to

-8-
ROMERO MEM. OF POINTS AND AUTHS. IN SUPPORT OF MOT. TO INTERVENE AND OBJECT
TO *MARCIANO* CLASS ACTION SETTLEMENT

convince a fact finder that—as a food-delivery company—DoorDash's usual course of business does *not* involve food delivery.

In addition to drivers' now-stronger liability case, they also now have a well-funded defendant with the ability to satisfy a substantial judgment. At the time of the previous settlement, DoorDash was just a "struggling startup." [2] The prior $5 million deal had to be structured so that DoorDash paid part of the settlement funds ($1.5 million) only if it was bought by another company, became profitable, or went public in the next 4 years. Since then, DoorDash has transformed itself from struggling startup to market leader. It has tripled its market share, outpaced competitors such as GrubHub and Uber Eats, raised its valuation to $4 billion, increased its monthly revenue by a factor of six, and expanded from 600 cities to 3,000 cities.[3] Despite its increasing ability to pay, DoorDash is getting an even better deal this time, on a per class member basis.

### 2. The settlement improperly releases meritorious claims in exchange for zero compensation.

As set out in the preliminary approval motion, the settlement contemplates providing remuneration to DoorDash drivers at about a 15.5% rate for their expense-reimbursement claims only. *See* Mot. at 19. Setting aside whether that is appropriate compensation for those claims, that percentage recovery subsumes the entire $39.5 million recovery; in other words, it leaves $0 left over to compensate for any claims beyond the expense-reimbursement claim. This is a major problem, since DoorDash drivers have several claims of value, which would be released in exchange for no consideration at all.

First, the preliminary approval brief is silent on drivers' claims for withheld tips, which is odd since the fact that DoorDash has collected "tips" from customers ostensibly

---

[2] Olivia Zaleski, *This Meal Delivery Company Was Just Another Struggling Startup Until Wooing Restaurants Paid Off*, Bloomberg (Dec. 19, 2018), https://www.bloomberg.com/news/articles/2018-12-19/doordash-was-left-for-dead-until-wooed-restaurateurs-began-to-pay.

[3] *Id*.; Edison Trends, *DoorDash Surpasses GrubHub in National Market Share of Total Consumer Spend with 28% to 27%, with Uber Eats taking 25%* (Mar. 11, 2019), https://trends.edison.tech/research/doordash-vs-grubhub-vs-ubereats-march-2019.html.

on behalf of its drivers, but then kept much if not all of that money for itself, has been the subject of considerable controversy and media scrutiny. *See, e.g.*, Randy Newman, *DoorDash Changes Tipping Model After Uproar From Customers*, New York Times (July 24, 2019) (reporting that DoorDash's tipping policy "effectively meant tips were going to it rather than workers"). A close look at the settlement reveals that it *explicitly releases* all driver claims for "tips" and "gratuities." Settlement Agreement, § 2.37. Yet the settlement provides no value in exchange for releasing drivers' claims for unpaid tips, even though California law on this point is clear: tips *must* be passed on to workers to increase their compensation, and *cannot* be retained by the employer. Cal. Labor Code § 351 ("No employer or agent shall . . . deduct any amount from wages due an employee on account of a gratuity"). Using the ratio of tips-to-minimum wage alleged in another lawsuit against DoorDash, the expected value of the tips claim would be $116 million. *See Wass v. DoorDash, Inc.* (N.D. Cal. Aug. 9, 2019), 19-cv-04637, ¶ 2. The fact that the proposed settlement pays $0 for an estimated $116 million claim is unacceptable.

As with the tip claim, the settlement proposes to provide $0 in compensation for the itemized-wage-statement claim. Ms. Liss-Riordan merely asserts the claim is worth $0, while candidly conceding that DoorDash has violated the statute in at least four ways because DoorDash contends only that it provides five of the nine categories of information required by California law. Nor could DoorDash argue otherwise, because its standard wage statement lacks many of the required categories, such as Cal. Labor Code § 226(a)(7) (last 4 digits of the employee's SSN, or EIN) and § 226(a)(8) (name and address of the legal entity that is paying the worker). These bright-line violations are straightforward to demonstrate based on DoorDash's standard wage statement and can easily stack up to $4,000 in penalties per California class member. *See* Cal. Labor Code § 226(e)(1) (class members can collect statutory damages up to $100 per week for any violation of the wage statement statute, capped at $4,000). As such, the wage statement claims could be worth up to $1.52 billion, depending on how many weeks each of the

380,000 California class members worked for DoorDash. *See* Liss-Riordan Decl. ¶ 31. And beyond the sheer value of the claim, the issue is one of great importance to DoorDash drivers. They care deeply about the lack of transparency in their wage statements due to DoorDash's opaque and confusing pay model. *See, e.g.*, DoorDash, *Improving the Dasher Experience* (June 27, 2019), https://tinyurl.com/sfumxj4 (noting that in online surveys of DoorDash drivers, lack of "transparency" was a primary concern). The release of this claim in exchange for neither monetary value nor business-practice changes is unacceptable.

