# Exhibit D

THE TIDRICK LAW FIRM LLP
STEVEN G. TIDRICK, SBN 224760
JOEL B. YOUNG, SBN 236662
1300 Clay Street, Suite 600
Oakland, California  94612
Telephone: (510) 788-5100
Facsimile: (510) 291-3226
E-mail:    sgt@tidricklaw.com
E-mail:    jby@tidricklaw.com

Attorneys for Objector RAYMOND CHO

ELECTRONICALLY
**F I L E D**
*Superior Court of California,
County of San Francisco*

**12/16/2019**
**Clerk of the Court**
**BY: DAVID YUEN**
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

UNLIMITED JURISDICTION

CYNTHIA MARCIANO and DAVID CRISTINI, in their capacity as Private Attorney General Representatives,

Plaintiffs,

v.

DOORDASH, INC.,

Defendant.

Civil Case No. CGC-18-567869

ASSIGNED FOR ALL PURPOSES TO THE HONORABLE ETHAN P. SCHULMAN

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Time: December 17, 2019
Time: 9:30 a.m.
Dept.: 302

1

MEMO. OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT — *Marciano et al. v. Doordash, Inc.*, Case No. CGC-18-567869

**MEMORANDUM OF POINTS AND AUTHORITIES**

Objector Raymond Cho ("Objector") requests that the Court deny preliminary approval of the proposed class action settlement. Objector's counsel, The Tidrick Law Firm LLP, represents Objector and approximately six thousand other current and former Doordash drivers, each of whom has made an individual arbitration demand against Doordash pursuant to a binding arbitration agreement. Objector believes that the settlement is unfair and should not be approved for numerous reasons, including without limitation for the reasons below.

**I.    The Proposed Settlement Violates Doordash's Agreement With Its Drivers**

Doordash's agreement with its Drivers states: "**PLEASE REVIEW THIS AGREEMENT CAREFULLY. IN PARTICULAR, PLEASE REVIEW THE MUTUAL ARBITRATION PROVISION IN SECTION XI, AS IT REQUIRES THE PARTIES (UNLESS YOU OPT OUT OF ARBITRATION AS PROVIDED BELOW) TO RESOLVE DISPUTES ON AN INDIVIDUAL BASIS, TO THE FULLEST EXTENT PERMITTED BY LAW, THROUGH FINAL AND BINDING ARBITRATION.**" *See* Decl. of Steven G. Tidrick, Esq. ("Tidrick Decl.") ¶ 2 & Ex. A, at page 1 (emphasis in original). The agreement further states: "To the extent allowed by applicable law, separate and apart from the Mutual Arbitration Provision found in Section XI, CONTRACTOR agrees that any proceeding to litigate in court any dispute arising out of or relating to this Agreement, whether because CONTRACTOR opted out of the Arbitration Provision or any other reason, will be conducted solely on an individual basis, and CONTRACTOR agrees not to seek to have any controversy, claim or dispute heard as a class action, a representative action, a collective action, a private attorney-general action, or in any proceeding in which CONTRACTOR acts or proposes to act in a representative capacity ("Litigation Class Action Waiver"). CONTRACTOR further agrees that no proceeding will be joined, consolidated, or combined with another proceeding, without the prior written consent of all parties to any such proceeding." *Id.* at page 9, § XII (section entitled "LITIGATION CLASS ACTION WAIVER").

The agreement further states that it can be revoked or modified only by a writing

2

MEMO. OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT — *Marciano et al. v. Doordash, Inc.*, Case No. CGC-18-567869

signed by both Doordash and the individual worker: "This Agreement . . . shall not be modified, altered, changed or amended in any respect, unless in writing and signed by both parties." *Id.* at page 9, § XIV (1).

The agreement provides the following mechanism for opting out of the arbitration provisions: "In order to opt out, CONTRACTOR must notify DOORDASH in writing of CONTRACTOR's intention to opt out by sending a letter, by First Class Mail, to DoorDash, Inc., 901 Market Street, Suite 600, San Francisco, CA, 94131." *Id.* at page 8, § XI (8).

The settlement violates Doordash's agreement with its drivers because, pursuant to the settlement, Doordash agrees to the certification of a class in court pursuant to California Code of Civil Procedure § 382. *See* Settlement Agreement at page 15, lines 4-5.

