GIBSON, DUNN & CRUTCHER LLP
JOSHUA S. LIPSHUTZ, SBN 242557
  jlipshutz@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:   415.393.8200
Facsimile:   415.393.8306

JAMES FOGELMAN, SBN 161584
  jfogelman@gibsondunn.com
THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
MICHAEL HOLECEK, SBN 281034
  mholecek@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:   213.229.7000
Facsimile:   213.229.7520

Attorneys for Respondent DOORDASH, INC.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| TERRELL ABERNATHY, et al.,<br><br>            Petitioners,<br><br>       v.<br><br>DOORDASH, INC.,<br><br>            Respondent.<br>_____<br>CHRISTINE BOYD, et al.,<br><br>            Petitioners,<br><br>       v.<br><br>DOORDASH, INC.,<br><br>            Respondent. | CASE NOS.   3:19-cv-07545-WHA<br>                       3:19-cv-07646-WHA<br><br>**REPLY IN SUPPORT OF RESPONDENT'S MOTION TO STAY PENDING FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>Action Filed: November 15, 2019<br><br>Hearing Date: February 10, 2020<br>Hearing Time: 2:00 p.m.<br>Hearing Place: Courtroom 12 – 19th Floor<br>Honorable William Alsup |

Gibson, Dunn & Crutcher LLP

REPLY IN SUPPORT OF RESPONDENT'S MOTION TO STAY PENDING FINAL APPROVAL OF CLASS SETTLEMENT
3:19-cv-07545-WHA & 3:19-cv-07646-WHA

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    A.    The *Marciano* Settlement Is Proper And Any Petitioner Who Is Unhappy With Its Terms May Opt Out ............................................................................................ 2

    B.    All Three Relevant Factors Favor A Stay ................................................................ 4

        1.    No Damage Will Result From A Stay ......................................................... 5

        2.    Absent A Stay, Petitioners And DoorDash May Be Harmed ..................... 8

        3.    A Stay Would Simplify The Issues Before This Court ............................... 9

CONCLUSION ............................................................................................................................. 10

i

REPLY IN SUPPORT OF RESPONDENT'S MOTION TO STAY PENDING FINAL APPROVAL OF CLASS SETTLEMENT
3:19-cv-07545-WHA & 3:19-cv-07646-WHA

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. Bedolla*,
    787 F.3d 1218 (9th Cir. 2015) ..................................................................................................2, 7

*Bellows v. NCO Financial Systems, Inc.*,
    2009 WL 10725741 (S.D. Cal. July 13, 2009) ...............................................................................3

*Bernstein v. Virgin Am., Inc.*,
    2018 WL 3349183 (N.D. Cal. July 9, 2018) ..................................................................................9

*Blue Cross & Blue Shield of Alabama v. Unity Outpatient Surgery Center, Inc.*,
    490 F.3d 718 (9th Cir. 2007) ....................................................................................................6, 7

*Brown v. Price*,
    2017 WL 3207235 (D. Or. July 26, 2017) .....................................................................................5

*Casserly v. Power Balance, LLC*,
    2011 WL 13220130 (C.D. Cal. June 13, 2011) .............................................................................6

*In re: CenturyLink Sales Practices & Secs. Litig.*,
    No. 0:17-cv-02832-MJD-KMM (Jan. 24, 2020) ...........................................................................1

*Christensen v. CLP Res., Inc.*,
    2015 WL 13764185 (C.D. Cal. Nov. 16, 2015) .............................................................................5

*Cotter v. Lyft, Inc.*,
    193 F. Supp. 3d 1030 (N.D. Cal. 2016) .........................................................................................4

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.*,
    498 F.3d 1059 (9th Cir. 2007) .......................................................................................................6

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .......................................................................................................2

*Hurrle v. Real Time Resolutions, Inc.*,
    2016 WL 4575740 (W.D. Wash. Jan. 6, 2016) ..............................................................................4

*Iowa Utils. Bd. v. FCC*,
    109 F.3d 418 (8th Cir. 1996) .........................................................................................................8

*Jian Guo v. ZTO Express (Cayman) Inc.*,
    2017 WL 6547746 (N.D. Cal. Dec. 22, 2017) ...............................................................................7

*Jones v. Travelers Cas. Ins. Co. of Am.*,
    2013 WL 4511648 (N.D. Cal. Aug. 22, 2013) ...............................................................................7

