Keith A. Custis (#218818)
 kcustis@custislawpc.com
CUSTIS LAW, P.C.
1875 Century Park East, Suite 700
Los Angeles, California 90067
(213) 863-4276

Justin Griffin (#234675)
 justingriffin@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
(213) 443-3100

Andrew Schapiro (*pro hac vice*)
 andrewschapiro@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
191 N. Upper Wacker Dr., Suite 2700
Chicago, Illinois 60606
(312) 705-7472

Ashley Keller (*pro hac vice*)
 ack@kellerlenkner.com
Travis Lenkner (*pro hac vice*)
 tdl@kellerlenkner.com
Marquel Reddish (*pro hac vice*)
 mpr@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

Warren Postman (*pro hac vice*)
 wdp@kellerlenkner.com
KELLER LENKNER LLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 749-8334

*Attorneys for Petitioners*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| TERRELL ABERNATHY, et al.,<br><br>*Petitioners*,<br><br>vs.<br><br>DOORDASH, INC.,<br><br>*Respondent*. | Case Nos.  3:19-cv-07545<br>           3:19-cv-07646<br><br>**PETITIONERS' [UNREDACTED] REPLY IN SUPPORT OF AMENDED MOTION TO COMPEL ARBITRATION**<br><br>**Date**:  February 10, 2020<br>**Time**:  2:00 p.m.<br>**Judge**: Hon. William H. Alsup |
| CHRISTINE BOYD, et al.,<br><br>*Petitioners*,<br><br>vs.<br><br>DOORDASH, INC.,<br><br>*Respondent*. | |

[UNREDACTED] REPLY IN SUPPORT OF AMENDED MOTION TO COMPEL
ARBITRATION CASE NUMBERS: 3:19-cv-07545 & 3:19-cv-07646

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ................................................................................................................... 3

    A. DoorDash Does Not Dispute That It Breached Its Agreement to Arbitrate With Regard to Every Petitioner............................................................... 3

    B. This Court Should Remedy DoorDash's Breach by Compelling DoorDash to Arbitrate and Pay Petitioners' Costs and Fees................................... 5

        1. The FAA Requires That DoorDash Be Compelled to Arbitrate Without Delay. ................................................................................................ 5

        2. California Code of Civil Procedure § 1281.97 Requires That DoorDash Be Compelled to Arbitration in Which It Pays All Costs and Fees............................................................................................... 8

    C. DoorDash's Claim That Petitioners Have Not Retained Counsel Is False, and Does Not Have Evidentiary Support Based on Reasonable Inquiry. ................................................................................................................ 11

    D. DoorDash's Attacks on Counsel Are Baseless and Irrelevant. ............................. 13

III. CONCLUSION................................................................................................................ 15

# TABLE OF AUTHORITIES

**CASES**          **PAGE(s)**

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ................................................................................................... 10

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
    509 U.S. 209 (1993) ................................................................................................... 12

*Brown v. Dillard's, Inc.*,
    430 F.3d 1004 (9th Cir. 2005) ................................................................................. 4, 5

*Bushley v. Credit Suisse First Bos.*,
    360 F.3d 1149 (9th Cir. 2004) ..................................................................................... 5

*In re Cintas Corp. Overtime Pay Arbitration Litig.*,
    No. C-06-1781-SBA, 2009 WL 1766595 (N.D. Cal. June 22, 2009) .......................... 8

*S.F. Unified Sch. Dist. ex rel. Contreras v. First Student, Inc.*,
    213 Cal. App. 4th 1212 (2013) .................................................................................... 7

*Dilts v. Penske Logistics, LLC*,
    769 F.3d 637 (9th Cir. 2014) ..................................................................................... 11

*Doctor's Assocs., Inc. v. Casaratto*,
    517 U.S. 681 (1996) ................................................................................................... 10

*In re E.J.*,
    223 P.3d 31 (Cal. 2010) ............................................................................................... 9

*Eichelberger v. City of Berkeley*,
    293 P.2d 1 (Cal. 1956) ................................................................................................. 9

*Fordjour v. Washington Mut. Bank*,
    No. 07-cv-1446-MMC (PR), 2008 WL 295092 (N.D. Cal. Feb. 1, 2008) ................... 5

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
    139 S. Ct. 524 (2019) ................................................................................................... 4

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) ....................................................................................................... 4

*Kindred Nursing Ctrs. Ltd P'ship v. Clark*,
    137 S. Ct. 1421 (2017) ............................................................................................... 10

*Marmet Health Care Ctr., Inc. v. Brown*,
    565 U.S. 530 (2012) ................................................................................................... 10

| | |
|---|---|
| **CASES (cont.)** | **PAGE(s)** |
| *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425 (9th Cir. 2015) | 9, 10 |
| *Sink v. Aden Enters., Inc.*, 352 F.3d 1197 (9th Cir. 2003) | 5 |
| *Sitzman v. City Bd. of Ed. of City of Eureka*, 389 P.2d 719 (Cal. 1964) | 9 |
| *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989) | 9 |

**STATUTES**

| | |
|---|---|
| 9 U.S.C. § 2 | 1, 9 |
| 9 U.S.C. § 4 | 1 |
| Cal. Civ. Proc. Code § 1281.2 | 9, 10 |
| Cal. Civ. Proc. Code § 1281.97 | *passim* |

**RULES**

| | |
|---|---|
| American Arbitration Association Commercial Arbitration Rules, Rule 8 | 4 |
| Cal. R. Prof. Conduct 4.2 | 7 |
| Fed. R. Civ. P. 11 | 2, 12 |
| Fed. R. Evid. 702(b) | 12 |

**OTHER AUTHORITIES**

| | |
|---|---|
| ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 11-461 (2011) | 7 |
| Alison Frankel, REUTERS, "Ex-judge atop controversial mass arbitration program: Give it a chance to work" (Dec. 23, 2019), https://reut.rs/2thkGMG | 14 |
| Order Compelling Arbitration, *Adams v. Postmates Inc.*, No. 4:19-cv-03042-SBA, Dkt. No. 152-30 (N.D. Cal. Oct. 22, 2019) | 13 |

## I.     INTRODUCTION

This motion was filed by 5,789 Petitioners who are asking the Court to put an end to DoorDash's refusal to arbitrate as required by the Mutual Arbitration Provision that DoorDash drafted (the "MAP").