The proposed settlement also seeks to release DoorDash drivers' overtime and minimum wage claims—again in exchange for zero value. To report for work, DoorDash drivers must get in their cars, sign into the Dasher application, and click a button indicating they are ready to work. If DoorDash (and its marketing department) has failed to generate enough customers, drivers may wait a long time before being assigned an order. DoorDash does not pay drivers anything for this waiting time. In California, if a worker reports for a shift and has to wait before he or she can begin work, this time is compensable. *See e.g., Ward v. Tilly's, Inc*. (2019) 31 Cal.App.5th 1167, 1185 (noting that compensable time begins when a worker reports for work by remotely logging into a computer). Although settling plaintiffs say DoorDash argues this time is uncompensable, *see* Liss-Riordan Decl. ¶ 21, a defendant's mere denial of a claim's merit is not enough to justify releasing it on a classwide basis for no consideration—especially given California law's requirement that hourly workers are to be paid for time they are suffered or permitted to work. *See Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 584 ("an employee who is subject to an employer's control does not have to be working during that time to be compensated").

Including the potential value of the tips claim, wage statement claim, and minimum wage and overtime claims, in addition to the expense-reimbursement claim valued at $256 million in the preliminary approval motion (*see* Mot. at 18), the $39.5

million settlement would represent only a 1.8% recovery on the class claims. This is cause for concern and merits denial of settlement approval, as settling counsel has failed to identify any wage-and-hour class settlement that indicates that such a tiny percentage of the available damages is fair, adequate, and reasonable.

### 3. The settlement improperly hinders DoorDash drivers' ability to take advantage of the availability of other counsel.

Due to the strength of drivers' claims against DoorDash, several prominent law firms are helping DoorDash drivers prosecute their individual claims.  The availability of other counsel should also factor into the Court's decision concerning settlement approval and release of claims.  Hundreds of DoorDash drivers per month seek to have Gibbs Law Group and Outten & Golden represent them, and DoorDash may be attempting to absolve itself of some of this liability before several new California laws go into effect (in January 2020) that would make it harder for the company to evade its arbitration obligations.  In a recent case involving a motion to compel DoorDash to arbitrate, a federal judge questioned DoorDash on whether this settlement is a "sweetheart deal."  *See* Hearing Transcript, *Abernathy v. DoorDash, Inc.* (N.D. Cal. Nov. 25, 2019), at 58:23-24.  This issue is addressed further in some of the other intervenors' briefing.

In light of this situation, the requirement that class members opt out using only wet ink signatures should be viewed with great suspicion.  Due to its experience in arbitration, DoorDash should know that many DoorDash drivers use e-signatures as an efficient way to quickly and conveniently execute documents.  The preference for wet ink is strange indeed, given that this settlement is an e-signed agreement. *See generally* Ex. A, Settlement Agreement (with a "DocuSign Envelope ID" stamped on every page). The wet ink requirement, and attendant requirement to send opt outs by physical mailing, stands in stark contract to the settlement's proposed online submission of claims.

### IV. CONCLUSION

For the foregoing reasons, Intervenor respectfully requests that the Court (1) grant

-12-
ROMERO MEM. OF POINTS AND AUTHS. IN SUPPORT OF MOT. TO INTERVENE AND OBJECT
TO *MARCIANO* CLASS ACTION SETTLEMENT

his Motion to Intervene, and (2) deny preliminary approval of the proposed settlement, or, in the alternative, continue the upcoming preliminary approval hearing before this Court on December 17, 2019 until January 14, 2020, which is the same date as the hearing on this motion.

Dated: December 11, 2019         By: */s/ Steven M. Tindall*

Steven M. Tindall (Cal. Bar No. 187862)
Aaron Blumenthal (Cal. Bar No. 310605)
GIBBS LAW GROUP LLP
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: 510-350-9700
Fascimile: 510-350-9701
E-Mail: smt@classlawgroup.com
E-Mail: ab@classlawgroup.com

Jahan Sagafi (Cal. Bar No. 224887)
Relic Sun (Cal. Bar No. 306701)
Molly Frandsen (Cal. Bar No. 320094)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA  94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-Mail: jsagafi@outtengolden.com
E-Mail: rsun@outtengolden.com
E-Mail: mfrandsen@outtengolden.com

*Attorneys for Proposed Intervenor and Objector M. Romero*

-13-
ROMERO MEM. OF POINTS AND AUTHS. IN SUPPORT OF MOT. TO INTERVENE AND OBJECT TO *MARCIANO* CLASS ACTION SETTLEMENT