The settlement also violates Doordash's agreement with its drivers because it purports to release the claims of individuals *who take no action*, whereas the arbitration agreement requires: (1) action by the individual, acting individually, to bring and resolve claims; and/or (2) a signed writing by the individual and the company to modify or revoke the agreement.

The settlement also violates Doordash's agreement with its drivers because it purports to release the claims of individuals through court action, rather than through arbitration.

The facts set forth above also show that the settlement is unfair to the individuals who have relied upon the arbitration provisions in bringing claims against Doordash.

Accordingly, the Court should deny preliminary approval of the proposed settlement on the grounds that it improperly and unfairly violates its agreement with its drivers, and the Court should find that the members of the proposed settlement class cannot release any claims without affirmatively taking action to opt-in to the settlement.

**II. The Approximately Six Thousand Clients of The Tidrick Law Firm LLP Should Not Be Subject to the Settlement Agreement If They Do Not Make Claims**

If an individual with a pending arbitration demand against Doordash does not make a claim and does not opt out, there are no reasonable explanations other than mistake, inadvertence, and/or confusion. In an attempt to prevent that unreasonable outcome, Doordash should be willing to agree that any clients of The Tidrick Law Firm LLP who do not make

3

claims are not subject to the class action settlement agreement, and therefore will not release the claims that are the subject of their arbitration demands, regardless of whether any opt-out request is submitted. The rationale for this request should be obvious: If an individual with a pending arbitration demand against Doordash does not make a claim and does not opt out, there are no reasonable explanations other than mistake, inadvertence, and/or confusion.

Plaintiff's counsel's firm, Lichten & Liss-Riordan, P.C., cannot reasonably disagree. Indeed, Lichten & Liss-Riordan, P.C. objected on similar grounds to the class action settlement in *Camp v. Maplebear, Inc.*, Los Angeles Superior Court Case No. BC652216. In that case, Lichten & Liss-Riordan, P.C. stated: "unlike the *Camp* Plaintiffs, [Objector] Ms. Busick has filed her claim in the proper forum, arbitration. Thus, this settlement seeks to deprive the Massachusetts workers of the forum that they have a contractual right to – arbitration – which Ms. Busick has used to their benefit in her case thus far. . . . [A]pproval of the settlement should be denied with respect to the Massachusetts workers. These workers should be permitted to proceed with the arbitration that Ms. Busick has brought on their behalf. If the Court were to grant preliminary approval with respect to the rest of the case, the Massachusetts subclass should simply be carved out of the settlement so as to allow Ms. Busick to proceed on this subclass' [sic] claims in the arbitration she has been pursuing." *See* Tidrick Decl. ¶ 3 & Ex. B (Proposed-Intervenor Donna Busick's Objection to Class Settlement, filed April 14, 2017) at 9:5-8, 11:8-11, and 15:12-16.

**III.     The Release of FLSA Claims By Individuals Who Take No Action Is Unlawful**

Objector's position, as set forth in Section I above, is that the Court should not allow members of the proposed settlement class to release ***any*** claims without affirmatively taking action to opt-in to the settlement, because of the binding arbitration agreement. There are additional reasons why the Court should not allow that with respect to claims under the federal Fair Labor Standards Act ("FLSA"). Indeed, for the additional reasons below, it is unfair, unreasonable, and unlawful that the proposed settlement purports to release the FLSA claims of individuals who take no action.

The FLSA requires employers to pay an overtime rate of one and one-half times their

4

MEMO. OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT — *Marciano et al. v. Doordash, Inc.*, Case No. CGC-18-567869

regular pay rate for hours worked over forty hours in a week. 29 U.S.C. § 207(a). Federal wage claims under the FLSA cannot be filed as a class action under Rule 23; instead, an aggrieved employee may bring a collective action on behalf of himself and other employees "similarly situated" based on an employer's failure to adequately pay overtime wages. 29 U.S.C. § 216(b). The FLSA limits participation in a collective action to only individuals who take action to "opt in" to the suit. *Id.* ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