1
DOORDASH'S MOTION TO STAY PROCEEDINGS PENDING FINAL APPROVAL OF CLASS SETTLEMENT
3:19-cv-07545-WHA & 3:19-cv-07646-WHA

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES
(*continued*)

Page

*K.H.B. by & through K.D.B. v. UnitedHealthcare Ins. Co.*,
  2018 WL 4913666 (N.D. Cal. Oct. 10, 2018) .................................................................................7

*Lockyer v. Mirant Corp.*,
  398 F.3d 1098 (9th Cir. 2005) .................................................................................................6, 7

*Marciano v. DoorDash*,
  CGC-15-548102 (Cal. Sup. Ct. July 12, 2018) ...........................................................................4

*Marsh v. Zaazoom Sols., LLC*,
  2014 WL 12642788 (N.D. Cal. Jan. 22, 2014) ............................................................................5

*Meras Eng'g, Inc. v. CH2O, Inc.*,
  2013 WL 146341 (N.D. Cal. Jan. 14, 2013) ........................................................................6, 7, 8

*Pascal v. Concentra, Inc.*,
  2019 WL 5458282 (N.D. Cal. Oct. 24, 2019) ..............................................................................7

*Pieterson v. Wells Fargo Bank, N.A.*,
  2019 WL 1466963 (N.D. Cal. Feb. 13, 2019) .....................................................................2, 4, 9

*Singer v. Postmates*,
  4:15-cv-01284-JSW (N.D. Cal. April 25, 2018) .........................................................................4

Gibson, Dunn & Crutcher LLP

iii
REPLY IN SUPPORT OF RESPONDENT'S MOTION TO STAY PENDING FINAL APPROVAL OF CLASS SETTLEMENT
3:19-cv-07545-WHA & 3:19-cv-07646-WHA

# INTRODUCTION

Petitioners claim they want to resolve their disputes with DoorDash with "speed and efficiency"—and that is just what the pending *Marciano* settlement offers. But rather than wait a short time to determine how many Petitioners wish to accept the settlement terms and quickly resolve their claims with DoorDash, Keller Lenkner urges the Court to send the parties back to AAA, so it can try to force DoorDash to pay millions of dollars in non-refundable filing fees and *then* have Petitioners decide whether to accept the settlement and dismiss their arbitrations. Doing so would not further the FAA's objectives; instead, it would impose needless, non-refundable costs on DoorDash while delaying resolution of Petitioners' claims.

Where, as here, a class action settlement would encompass overlapping arbitrations, a stay is consistent with the FAA. Indeed, courts regularly enjoin *ongoing* arbitrations so that a pending class settlement can run its course. Since DoorDash filed its stay motion, the federal court in the *CenturyLink* case enjoined all overlapping arbitrations to prevent Keller Lenkner from further undermining a pending class settlement. Supp. Lipshutz Decl. Ex. J. Here, no Petitioner purports to have a live arbitration with DoorDash, and it makes no sense to initiate brand new arbitrations before any Petitioner even has the chance to consider the class settlement.

In light of these facts and others, all three relevant factors favor a stay.

First, Petitioners will not suffer damage from a stay. They do not dispute that they will have the option to opt out of the $39.5 million *Marciano* settlement if they are unhappy with its terms. They also do not dispute that there is little chance that arbitrations will even begin—let alone be resolved— by the time the *Marciano* settlement is approved. Thus, the only possible reason that Keller Lenkner wants to avoid the stay, and deprive its clients of a chance to consider the settlement terms before incurring additional attorney fees and costs, is to impose nonrefundable filing fees on DoorDash.

Second, both Petitioners and DoorDash are likely to be harmed absent a stay. The evidence submitted in both this case and *CenturyLink* shows that Petitioners face a real risk of confusion or manipulation if they proceed to arbitration while the *Marciano* settlement is being approved. A stay here would accomplish the same goal as the injunction in *CenturyLink*: to ensure that Keller Lenkner does not "manipulate[] [its] clients into choosing arbitration" over a settlement that may be a better

Gibson, Dunn & Crutcher LLP

REPLY IN SUPPORT OF RESPONDENT'S MOTION TO STAY PENDING FINAL APPROVAL OF CLASS SETTLEMENT
3:19-CV-07545-WHA & 3:19-CV-07646-WHA

option for them. Dkt. 158-1 Ex. D ¶ 15. A stay will also prevent harm to DoorDash by ensuring that it does not pay millions of dollars in non-refundable filing fees for Petitioners who may choose to accept the *Marciano* settlement.