Remarkably, DoorDash's "opposition" does not dispute any of the elements necessary for Petitioners to prevail. DoorDash does not dispute that every Petitioner is party to a valid arbitration agreement with DoorDash. Opp. at 1–2, 14–20, ECF No. 157. And DoorDash does not dispute that the parties' disputes fall within the scope of the arbitration agreement (including any threshold disputes about whether the parties must arbitrate). As DoorDash has repeatedly argued in other actions, when those two conditions are met, controlling precedent requires that "the agreement must be enforced <u>without further inquiry</u>." Keller Decl., Ex. HH, ECF No. 152-34 (emphasis added). DoorDash cannot ignore the unambiguous rule it has enforced so often simply because it is now the respondent instead of the petitioner.

And if black-letter law were not enough, DoorDash's counsel represented to this Court that Petitioners who remain subject to an agreement to arbitrate before AAA have the right to arbitrate in that forum:

> The Court: What he has said to me today is enough. If somebody opts out [of the new CPR agreement, so that they are subject to the AAA agreement], they are going to be compelled to go to AAA, period. And no gimmicks by DoorDash. . . . That's the way I feel about it. That's what you said. I'm going to give you a chance now. If you want to wiggle off of that, this is your time and place to wiggle. . . .
>
> Mr. Fogelman: Your Honor, I have not been known as a wiggler.

Keller Decl., Ex. II, Tr. at 50:23–51:7, ECF No. 152-35.

The Federal Arbitration Act ("FAA") requires that DoorDash arbitrate in the manner specified in its own agreement. 9 U.S.C. § 4. Specifically, as required by the MAP and AAA Rules, DoorDash must submit to the authority of AAA and comply with AAA's administrative determinations regarding filing fees and other requirements to commence arbitration. This Court also should order DoorDash to pay Petitioners' costs and attorneys' fees regardless of the outcome of the arbitrations, as required by California Code of Civil Procedure § 1281.97. In an attempt to avoid the plain consequences of its breach, DoorDash incorrectly argues that applying § 1281.97

in this case would be impermissibly retroactive.  But Petitioners do not seek retroactive application.  DoorDash's continuing refusal to arbitrate means it has violated § 1281.97 after that provision took effect on January 1, 2020.  DoorDash fares no better when it argues that § 1281.97 is preempted by the FAA, as the FAA preempts only laws that prevent agreements to arbitrate from being "valid, irrevocable, and enforceable."  9 U.S.C. § 2.  Section 1281.97 obviously does not prevent the MAP from being "valid, irrevocable, and enforceable."  To the contrary, it upholds the enforceability of the MAP and furthers the policies of the FAA.

Bereft of substantive arguments, DoorDash resorts to baseless and irrelevant attacks on Petitioners' counsel.  Those attacks are false and unprofessional.

DoorDash "question[s] whether Keller Lenkner actually represents each" Petitioner.  Opp. at 15.  But as officers of this Court, Keller Lenkner attorneys have submitted sworn declarations attesting that each Petitioner signed an engagement agreement with the firm.  *See* Keller Decl. ¶ 1, ECF No. 152; Reddish Decl. ¶ 1, ECF No. 153.  Moreover, counsel long ago offered to share redacted engagement agreements of DoorDash's choosing with DoorDash, or unredacted versions with a mediator (to preserve confidentiality).  *See* Postman Decl. ¶ 4, *id*., Ex. A.  Rather than accept that offer and confirm that Keller Lenkner is telling the truth, DoorDash chose willful blindness, and it continues to accuse Keller Lenkner of perjury and fraud.  *Id*.  But attorneys may not submit filings to the Court unless, "after an inquiry reasonable under the circumstances," "the factual contentions [therein] have evidentiary support."  FED. R. CIV. P. 11(b)(3).  Keller Lenkner offered DoorDash's counsel the opportunity to conduct a reasonable inquiry.  Refusing that offer is not a basis to launch reckless accusations.

Stooping to lower depths, DoorDash asserts that the engagement agreements between counsel and Petitioners violate applicable ethical rules, even though DoorDash has <u>never seen</u> those agreements (and devoted other portions of its opposition to claiming that the agreements do not exist).  Even if Petitioners were the victims of an unethical engagement agreement—and they certainly are not—that is no basis to deny them their contractual right to arbitrate.

DoorDash and its counsel cast more irrelevant aspersions by claiming that Petitioners' counsel are using the costs of individual arbitration to force DoorDash into a settlement, and that

AAA is depriving DoorDash of due process. Those assertions ignore that DoorDash <u>chose</u> to prohibit Petitioners from participating in a class action, requiring them instead to pursue their claims only in individual arbitrations before AAA. DoorDash knew full well the fees, costs, and rules associated with the arbitral forum it selected. And AAA has applied those fees and rules fairly and impartially. If DoorDash does not like the position it is in, it has only itself to blame.