"A 'collective action' differs from a class action." *McElmurry v. U.S. Bank Nat. Ass'n,* 495 F.3d 1136, 1139 (9th Cir. 2007). In a class action brought under Rule 23, all members of a certified class are bound by the judgment unless they opt-out of the suit. *Id.* In contrast, in a collective action under the FLSA, only those claimants who affirmatively opt-in by providing a written consent are bound by the results of the action. *Id.*

In light of the authorities above, courts have denied approval of class settlements where, as here, they purport to release the FLSA claims of individuals who have not affirmatively elected to participate in the lawsuit by filing a written consent form. *See Tijero v. Aaron Bros., Inc.*, 2013 WL 60464, at *8 (N.D. Cal. Jan. 2, 2013) (denying motion for preliminary approval of class settlement and stating that "the Court finds that it is contrary to § 216(b) to bind class members to a release of FLSA claims where, as here, the members have not affirmatively elected to participate in the lawsuit by filing a written consent form"); *Stokes v. Interline Brands, Inc.*, 2014 WL 5826335, at *4 (N.D. Cal. Nov. 10, 2014) (denying motion for preliminary approval of class settlement and stating: "FLSA claims are collective action claims that require an affirmative opt-in by written consent on the part of claimants, whereas Rule 23—as expressly structured here—operates on an opt-out basis."); *Kakani v. Oracle Corp.,* 2007 WL 1793774, at *7 (N.D. Cal. 2007) (denying motion for preliminary approval of class settlement, finding that settlement would violate the FLSA because it purported to release the FLSA claims of all class members, whether or not they choose to affirmatively join the action). *See also Donatti v. Charter Commc'ns, LLC*, 2012 WL 5207585, at *4-6

5

MEMO. OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT — *Marciano et al. v. Doordash, Inc.*, Case No. CGC-18-567869

(W.D. Mo. Oct. 22, 2012) (holding that a class action settlement that proceeded on an opt out basis could not preclude later FLSA claims); *Khanna v. Inter–Con Sec. Systems, Inc.,* 2012 WL 4465558, at *2 (E.D. Cal. 2012) ("an employee must 'opt-in' to the FLSA action to be bound by its resolution"); *La Parne v. Monex Deposit Co.,* 2010 WL 4916606, at *3 (C.D. Cal. 2010) (holding that "only class members who affirmatively 'opt-in' to the Settlement should be bound by the Settlement's release of FLSA liability"); *In re Bank of Am. Wage & Hour Employment Litig.*, 2013 WL 6670602, at *2 (D. Kan. Dec. 18, 2013) ("Because the settlement releases claims under the FLSA, class members are required to affirmatively opt-in to the settlement by signing and returning a consent form.").

So too here, the Court should deny preliminary approval of the proposed settlement on the grounds that it improperly purports to release the FLSA claims of individuals who have not affirmatively elected to participate in the lawsuit by filing a written consent form.

**IV.   The Court Should Reject the "Wet Ink" Requirement for Opt-Outs**

As noted above, Objector's counsel, The Tidrick Law Firm LLP represents Objector and approximately six thousand other current and former Doordash drivers, each of whom has made an individual arbitration demand against Doordash pursuant to the company's binding arbitration agreement. They should be allowed to easily opt out of the proposed settlement. The proposed settlement has been designed, however, to suppress opt-outs. One way it does so is by requiring that written requests for exclusion be signed with a "physical ('wet ink') signature of the Settlement Class Member." *See* Settlement Agreement ¶ 7.1, at page 26, lines 18-20 & Ex. 1 to Settlement Agreement (proposed notice) at page 7, § 13. That requirement is illegal. It is designed to suppress opt-outs. It is unfair and unprecedented.

**A.   The "Wet Ink" Requirement Is Illegal**

The proposed settlement violates state and federal law by purporting to deny legal effect to electronic signatures.

Indeed, denying legal effect to an electronic signature violates California law. *See* Cal. Civ. Code § 1633.7(b) (adopting the Uniform Electronic Transactions Act ("UETA") and stating that "[a] contract may not be denied legal effect or enforceability solely because an

6

electronic record was used in its formation").