Third, a stay would simplify the issues before the Court by clarifying "what claims remain in this case and who may pursue them." *Pieterson v. Wells Fargo Bank, N.A.*, 2019 WL 1466963, at *3 (N.D. Cal. Feb. 13, 2019). Indeed, a stay could resolve claims brought by *thousands* of Petitioners.

Thus, DoorDash requests an order staying proceedings pending final approval of the *Marciano* settlement and requiring the parties to submit a joint status report in 90 days.

## ARGUMENT

### A. The *Marciano* Settlement Is Proper And Any Petitioner Who Is Unhappy With Its Terms May Opt Out

As a threshold matter, both DoorDash's settlement discussions with plaintiffs' counsel in *Marciano* and the proposed settlement terms are entirely proper. Petitioners baselessly accuse DoorDash of engaging in a "secret meeting" with plaintiffs' counsel in *Marciano* (Dkt. 165 at 4), but they cite no authority for the supposed obligation to disclose settlement discussions before an agreement is reached or a deal signed. Nor would such an obligation make sense. Prematurely disclosing potential settlements could undermine the parties' respective bargaining positions, or entice other plaintiffs' attorneys to try to propose a better deal, creating a reverse auction. In general, prematurely disclosing a non-final settlement threatens the completion of an actual settlement, frustrating public policy. *See Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned").

The proposed *Marciano* settlement agreement allows any Petitioner who believes the settlement terms are not in his or her best interest to opt out. Dkt. 158-1 Ex. B § 7.1. The opt-out process protects class members—including Petitioners—by ensuring they make a *personal* choice regarding whether to participate in the settlement. The "wet ink" requirement, for example, ensures that class members are not opted out of the settlement without their personal informed consent, including by an attorney they might not realize purports to represent them. *See* Dkt. 157 at 16–17 (DoorDash's unrebutted argument that over 400 Petitioners appear on at least one other plaintiff's firm's client list); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1024 (9th Cir. 1998) ("The right to participate, or to opt-out, is an

Gibson, Dunn & Crutcher LLP

2
REPLY IN SUPPORT OF RESPONDENT'S MOTION TO STAY PENDING FINAL APPROVAL OF CLASS SETTLEMENT
3:19-CV-07545-WHA & 3:19-CV-07646-WHA

individual one and should not be made by the class representative or the class counsel."). That is why courts approving class settlements regularly ensure that members personally opt out. Recently, in *O'Connor v. Uber Technologies, Inc.*, this Court approved a settlement agreement that expressly required opt-out requests to be submitted by the settlement class member, even if the class member was represented by counsel. Supp. Lipshutz Decl. Ex. K, ¶ 182. Similarly, in *Bellows v. NCO Financial Systems, Inc.*, 2009 WL 10725741, at *1 (S.D. Cal. July 13, 2009), the settlement agreement provided that "[t]o be effective, the written request for exclusion must be signed by the Class Member and state: the Class Member's full name, address, and telephone number." In *Bellows*, an attorney submitted a single opt-out letter on behalf of 62 class members. *Id.* at *1. The court rejected the letter because it violated the settlement agreement's requirement that requests for exclusion be signed personally by the class member and because the attorney had not discussed opting out of the settlement with any of his clients. *Id.* at *2. This is the very concern the parties in *Marciano* seek to mitigate through the opt-out limitations, which are all the more reasonable in light of the unrebutted evidence of manipulation in *CenturyLink* and that court's subsequent injunction of Keller Lenkner's arbitrations.

Petitioners' attacks on the substance of the proposed *Marciano* settlement, *see* Dkt. 165 at 9–11, are unfounded. As discussed above, to the extent Petitioners are unhappy with the $39.5 million settlement, they may opt out. In any event, the *Marciano* court is tasked with reviewing and potentially approving the settlement and opt-out procedures. And that approval will occur only if the court determines that the settlement is fair and reasonable to the class members. The *Marciano* court will hear objections to the proposed agreement (including objections from Keller Lenkner) shortly. Keller Lenkner is actively trying to intervene in *Marciano* and, even if its motion to intervene is denied, it has already filed a lengthy objection to the settlement and succeeded in delaying those proceedings. After Keller Lenkner requested that the *Marciano* court postpone the preliminary approval hearing, the court continued the hearing. Then, just days before the scheduled January 30, 2020 hearing, the *Marciano* court *sua sponte* issued an order determining that the action "is a complex case" and vacated the hearing on the motion for preliminary approval of the settlement. Supp. Lipshutz Decl. Ex. L. The parties are awaiting a new hearing date "once the matter has been reassigned to the" complex civil litigation department. Keller Lenkner has contributed to these delays. DoorDash has not.