Finally, DoorDash has the gall to assert that, "[f]rom day one, all [it] has wanted is an orderly approach to vetting and arbitrating thousands of claims before it is forced to pay millions of dollars in nonrefundable fees," and to ask the Court to delay Petitioners' right to arbitrate indefinitely while DoorDash's "investigation continues." Opp. at 2–3. Beginning in May 2019, Petitioners' counsel repeatedly urged DoorDash to participate in a meet-and-confer process to identify any Petitioners whom DoorDash believed could not proceed with arbitration. DoorDash refused. *See* Keller Decl. ¶¶ 39, 40, ECF No. 152; *id*. Exs. X–Y, ECF Nos. 152-24–152-25. After Petitioners filed their demands with AAA, DoorDash never asked AAA for "an orderly approach to vetting" Petitioners claims. And when AAA invited DoorDash to raise any arguments contesting the validity of Petitioners' demands, DoorDash expressly refused. *See* Keller Decl., Exs. N–O, ECF Nos. 152-14–152-15. To suggest that DoorDash ever tried to engage in "an orderly approach to vetting and arbitrating thousands of claims" cannot be reconciled with the record.

The application of controlling precedent to the undisputed facts allows only one result in this case: the Court should compel arbitration and put an end to DoorDash's attempts to wiggle out of its contractual and statutory obligations to arbitrate.

## II.   ARGUMENT

### A.   DoorDash Does Not Dispute That It Breached Its Agreement to Arbitrate With Regard to Every Petitioner.

DoorDash does not dispute <u>any</u> of the facts or law that establish its breach of contract, including that every Petitioner is party to the MAP. *See* Opp. at 1–2, 14–20. And although DoorDash's counsel told this Court that Petitioners had not provided DoorDash with information sufficient to identify Petitioners and their applicable arbitration agreements, DoorDash does not dispute Petitioners' proof that its statements to the Court were false. *See* Am. Mot. at 12–13, ECF

No. 151 (describing that Petitioners provided email addresses to DoorDash months ago that, once DoorDash finally searched, allowed it quickly to locate 96% of Petitioners).[1]

DoorDash also agrees that every dispute between Petitioners and DoorDash in this case must be submitted to an arbitrator and cannot be resolved by this Court. Petitioners' misclassification claims must be submitted to individual arbitrators. Am. Pet., Ex. E § XI.1.3, ECF No. 150-5. DoorDash's meritless complaints about the adequacy of Petitioners' demands must be submitted to individual arbitrators. *Id*. § XI.3. And DoorDash's disputes about the fairness of the AAA process and AAA fees must be submitted to AAA and individual arbitrators. *See* AAA Commercial Rule 8 (incorporated into the MAP by reference, Am. Pet., Ex. E § 5, ECF No. 150-5) (Once an individual arbitrator is appointed, "[t]he arbitrator shall interpret and apply the[] rules insofar as they relate to the arbitrator's powers and duties," and before an individual arbitrator has been appointed, or where a rule does not involve the "arbitrator's powers and duties," the rules "shall be interpreted and applied by the AAA."). In short, any arguments about whether DoorDash must arbitrate or what fees it must pay to arbitrate are disputes DoorDash must submit to arbitration. *See Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator."). DoorDash has an unambiguous obligation to proceed to arbitration with each Petitioner.

DoorDash's failure to meet AAA's final fee deadline caused AAA to refuse to administer Petitioners' arbitration. Am. Mot. at 10. Under controlling precedent, that default is a breach of DoorDash's duty to arbitrate. *See Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010–13 (9th Cir.

---

[1] DoorDash complains that 869 Petitioners submitted witness statements that did not provide all the information the Court requested. It then cites cases holding that a court should not compel arbitration if a party has not established the existence of a valid agreement to arbitrate. Opp at 17–18. But the 869 witness statements <u>do</u> establish that their signatories are party to a valid agreement by establishing they drove for DoorDash. And discovery from DoorDash has <u>confirmed</u> that the witness statements are accurate: each signatory is a Dasher and thereby a party to the MAP. Keller Decl. ¶ 41, ECF No. 151; Reddish Decl. ¶ 6, ECF No. 152. The only reason the existence of an arbitration agreement was ever in dispute was because DoorDash incorrectly told the Court that Petitioners had not provided DoorDash with information DoorDash could use to find their accounts and agreements in its system. Now that DoorDash has searched its files using the information it already had in its possession, there is <u>no dispute</u> that each of the 869 Petitioners at issue have a valid agreement to arbitrate.

2005) (party's failure to pay filing fees required by arbitral forum by forum's final deadline is breach of arbitration agreement); *Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1199–1200 (9th Cir. 2003) (same). DoorDash's opposition does not even attempt to address these authorities, let alone explain how DoorDash's default at AAA was anything but a breach of the MAP.

**B.  This Court Should Remedy DoorDash's Breach by Compelling DoorDash to Arbitrate and Pay Petitioners' Costs and Fees.**

Federal law and California law impose congruent, mutually enforceable remedies for DoorDash's breach.