Denying legal effect to an electronic signature also violates federal law. The Electronic Signatures in Global and National Commerce Act ("E-Sign Act") states: "Notwithstanding any statute, regulation, or other rule of law (other than this subchapter and subchapter II), with respect to any transaction in or affecting interstate or foreign commerce—(1) a signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form; and (2) a contract relating to such transaction may not be denied legal effect, validity, or enforceability solely because an electronic signature or electronic record was used in its formation." 15 U.S.C. § 7001.

In accordance with the statutes cited above, courts have held that electronic and "wet ink" signatures are equally valid. *See Cintron v. Monterey Fin. Servs., Inc.*, 2018 WL 4908283, at *4 (D.N.J. Oct. 10, 2018) (rejecting argument that an arbitration agreement was invalid because it "on the basis that the Contract contains an electronic signature rather than a printed signature"); *Gomez v. Rent-A-Ctr., Inc.*, 2018 WL 3377172, at *3 (D.N.J. July 10, 2018) ("The fact that this was an electronic rather than a physical signature does not create a genuine dispute of fact as to whether [the party] signed the agreement."). *See also Tabliabue v. J.C. Penney Corp.*, 2015 WL 8780577, at *2 (E.D. Cal. Dec. 15, 2015) (finding that an electronic signature is sufficient to render a valid arbitration contract); *Mikhak v. Univ. of Phoenix*, 2016 WL 3401763, at *7 (N.D. Cal. June 21, 2016) (stating that "[e]lectronic signatures and clicking 'Accept' are valid means of expressing assent to a contract" and holding that even without an electronic signature, clicking "Accept" on two separate occasions constituted valid assent to a contract); *Tagliabue v. J.C. Penney Corp., Inc.*, 2015 WL 8780577, at *2 and *4 (E.D. Cal. Dec. 15, 2015) (stating that "[c]ourts have long upheld agreements where a contract was formed when a plaintiff clicked on a button to assent to an agreement in which the terms themselves are accessed by a hyperlink" and holding that "Plaintiff's argument that the contract is not enforceable because it does not contain his physical signature is without foundation."); *Strain v. Murphy Oil USA, Inc.*, 2016 WL 540810, at *3 (W.D. Mo. Feb. 9, 2016) (holding that electronic signature of arbitration agreement was

valid); *Miller v. Quest Diagnostics*, 85 F. Supp. 3d 1058, 1062 (W.D. Mo. 2015) ("Under the E–Sign Act, electronic signatures are presumptively valid").

In light of the above, the Court should find that the "wet ink" requirement is illegal and should deny preliminary approval of the proposed settlement on that basis.

### B. The "Wet Ink" Requirement Is Designed To Suppress Opt-Outs

The wet signature requirement is designed to make it difficult and expensive for Objector's counsel to assist their clients in preparing and submitting requests for exclusion.

Objector's counsel should be allowed to: (1) email their clients opt-out forms that the clients can sign electronically, and (2) mail printouts of those signed opt-out forms to the settlement administrator. The "wet ink" requirement would prevent that.

Forcing Objector's counsel to mail each of their approximately six thousand clients a hardcopy document, which the client would then need to mail, would impose costs of about $10,000 for envelopes and postage. It would suppress opt-outs. That is Doordash's intention.

The Court should reject preliminary approval of the proposed settlement on the ground that the "wet ink" requirement is designed to suppress opt-outs by individuals who have already retained their own counsel to pursue their claims in arbitration.

### C. The "Wet Ink" Requirement Is Unfair

Given that there is an online process for submitting claims, *see* Ex. 1 to Settlement Agreement (proposed notice) at pages 6-7, § 13, the requirement that opt-outs be signed with a "wet ink" signature is unfair, unduly burdensome, and unjustified. The only apparent purpose is to impose burdens on people who want to opt out, and thus to deter opt outs.

The wet ink requirement is anachronistic. "[W]e live in a time when all manner of commercial transactions are routinely cemented by electronic submission." *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 517 (W.D. Tex. 2015) (quoting *Mraz v. Aetna Life Ins. Co.*, 2014 WL 5018862, at *5 (M.D. Pa. Oct. 7, 2014)). Indeed, Doordash regularly conducts transactions electronically. Doordash accepts orders and payments from its customers electronically. Doordash requires that its drivers (the proposed settlement class) assent electronically to the "independent contractor agreement."