Gibson, Dunn & Crutcher LLP

3
REPLY IN SUPPORT OF RESPONDENT'S MOTION TO STAY PENDING FINAL APPROVAL OF CLASS SETTLEMENT
3:19-CV-07545-WHA & 3:19-CV-07646-WHA

Petitioners raise various concerns with the *Marciano* settlement that DoorDash and Marciano have properly addressed in that case. *See, e.g.*, Supp. Lipshutz Decl. Exs. M, N. Petitioners particularly take issue with the fact that settlement would "releas[e] . . . the individual claims of all California and Massachusetts Dashers, including Petitioners, whom DoorDash knows are already represented by counsel and have filed individual actions." *See* Dkt. 165 at 4. But Petitioners cite nothing, nor could they, suggesting that class settlements may encompass only unrepresented parties. As Petitioners have acknowledged, DoorDash is free to offer a settlement to them at any time. *See* Dkt. 151 at 22. In August 2019, for example, DoorDash served Rule 998 offers of judgment on 245 clients of Keller Lenkner. Dkt. 158-1 ¶ 8. 13 claimants accepted those offers. *Id.*

Moreover, despite attempts to undermine the settlement in *Marciano*, Petitioners fail to acknowledge the many successful settlements that Marciano's counsel has secured "on behalf of gig economy workers." Supp. Lipshutz Decl. Ex. O; *see, e.g.*, *Marciano v. DoorDash* ("*Maricano I*"), CGC-15-548102 (Cal. Sup. Ct. July 12, 2018) ($5 million settlement); *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1032 (N.D. Cal. 2016) ($27 million settlement); *Singer v. Postmates*, 4:15-cv-01284-JSW (N.D. Cal. Apr. 25, 2018) ($8.75 million settlement). Here, the negotiations with Marciano's counsel resulted in a $39.5 million proposed settlement. There is no reason to doubt that the settlement will be approved and Petitioners will be able to evaluate whether it is in their best interest to accept the terms and release their claims or to opt out and continue litigating.

**B.     All Three Relevant Factors Favor A Stay**

Courts regularly stay proceedings pending settlements of related cases, including when the overlapping settlement may streamline—rather than totally eliminate—the claims before the court. *See, e.g.*, *Pieterson*, 2019 WL 1466963, at *1 (staying proceedings pending settlement approval proceedings in another case even where it was not clear that the settlement would fully dispose of every claim in the stayed action); *Hurrle v. Real Time Resolutions, Inc.*, 2016 WL 4575740, at *2 (W.D. Wash. Jan. 6, 2016) (granting motion to stay pending settlement in another case, even where "the nature and extent of th[e] impact [of the overlapping settlement] is unclear"); *Christensen v. CLP Res., Inc.*, 2015 WL 13764185, at *4 (C.D. Cal. Nov. 16, 2015) (granting motion to stay pending final approval of settlements in two other cases).

Gibson, Dunn & Crutcher LLP

4

REPLY IN SUPPORT OF RESPONDENT'S MOTION TO STAY PENDING FINAL APPROVAL OF CLASS SETTLEMENT
3:19-CV-07545-WHA & 3:19-CV-07646-WHA

Petitioners ignore the fact that several courts have already granted DoorDash's motions to stay parallel actions that would be encompassed by the proposed settlement in *Marciano*. Dkt. 135-1. They fail to acknowledge that Judge Beeler recently stayed an overlapping FLSA action against DoorDash "pending final approval of the class settlement in *Marciano*," finding that a "stay is in the best interests of judicial efficiency and comity." Dkt. 158-1 Ex. A. And they ignore that the California Court of Appeal has likewise stayed two misclassification actions against DoorDash pending approval of the *Marciano* settlement. *Id.* Exs. E, F.

This Court, too, should enter a stay because all three relevant factors favor a stay.