**1.  The FAA Requires That DoorDash Be Compelled to Arbitrate Without Delay.**

Because DoorDash does not dispute that Petitioners are parties to a valid agreement that covers their disputes, the FAA thus requires this Court to compel arbitration. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002); *Fordjour v. Washington Mut. Bank*, No. 07-cv-1446-MMC (PR), 2008 WL 295092, at *1 (N.D. Cal. Feb. 1, 2008) ("The terms of the FAA do not allow a district court to exercise its discretion when faced with such a request; rather, the court is required to direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."). The FAA further requires that arbitration be compelled on an expedited basis. *Bushley v. Credit Suisse First Bos.*, 360 F.3d 1149, 1153 (9th Cir. 2004) (the FAA is meant "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible") (internal quotation marks omitted). DoorDash has eloquently summarized the simple task before this Court:

> In such cases, as here, the court only asks (1) whether the parties entered into a valid arbitration agreement and, if so, (2) whether the agreement contains a valid delegation clause. If so, the agreement must be enforced without further inquiry.

Keller Decl., Ex. HH, ECF No. 152-34 (emphases added).

In view of the MAP's unambiguous delegation clause, it is unsurprising that DoorDash's opposition does not bother to make the arguments it previously previewed to the Court: that it had "a valid defense" to arbitration because Petitioners had not included an amount in controversy in their demands or provided information that allowed DoorDash to identify the applicable arbitration agreement. *Id.*, Ex. II, Tr. at 27:24–25; 31:08–09, ECF No. 152-35. DoorDash's opposition does

not dispute that whether Petitioners' demands comply with AAA rules <u>is a matter for AAA</u> and individual arbitrators, not this Court. Am. Mot. at 2, 18–19. And DoorDash does not dispute that AAA made an administrative determination—one that is conclusive in this Court—that Petitioners met the filing requirements to proceed with individual arbitrations. Keller Decl. ¶¶ 17–18, ECF No. 152. That DoorDash does not like the decisions of its chosen arbitral forum does not entitle it to ask this Court to assume the role the MAP expressly assigns to AAA.[2]

DoorDash's counsel told this Court that the supposed deficiencies in Petitioners' demands were the <u>only</u> reasons DoorDash did not arbitrate. *Id.*, Ex. II, Tr. at 39:21–40:25, ECF No. 152-35 ("They filed claims all at once without any arbitration agreements, without identifying what their claim is, and without identifying what the amount in controversy is . . . . [i]f they had [met the above requirements], they would have been arbitrating right now."); *id*. at 31:05–10 ("<u>All the client was asking for</u> is that they comply with the AAA rules, which are very minimal. You attach an agreement to arbitrate. You identify what your claim is. And you identify what the amount in controversy is." (emphasis added)). Indeed, DoorDash's counsel assured the Court it would not "wiggle off" the promise to arbitrate at AAA with Petitioners who remain subject to AAA arbitration. *Id.* at 50:23–51:07. Although Petitioners disagree with DoorDash's claim that Petitioners' arbitration demands were deficient—and AAA ruled that they were sufficient—it is now undisputed that DoorDash was required to submit those objections to AAA and individual arbitrators. DoorDash's complaints were no basis for it to refuse to arbitrate.

DoorDash also has given up on its ill-conceived attempt to force Petitioners to arbitrate at CPR instead of AAA. DoorDash previously insisted that it reserved the right to oppose Petitioners' motion to compel on the ground that some Petitioners should have to file demands with CPR.

---

[2] DoorDash also does not dispute that Petitioners long ago provided the identifying information that allowed DoorDash to locate the applicable arbitration agreement and the Dasher's driving data for evaluating potential damages, Am. Mot. at 2, 4, 12–13, and that its counsel's prior representations to the contrary were not accurate, *id*. at 12–13. It is also clear that DoorDash's purported reason for needing the amount in controversy was a farce. DoorDash claimed that it needed this information so that it could decide whether it would make a settlement offer instead of proceeding in arbitration. Opp. at 6. But DoorDash already had the information needed to access each Petitioner's driving history and pay records. Indeed, the 250 demands for arbitration that DoorDash paid for had the exact same categories of information as the demands at issue here, and DoorDash was able to calculate a settlement offer that it made to each of those claimants. Postman Decl. ¶ 9.

Postman Decl., Ex. D, Tr. at 6:19–8:22. But after this Court required CPR to provide discovery, Petitioners obtained proof of what they suspected: CPR's mass employment protocol was created at DoorDash's request and in direct response to Petitioners' claims; DoorDash was intimately involved in reviewing and editing the protocol; CPR would not launch the new protocol without DoorDash's signoff on the rules and payment terms; and there is no evidence that any other party have a comparable level of involvement in reviewing and editing the protocol.[3] *See generally* Zigler Decl. Perhaps as a result of this damning history, DoorDash now says it "is not seeking to force any of the Petitioners in this case to use CPR." Opp. at 3.[4]

DoorDash also cannot stall arbitration with Petitioners by pointing to alleged deficiencies in the demands of non-parties to this Motion. DoorDash asserts that, because these other claimants continue to confer with DoorDash to help it identify them in its records, they have conceded that their arbitration demands were "frivolous." Opp. at 14. That spin does not withstand scrutiny. The non-party claimants do not concede that their claims are frivolous. They continue to dispute DoorDash's position, and counsel continues to press DoorDash to explain the numerous errors it has made when searching its records. *See* Postman Decl., Ex. C (identifying individuals who provided additional proof that they had worked for DoorDash, after DoorDash claimed they never had); *see also* Opp. at 11–12 (DoorDash admitting that it has found at least 37 non-parties in its

---

[3] Discovery further confirms that it was DoorDash's counsel who was behind the decision to send the new, CPR arbitration agreement to Petitioners—in circumvention of their counsel and thus in clear violation of California Rule of Professional Conduct 4.2. *See S.F. Unified Sch. Dist. ex rel. Contreras v. First Student, Inc.*, 213 Cal. App. 4th 1212, 1236 (2013) ("[A]n attorney crosses the line in advising a client about such communications [with a represented party] when the attorney prepares binding legal documents that the client plans to ask the opposing party to sign."); ABA Formal Op. 11-461 (an attorney violates the rule by "assisting the client in securing from the represented person an enforceable obligation . . . without the opportunity to seek the advice of counsel.").