8

MEMO. OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT — *Marciano et al. v. Doordash, Inc.*, Case No. CGC-18-567869

The Court should ask Doordash these questions: If Doordash believes that "wet signatures" should be required for opt-outs, why does it accept electronic signatures in other contexts? Will it stipulate to an injunction requiring it to switch from electronic signatures to "wet signatures" in its business operations generally? And if not, why not?

The Court should reject preliminary approval of the proposed settlement on the ground that the "wet ink" requirement is unfair.

### D.  The "Wet Ink" Requirement Is Unprecedented

Plaintiff's counsel, the Boston-based law firm Lichten & Riordan, P.C., asserts that the proposed settlement "closely tracks a prior settlement with DoorDash, which was approved by Judge Harold Kahn of this Court." *See* Plaintiffs' Reply in Support of Preliminary Approval of Class Action Settlement in Response to Opposition of Non-Party Objector Robinson, filed December 10, 2019, at page 1, lines 4-6. But that settlement ***did not require*** that requests for exclusion be signed with "wet ink." *See* Declaration of Steven G. Tidrick, Esq., ¶ 4 & Ex. C (Amended Class Action Settlement Agreement and Release), § 7.1. To the contrary, the "wet ink" signature requirement is new and unprecedented.

Plaintiff's counsel Lichten & Riordan, P.C. implies that the Court of Appeal approved of a wet ink signature requirement in *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 58-59 (2008). *See* Plaintiffs' Reply in Support of Preliminary Approval of Class Action Settlement in Response to Opposition of Non-Party Objector Robinson, filed December 10, 2019, at page 5, lines 8-11. In actuality, *Chavez* affirmed approval of a settlement in which individuals "had to send a first-class letter in order to opt out," but the question of whether the letter had to be signed with "wet ink" (as opposed to signed electronically, and then printed and mailed) was not presented to or addressed by the Court of Appeal. *Id*. at 58 & n.9.

In sum, the "wet ink" signature requirement is illegal, unfair, and unprecedented, and for all those reasons, the Court should deny preliminary approval of the proposed settlement.

### V.  The Court, Not the Settlement Administrator, Should Have The Final Say As To The Validity of Opt-Out Requests

The proposed settlement states: "The Settlement Administrator, in its sole discretion,

9

MEMO. OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT — *Marciano et al. v. Doordash, Inc.*, Case No. CGC-18-567869

shall determine whether a request for exclusion was timely and properly submitted. The Settlement Administrator's decision shall be final, binding, and nonappealable." *See* Settlement Agreement at page 27, ¶ 7.5. The Court should reject that provision. The Court should retain authority to determine the validity of a request for exclusion. *See generally Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) ("[T]he Ninth Circuit has recognized that the district court has discretion to extend a class member's time to opt out") (citing *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1128 (9th Cir. 1977)); *Supermarkets General Corp. v. Grinnell Corp.*, 490 F.2d 1183, 1186 (2d Cir. 1974) (stating that a court has discretion to extend a class member's time to opt out); <u>In re Ins. Brokerage Antitrust Litig.</u>, 374 F. App'x 263, 266 (3d Cir. 2010) ("The District Court exercised reasonable discretion in extending the "opt-out" deadline so that [class members] could be excluded from the class settlement and thus pursue their state court litigation."); *Schoshinski v. City of Los Angeles*, 9 Cal. App. 5th 780, 800 (2017) ("California courts may look to federal law when seeking guidance on issues of class action procedure.") (citing *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009)).

### VI. If a Settlement Class Member Is Already Represented by Their Own Counsel, Any Communications to that Individual Requesting "Clarification" Should Also Be Sent to His or Her Counsel

The proposed class notice states: "If a Settlement Class Member submits both a Claim and a Request for Exclusion from the Settlement, the Settlement Class Member will be given an opportunity to clarify his or her response." *See* Ex. 1 to Settlement Agreement (proposed notice) at page 7, § 13. The proposed settlement provides no specificity as to how that would occur. The vagueness on this point could result in improper interference with existing attorney-client relationships. The proposed settlement should be required to specify that any such requests for clarification: (1) shall not be oral, but rather in writing; (2) shall be sent by the Settlement Administrator; (3) shall be mailed via certified mail; and (4) shall be mailed simultaneously to the class member and to his or her counsel, if the individual is represented by counsel. The proposed settlement should also be required to specify exactly what that communication will say, so that the Court and the undersigned counsel can review it

10

beforehand to assess its appropriateness.