**1.   No Damage Will Result From A Stay**

Petitioners argue that the FAA requires the Court to compel arbitration "[w]ithout [d]elay." Dkt. 165 at 13. But courts regularly enjoin overlapping arbitrations pending a class settlement. *See, e.g.*, Supp. Lipshutz Decl. Ex. J; *Brown v. Price*, 2017 WL 3207235 (D. Or. July 26, 2017) (enjoining arbitrations even before a motion for preliminary approval was filed); *Marsh v. Zaazoom Sols., LLC*, 2014 WL 12642788 (N.D. Cal. Jan. 22, 2014) (enjoining overlapping arbitrations upon preliminary approval of class settlement).

The brief stay DoorDash requests is a far less drastic remedy than the injunctions entered by the *CenturyLink* court and others. And a stay is particularly appropriate here where AAA is not proceeding "quickly" even with those arbitrations for which DoorDash paid the filing fees several months ago. Dkt. 165 at 13. Thus, a brief stay to determine which Petitioners decide to accept the *Marciano* settlement will not impede the arbitrations or otherwise undermine the FAA's objectives.[1]

Because Petitioners can opt out of the *Marciano* settlement, Dkt. 158-1 Ex. B. § 6.2, a brief stay would not "forc[e]" them to participate in class proceedings, Dkt. 165 at 10, or otherwise damage Petitioners. In fact, the opposite is true:  A stay will promote "the orderly course of justice" by providing time to decide whether they want to accept the terms of the settlement before proceeding to

---

[1] In a footnote, Petitioners argue that "DoorDash is responsible for any delays in those [initial 250] arbitrations," but fail to cite any facts or evidence to support this allegation. Dkt. 165 at 17 n.5. As explained above, the delays in these 250 arbitrations are due to the difficulties AAA has experienced in handling so many simultaneous claims filed by Keller Lenkner; in particular, finding acceptable, qualified arbitrators to arbitrate these claims. Dkt. 35-5 ¶ 6; Dkt. 157-2 ¶ 5. DoorDash is not responsible for these difficulties.

Gibson, Dunn & Crutcher LLP

5

REPLY IN SUPPORT OF RESPONDENT'S MOTION TO STAY PENDING FINAL APPROVAL OF CLASS SETTLEMENT
3:19-CV-07545-WHA & 3:19-CV-07646-WHA

arbitration. *See Casserly v. Power Balance, LLC*, 2011 WL 13220130, at *1 (C.D. Cal. June 13, 2011) (citing *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005)). Petitioners' request—to rush to arbitration now, impose millions of dollars of fees on DoorDash, wait in a growing backlog of proceedings before the AAA, and *then* decide whether to accept the *Marciano* settlement and dismiss their AAA cases—does not promote the orderly course of justice.[2]

To be clear, DoorDash does not seek an indefinite stay. As explained above, the hearing on the motion for the preliminary approval of the *Marciano* settlement was continued following a request **by Keller Lenkner** (not DoorDash), and later pursuant to an order the court issued *sua sponte*. Once the *Marciano* action is reassigned to a judge in the complex division, a hearing date will be set on the motion for preliminary approval. *See* Supp. Lipshutz Decl. Ex. L. And once preliminary approval is granted, notice must be sent to class members within 45 days. Dkt. 158-1 Ex. A §§ 6.1, 6.3.

Petitioners' cases citing an "indefinite stay," *see* Dkt. 165 at 15, are therefore distinguishable. In *Blue Cross & Blue Shield of Alabama v. Unity Outpatient Surgery Center, Inc.*, 490 F.3d 718, 723–24 (9th Cir. 2007), the district court granted stays pending the resolution of related criminal investigations "without mentioning duration," which "could easily last as long as the five- or six-year limitations period in the criminal cases." There is no risk of a half-decade stay here. In *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1067 (9th Cir. 2007), the Ninth Circuit reversed the district court court's stay order which "provide[d] no specific deadline for when the stay will terminate" and "nearly two years [had] passed since the order issued" at the time of the appeal. Here, the hearing on the motion for preliminary approval of class settlement will be held once the action is reassigned—which should occur in a matter of weeks, not years. In *Meras Eng'g, Inc. v. CH2O, Inc.*, 2013 WL 146341, at *5 (N.D. Cal. Jan. 14, 2013), the requested stay would have required "proceedings be halted through the pendency of two sequential lawsuits." Two other cases are inapposite for similar reasons. *See Pascal v. Concentra, Inc.*, 2019 WL 5458282 (N.D. Cal. Oct. 24,

---

[2] Petitioners have not "been fighting for the better part of a year merely to gain access to arbitration." Dkt. 165 at 8. According to Petitioners' own motion, DoorDash's first fee deadline in AAA regarding Petitioners' claims was October 14, 2019—less than four months ago. Dkt. 151 at 17. And Petitioners are the ones who asked AAA to close their cases on November 6, 2019. Dkt. 35-5 ¶ 11.