[4] DoorDash tries to hedge its concession by suggesting that it may attempt to invoke the CPR agreement against Petitioners in the future. Opp. at 20 n.7. But DoorDash cannot save arguments for later when it is capable of making them now. DoorDash has all the facts it would need to invoke the CPR agreement against Petitioners whom it believes should be bound by it. DoorDash's own records confirm which Petitioners were forced to sign the CPR agreement to work, which submitted an opt-out form within 30 days, and which did not. Indeed, using DoorDash's data, Petitioners have identified for the Court which Petitioners belong in which category. Reddish Decl., Exs. A–C, ECF Nos. 153-1–153-3. DoorDash made a tactical decision not to rely on the CPR agreement when opposing Petitioners' motion to compel. It cannot wait to see how the Court decides the motion and then trot out unused material as another ground for obstruction and delay.

records using information they provided after it originally could not locate Dasher accounts for them). That DoorDash does not have an accurate or efficient method of searching its own records says nothing about the non-parties' claims. And that counsel has deferred pursuing a motion to compel arbitration for a small number of claimants whose status DoorDash disputes only confirms that counsel have always been willing to address these issues in a professional manner, and have never rushed to arbitrate on behalf of individuals when DoorDash articulates a credible basis that arbitration should not occur. *See, e.g.,* Keller Decl. ¶¶ 39, 40, ECF No. 152; *id*. Exs. X–Y, ECF Nos. 152-24–152-25. In all events, the status of claims brought by non-parties who share the same counsel as Petitioners has no relevance to Petitioners' right to arbitrate. Each Petitioner has a <u>separate</u> right to proceed with arbitration and asks this Court to enforce that right in his or her <u>individual</u> capacity. Every Petitioner who establishes a right to compel arbitration is entitled to relief on the merits of his or her own claim.

Finally, DoorDash cannot ask this Court to withhold the relief to which Petitioners are entitled simply because it wants to further delay Petitioners' arbitrations. *See* Opp. at 21. Petitioners will address DoorDash's stay request in their opposition. It is sufficient here to note that DoorDash's requests for continued delay are incompatible with the central purpose of arbitration. *See In re Cintas Corp. Overtime Pay Arbitration Litig.*, No. C-06-1781-SBA, 2009 WL 1766595, at *5 (N.D. Cal. June 22, 2009) (declining to stay arbitration because it would be "antithetical to the spirit and intent of the arbitration process").

### 2. California Code of Civil Procedure § 1281.97 Requires That DoorDash Be Compelled to Arbitration in Which It Pays All Costs and Fees.

DoorDash does not dispute that California Code of Civil Procedure § 1281.97 means what it says: "[I]f the fees or costs to initiate an arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement." And DoorDash does not dispute that where a party is in breach, § 1281.97 requires that it be ordered to arbitrate and pay the moving party's fees and costs in arbitration, regardless of the arbitration's outcome. DoorDash claims only that § 1281.97 is inapplicable because (1) it took effect on January 1, 2020, and cannot be applied retroactively, and (2) it is preempted by the FAA. Opp. at 22–25. Both

arguments lack merit.

Petitioners do not seek retroactive application of § 1281.97, but instead ask the Court to apply § 1281.97 to remedy DoorDash's <u>continuing</u> breach. California law is clear that "a statute does not operate retroactively merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment." *Sitzman v. City Bd. of Ed. of City of Eureka*, 389 P.2d 719, 720 (Cal. 1964). Indeed, in a highly analogous case, the California Supreme Court held that modifying a preexisting and continuing legal obligation does not trigger the rule against retroactivity. *See Eichelberger v. City of Berkeley*, 293 P.2d 1, 2–5 (Cal. 1956) (statute that increased pension benefits of persons who retired prior to its effective date was not operating "retroactively" because there was a continuing obligation to make retirement payments).

Ultimately, determining whether a statute operates retroactively reflects a "judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event," which should be guided by "familiar considerations of fair notice, reasonable reliance, and settled expectations." *In re E.J.*, 223 P.3d 31, 40–43 (Cal. 2010) (citing *Landgraf v. USI Film Products*, 511 U.S. 244, 268 (1994)). These considerations confirm that DoorDash has no basis to complain about the application of § 1281.97. DoorDash has a continuing obligation to comply with its contractual commitment to arbitrate. The company is represented by sophisticated counsel who surely were aware that the consequences of continuing to breach the MAP would change beginning January 1, 2020. And Petitioners highlighted the consequences in their motion to compel on December 23, 2019. DoorDash could have ceased its continuing violation of the MAP before January 1, 2020. And DoorDash has no basis to claim "reasonable reliance" on its ability to continue to flout its contractual obligations past that date. Had DoorDash breached its obligation to pay filing fees on November 9, 2019, but satisfied its obligation by December 31, 2019, § 1281.97 would not apply. But DoorDash continued its breach after January 1, 2020, and it should face the consequences of its choice.