### VII. If a Class Member Submits Both an Objection and a Request for Exclusion, the Class Member Should Be Given an Opportunity to Clarify His or Her Intention

The proposed class notice states: "If a Settlement Class Member submits both an objection and a valid and timely Request for Exclusion, the Request for Exclusion will be accepted and the objection will be rejected." *See* Ex. 1 to Settlement Agreement (proposed notice) at page 7, § 13. The Court should reject that provision. Any such individual should be given the opportunity to clarify his or her intention. Moreover, the proposed settlement should be required to specify that any such requests for clarification: (1) shall not be oral, but rather in writing; (2) shall be sent by the Settlement Administrator; (3) shall be mailed via certified mail; and (4) shall be mailed simultaneously to the class member and to his or her counsel, if the individual is represented by counsel. The proposed settlement should also be required to specify exactly what that communication will say, so that the Court and the undersigned counsel can review it beforehand to assess its appropriateness.

### VIII. The Subset of Settlement Class Members Who Are Already Represented by Their Own Counsel Should Not Be Singled Out for More Aggressive Notice

The proposed settlement states: "The Settlement Administrator shall send any Settlement Class Member who has initiated arbitration as of the signing date of this agreement, in which the Settlement Class Member is asserting claims substantially similar to the Settlement Class Members' Released Claims, up to two additional notices." *See* Settlement Agreement at page 26, ¶ 6.12. That provision appears to be designed to interfere with attorney-client relationships. The Court should reject it. Moreover, the Court should require that if the Settlement Administrator receives an individual's request for exclusion, the Settlement Administrator shall cease any further communications with that individual.

### IX. Plaintiffs Should Be Required to File Any Motion for Attorneys' Fees and Service Awards At Least Fourteen (14) Days Before the Deadline for Objections

Plaintiffs' Proposed Order at paragraph 14 allows Plaintiffs' counsel to file a motion for attorneys' fees and service awards after the deadline for objections. That is unfair. It

11

denies class members a full and fair opportunity to examine and oppose any such motions and/or opt out of the settlement based on the information in such motions. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 995 (9th Cir. 2010) (holding that "a schedule that requires objections to be filed before the fee motion itself is filed denies the class the full and fair opportunity to examine and oppose the motion"); *Bell v. Consumer Cellular, Inc.*, 2016 WL 3063870, at *4 (D. Or. May 31, 2016) (denying motion for preliminary approval of class settlement and holding that "the deadline for objections must be set *at least two weeks* after class counsel's motion for attorney's fees and costs is filed with the Court and made accessible online to class members") (emphasis added); *Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*, 2018 WL 8949777, at *5 (N.D. Cal. Oct. 15, 2018) (granting motion for final approval of class settlement and noting that "Plaintiff's motion for attorneys' fees was filed and posted on the settlement website *at least thirty days* before the deadline to object") (emphasis added).

The above-described procedure (*i.e.*, requiring that at least 14 days before the deadline for objections, class members have access to any motions for attorneys' fees and service awards) is commonplace in California state courts. Indeed, Plaintiff's counsel's firm, Lichten & Liss-Riordan, P.C., recently followed that procedure in a case in San Francisco Superior Court. *See* Tidrick Decl. ¶ 5 & Ex. D (Order of April 17, 2018, at pages 5-7 & ¶ 18) (stating that "Settlement Class Counsel shall file their Fee Application and request for a service award for the Class Representative no later than August 1, 2018. This date is at least 14 days prior to the deadline for submitting requests for exclusion and objections.").

DATED:  December 13, 2019                    Respectfully submitted,

                                                THE TIDRICK LAW FIRM LLP

                              By: _____
                                              STEVEN G. TIDRICK, SBN 224760
                                              JOEL B. YOUNG, SBN 236662

                                              Attorneys for Objector RAYMOND CHO

MEMO. OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT — *Marciano et al. v. Doordash, Inc.*, Case No. CGC-18-567869