Gibson, Dunn & Crutcher LLP

6
REPLY IN SUPPORT OF RESPONDENT'S MOTION TO STAY PENDING FINAL APPROVAL OF CLASS SETTLEMENT
3:19-CV-07545-WHA & 3:19-CV-07646-WHA

2019) (denying stay pending potential future guidance from FCC regarding statutory definition); *Jian Guo v. ZTO Express (Cayman) Inc.*, 2017 WL 6547746, at *3 (N.D. Cal. Dec. 22, 2017) (denying stay request pending Supreme Court review of the "very issue presented … in this case" as it was "not presently known when the Supreme Court will issue a decision").

Petitioners' remaining cases fare no better. In *Lockyer v. Mirant*, 398 F.3d 1098, 1113 (9th Cir. 2005), the Ninth Circuit held that the suit at issue, equitable relief sought by the Attorney General, "qualified under the exception to the automatic stay for 'police or regulatory power'" and that a discretionary stay was not justified under those circumstances. Those issues are not present here. In *K.H.B. by & through K.D.B. v. UnitedHealthcare Ins. Co.*, 2018 WL 4913666, at *4–5 (N.D. Cal. Oct. 10, 2018), this Court granted a motion to transfer, finding that "the totality of the circumstances and reasons of equity counsel in favor of transferring this action to the District of Utah where venue is proper and a similar, first-filed action is already underway," as opposed to staying the proceedings pending the Utah action. The circumstances there are wholly distinct from DoorDash's motion here. Finally, in *Jones v. Travelers Cas. Ins. Co. of Am.*, 2013 WL 4511648, at *3 (N.D. Cal. Aug. 22, 2013), this Court determined that plaintiffs established harm because their allegations suggested that defendants "employ[ed] a policy that directly discriminates against … groups" protected under the Fair Housing Act and Fair Employment and Housing Act. No such allegations are at issue here.[3]

Petitioners argue that a stay is inappropriate since DoorDash must show a clear case of hardship or inequity absent the stay. Dkt. 165 at 17. But this misstates the law—before DoorDash "is obligated to show a clear case of hardship," Petitioners "must first make out a fair possibility that they will be harmed by the stay." *Meras Eng'g*, 2013 WL 146341 at *4. Petitioners have failed to do so here. Similarly, Petitioners' argument that their "strong" claim for injunctive relief somehow weakens "the equities for a stay," Dkt 165 at 12, fails because their misclassification claims are not strong at all.

---

[3] Further, none of Petitioners' cases concerns a stay pending settlement and thus do not address courts' "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Allen*, 787 F.3d at 1223; *see, e.g.*, *Pascal*, 2019WL 5458282, at *4 (stay inappropriate when premised on "a mere possibility that the law may at some point change to [defendant]'s benefit"); *Jian Guo*, 2017 WL 6547746, at *3 (denying stay request "pending the Supreme Court's resolution of [a] certiorari petition"); *Meras Eng'g*, 2013 WL 146341, at *5 (denying stay pending completion of bankruptcy proceedings); *Blue Cross*, 490 F.3d at 724 (denying stay pending completion of related criminal cases).

DoorDash is confident that, at the appropriate time, it will prevail on the merits because each Petitioner is properly classified as an independent contractor under any applicable legal standard. The thousands of Petitioners here fail to allege which standard applies to each of them, but DoorDash wins under any of them—principally because it does not "control" Petitioners in their work and is in a different line of business than Petitioners.

### 2.  Absent A Stay, Petitioners And DoorDash May Be Harmed

Absent a stay, both Petitioners and DoorDash face an acute risk of harm.