DoorDash also cannot use preemption to evade § 1281.97. The FAA does not "reflect a congressional intent to occupy the entire field of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989). Rather, the preemptive effect

of the FAA flows from the statute's command that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. State statutes that prevent arbitration agreements from being "valid, irrevocable, and enforceable" conflict with, and are preempted by, the FAA unless they fall within the so-called "saving clause" in Section 2. *See Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 431–32 (9th Cir. 2015). The saving clause allows state laws to render arbitration agreements invalid so long as they apply equally to "any contract"—in other words, so long as they are not uniquely hostile to arbitration. *See id.* at 431–40.

Section 1281.97 does not even plausibly prevent any arbitration agreement from being "valid, irrevocable, and enforceable." To the contrary, its whole purpose is to ensure that agreements to arbitrate <u>are</u> enforced. Thus, there is no conflict between § 1281.97 and the FAA, and no cause to analyze whether § 1281.97 fits within the "saving clause." Stated differently, the FAA says nothing about state laws unless they render an agreement to arbitrate invalid, revocable, or unenforceable. Indeed, the cases DoorDash cites to describe the preemptive effect of the FAA involved a state law that prevented an agreement to arbitrate from being "valid, irrevocable, and enforceable." *See Kindred Nursing Ctrs. Ltd P'ship v. Clark*, 137 S. Ct. 1421, 1424–25 (2017) (holding that FAA preempted Kentucky rule that invalidated arbitration provision); *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 530–31 (2012) (holding that FAA preempted West Virginia rule that invalidated arbitration agreements that applied to certain claims); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011) (holding that FAA preempted California's *Discover Bank* rule that invalidated arbitration provision); *Doctor's Assocs., Inc. v. Casaratto*, 517 U.S. 681, 687–89 (1996) (holding that FAA preempted Montana statute that invalidated arbitration agreements that failed to provide sufficient notice of the arbitration provision).

Even if one ignored the text of the FAA, it is absurd to suggest that a statute that <u>promotes</u> compliance with arbitration agreements is <u>hostile</u> to their enforcement or stands as an obstacle to the FAA's objectives.[5] For instance, many states have analogs to Sections 4 of the FAA. *E.g.* Cal.

---

[5] DoorDash also cannot argue that § 1281.97 is inconsistent with the MAP. The MAP does not purport to limit remedies that otherwise would be available to the parties; to the contrary, the MAP incorporates AAA rules, which in turn require that Petitioners have access to all available remedies. *See* Employment Due Process Protocol (stating that AAA will administer an

Civ. Proc. Code. § 1281.2. Yet no court has ever held that a state that makes it even <u>easier</u> than the FAA to grant a motion to compel has somehow undermined the strong federal policy favoring arbitration. DoorDash's assertion that the California Legislature intended to aggressively enforce arbitration agreements in order to deter the use of such agreements is unsupported and implausible. DoorDash points to no evidence to support this claim, and the Legislature would have had no reason to think § 1281.97 would deter adoption of arbitration agreements unless most parties who adopt arbitration agreements do so with the intention of later violating them. Tortured speculation does not satisfy DoorDash's burden to establish that a validly enacted state law is preempted. *See Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 649 (9th Cir. 2014) ("Defendants, who bear the burden of proof in establishing the affirmative defense of preemption, submitted no evidence to show that the break laws in fact would decrease the availability of routes . . . .").

**C.   DoorDash's Claim That Petitioners Have Not Retained Counsel Is False, and Does Not Have Evidentiary Support Based on Reasonable Inquiry.**

With no legal argument for why Petitioners' motion to compel should be denied, DoorDash resorts to reckless and unprofessional attacks on Petitioners' counsel. Although these attacks need not be dignified with extended analysis, they cannot go unanswered.

First, DoorDash suggests that Petitioners' counsel have committed fraud on this Court and perjury by representing that they have been engaged by Petitioners to bring these claims. *See* Opp. at 16–17. That is a grave charge for which one should expect an officer of this Court to have at least <u>some</u> basis. Yet DoorDash points to <u>no</u> evidence that is probative of this point. Instead, DoorDash breathlessly notes that Petitioners—like DoorDash itself—appear to have retained multiple law firms. *See id.*[6] Dual representations are a feature of almost every mass action, and they naturally occur when a defendant has imposed widespread harm on hundreds of thousands of people and required them to retain counsel individually rather than be represented in a class.

---

employment arbitration only if the arbitrator is "empowered to award whatever relief would be available in court under the law"), *available at* https://www.adr.org/sites/default/files/document_repository/Employment%Due%Process%Protocol_0.pdf.

[6] Troxel Law, LLP is Keller Lenkner's co-counsel. Postman Decl. ¶ 13. Pioneer Town Media is a company that manages advertising for Troxel Law, LLP. *Id.* There is nothing sinister about having co-counsel, or about a vendor sending engagement agreements on behalf of counsel using a DocuSign account registered in the vendor's name.

1    DoorDash also analyzes Petitioners' declarations—and the corresponding certificates of
2    completion for the signatures on those declarations—and argues that they do not establish the
3    existence of an engagement agreement with counsel. But the declarations were not created or
4    submitted for the purpose of establishing Keller Lenkner's engagements with Petitioners, so their
5    silence on that matter is irrelevant. Petitioners' declarations respond to the Court's direction to
6    describe Petitioners' relationship <u>with DoorDash</u>; they do not say anything about Petitioners'
7    relationship with their counsel.[7]

8    Finally, DoorDash submits the declaration of an "expert" witness who concludes that "it
9    does not appear that Keller Lenkner represents all persons they purport to represent." ECF No.
10   157–1 at 7 (capitalization removed). That is a false assertion of fact, not an opinion. Mr. Zitrin
11   has no expertise or knowledge regarding the factual question of whether Petitioners signed
12   engagement agreements with undersigned counsel. His declaration is not admissible expert
13   testimony. *See* FED. R. EVID. 702(b); *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
14   509 U.S. 209, 242 (1993) (an expert opinion must be supported "by sufficient facts to validate it
15   in the eyes of the law.").