First, Petitioners risk confusion if they proceed to AAA at the same time they receive communications from the *Marciano* court. Keller Lenkner argues that it "will, of course, advise Petitioners of any class settlement options if any are approved." Dkt. 165 at 165. Yet, in *CenturyLink*, the defendant submitted unrebutted evidence that Keller Lenkner failed to "provid[e] [its clients] with any information about alternatives to arbitration, including waiting to see if the Tentative Settlement in the Class Action Lawsuit obtained preliminary approval." Dkt. 158-1 Ex. D ¶ 16. Rather, according to expert testimony, Keller Lenkner "manipulated [its] clients into choosing arbitration" over a settlement that may be a better option for them. *Id.* ¶ 15. Thus, the defendant was forced to seek an injunction against Keller Lenkner in order to preserve the effectiveness of the class-action settlement. After being presented with this evidence, the court enjoined all overlapping arbitrations. Permitting Keller Lenkner to seek arbitration here, before the *Marciano* settlement has had a chance to be approved, will unnecessarily risk the same disinformation campaign against Petitioners.

DoorDash, too, will suffer hardship absent a stay. Petitioners do not dispute that the "threat of unrecoverable economic loss" in the form of nonrefundable filing fees constitutes irreparable harm. *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 426 (8th Cir. 1996). If this case were to continue and the Court were to compel arbitration, DoorDash would be forced to pay nonrefundable filing fees for claims that, if settled, would be rendered unnecessary.

One recent example illustrates how Keller Lenkner's rush to file AAA claims leads to wasteful filing fees. On July 2, 2019, Keller Lenkner filed a boilerplate arbitration demand with AAA on behalf of Jennifer Parangueo. DoorDash explained to Keller Lenkner that its boilerplate demands included no factual support for any of their claims for relief, but nonetheless made settlement offers of

Gibson, Dunn & Crutcher LLP

8
REPLY IN SUPPORT OF RESPONDENT'S MOTION TO STAY PENDING FINAL APPROVAL OF CLASS SETTLEMENT
3:19-CV-07545-WHA & 3:19-CV-07646-WHA

compromise to Ms. Parangueo and Keller Lenkner's other clients, in order to avoid costly filing fees. On behalf of Ms. Parangueo, Keller Lenkner rejected DoorDash's offer of compromise, forcing DoorDash to pay a $1,900 filing fee to open her arbitration case. But on January 21, 2020, Keller Lenkner informed DoorDash, without any explanation, that it was "withdrawing" Ms. Parangueo's demand for arbitration. Supp. Lipshutz Decl. ¶ 9. DoorDash immediately notified AAA and Keller Lenkner that it would seek reimbursement of the $1,900 it paid to initiate Ms. Parangueo's case, but Keller Lenkner has taken the position that Ms. Parangueo's case is "closed" and that DoorDash has no recourse to recover the $1,900 it spent. A stay would prevent DoorDash from suffering similar unnecessary losses on a much a larger scale.

### 3. A Stay Would Simplify The Issues Before This Court

A stay would unquestionably "streamlin[e] the questions that must be resolved by this Court." *Pieterson*, 2019 WL 1466963, at *3. Petitioners' claim that DoorDash's cases—*Pieterson*, *Rego*, and *Casserly*—are inapposite because in those cases "similar and legal factual issues were presented to multiple courts at the same time," and "the issues before this Court do not overlap at all with those before the state Court in *Marciano*." Dkt. 165 at 16–17. But it does not matter whether the underlying legal issues in this case and *Marciano* are "different," *id.* at 15, because any Petitioner in this case who accepts the *Marciano* settlement necessarily releases the claims that would be arbitrated. Keller Lenkner has acknowledged as much as it has filed a motion to intervene in the *Marciano* case, as well as objections to the settlement agreement, on behalf of one of the Petitioners here. While no one knows exactly how many Petitioners will choose to accept the *Marciano* settlement, it is simply untrue that a stay would "do nothing to simplify the task before the Court." *Id.* at 16. There is no need to waste the Court's and parties' resources continuing to litigate (or arbitrate) claims that have been settled and will be released.