16   DoorDash's assertions are particularly reckless given that Petitioners' counsel offered to
17   let <u>DoorDash choose</u> a sample of its engagement agreements to review, or to show its agreements
18   to a neutral mediator who would confirm that Keller Lenkner had been engaged by its clients
19   without breaching confidentiality. Postman Decl. ¶ 4; *id.*, Ex. A. DoorDash's counsel never
20   engaged in any good-faith attempt to resolve the issue. An "inquiry reasonable under the
21   circumstances" required DoorDash to take Keller Lenkner's offer of proof before leveling such
22   serious accusations of misconduct. *See* FED. R. CIV. P. 11.[8]

---

[7] Tellingly, when DoorDash asked counsel to share the certificates of completion, the proffered reason was to ensure that the signatures were authentic. Postman Decl. ¶ 12, *id.*, Ex. B. Although counsel pointed out that DoorDash had no basis to suggest that the declarations were fabricated, they agreed to share a sample of 400 certificates because they have nothing to hide. *Id.* Now that DoorDash has reviewed the certificates and cannot dispute that each signature is authentic, it is reduced to the even more implausible claim that Petitioners provided Keller Lenkner with an authentic declaration but nonetheless are not represented by Keller Lenkner.

[8] Similarly, counsel offered to provide declarations for every Petitioner to the Court and DoorDash in the same form as ECF No. 5-2, which states under penalty of perjury that the Petitioner retained Keller Lenkner to represent him or her in arbitration against DoorDash. *See* Keller Decl., Ex. II, Tr. at 21:10–15, ECF No. 152-35 ("We have every witness statement in a box. If DoorDash or

**D.     DoorDash's Attacks on Counsel Are Baseless and Irrelevant.**

DoorDash's remaining attacks on Keller Lenkner are not only wholly unsupported, but also legally irrelevant.

DoorDash repeatedly asserts that Petitioners' counsel filed Petitioners' claims with no intention of litigating them, and instead intend only to use the pressure of AAA filing fees to force DoorDash into a settlement. DoorDash offers no evidence to support that assertion, because none exists. Counsel have devoted extensive resources to litigating Petitioners' claims and will continue to do so. *See* Keller Decl., Ex. II, Tr. at 7:01–04, ECF No. 152-35. That DoorDash faces significant costs reflects the company's choice to engage in widespread misclassification and require that its couriers bring every claim individually instead of in a class action. DoorDash's complaint thus reduces to a claim that Petitioners' counsel are representing too many Dashers at once, and that as a result, the Court should conclude that they are acting unfairly and unethically. Another court in this District rightly rejected the same argument from the same counsel on behalf of Postmates. *See* Keller Decl. ¶ 48, Ex. DD, Order Compelling Arbitration at 7, *Adams v. Postmates Inc*., No. 4:19-cv-03042-SBA (N.D. Cal. Oct. 22, 2019), ECF No. 152-30 (noting that although "Postmates expends considerable energy accusing Petitioners of using the cost of the arbitration process as a means of coercing Postmates into settling their claims expeditiously," "the possibility that Postmates may now be required to submit a sizeable arbitration fee in response to each individual arbitration demand is a direct result of the mandatory arbitration clause and class action waiver that Postmates has imposed upon each of its couriers").

Retired Judge Shira Scheindlin—who now oversees the CPR Employment-Related Mass Claims Protocol that DoorDash attempted to foist on Petitioners—recognized this point as well, in response to questions about DoorDash's assertions in this very case:

> The judge said she believes workers who file arbitration demands en masse are only following the rules imposed upon them by employers, who are, in turn, capitalizing on U.S. Supreme Court decisions endorsing arbitration. Scheindlin said she is aware that some employers and defense firms claim that plaintiffs' lawyers are abusing the system, filing unwarranted claims to pressure companies with millions of dollars in filing fees. But it is defendants, she said, that made the rules.

Your Honor would like me to, we can file them electronically. We can give physical copies."). DoorDash never took counsel up on that offer, either. Postman Decl. ¶ 11.

> "The situation that's been created really leaves a plaintiff with no other choice," she said. "The choice is to abandon your claim or bring it one by one in arbitration. I'd like to hear from (employers) what they think the third choice is … You made this bed, now you have to sleep in it."[9]

DoorDash also attempts to argue that it is unreasonable for Petitioners to insist on arbitration at AAA because AAA has had difficulty processing even 250 arbitrations. Once again, that assertion is misleading and irrelevant. At every turn, it is DoorDash that has attempted to stall the process. *See generally*, Griffin Decl.[10] But more fundamentally, DoorDash's repeated suggestions that AAA cannot handle these arbitrations and that its "due process" rights are being violated, *see* Opp. at 1, 3, 4, 16, 18, ignore that DoorDash drafted the contract and designated AAA as its arbitration forum of choice. The AAA rules and fee schedule were available for DoorDash's review before it incorporated them into its MAP, and the fee schedule states on its face that an individual filing fee is required from the respondent as soon as the claimant meets his or her filing requirements. *See* Employment/Workplace Fee Schedule at 2 ("The employer or company's share of the filing fees is due as soon as the employee or individual meets his or her filing requirements, even if the matter settles."), *available at* https://www.adr.org/sites/default/files/ *Employment_Fee_Schedule*1Nov19_0.pdf. AAA has applied its rules and fee schedule to the letter. That DoorDash regrets its choice of arbitral forum does not permit it to refuse to arbitrate.