Finally, Petitioners argue that DoorDash should not have "waited until mid-January 2020" to file its stay request. Dkt. 165 at 22. But the Court entered the parties' stipulated briefing schedule regarding Petitioners' amended motion to compel arbitration in mid-December. Dkt. 139. Pursuant to that schedule, DoorDash's motion to stay proceedings was filed in coordination with its opposition to Petitioners' amended motion. Dkts. 157, 158. Petitioners cite *Bernstein v. Virgin Am., Inc.*, 2018 WL

Gibson, Dunn & Crutcher LLP

9
REPLY IN SUPPORT OF RESPONDENT'S MOTION TO STAY PENDING FINAL APPROVAL OF CLASS SETTLEMENT
3:19-CV-07545-WHA & 3:19-CV-07646-WHA

3349183, at *3 (N.D. Cal. July 9, 2018), in which the Court denied the defendant's stay request when it "could have filed a motion to stay … on January 18, 2017" but "waited until March 26, 2018 to file its motion—after the parties had prepared and responded to, and the Court had read and heard argument on, motions for decertification and summary judgment." Even if there were a delay here (and there was not, given the stipulated briefing schedule), any delay is a matter of weeks, not months as in *Bernstein*. Indeed, the parties stipulated to a schedule regarding this stay request, with the parties "agree[ing] that it will promote judicial efficiency and conservation of resources for the hearing on Respondent's Motion to Stay to be scheduled for February 10, 2020 alongside Petitioners' Amended Motion to Compel Arbitration." Dkt. 160 at 2. DoorDash's stay request is timely.

## CONCLUSION

The Court should stay this action pending the *Marciano* settlement.

Dated: February 3, 2020                                    GIBSON, DUNN & CRUTCHER LLP


By: _____/s/ Joshua Lipshutz_____
              Joshua Lipshutz

Attorneys for Respondent DoorDash, Inc.

Gibson, Dunn & Crutcher LLP

10
REPLY IN SUPPORT OF RESPONDENT'S MOTION TO STAY PENDING FINAL APPROVAL OF CLASS SETTLEMENT
3:19-CV-07545-WHA & 3:19-CV-07646-WHA

# PROOF OF SERVICE

I, Tim Kolesk, declare as follows:

I am employed in the County of Los Angeles, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 333 South Grand Avenue, Los Angeles, California 90071, in said County and State. On February 3, 2020, I served the following document(s):

**REPLY IN SUPPORT OF RESPONDENT'S MOTION TO STAY PENDING FINAL APPROVAL OF CLASS SETTLEMENT**

**SUPPLEMENTAL DECLARATION OF JOSHUA LIPSHUTZ IN SUPPORT OF RESPONDENT'S MOTION TO STAY PENDING FINAL APPROVAL OF CLASS SETTLEMENT**

On the parties stated below, by the following means of service:

CUSTIS LAW, P.C.
Keith A. Custis
  kcustis@custislawpc.com
1875 Century Park East, Suite 700
Los Angeles, California 90067
(213) 863-4276

KELLER LENKNER LLC
Ashley Keller
  ack@kellerlenkner.com
Travis Lenkner
  tdl@kellerlenkner.com
Marquel Reddish
  mpr@kellerlenkner.com
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

Warren Postman
  wdp@kellerlenkner.com
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

Gibson, Dunn & Crutcher LLP

REPLY IN SUPPORT OF RESPONDENT'S MOTION TO STAY PENDING FINAL APPROVAL OF CLASS SETTLEMENT
3:19-CV-07545-WHA & 3:19-CV-07646-WHA

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Justin Griffin
  justingriffin@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
(213) 443-3100

Andrew Schapiro
  andrewschapiro@quinnemanuel.com
191 N. Upper Wacker Dr., Suite 2700 Chicago, Illinois 60606
(312) 705-7472

☑ **BY ELECTRONIC TRANSFER TO THE CM/ECF SYSTEM**: On this date, I electronically uploaded a true and correct copy in Adobe "pdf" format the above-listed document(s) to the United States District Court's Case Management and Electronic Case Filing (CM/ECF) system. After the electronic filing of a document, service is deemed complete upon receipt of the Notice of Electronic Filing ("NEF") by the registered CM/ECF users.

☑ **(FEDERAL)** I declare under penalty of perjury that the foregoing is true and correct.

  Executed on February 3, 2020

                                                        */s/ Tim Kolesk*
                                                        Tim Kolesk

Gibson, Dunn & Crutcher LLP

2
REPLY IN SUPPORT OF RESPONDENT'S MOTION TO STAY PENDING FINAL APPROVAL OF CLASS SETTLEMENT
3:19-CV-07545-WHA & 3:19-CV-07646-WHA