More remarkable still, DoorDash asserts that Keller Lenkner knowingly filed thousands of arbitrations after AAA demonstrated it was unable to process 250:

> <u>Despite the fact that AAA had struggled to make progress on the initial 250 arbitrations</u>, Keller Lenkner began filing thousands of additional arbitration demands with AAA. On August 26, Keller Lenkner filed 2,250 identical demands,

---

[9] Alison Frankel, Ex-Judge Atop Controversial Mass Arbitration Program: Give It a Chance to Work, Reuters (Dec. 23, 2019), available at https://www.reuters.com/article/us-otc-massarb/ex-judge-atop-controversial-mass-arbitration-program-give-it-a-chance-to-work-idUSKBN1YR1ZI

[10] To take just several examples: DoorDash requested multiple extensions and then still failed to meet the payment deadline for its filing fees. Griffin Decl. ¶ 5. DoorDash refused to use a streamlined, master arbitrator strike list, unnecessarily forcing AAA to produce hundreds of individual strike lists. *Id.* ¶ 6. And DoorDash requested that AAA cap the number of individual arbitrations it assigned to a single arbitrator. *Id.* ¶7. AAA has stated that it can process many arbitrations and will shift to more streamlined processes for selecting arbitrators and administering individual arbitrations if necessary. Postman Decl. ¶ 10. What DoorDash disingenuously describes as a breakdown in the AAA process in fact reflects AAA's (temporary) accommodation of DoorDash's insistence on unnecessary complexity.

14
[UNREDACTED] REPLY IN SUPPORT OF AMENDED MOTION TO COMPEL
ARBITRATION CASE NUMBERS: 3:19-cv-07545 & 3:19-cv-07646

and on September 27, Keller Lenkner filed another 4,000. Dkt. 35-5 ¶¶ 7-8. (emphasis added).")

Opp. at 6 (emphasis added). But even accepting DoorDash's false assertion that AAA is unable to process 250 arbitrations, DoorDash misstates the chronology. DoorDash refused to pay the filing fees for 250 arbitrations until September 5. Postman Decl. ¶¶ 7–8. Keller Lenkner filed 2,250 demands before the 250 arbitrations had even commenced, and filed 4,000 additional demands just three weeks later, Keller Decl. ¶¶ 8, 10, ECF No. 152, during which time AAA had already scheduled administrative calls and begun to prepare strike lists for the first 250 matters. It is simply not accurate to assert that Petitioners' demands were filed after "AAA had struggled to make progress on the initial 250 arbitrations." Opp. at 6.

In all events, DoorDash's displeasure with the arbitral forum it selected is no basis to deny Petitioners their right to bring a claim at all. And since DoorDash has demonstrated that it will drag its feet and avoid Petitioners' claims for as long as it is allowed to do so, that is all the more reason that Petitioners should insist on moving forward without delay.

Finally, DoorDash and its counsel continue their baseless smears by asserting that Petitioners' engagement agreements with counsel—which they have never seen—contain unethical terms. No one can seriously believe that DoorDash is raising these points to protect Petitioners' rights. To the contrary, DoorDash somehow contends that its baseless attacks should cause Petitioners to lose their right to prompt arbitration. There is no authority for the proposition that DoorDash can avoid its obligation to arbitrate with Petitioners by raising wholly unsubstantiated allegations about Petitioners' engagement agreement with their lawyers.

Try as it might, DoorDash cannot distract from what the law requires. It is undisputed that every Petitioner is party to a valid arbitration agreement with DoorDash that requires the parties to arbitrate their disputes. DoorDash breached its obligation to arbitrate and should be compelled to comply with its agreement, abide by AAA's determinations, and pay Petitioners' arbitration costs and fees.

### III. CONCLUSION

Petitioners' amended motion to compel arbitration should be granted.

| | |
|---|---|
| Dated: January 23, 2019 | Respectfully submitted, |
| | /s/ Ashley Keller |
| Keith A. Custis (#218818) | Ashley Keller (*pro hac vice*) |
|   kcustis@custislawpc.com |   ack@kellerlenkner.com |
| CUSTIS LAW, P.C. | Travis Lenkner (*pro hac vice*) |
| 1875 Century Park East, Suite 700 |   tdl@kellerlenkner.com |
| Los Angeles, California 90067 | Marquel Reddish (*pro hac vice*) |
| (213) 863-4276 |   mpr@kellerlenkner.com |
| | KELLER LENKNER LLC |
| Justin Griffin (#234675) | 150 N. Riverside Plaza, Suite 4270 |
|   justingriffin@quinnemanuel.com | Chicago, Illinois 60606 |
| QUINN EMANUEL URQUHART | (312) 741-5220 |
| & SULLIVAN, LLP | |
| 865 S. Figueroa St., 10th Floor | Warren Postman (*pro hac vice*) |
| Los Angeles, California 90017 |   wdp@kellerlenkner.com |
| 213-443-3100 | KELLER LENKNER LLC |
| | 1300 I Street, N.W., Suite 400E |
| Andrew Schapiro (*pro hac vice*) | Washington, D.C. 20005 |
|   andrewschapiro@quinnemanuel.com | (202) 749-8334 |
| QUINN EMANUEL URQUHART | |
| & SULLIVAN, LLP | |
| 191 N. Upper Wacker Dr., Suite 2700 | |
| Chicago, IL 60606 | |
| (312) 705-7472 | |

*Attorneys for Petitioners*